UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------x

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| | : |
| - against - | : |
| | : |
| TREVOR MILTON, | : |
| | : |
| Defendant. | : |
| | : |

:     Case No. 21-cr-478

:     **NOTICE OF MOTION TO DISMISS THE INDICTMENT OR, IN THE ALTERNATIVE, TO TRANSFER VENUE**

---------------------------------------------------x

Defendant Trevor Milton, through counsel, moves to dismiss the Indictment for improper venue under Article III and the Sixth Amendment of the U.S. Constitution, 15 U.S.C. § 78aa(a), 18 U.S.C. § 3237, and Rule 18 of the Federal Rules of Criminal Procedure; or, in the alternative, to transfer venue pursuant to Rule 21(b) of the Federal Rules of Criminal Procedure to the District of Arizona or the District of Utah.

A memorandum of law in support of this motion is attached hereto.

Defendant respectfully requests oral argument on this matter.

WHEREFORE, Defendant respectfully requests that the Court dismiss the Indictment or, in the alternative, transfer this action to a judicial district where venue would be proper.

Dated:  August 10, 2021

Respectfully submitted,

/s/
_____
Bradley J. Bondi
CAHILL GORDON & REINDEL LLP
1990 K Street, NW, Suite 950
Washington, DC 20006
(202) 862-8910
bbondi@cahill.com

Marc Mukasey
MUKASEY FRENCHMAN LLP
570 Lexington Avenue, Suite 3500
New York, NY 1002
(212) 466-6400
Marc.Mukasey@mfsllp.com

Terence Healy
HUGHES HUBBARD & REED LLP
1775 I Street, NW
Washington, DC 20006
(202) 721-4676
terence.healy@hugheshubbard.com

*Counsel for Trevor Milton*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------x
                                              :
UNITED STATES OF AMERICA,                     ;
                                              :     Case No. 21-cr-478
            - against -                        :
                                              :
TREVOR MILTON,                                :
                                              :
                  Defendant.                  :
-----------------------------------------------------x


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

**THE INDICTMENT OR, IN THE ALTERNATIVE, TO TRANSFER VENUE**

Bradley J. Bondi (BB7497)
CAHILL GORDON & REINDEL LLP
1990 K Street, NW, Suite 950
Washington, DC 20006
(202) 862-8910
bbondi@cahill.com

Marc Mukasey
MUKASEY FRENCHMAN LLP
570 Lexington Avenue, Suite 3500
New York, NY 1002
(212) 466-6400
Marc.Mukasey@mfsllp.com

Terence Healy (TH7854)
HUGHES HUBBARD & REED LLP
1775 I Street, NW
Washington, DC 20006
(202) 721-4676
terence.healy@hugheshubbard.com

*Counsel for Trevor Milton*

## <u>TABLE OF CONTENTS</u>

Page

PRELIMINARY STATEMENT ...................................................................................1

FACTUAL BACKGROUND ....................................................................................2

ARGUMENT .....................................................................................................4

I.      THE GOVERNMENT HAS NOT ALLEGED, AND CANNOT ALLEGE,
        SUFFICIENT FACTS TO SUPPORT STATUTORY VENUE UNDER EACH
        OF THE THREE COUNTS OF THE INDICTMENT. .................................................5

        A.      The Government Fails To Allege, and Cannot Allege, Sufficient Facts To
                Support Statutory Venue for Count I—Violation of Section 10(b) of the
                Securities Exchange Act of 1934. ...................................................... 7

        B.      The Government Fails To Allege, and Cannot Allege, Sufficient Facts To
                Support Statutory Venue in SDNY for Count II—Violation of 18
                U.S.C. § 1348. ..................................................................... 8

        C.      The Government Fails To Allege, and Cannot Allege, Sufficient Facts To
                Support Statutory Venue in SDNY for Count III—Wire Fraud in
                Violation of 18 U.S.C. § 1343. ...................................................... 10

        D.      Constitutional Avoidance Requires Any Ambiguity in Interpreting the
                Applicable Venue Statutes and Rule 18 Must Be Resolved in the
                Defendant's Favor. ................................................................. 11

II.     THIS PROSECUTION PLAINLY VIOLATES ARTICLE III, SECTION 2 AND
        THE SIXTH AMENDMENT BECAUSE MR. MILTON DID NOT COMMIT
        A CRIME IN THE SOUTHERN DISTRICT OF NEW YORK..................................12

III.    IN THE ALTERNATIVE, THE COURT SHOULD TRANSFER VENUE TO
        THE DISTRICTS OF UTAH OR ARIZONA. ..............................................15

        A.      Federal Rule of Criminal Procedure 21(b) Authorizes Transfer of Venue........... 15

        B.      Case Law Overwhelmingly Calls for Transfer of Venue to the Districts of
                Utah or Arizona. .................................................................. 15

                1.      Mr. Milton's Location Strongly Supports Transfer to the Districts
                        of Utah or Arizona.......................................................16

                2.      The Location of Witnesses Strongly Supports Transfer to the
                        Districts of Utah or Arizona. ...........................................17

                3.      The Location of Events Strongly Supports Transfer to the Districts
                        of Utah or Arizona.......................................................17

                4.      The Location of Documents Strongly Supports Transfer to the
                        Districts of Utah or Arizona. ...........................................18

i

**5.**     The Potential Disruption to Mr. Milton's Business Would Be
          Neutral or Support Transfer to the Districts of Utah or Arizona............19

**6.**     The Expense to the Parties Would Be Neutral or Support Transfer
          to the Districts of Utah or Arizona. .......................................................20

**7.**     The Location of Defense Counsel Would be Neutral or Support
          Transfer to the Districts of Utah or Arizona...........................................20

**8.**     The Relative Accessibility of Place of Trial Supports Transfer to
          the Districts of Utah or Arizona. ...........................................................21

**9.**     The Docket Conditions of Each District Weigh in Favor of
          Transfer to the Districts of Utah or Arizona...........................................21

**10.**    Special Considerations Weigh in Favor of Transfer to the Districts
          of Utah or Arizona...................................................................................22

**C.**      Mr. Milton Has Timely Filed This Motion..........................................................22

CONCLUSION........................................................................................................................23

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ashwander v. Tenn. Valley Auth.*,
  297 U.S. 288 (U.S. 1936) (Brandeis, J., concurring) ............................................. 10

*Borteanu v. Nikola Corp. et al.*,
  Case No. 2:20-cv-01797-SPL (D. Ariz., Sept. 15, 2020) ....................................... 2n

*Equidyne Corp. v. Does*,
  279 F. Supp. 2d 481 (D. Del. 2003) ................................................................. 7, 13

*Eves v. Nikola Corp. et al.*,
  2:20-cv-02168-DLR (D. Ariz., Nov. 10, 2020) ..................................................... 2n

*Holzmacher v. Nikola Corp., et al.*,
  2:20-cv-02123-JJT (D. Ariz., Nov. 3, 2020) ......................................................... 2n

*Hyde v. Shine*,
  199 U.S. 62 (1905) ............................................................................................... 2

*Johnson v. United States*,
  323 U.S. 273 (1944) ........................................................................................... 11

*Johnston v. United States*,
  351 U.S. 215 (1958) ........................................................................................... 12

*Malo v. Nikola Corp. et al.*,
  Case No. 20-cv-02168, ECF No. 11 (C.D. Cal. Nov. 13, 2020) ............................ 1n

*Miller v. Asensio*,
  101 F. Supp. 2d 395 (D.S.C. 2000) ..................................................................... 13

*Platt v. Minnesota Mining & Mfg. Co.*,
  376 U.S. 240 (1964) ..................................................................................... *passim*

*Salem v. Nikola Corp. et al.*,
  Case No. 20-cv-04354, ECF No. 45 (E.D.N.Y. Nov. 23, 2020) ............................ 1n

*Travis v. United States*,
  364 U.S. 631 (1961) ...................................................................................... 10, 12

*United States v. Alter*,
  81 F.R.D. 524 (S.D.N.Y. 1979) ....................................................................... 14, 22

*United States v. Beech-Nut Nutrition Corp.*,
    871 F.2d 1181 (2d Cir. 1989)..................................................................................5, 8

*United States v. Cabrales*, 524 U.S. 1, 6 (1998).............................................................4, 6, 8, 12

*United States v. Cashin*,
    281 F.2d 669 (2d Cir. 1960)..................................................................................14-15

*United States v. Cores*,
    356 U.S. 405 (1958)...............................................................................................12

*United States v. DeJesus*,
    No.  CR 17-370 (VEC), 2017 WL 3738783 (S.D.N.Y. Aug. 30, 2017)..................................13

*United States v. Fiorentino*,
    No. CR 13-0338 (SJF), 2014 WL 108415 (E.D.N.Y. Jan. 6, 2014) ........................................19

*United States v. Hanley*,
    No. 94 Crim. 394 (DAB), 1995 WL 60019, at *3 (S.D.N.Y. Feb. 10, 1995)..................17, 19

*United States v. Jessup*,
    38 F.R.D. 42 (M.D. Tenn. 1965) ............................................................................18

*United States v. Kim*,
    246 F.3d 186 (2d Cir. 2001)....................................................................................9

*United States v. Kirk Tang Yuk*, 885 F.3d 57 (2d Cir. 2018) .........................................................8

*United States v. Layne*,
    No. 05 CR.87(HB), 2005 WL 1009765 (S.D.N.Y. May 2, 2005) ....................................15, 22

*United States v. Maldonado-Rivera*,
    922 F.2d 934 (2d Cir. 1990)..................................................................................14-15

*United States v. Martino*,
    2000 WL 1843233 (S.D.N.Y. Dec. 14, 2000) ..........................................................15-17, 20

*United States v. Ohran*,
    2000 WL 620217 (S.D.N.Y. May 12, 2000) .............................................................15

*United States v. Pace*,
    314 F.3d 344 (9th Cir.2002) ...................................................................................6, 9

*United States v. Peterson*,
    357 F. Supp. 2d 748 (S.D.N.Y. 2005)......................................................................5, 8

*United States v. Ramirez*,
  420 F.3d 134 (2d Cir. 2005) ...................................................................................6

*United States v. Reed*,
  773 F.2d 477 (2d Cir. 1985) ...............................................................................5, 8

*United States v. Rodriguez*,
  2018 WL 2126429 (W.D.N.Y. May 9, 2018) ........................................... 15, 21-22

*United States v. Rodriguez-Moreno*,
  526 U.S. 275 (1999) ...........................................................................................6, 12

*United States v. Russell*,
  582 F. Supp. 660 (S.D.N.Y. 1984) ....................................................................15, 19

*United States v. Salinas*,
  373 F.3d 161 (1st Cir. 2004) ...............................................................................5, 12

*United States v. Templin*,
  251 F. Supp. 2d 1123 (S.D.N.Y. 2003) ...................................................................17

*United States v. Tzolov*,
  642 F.3d 314 (2d Cir. 2011) ...............................................................................6, 12

*United States v. Valdes*,
  No. 05-CR-156 (KMK), 2006 WL 738403 (S.D.N.Y. Mar. 21, 2006) ..............17, 19

*Wojichowski v. Nikola Corp., et al.*,
  2:20-cv-01819-DLR (D. Ariz., Sept. 17, 2020) ......................................................2n

## Constitutional Provisions

U.S. Const. Art. III, § 2, cl. 3 ..........................................................................4, 11

U.S. Constitution Sixth Amendment .............................................................1, 11, 22

## Regulations

49 C.F.R § 172.101 ..........................................................................................18n

## Rules

Federal Rules of Criminal Procedure Rule 18 .................................................. *passim*

Federal Rules of Criminal Procedure Rule 21(b) .............................................. *passim*

**Statutes**

15 U.S.C. § 78aa(a).................................................................................................1, 4, 7

15 U.S.C. § 78j(b) ......................................................................................................7


18 U.S.C.
    § 1343.................................................................................................5, 9, 9n
    § 1348....................................................................................................5, 8
    § 3237.................................................................................................1, 4, 9

Defendant Trevor Milton submits this memorandum of law in support of his motion to dismiss the Indictment for improper venue under Article III and the Sixth Amendment to the U.S. Constitution, 15 U.S.C. § 78aa(a), 18 U.S.C. § 3237, and Rule 18 of the Federal Rules of Criminal Procedure, or, in the alternative, to transfer venue to the District of Arizona or the District of Utah pursuant to Rule 21(b) of the Federal Rules of Criminal Procedure.

The Indictment is also legally deficient, and this proceeding is subject to dismissal, for other reasons, including certain (1) defects in the institution of this prosecution and (2) defects in the Indictment itself.  Mr. Milton will file separate motions, consistent with the schedule this Court or a transferee court sets, identifying these additional, independent reasons why this matter should be dismissed.  But as venue is a critical gating element to any proceeding, Mr. Milton has brought this motion first to demonstrate why venue in this District is improper.

## PRELIMINARY STATEMENT

Trevor Milton is innocent and the Southern District of New York is an improper venue for this baseless prosecution.  Venue in this District violates the Constitution and applicable venue statutes, inconveniences every interested party (except the government), and impairs defense counsel's ability to marshal critical evidence and witnesses in support of Mr. Milton's defense.  The alleged crimes were not committed in this State and District as required by Article III, Section 2, Clause 3 and the Sixth Amendment to the U.S. Constitution and federal laws enacted in pursuance thereof.  Mr. Milton's alleged misrepresentations, all regarding an Arizona-based company or physical installations and products located in Arizona, were each uttered or composed in Arizona or Utah.  Mr. Milton lives and is presently located in Utah.  The ongoing COVID-19 pandemic exacerbates the already considerable logistical difficulties for, and personal hardship imposed upon, a family-oriented businessman by a lengthy criminal trial far from his home.  A New York federal court has already transferred a private securities fraud case

arising from the same events to Arizona for the convenience of the parties and of witnesses.[1]   As

the Supreme Court bluntly declared and is true today, "[t]o require a citizen to undertake a long

journey across the continent to face his accusers, and to incur the expense of taking his

witnesses, and of employing counsel in a distant city, involves a serious hardship, to which he

ought not to be subjected if the case can be tried in a court of his own jurisdiction." *Hyde v.*

*Shine*, 199 U.S. 62, 78 (1905).

## FACTUAL BACKGROUND

The Indictment in this matter, filed on July 28, 2021, charges Trevor Milton with two

counts of securities fraud and one count of wire fraud based on alleged misrepresentations he

made from November 2019 to September 2020 in "social media and television, print, and

podcast interviews," Indictment ¶ 1, while in Arizona or Utah as initially Chief Executive Officer

("CEO") and then Executive Chairman of Nikola Corporation ("Nikola").

Mr. Milton founded Nikola, a company that develops and builds zero-emissions trucks, in

Salt Lake City, Utah, in 2015.  He and his wife Chelsey currently reside full-time in Oakley,

Utah, the State in which he was born and raised.  Mr. Milton is presently located on his working

ranch in Utah pursuant to this Court's release secured by bonds on two Utah properties.  Mrs.

Milton suffers from severe medical conditions.[2]  As a result of those conditions, Mr. and Mrs.

---

[1]     *See* Joint Stipulation and Proposed Order to Transfer Venue, *Salem v. Nikola Corp. et al.*, Case No. 20-cv-
04354, ECF No. 45 (E.D.N.Y. Nov. 23, 2020).  A California federal court has also transferred venue to
Arizona , *see* Transfer Order, *Malo v. Nikola Corp. et al.*, Case No. 20-cv-02168, ECF No. 11 (C.D. Cal.
Nov. 13, 2020), and there are at least five other securities fraud class action lawsuits based on substantially
similar allegations pending in the District of Arizona that have been designated as related proceedings.  *See*
*Borteanu v. Nikola Corp. et al.,* Case No. 2:20-cv-01797-SPL (D. Ariz., Sept. 15, 2020), *Wojichowski v.*
*Nikola Corp., et al.*, 2:20-cv-01819-DLR (D. Ariz., Sept. 17, 2020), *Holzmacher v. Nikola Corp., et al*.,
2:20-cv-02123-JJT (D. Ariz., Nov. 3, 2020); and *Eves v. Nikola Corp. et al.,* 2:20-cv-02168-DLR (D. Ariz.,
Nov. 10, 2020).

[2]     Counsel will file separately evidentiary support related to Mrs. Milton's medical conditions.

Milton spend the winter months at their home in Phoenix, Arizona.  Mrs. Milton has treating

doctors in Utah and Arizona.

Nikola operated in Utah until June 2019 when it moved to its current headquarters in

Phoenix, Arizona.  Later that year, Nikola constructed a demonstration hydrogen fueling station

at its headquarters.  *Id.* ¶ 63.  In July 2020, Nikola broke ground on a new manufacturing facility

in Coolidge, Arizona, about fifty miles south of Phoenix.  Nikola has engineered or developed its

trucks and associated technologies in those Arizona facilities, including the Nikola Two, two

working prototypes of the Badger pickup truck at a cost of $15 million, the Nikola Tre semi-

trucks that now are being road-tested, and the utility task vehicle, components of which were

used in the Badger's initial design.  Nikola previously engineered the Nikola One prototype at its

prior Utah headquarters, and that prototype and other prototypes are now located at Nikola's

headquarters in Arizona.  A television commercial for the Nikola One, *id.* ¶¶ 35-36, was shot by

Phillips Industries in Utah.  Nikola subsequently assembled and located the extremely heavy and

stationary equipment for the storing and dispensing of hydrogen at its Arizona facilities.[3]

Most of Nikola's current and former employees either work at one of Nikola's two

Arizona locations or reside in Utah.  During the relevant time, Mr. Milton worked from Nikola's

Phoenix headquarters where he consulted frequently with the company's General Counsel,

Britton Worthen (whose office was next to Mr. Milton's office), and other subject-matter expert

employees and executives.  Mr. Milton's alleged misstatements were made at Nikola's Phoenix

headquarters, in Utah, or at public events the company hosted in Utah or Arizona.  Nikola does

---

[3]   *See* City of Phoenix Permit S 18038000 (issued Dec. 12, 2018); Permit F155 1804745 (issued Dec. 21, 2018); Permit F100 19006443 (issued March 1, 2019); Permit SPE 19009111 (issued March 25, 2019); and Permit F122 19010048 (issued April 2, 2019).

not have, and never has had, a New York presence. Mr. Milton has only made three brief visits to New York in his entire life, most recently for arraignment in this case.

## ARGUMENT

The Constitution and federal venue statutes prohibit this prosecution in the Southern District of New York of a Utah man who formerly served as an executive of an Arizona-based company based on alleged misconduct that occurred outside this District. This prosecution plainly violates the Constitution's protection of citizens from governmental overreaching by requiring that a criminal "Trial shall be held in the State where the said Crimes shall have been committed," U.S. CONST. Art. III, § 2, cl. 3, "by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law," *id.* amend VI. Applicable venue laws that safeguard these Constitutional rights (15 U.S.C. § 78aa(a), Rule 18 of the Federal Rules of Criminal Procedure, and 18 U.S.C. § 3237) likewise prohibit venue in this District for each of the three counts of the Indictment.

Mr. Milton, all conceivable witnesses who would testify in his defense, the critical physical evidence, the underlying conduct, and the alleged crimes – all are located or transpired outside this District. Neither the merger between Nikola and the SPAC, nor the listing on NASDAQ, nor the posting by the Company, Mr. Milton, or others of Mr. Milton's alleged misstatements on the internet can serve as a basis to create venue in this District in a prosecution against Mr. Milton. To accept the government's galactic assertions of venue would empower prosecution in this District of *any* alleged misstatement posted on the internet or relating to a NASDAQ-listed company. Such a result would completely gut the constitutional vicinage protections of all meaning. This Court must dismiss for improper venue or transfer to a proper venue such as the District of Utah or the District of Arizona.

4

I.      **The Government Has Not Alleged, and Cannot Allege, Sufficient Facts To Support Statutory Venue under Each of the Three Counts of the Indictment.**

The government has not alleged sufficient facts to show that Mr. Milton committed any crime whatsoever in the Southern District of New York, or anywhere else in New York for that matter.  The Indictment charges him with one count of securities fraud in violation of Section 10(b) of the Securities and Exchange Act of 1934 (the "Exchange Act"), one count of securities fraud in violation of 18 U.S.C. § 1348, and one count of wire fraud in violation of 18 U.S.C. § 1343.

The government bears the burden of proving by a preponderance of the evidence that "the crime was committed in the district in which the prosecution is brought."  *United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181, 1188 (2d Cir. 1989) (citations omitted).  When, as here, "a defendant is charged in more than one count, venue must be proper with respect to each count."  *Id.*  Accordingly, the government must show "that the indictment alleges facts sufficient to support venue" for each count.  *United States v. Peterson*, 357 F. Supp. 2d 748, 751 (S.D.N.Y. 2005).  If the district in which a prosecution is brought is an improper venue because the alleged crime was not committed there, the court must dismiss the relevant count, and, if tried to a guilty verdict, reverse the conviction.  *See, e.g., Beech-Nut Nutrition Corp.*, 871 F.2d at 1190-91.

Because of the occasional complexity of determining where a crime was committed as required by the constitutional venue provisions, "Congress usually appends a venue provision to criminal statutes, which provides a method of fixing the place or places of prosecution."  *United States v. Reed*, 773 F.2d 477, 480 (2d Cir. 1985).  Two of the counts in the Indictment—Count I alleging violation of Section 10(b) of the Exchange Act and Count III alleging wire fraud in violation of 18 U.S.C. § 1343—involve violations of statutes that have such specific venue provisions.  Ascertaining whether venue in this District is proper on those two counts requires a

determination (1) whether the government's allegations fit the language of the applicable statutory provision, and (2) whether the crime was "committed" in the district as required by the Constitution. *See United States v. Salinas*, 373 F.3d 161, 164 (1st Cir. 2004) ("If the statute under which the defendant is charged contains a specific venue provision, that provision must be honored (assuming, of course, that it satisfies the constitutional minima.")). If there is no specific venue statute accompanying the substantive criminal law, then Rule 18 of the Federal Rules of Criminal Procedure, which merely "echoes the constitutional commands," *Cabrales*, 524 U.S. 1, 6 (1998), applies.[4] Notably, there is no presumption in favor of the government's choice of venue—it "must prosecute an offense in a district where the offense was committed."

In determining *where* a crime was committed, "a court must initially identify the conduct constituting the offense (the nature of the crime) and then discern the location of the commission of the criminal acts." *United States v. Rodriguez-Moreno*, 526 U.S. 275, 279 (1999). "Venue is proper only where the acts constituting the offense—the crime's 'essential conduct elements'— took place." *United States v. Tzolov*, 642 F.3d 314, 318 (2d Cir. 2011) (*citing Rodriguez–Moreno*, 526 U.S. at 280). Not all elements of a crime are "essential conduct elements" for purposes of establishing venue. *See United States v. Ramirez*, 420 F.3d 134, 145 (2d Cir. 2005) ("having devised or intending to devise a scheme or artifice to defraud, while an essential element, is not an essential *conduct* element for purposes of establishing venue") (emphasis in original); *United States v. Pace*, 314 F.3d 344, 349 (9th Cir.2002) ("[a]lthough a fraudulent

---

[4] Rule 18 provides in full:

> Unless a statute or these rules permit otherwise, the government *must* prosecute an offense in a district where the offense was committed. The court must set the place of trial within the district with due regard for the convenience of the defendant, any victim, and the witnesses, and the prompt administration of justice. Fed. R. Crim. P. 18 (emphasis added).

6

scheme may be an element of the crime of wire fraud, it is using wires and causing wires to be used in furtherance of the fraudulent scheme that constitutes the prohibited conduct").  Just because one element of a crime occurred in a judicial district does not mean that the crime was "committed" in that district for constitutional and statutory venue purposes.  Rather, the relevant act must be an "essential conduct element," such as the actual use of wires for wire fraud.

A.    **The Government Fails To Allege, and Cannot Allege, Sufficient Facts To Support Statutory Venue for Count I—Violation of Section 10(b) of the Securities Exchange Act of 1934.**

The government fails to allege, because it cannot credibly allege, that the Southern District of New York is a "district wherein any act or transaction constituting the violation [of Section 10(b) of the Securities Exchange Act] occurred" as the applicable venue statute (15 U.S.C. § 78aa(a)) requires.  A violation of Section 10(b) involves material misrepresentations or misleading omissions "by the use of any means or instrumentality of interstate commerce or of the mails" made "in connection with the purchase or sale of any security."  15 U.S.C. § 78j(b).

The Indictment lacks the necessary allegations to establish venue in this District.  The government alleges that Mr. Milton made misrepresentations on social media and in television, print, and podcast interviews to defraud investors located "in the Southern District of New York and elsewhere."  Indictment ¶¶ 82, 84, 86.  The government does not allege, and cannot allege, that Mr. Milton either made the misstatements in, or that he transmitted those statements into, the Southern District of New York.  Mr. Milton, even assuming that he was the maker of statements the company approved and published, "made" *all* the alleged statements outside of the Southern District of New York.  His statements were subsequently broadcast or published – again, in most instances by the company and *not* by him – via traditional media outlets or made available on the worldwide web, where the statements presumably could be accessed by anyone with an internet

connection, not just in New York but anywhere in the United States and the world. The

government also has not alleged, and cannot allege, that Milton "specifically targeted residents"

of the Southern District of New York. *Compare Equidyne Corp. v. Does*, 279 F. Supp. 2d 481,

488 (D. Del. 2003) (civil litigation). Indeed, the Indictment does not identify a single

communication that Mr. Milton made specifically to anyone in this District.

**B.**     **The Government Fails To Allege, and Cannot Allege, Sufficient Facts To Support Statutory Venue in SDNY for Count II—Violation of 18 U.S.C. § 1348.**

18 U.S.C. § 1348 prohibits the knowing execution of a "scheme or artifice . . . to defraud

any person in connection with . . . any security . . .  or . . . to obtain, by means of false or

fraudulent pretenses, representations, or promises, any money or property in connection with the

purchase or sale of . . . any security . . . ." Unlike the Exchange Act, this securities fraud statute

does not have its own venue provision. Statutory analysis therefore turns on Rule 18, which,

"echoing the constitutional commands," *Cabrales*, 524 U.S. at 6, specifies that "the government

must prosecute an offense in a district where the offense was committed."

Where there is no specific venue statute and statutory and constitutional venue analysis

necessarily coincides, the Second Circuit has adopted "a substantial contacts rule that takes into

account a number of factors—the site of the defendant's acts, the elements and nature of the

crime, the locus of the effect of the criminal conduct, and the suitability of each district for

accurate factfinding." *Beech-Nut Nutrition Corp.*, 871 F.2d at 1188-89 (quoting *Reed*, 773 F.2d

at 481); *see also United States v. Peterson*, 357 F. Supp. 2d 748, 751 (S.D.N.Y. 2005). The

substantial contacts framework is intended to be a "safeguard for a defendant whose contacts

with the district of prosecution are minimal." *United States v. Kirk Tang Yuk*, 885 F.3d 57, 70

(2d Cir. 2018). The government alleges that Mr. Milton made misstatements, but the actual "site

of the defendant's acts" was Arizona or Utah.  Mr. Milton′s statements may have reached

investors in the Southern District of New York, but only in the same way those statements may

have reached investors through the worldwide web in any of the other ninety-three judicial

districts or across the globe.  Alleged misstatements made elsewhere are insufficient for venue.

  The remaining factors of the Second Circuit's substantial contacts analysis also do not

support a finding of proper venue in the Southern District of New York.  If accessibility on the

internet is an "essential conduct element" of a misstatement crime, such accessibility establishes

constitutional venue in every judicial district in the United States.  Likewise, as to "the locus of

the effect of the criminal conduct" the government's conclusory allegation that Mr. Milton's

alleged misstatements defrauded investors in the Southern District of New York and "elsewhere"

supports venue in every judicial district.[5]  Such construction renders the "locus of the effect"

consideration meaningless for gauging substantial contacts.  Surely that result is not what the

Second Circuit intended in their formulation of the substantial contacts rule.  With respect to this

District's suitability "for accurate factfinding," all the principal evidence and witnesses are

located more than two thousand miles away in Arizona or Utah.  We are not aware of *any*

witness or evidence that would be based in this District.

---

[5] Relatedly, the Third Circuit has noted that "substantial effects" test is designed to limit venue, not expand it.  *United States v. Auernheimer*, 748 F.3d 525, 536-37 (3d Cir. 2014) (analyzing the Second Circuit's application of the test).  In addition, the Third Circuit has clarified that the "effects" element of the substantial contacts framework is only relevant to whether venue is proper when an essential conduct element of the crime is defined in terms of its effects.  Otherwise, it would run afoul of the constitutional requirement that a prosecution occur where the crime was committed.

C.    **The Government Fails To Allege, and Cannot Allege, Sufficient Facts To Support Statutory Venue in SDNY for Count III—Wire Fraud in Violation of 18 U.S.C. § 1343.**

18 U.S.C. § 1343 criminalizes the "act of causing a wire to be transmitted in furtherance of a fraud." *United States v. Kim*, 246 F.3d 186, 191–92 (2d Cir. 2001); *see also Pace*, 314 F.3d at 349.[6]  Courts have held that a wire is "transmitted" where it was sent or where it is received. 18 U.S.C. § 3237, the specific venue statute for wire fraud, authorizes prosecution for wire fraud "in any district in which such offense was begun, continued, or completed."  *Id.*; *see also Kim*, 246 F.3d at 191–92.  Consequently, venue lies in any district in which the transmission (sending or receiving) of a wire was "begun, continued, or completed."

The government has failed to allege, and cannot allege, that the Southern District of New York is a district in which the offense of wire fraud "was begun, continued, or completed."  The government alleges that Mr. Milton made ″false and misleading statements regarding the company's product and technology development, including through interstate wires," Indictment ¶ 86, but fails to allege where any of those wires were transmitted, let alone that any of those statements were transmitted into this District or that any person within this District accessed or relied upon them.  The government's allegations amount to the wholly unsupported claim that Mr. Milton (or any other corporate officer who, say, records a podcast) "transmits or causes to transmit" merely by making a statement on digital media and that transmission was  "begun, continued, or completed" in any judicial district where people have an internet connection or digital access.  Again, this sort of hollow reasoning leads to the constitutionally problematic

---

[6]    18 U.S.C. § 1343 provides:  "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, *transmits or causes to be transmitted* by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both." (emphasis added).

conclusion that *any* judicial district suffices for criminal venue with respect to wire fraud in the modern cyber age. A statute must be interpreted to avoid constitutional questions. *See Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 346-48 (U.S. 1936) (Brandeis, J., concurring).

### D. Constitutional Avoidance Requires Any Ambiguity in Interpreting the Applicable Venue Statutes and Rule 18 To Be Resolved in the Defendant's Favor.

Venue in a criminal case is a constraint on government, not an opportunity for strategic forum shopping. The government cannot impinge upon the Constitutional rights of a defendant to choose a venue that it believes yields the most strategic and tactical advantages. *See Travis v. United States,* 364 U.S. 631, 634 (1961) ("[T]he venue provision in Acts of Congress should not be so freely construed as to give the Government the choice of tribunal favorable to it.") (internal quotation marks and citation omitted). In a case involving the Federal Denture Act of 1942, the Supreme Court explained its staunch commitment to a policy of statutory interpretation that constrains the government's choice of venue, reasoning "[i]f an enactment of Congress equally permits the underlying spirit of the constitutional concern for trial in the vicinage to be respected rather than to be disrespected, construction should go in the direction of constitutional policy even though not commanded by it." *Johnson v. United States*, 323 U.S. 273 (1944).

Applying the Supreme Court's statutory interpretation guidance in *Johnson* to the three counts of the Indictment mandates a finding of no statutory venue in this District. On Count I, "any act or transaction constituting" violation of Section 10(b) of the Securities Exchange Act should be construed to mean the "sending State," *i.e.*, the state where Mr. Milton made his alleged misstatements (Arizona or Utah) or at least the state in which the implicated company that actually ratified and published those misstatements was located (Arizona). On Count II, under the Second Circuit's substantial contacts test, the venues of Utah or Arizona have far more

11

substantial contacts, meaning Rule 18 should be construed not to authorize venue in the Southern District of New York, just as Delaware was construed to be an invalid venue despite a reasonable interpretation otherwise available in *Johnson*.  On Count III, *Johnson* speaks directly to the imperative of construing a venue statute focused on sending-and-receiving crimes to favor criminal trial in the defendant's home jurisdiction—the "sending" jurisdiction with respect to the dentures in that case and the alleged misstatements in this case.

## II.   This Prosecution Plainly Violates Article III, Section 2 and the Sixth Amendment because Mr. Milton Did Not Commit a Crime in the Southern District of New York.

This prosecution plainly violates the Constitution's protection of citizens from governmental overreaching by requiring that a criminal "Trial shall be held in the State where the said Crimes shall have been committed," U.S. Const. art. III, § 2, cl. 3, "by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law," *id.* amend VI.  By bringing this case in this District, the government is engaging in the type of self-serving governmental forum shopping that the Framers of the Constitution sought to foreclose forever by "twice safeguard[ing] the defendant's venue right." *Cabrales*, 524 U.S. at 6.  Even if this Court were to conclude that the applicable venue statutes and Rule 18 authorize venue in this District, the Court should dismiss all three counts of the Indictment because the Southern District of New York is not a valid venue under the Constitution.  *See Salinas*, 373 F.3d at 164 (a venue statute is "honored" so long as "it satisfies the constitutional minima").

As the Second Circuit's substantial contacts rule demonstrates, *see supra*, determining today where a crime was "committed" for purposes of constitutional venue, particularly given strong policy reasons for the constitutional protection, is not always straightforward.  *See United States v. Cores*, 356 U.S. 405, 407 (1958) (protecting defendants from the unfairness and

12

hardship of criminal trial far from home); *Johnston v. United States*, 351 U.S. 215, 220 (1958)

(fixing trial at the site of the crime); *Travis*, 364 U.S. at 640-41 (Harlan, J. dissenting) ((opining

that the "basic policy" of constitutional vicinage protections would be ensured by criminal trials

where "the witnesses and relevant circumstances surrounding the contested issues" are located).

"Venue is proper only where the acts constituting the offense—the crime's 'essential conduct

elements'—took place." *Tzolov*, 642 F.3d at 318 (*citing Rodriguez–Moreno*, 526 U.S. at 280);

*see also United States v. DeJesus*, No.  CR 17-370 (VEC), 2017 WL 3738783, at *4 (S.D.N.Y.

Aug. 30, 2017) (granting motion to dismiss indictment for violation of 18 U.S.C. § 922 in the

Southern District of New York because the defendant was stopped at the New Jersey entrance to

the George Washington Bridge)   By contrast, a "circumstance element" of an offense, e.g.,

criminally generated proceeds when the relevant proscribed conduct is money laundering

(including of those proceeds), does not confer venue.  *Rodriguez-Moreno*, 525 U.S. at 280 n.4;

*see also DeJesus*, No.  CR 17-370 (VEC), 2017 WL 3738783, at *3 (holding the required effect

on interstate commerce is a "circumstance element" of 18 U.S.C. § 922(g) violation, possession

"in or affecting commerce" of a firearm by any person convicted of a felony).  What is crystal

clear under the case law and the Constitution is that venue is not proper in the Southern District

of New York.

The core of the three counts in this Indictment is that between November 2019 and

September 2020, Mr. Milton engaged in a scheme of fraudulent representations about Nikola's

progress and capabilities by means of "social media and television, print, and podcast

interviews."  Indictment ¶ 1.  The only allegations as to venue in New York are that Mr. Milton

sought to defraud investors "in the Southern District of New York and elsewhere," *id.* ¶¶ 82, 84,

86, and that VectoIQ, the Special Purpose Acquisition Corporation (SPAC) with which Nikola

combined, was based in New York, *id.* ¶ 13, and its "shares were already publicly traded on the NASDAQ stock exchange, in New York, New York,"[7] *id.* ¶ 15, and so Nikola stock is also traded on NASDAQ after the reverse merger, *id.* ¶ 64.

Whether viewed in isolation or in the aggregate, these allegations do not constitute "essential conduct elements" of securities fraud (Counts I and II) or wire fraud (Count III) sufficient to ground a finding of constitutional venue in the Southern District of New York.  The New York base of the SPAC and the fact that Nikola stocks were traded on NASDAQ after the reverse merger are not elements of the alleged offenses, much less "essential elements."

People "in New York and elsewhere" as the government alleges *may* have heard or accessed Mr. Milton's allegedly false podcasts, interviews, posts, and other social media content. In the civil context, federal courts have rejected the notion that general availability on the internet alone suffices to confer venue in a judicial district, because that would mean that venue would be proper in every district.  *See, e.g.*, *Equidyne Corp.*, 279 F. Supp. 2d at 487–89 (no venue for securities fraud violation where information posted on a message board was accessible in the district but the defendant had no other contacts with the forum state); *Miller v. Asensio*, 101 F. Supp. 2d 395, 405 (D.S.C. 2000) (denying venue for civil claims under the Exchange Act in the district based on plaintiff's allegation that he had read alleged misrepresentations posted on a passive Internet website by a defendant in another state).  If the hypothetical reach of Mr. Milton's statements were sufficient to establish a "scheme to defraud" in the Southern District of New York (which it is not), that reach would suffice to establish a "scheme to defraud" in any of the other ninety-three districts, and the constitutional requirement of venue would be eviscerated. The only possible conclusion is that the location where the investors, none of whom the

---

[7] NASDAQ's servers are located in New Jersey, not New York.

Indictment alleges was individually targeted, happened to view Mr. Milton's statements is a "circumstance" element of the crime (if it's an element at all) insufficient to confer venue here. Whatever ambiguity there may be about where the crime is committed is more than counterbalanced by the constitutional interests in protecting defendants from unfair prosecutions in remote courts and holding trials at the places where witnesses and evidence are located.

## III.    In the Alternative, the Court Should Transfer Venue to the Districts of Utah or Arizona.

### A.    Federal Rule of Criminal Procedure 21(b) Authorizes Transfer of Venue.

Under Federal Rule of Criminal Procedure 21(b), this Court may transfer the proceeding, in whole or in part, to another judicial district for "the convenience of the parties, any victim, and the witnesses, and in the interests of justice." Fed. R. Crim. P. 21(b).  Although "[d]isposition of a Rule 21(b) motion is vested in the sound discretion of the district court," *United States v. Maldonado-Rivera*, 922 F.2d 934, 966 (2d Cir. 1990), the Second Circuit historically has described the transfer provision as "liberal." *United States v. Cashin*, 281 F.2d 669, 675 (2d Cir. 1960).  This Court once held a single consideration can be "so predominant that fairness *requires* a transfer in the interest of justice." *United States v. Alter,* 81 F.R.D. 524, 527 (S.D.N.Y. 1979) (emphasis added) (granting transfer of venue for convenience of witnesses).  In this case, there are multiple considerations that are so predominant that fairness requires a transfer to either the District of Utah or the District of Arizona.

### B.    Case Law Overwhelmingly Calls for Transfer of Venue to the Districts of Utah or Arizona.

In *Platt v. Minnesota Mining & Mfg. Co.*, 376 U.S. 240 (1964), the Supreme Court endorsed a ten-factor balancing test to guide decisions whether to transfer venue under Rule 21(b):

(1) location of the defendant; (2) location of possible witnesses; (3) location of events likely to be in issue; (4) location of documents and records likely to be involved; (5) disruption of the defendant's business; (6) expense to the parties; (7) location of counsel; (8) relative accessibility of place of trial; (9) docket condition of each district or division involved; and (10) any other special elements which might affect the transfer.

*Platt,* 376 U.S. at 243–44; *see also United States v. Maldonado-Rivera*, 922 F.2d 934, 966 (2d Cir. 1990). No single *Platt* factor is dispositive, rather "'[i]t remains for the court to try to strike a balance and determine which factors are of greatest importance.'" *Id.* at 966 (citation omitted); *see also United States* v. *Layne*, No. 05 CR.87(HB), 2005 WL 1009765, at *7 (S.D.N.Y. May 2, 2005) (granting a change of venue where six *Platt* factors weighed in favor of transfer and the remaining four were neutral).

### 1.     Mr. Milton's Location Strongly Supports Transfer to the Districts of Utah or Arizona.

Because "the Supreme Court has declared that venue statutes should, whenever possible, be construed so to permit trial at the residence of the defendant," *Cashin*, 281 F.2d at 675 (citation omitted), as a matter of policy in the shadow of the original meanings of the constitutional jury protections, the Southern District of New York gives greater weight to the location of the defendant than to any other *Platt* factor. *See United States v. Martino*, 2000 WL 1843233, at *6 (S.D.N.Y. Dec. 14, 2000); *United States v. Ohran*, 2000 WL 620217, at *3 (S.D.N.Y. May 12, 2000); *see also United States v. Rodriguez*, 2018 WL 2126429, *7 (W.D.N.Y. May 9, 2018) (concluding that the defendant's location "carr[ies] particular weight" in 2nd Circuit's analysis of *Platt* factors). "[W]herever possible, defendants should be tried where they reside." *United States v. Russell*, 582 F. Supp. 660, 662 (S.D.N.Y. 1984). Mr. Milton lives in Oakley, Utah where he operates a ranch and provides care for his wife who suffers from severe health conditions. The District of Utah oversees his pre-trial supervision. Mr. and Mrs. Milton also own a home in Phoenix, Arizona where they spend the winter months

because of Mrs. Milton's medical condition.  The first *Platt* factor, the location of the defendant, strongly supports transfer to Utah or Arizona.  Of the two districts, the constitutional interest in favor of jury trial in a defendant's home state would favor Utah.

2.    **The Location of Witnesses Strongly Supports Transfer to the Districts of Utah or Arizona.**

Where, as here, "[i]t is undisputed that almost all of [the defendant's] potential witnesses, including character witnesses, reside and work" within a particular District, the rationale for transfer is particularly compelling.  *Martino*, 2000 WL 1843233, at *6.  None of the anticipated witnesses is in New York.  All of the witnesses the defense team conceivably would call are located outside New York, overwhelmingly in Utah or Arizona.[8]  Although we do not yet know the number or identities of the government's witnesses, we expect, based on the Indictment, a substantial number of those witnesses also will be located in Utah or Arizona.  The second *Platt* factor, the location of witnesses, strongly supports transfer to the Districts of Utah or Arizona.

3.    **The Location of Events Strongly Supports Transfer to the Districts of Utah or Arizona.**

"Where, as here, the 'nerve center' of events in issue occurred in another district, transfer has been found appropriate."  *United States v. Hanley*, No. 94 Crim. 394 (DAB), 1995 WL 60019, at *3 (S.D.N.Y. Feb. 10, 1995); *see also United States v. Valdes*, No. 05-CR-156 (KMK), 2006 WL 738403, at *6 (S.D.N.Y. Mar. 21, 2006) (rejecting the government's argument that the

---

[8]    These witnesses include: CEO Mark Russell (located in Arizona), CFO Kim Brady (located in Arizona), GC Britton Worthen (located in Arizona), former Director William Milton (located in Utah), former employee Travis Milton (located in Utah), Chief Technology Officer Dane Davis (located in Utah), David Sparks (located in Utah), Vince Caramella (located in Arizona), Stephanie Fleck (located in Arizona), Nicole Rose (located in Arizona), Ron Johnson (located in Arizona), Dale Prows (located in Arizona), Anthony Heaton (located in Utah), Varoujan Sarkissian (located in Arizona), Meet Kalola (located in Utah), Tony Epperson (located in Arizona), Kevin Lynk (located in Arizona), and Cole Cannon (located in Utah).  These and other witnesses will provide critical testimony regarding Mr. Milton's lack of intent, the factual bases for his challenged statements, the status of Nikola's trucks and technology, and the robust vetting and approval processes that Mr. Milton followed before making public statements about Nikola.

criminal activity was national in scope and transferring the case because "the central location of the criminal acts allegedly committed by the … Defendants is in the Southern District of Florida, not New York, therefore, these facts weigh in favor of transfer"). In *United States v. Templin*, 251 F. Supp. 2d 1123 (S.D.N.Y. 2003), where the defendant's internet business "touched all 50 states," the district court found "no particular reason why" the case should be tried in the Southern District of New York and, aptly describing the transferee district as "the center of gravity of the case," transferred venue to "the state where the defendant resides and works, and where all of the charged illegal activities took place." *Id.* at 1225. Here, the events in question are alleged misstatements made by Mr. Milton on social media and in television, print, and podcast interviews. These actions were conducted or otherwise took place in Utah or Arizona. Further, all events that comprise the *content* of Mr. Milton's statements occurred in Utah or Arizona. Indictment ¶¶ 2, 4, 26, 27-61, 63. The third *Platt* factor, the location of events, strongly supports transfer to the Districts of Utah or Arizona.

### 4. The Location of Documents Strongly Supports Transfer to the Districts of Utah or Arizona.

"[G]iven the conveniences of modern transportation and communication," *Martino*, 2000 WL 1843233, at *5, in a more typical case where the veracity of alleged misstatements could be assessed with paper records, the fourth *Platt* factor, the location of documents, would be inconsequential to this Court's decision on transfer of venue. Here, the "documents" are bulky, heavy, and, in many instances, immovable physical evidence located in Arizona. The defense intends to introduce at trial physical evidence including the Nikola One semi-truck prototype, Indictment ¶¶ 27-40, the two operational and driveable Badger pickup truck prototypes, *id.* ¶¶ 41-61, multi-ton hydrogen electrolyzers, *id.* ¶¶ 62-64, and the Nikola Tre semi-truck, *id.* ¶¶ 70-71, 76; all of which are located in Arizona. In the Indictment, the government highlights this

physical evidence as the subjects of alleged misstatements, *id.* ¶¶ 2, 4, 26-61, necessitating a hands-on demonstration for the jury of the trucks and hydrogen equipment and an in-person visit to the facilities in which those trucks were engineered and developed.  It is impracticable to move these items across the country to this District; to transport them would require the obtaining of permits for potentially hazardous materials (hydrogen, large lithium batteries) and compliance with road, tunnel, bridge and street constraints and applicable regulations.[9]

Other immovable evidence that will be critical to the jury's deliberations includes Nikola's stationary demonstration hydrogen fueling station, *id.* ¶ 63, its headquarters, the studio where various statements in question were made, and the office spaces in which Mr. Milton, General Counsel Worthen and other key members of the Nikola management team worked closely; all of which are also located in Arizona.  *Cf. United States v. Jessup*, 38 F.R.D. 42, 45 (M.D. Tenn. 1965) ("The defendants' personal records are all located in the Southern District of Mississippi, as are certain immovable exhibits, such as the defendant Jessup's home and boat, which could not be viewed as exhibits by a jury sitting in Tennessee.").  Because key evidence in this case is located in Arizona and impracticable or impossible to move, the fourth *Platt* factor supports transfer to the District of Arizona or the nearby District of Utah.

     **5.**     **The Potential Disruption to Mr. Milton's Business Would Be Neutral or Support Transfer to the Districts of Utah or Arizona.**

"Courts have considered the failure of a business or permanent loss of employment to be significant" when evaluating the disruption to a defendant's business.  *Hanley*, 1995 WL 60019,

---

[9]   *See Size and Weight Restrictions, New York City Department of Transportation* (2021) (A vehicle exceeding 55 feet in length is not permitted to travel locally within New York City without an "over-dimensional" permit from New York City but a vehicle with a 53 foot trailer with a non-divisible load, which likely would include a trailer shipping the Nikola One prototype, must apply for a separate New York City permit); 49 CFR § 172.101 (identifying that lithium-ion batteries, whether contained within equipment or otherwise, cannot weigh in excess of 35 kilograms to travel by means of a cargo aircraft, without approval from the Department of Transportation).

at *3.  Mr. Milton now owns and operates a working ranch in Utah.  The fifth *Platt* factor, the potential disruption to business, is neutral or supports, at least to some extent, transfer to the Districts of Utah or Arizona.

> 6.     **The Expense to the Parties Would Be Neutral or Support Transfer to the Districts of Utah or Arizona.**

"Every criminal prosecution imposes expenses on defendants, but mere inconvenience and the normal burdens associated with trial do not make the necessary showing that a transfer is warranted.  A successful transfer motion requires more than a bald assertion that a trial out of a defendant's home district would be more expensive than if the trial were held in the defendant's home district."  *Valdez*, 2006 WL 738403, *7.  Analysis of the sixth *Platt* factor typically focuses on the cost of transportation and lodging for all parties, witnesses and counsel.  *See Russell*, 582 F. Supp. At 663 ("[L]ooking to the total outlay of funds required to transport and provide accommodations for all parties, witnesses, and counsel, it is very clear that a trial in the [transferee district] would cost considerably less than would a trial here."); *United States* v. *Fiorentino*, No. CR 13-0338(SJF), 2014 WL 108415, at *6 (E.D.N.Y. Jan. 6, 2014).  Although Mr. Milton is able to bear the costs of his defense, the cost of a trial in the Southern District of New York would vastly exceed the costs of trial in either the Districts of Utah or Arizona.  The sixth *Platt* factor, the expense to the parties, supports transfer to the Districts of Utah or Arizona or is at least neutral.

> 7.     **The Location of Defense Counsel Would be Neutral or Support Transfer to the Districts of Utah or Arizona.**

Mr. Milton's longstanding legal counsel is based in Utah and Arizona.  These lawyers have active practices in those states and are not admitted in this District.  Mr. Milton retained undersigned counsel less than a year ago as a result of the investigation in this District, but

defense counsel is prepared to litigate anywhere. *Cf. Martino*, 2000 WL 1843233, at *7 (Florida counsel "relinquished his representation when it became apparent that the case would be brought in New York"). The seventh *Platt* factor, the location of defense counsel, supports transfer to the Districts of Utah or Arizona, or is at least neutral.

> **8.** **The Relative Accessibility of Place of Trial Supports Transfer to the Districts of Utah or Arizona.**

The eighth *Platt* factor, the relative accessibility of the place of trial, *see Martino*, 2000 WL 1843233, at *5, assumes critical importance during the COVID-19 pandemic. The uncertainty surrounding transmission of COVID-19, the rise of troublesome variants, and the radically different regulatory responses across the individual states have made travel more difficult and, for some individuals with underlying medical conditions, dangerous. Mr. Milton and many of the witnesses whom defense counsel anticipate calling at trial are not vaccinated for health and/or religious reasons. The ability of all parties and witnesses to stay within a reasonable driving distance of the place of trial may turn out to be essential. As such, the relative accessibility of the place of trial, strongly supports transfer to the Districts of Utah or Arizona.

> **9.** **The Docket Conditions of Each District Weigh in Favor of Transfer to the Districts of Utah or Arizona.**

Mr. Milton wishes to avail himself of his Constitutional right to a speedy trial. We understand with the severity of the COVID-19 pandemic in New York that the dockets in this otherwise-busy District have become even more constrained. The dockets in the District of Utah and District of Arizona appear to allow for an earlier trial date, so we respectfully believe a

transfer would be appropriate.[10]  The ninth *Platt* factor, the docket condition of each district,

supports transfer to the Districts of Utah or Arizona.

### 10. Special Considerations Weigh in Favor of Transfer to the Districts of Utah or Arizona.

This Court should weigh three special considerations in assessing the tenth *Platt* factor—

the COVID-19 pandemic, Mrs. Milton's health, and the private civil securities fraud actions.  A

criminal trial in Manhattan during the COVID-19 pandemic of a Utah defendant involving

alleged misstatements about a motor company founded in Utah and based in Arizona raises a

host of complicated issues—e.g., whether remote testimony satisfies the Confrontation Clause

and whether testing and/or quarantine requirements will be imposed—that would be mitigated

and perhaps obviated by transfer to a proper venue in one of those two states.  The continuity of

Mrs. Milton's medical care requires that she and Mr. Milton remain at either their home in Utah

or in Arizona.  Private civil securities fraud actions implicating the same events have already

been transferred to the District of Arizona from the Eastern District of New York.  Because there

will be significant overlap in both witnesses and evidence between the civil and the criminal

litigation, transfer of this criminal case to the District of Arizona or the nearby District of Utah

will result in enormous cost and resource savings for all parties.  For these reasons, the tenth

*Platt* factor, special considerations, strongly supports transfer to the Districts of Utah or Arizona.

### C. Mr. Milton Has Timely Filed This Motion.

In addition to the enumerated *Platt* factors, the timeliness of defendant's request also

carries "particular weight" when analyzing a Rule 21(b) motion to transfer.  *See Rodriguez*, 2018

---

[10]  *See* Federal Judicial Caseload Statistics 2020 Tables, https://www.uscourts.gov/statistics-reports/federal-judicial-caseload-statistics-2020-tables, finding that the Southern District of New York has 5,281 pending criminal cases, while the District of Arizona has 3,049 and the District of Utah has 931.

WL 2126429 at *7; *Platt,* 376 U.S. at 243-44.  The Indictment in this case was filed less than two weeks ago, and so the timeliness of this motion strongly supports transfer.  There is no risk that a new judge will have to duplicate efforts or be bound by substantive decisions made prior to this motion being filed.  *See Rodriguez*, 2018 WL 2126429, at *6 (citation omitted).

The Rule 21(b) standard governing transfer of venue seeks to balance the convenience of the parties (especially the defendant) and witnesses.  All of the *Platt* factors either strongly support transfer of this case to the United States District Court for the Districts of Utah or Arizona or are at least neutral as to the conclusion.  Transfer is required for fairness and to effectuate the interests of justice.  *See Alter,* 81 F.R.D. at 527; *Layne*, 2005 WL 1009765, at *7.

## CONCLUSION

Venue is not proper as a matter of law in the Southern District of New York as to all three counts of the Indictment under Article III, Section 2 and the Sixth Amendment to the Constitution and applicable venue laws.  The Court should dismiss the Indictment.  The facts that support this patent legal conclusion also support transfer of this case to a proper venue in the District of Utah or District of Arizona.  As between the two districts which are adjacent states, a venue in Utah, where Mr. Milton lives and was released to pending trial and where Nikola was founded and based until 2019, would best suit Defendant's constitutional rights and Arizona would be the most convenient venue in terms of witnesses and evidence.

Dated: August 10, 2021

Respectfully submitted,

/s/

_____
Bradley J. Bondi
CAHILL GORDON & REINDEL LLP
1990 K Street, NW, Suite 950
Washington, DC 20006
(202) 862-8910
bbondi@cahill.com

Marc Mukasey
MUKASEY FRENCHMAN LLP
570 Lexington Avenue, Suite 3500
New York, NY 1002
(212) 466-6400
Marc.Mukasey@mfsllp.com

Terence Healy
HUGHES HUBBARD & REED LLP
1775 I Street, NW
Washington, DC 20006
(202) 721-4676
terence.healy@hugheshubbard.com

*Counsel for Trevor Milton*