UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                        :
UNITED STATES OF AMERICA                :
                                        :
   - v. -                               :           21 Cr. 478 (ER)
                                        :
TREVOR MILTON,                          :
                                        :
                Defendant.       :
                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**GOVERNMENT'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE INDICTMENT OR,
IN THE ALTERNATIVE, TO TRANSFER VENUE**



AUDREY STRAUSS
United States Attorney
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007



Jordan Estes
Matthew Podolsky
Nicolas Roos
Assistant United States Attorneys
- Of Counsel -

# **CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 2

BACKGROUND .................................................................................................................... 2

ARGUMENT .......................................................................................................................... 3

   I.   The Defendant's Motion to Dismiss Should Be Denied ............................................ 3

      A.  Applicable Law .................................................................................................. 3

      B.  Discussion .......................................................................................................... 5

  II.   The Defendant's Motion to Transfer Should Be Denied .......................................... 9

      A.  Applicable Law .................................................................................................. 9

      B.  Discussion ........................................................................................................ 11

          1.  Residence of the Defendant ....................................................................... 11

          2.  Location of Witnesses ................................................................................ 13

          3.  Location of Events ..................................................................................... 15

          4.  Location of Documents and Physical Evidence......................................... 16

          5.  Disruption of the Defendant's Business .................................................... 18

          6.  Expense to the Parties ................................................................................ 19

          7.  Location of Counsel ................................................................................... 20

          8.  Relative Accessibility of the Place of Trial .............................................. 21

          9.  Docket Conditions ..................................................................................... 22

          10. Other Factors.............................................................................................. 23

  III. CONCLUSION ........................................................................................................ 26

## PRELIMINARY STATEMENT

The Government respectfully submits this memorandum in opposition to defendant Trevor Milton's motion to dismiss the charges against him for lack of venue or, in the alternative, to transfer venue to either the District of Arizona or the District of Utah, where the defendant owns houses. (Dkt. No. 11 ("Def.'s Mot.").) Both requests are without merit. First, the Indictment alleges venue in the Southern District of New York, which alone defeats the motion to dismiss. Second, Milton offers no factors sufficient to justify a departure from the general rule that a criminal prosecution should be retained in the original district where the case was charged, as he must to succeed in a motion to transfer venue. To the contrary, Milton—whose scheme defrauded investors nationwide—will receive a fair, efficient, and convenient trial in New York City. His motion should be denied.

## BACKGROUND

On July 28, 2021, a grand jury sitting in this district charged Milton with engaging in a scheme to induce investors—particularly individual, non-professional or "retail" investors—to invest in the company Milton founded, led, and in substantial part owned, Nikola Corporation ("Nikola"), based on false and misleading statements made by Milton directly to the investing public through social media and television, print, and podcast interviews. (Dkt. No. 1 ("Indictment") ¶ 1.) As alleged in the Indictment, Milton made false and misleading statements regarding nearly all aspects of Nikola's business, which was to design and manufacture zero-emission battery-electric and hydrogen-electric vehicles, electric vehicle drivetrains, vehicle components, energy storage systems, and hydrogen station infrastructure. (Indictment ¶¶ 2, 6.) These claims, which are described in detail in the Indictment, included:

- false and misleading statements that Nikola had early success in creating a "fully functioning" semi-truck prototype known as the "Nikola One";

- false and misleading statements that Nikola had engineered and built an electric- and hydrogen-powered pickup truck known as "the Badger" from the "ground up" using Nikola's parts and technology;

- false and misleading statements that Nikola was producing hydrogen and was doing so at a reduced cost;

- false and misleading statements that Nikola had developed batteries and other important components in-house; and

- false and misleading claims that reservations made for the future delivery of Nikola's semi-trucks were binding orders representing billions in revenue.

(Indictment ¶ 2.)

Based on this scheme, the grand jury charged Milton with one count each of securities fraud under Title 15, securities fraud under Title 18, and wire fraud. As to each count, the grand jury alleged that the conduct occurred "in the Southern District of New York and elsewhere." (Indictment ¶¶ 82, 84, 86.) As further alleged in the Indictment, Nikola became a public company by merging with a publicly-traded entity called VectoIQ, which was based in the Southern District of New York, and Nikola stock was traded on the Nasdaq stock exchange, also located in the Southern District of New York. (Indictment ¶¶ 13, 15-16.)

## **ARGUMENT**

### I.   **The Defendant's Motion to Dismiss Should Be Denied**

#### A.   **Applicable Law**

"The Sixth Amendment to the Constitution provides that the accused in a criminal prosecution has the right to be tried in the 'district wherein the crime shall have been committed.'" *United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181, 1188 (2d Cir. 1989). At trial, the

Government will have the burden of proving by a preponderance of the evidence that venue exists for prosecuting each of the counts in the Indictment in this District. *See id.*; *United States v. Peterson*, 357 F. Supp. 2d 748, 751 (S.D.N.Y. 2005).

The standard, however, is different when a defendant moves pre-trial to dismiss an indictment based on lack of venue. "Where venue is challenged on a pre-trial motion to dismiss, the Government's burden is limited to showing that the indictment alleges facts sufficient to support venue." *Peterson*, 357 F. Supp. 2d at 751. It is well established in this district that "[t]he Government need only allege that criminal conduct occurred within the venue, even if phrased broadly and without a specific address or other information, in order to satisfy its burden with regard to pleading venue." *United States v. Ohle*, 678 F. Supp. 2d 215, 231 (S.D.N.Y. 2010) (internal quotation marks and citation omitted). Accordingly, "it is sufficient to defeat" a motion to dismiss for lack of venue "that the indictment alleges in [each count] that the conduct occurred 'in the Southern District of New York and elsewhere.'" *United States v. Elcock*, No. 07 Cr. 582 (CM), 2008 WL 123842, at *3 (S.D.N.Y. Jan. 10, 2008); *see also, e.g.*, *United States v. Chocron*, No. 20 Cr. 400 (JSR), 2021 WL 3005086, at *1 (S.D.N.Y. July 14, 2021) (same); *United States v. Murgio*, 209 F. Supp. 3d 698, 721 (S.D.N.Y. 2016) (same); *United States v. Riley*, No. 13 Cr. 339 (RPP), 2014 WL 53440, at *3 (S.D.N.Y. Jan. 7, 2014) (same); *United States v. Van Hise*, No. 12 Cr. 847 (PGG), 2013 WL 6877319, at *6 (S.D.N.Y. Dec. 31, 2013) (same); *Ohle*, 678 F. Supp. 2d at 231 (same); *United States v. Szur*, No. 97 Cr. 108 (JGK), 1998 WL 132942, at *9 (S.D.N.Y. Mar. 20, 1998) (same). "Whether such acts alleged in the Indictment in fact occurred in the Southern District of New York is appropriately left for trial. . . ." *Szur*, 1998 WL 132942, at *9.

B.      **Discussion**

Milton moves to dismiss all three counts in the Indictment for failure to allege venue in the Southern District of New York. Milton's argument is easily rejected. Indeed, each count of the Indictment alleges that the charged crime occurred "in the Southern District of New York and elsewhere." (Indictment ¶¶ 82, 84, 86.) "These allegations alone are sufficient to survive a pretrial motion to dismiss." *Ohle*, 678 F. Supp. 2d at 231; *see also, e.g.*, *Elcock*, 2008 WL 123842, at *3 ("[I]t is sufficient to defeat defendant's venue motion that the indictment alleges in [each count] that the conduct occurred 'in the Southern District of New York and elsewhere.").

Milton wholly ignores this consistent, clear, and longstanding law, arguing that "[t]he government has not alleged sufficient facts to show that Mr. Milton committed any crime whatsoever in the Southern District of New York." (Def.'s Mot. 5.) Milton contends in particular that the trading of Nikola's stock on the Nasdaq stock exchange and the receipt of Milton's false and misleading statements, conveyed through the internet, television, and other media, in the Southern District of New York are insufficient to establish venue in this district. (*See id.* at 4, 7-10.) Even if these arguments were relevant on a motion to dismiss, which they are not, they would still be wrong.

In fact, contrary to Milton's uncited and supported assertions, the Second Circuit has recently reemphasized that trading on the Nasdaq stock exchange is indeed sufficient to establish venue for a securities fraud prosecution in the Southern District of New York. As that court explained specifically with respect to the Nasdaq, "the established law of this Circuit" provides that "[w]here the defendant is charged with an offense involving the trading of securities on a stock exchange located in the SDNY, venue in that district is appropriate." *United States v. Chow*, 993

5

F.3d 125, 143 (2d Cir. 2021). Because the purchase of Nikola stock by investors was caused by Milton in furtherance of the charged offense, and was not merely preparatory, *see United States v. Khalupsky*, 5 F.4th 279, 291 (2d Cir. 2021), Nikola's trading on the Nasdaq would—if proven at trial—provide a sufficient basis for venue as to securities fraud. And to the extent that the Government proves at trial that such trading was carried out through the use of interstate wires that entered or left the Southern District of New York, *see Chow*, 993 F.3d at 133-34 (describing execution of trades for shares listed on the Nasdaq), such proof would also establish venue as to wire fraud, *see United States v. Kim*, 246 F.3d 186, 191-92 (2d Cir. 2001) (venue for wire fraud proper where wire was sent and received). Of course, as noted above, all that is necessary at this stage is that the Indictment has alleged that the conduct occurred in the Southern District of New York.

Similarly, Milton is wrong in claiming that transmission of a misrepresentation by means of an interstate wire is insufficient to establish venue for purposes of wire or securities fraud in the district where an individual received the wire if those misrepresentations were broadcast widely to many districts (Def.'s Mot. 7-10). As an initial matter, it is uncontroversial that "[v]enue is proper in any district in which an offense was begun, continued or completed," and "may lie in more than one place if the acts constituting the crime and the nature of the crime charged implicate more than one location." *United States v. Lange*, 834 F.3d 58, 68-69 (2d Cir. 2016) (internal quotation marks and citations omitted). It is also clear that, for both securities fraud and wire fraud, "[v]enue is proper not only in the district where telephonic or electronic materially fraudulent communications were initiated, but also in the district where such communications were received." *Id.* at 70; *see also Kim*, 246 F.3d at 191-92 (same as to wire fraud for interstate wires). And, finally, the Second

6

Circuit has repeatedly rejected exactly the argument advanced by Milton, holding instead that venue is proper (including under a substantial contacts test) where a misrepresentation or communication in furtherance of the scheme is accessible or received, even if transmitted broadly. *See Lange*, 834 F.3d at 71-72 (venue proper where the defendants engaged in cold calls "on a national basis," including into the district of prosecution); *United States v. Levis*, 488 F. App'x 481, 485 (2d Cir. 2012) (venue proper in Southern District of New York based on 10-K containing misrepresentations being viewed on SEC's website by individual in district because "[w]hen the case involves publication on the internet, venue is proper in any district where it is reasonably foreseeable that the material will be accessed"); *United States v. Royer*, 549 F.3d 886, 894-95 (2d Cir. 2008) (venue proper where some subscribers to a website received information); *see also United States v. Rowe*, 414 F.3d 271, 279-80 (2d Cir. 2005) (venue proper wherever communications in furtherance of the crime sent on the internet are received); *United States v. Rogers*, 165 F. App'x 873, 874 (2d Cir. 2005) ("Venue in the Southern District of New York was proper because [the defendant']s Internet advertisement could be, and was, viewed in the Southern District of New York, and because its placement on the Internet supports a strong inference that [the defendant] contemplated that it would be accessible everywhere that access to the Internet can be had."). "Indeed, the defendant[ ], having concocted a scheme . . . that defrauded investors throughout the country, can hardly complain that [his] very *modus operandi* subjected [him] to prosecution in numerous districts." *Royer*, 549 F.3d at 895.

Milton also vaguely (and, again, prematurely) claims that (1) "constitutional avoidance" should cause this Court to overrule controlling precedent in this Circuit and hold that venue is proper only in the district where a communication is sent, and (2) this prosecution violates Article

III, Section 2 of the Constitution. (Def.'s Mot. 11-15.) Indeed, Milton, without any form of attribution, and prior to any factfinding by a jury, asserts that "[w]hat is crystal clear under the case law and the Constitution is that venue is not proper in the Southern District of New York." (Def.'s Mot. 13.) Milton does not, however, point to any actual law or rule that would justify upending longstanding, controlling law that the district in which a misrepresentation or communication in furtherance of an offense is received is a proper venue for prosecution of the crimes charged here, let alone preclude the prosecution of a case where the grand jury has found probable cause that the offense has been committed.[1]

In fact, there is no formal constitutional test for venue, but "the substantial contacts inquiry . . . is a useful guide to consider whether a chosen venue is unfair or prejudicial to a defendant." *Lange*, 834 F.3d at 71 (internal quotations marks and citation omitted); *see also Royer*, 549 F.3d at 893; *Rowe*, 414 F.3d at 277-78. And, as noted above, the Second Circuit has repeatedly held that this test is satisfied, and venue is constitutionally proper, where communications in furtherance

---

[1]    In support of the notion that this Court should reinterpret relevant venue provisions to preclude venue where a communication is received for "constitutional avoidance," Milton cites, oddly, to *Johnson v. United States*, 323 U.S. 273 (1944). (Br. 11.) But *Johnson* does not support Milton's argument. To the contrary, the Supreme Court in *Johnson* explained that "Congress may, to be sure, provide that the locality of a crime shall extend over the whole area through which force propelled by an offender operates," and specifically that "an illegal use of the mails or of other instruments of commerce may subject the user to prosecution in the district where he sent the goods, or in the district of their arrival, or in any intervening district." 323 U.S. at 275. Notably, the Second Circuit has relied on *Johnson* in rejecting the very arguments that Milton now advances. *See Royer*, 549 F.3d at 893 (citing *Johnson* and observing that the venue "statute has particular applicability where, as here, the use of modern communications facilities to execute a sophisticated criminal scheme inherently contemplates activities throughout many parts of the country"); *Rowe*, 549 F.3d at 278-80 (citing *Johnson* and concluding that communications sent over the internet generally and received in Rockland County provide for venue in the Southern District of New York).

of the offense are received or accessible. *E.g.*, *Lange*, 834 F.3d at 71-72; *Royer*, 549 F.3d at 894-95. As the Second Circuit explained in a child pornography case where the defendant trasmitted a communication via the internet from Kentucky with no intention to send it to the Southern District of New York specifically, "the two chief ills that the constitutional venue provisions are meant to guard against—bias and inconvenience—are not substantially present in this case," and venue was perfectly constitutional. *Rowe*, 414 F.3d at 279-80. So too here.

In short, the Indictment alleges that the charged offenses occurred in the Southern District of New York. Nothing more is required. Milton's motion to dismiss should be denied.

## II.     The Defendant's Motion to Transfer Should Be Denied

### A.     Applicable Law

"As a general rule a criminal prosecution should be retained in the original district" where the case was charged. *United States v. Posner*, 549 F. Supp. 475, 477 (S.D.N.Y. 1982); *accord United States v. Kirk Tang Yuk*, 885 F.3d 57, 74 n.5 (2d Cir. 2018). Discretionary transfers of venue are governed by Federal Rule of Criminal Procedure 21(b), which provides that, "for the convenience of parties and witnesses, and in the interest of justice, the court upon motion of the defendant may transfer the proceeding as to that defendant or any one or more of the counts thereof to another district." Fed. R. Crim. P. 21(b). The "burden is on the moving defendant to justify a transfer under Rule 21(b)." *United States v. Spy Factory, Inc.*, 951 F. Supp. 450, 464 (S.D.N.Y. 1997) (quotation marks omitted). That burden "is not often or easily met," as the defendant must show that trial in the original district "would be so unduly burdensome that fairness requires the transfer to another district." *United States v. Larsen*, No. 13 Cr. 688 (JMF), 2014 WL 177411, at

*2 (S.D.N.Y. Jan. 16, 2014); *see also United States v. Calk*, No. 19 Cr. 366 (LGS), 2020 WL 703391, at *2 (S.D.N.Y. Feb. 12, 2020) (same).

In *Platt v. Minnesota Mining & Manufacturing Co.*, 376 U.S. 240 (1964), the Supreme Court introduced a list of factors that courts routinely consider in analyzing a defendant's motion to transfer venue: (1) location of defendant; (2) location of possible witnesses; (3) location of events likely to be in issue; (4) location of documents and records likely to be involved; (5) disruption of defendant's business unless the case is transferred; (6) expense to the parties; (7) location of counsel; (8) relative accessibility of place of trial; (9) docket condition of each district involved; and (10) any other special elements that might affect the transfer. *Spy Factory, Inc.*, 951 F. Supp. at 455 (citing *Platt*, 376 U.S. at 244). "No one of these considerations is dispositive, and it remains for the court to try to strike a balance and determine which factors are of greatest importance." *United States v. Maldonado-Rivera*, 922 F.2d 934, 966 (2d Cir. 1990) (quotation marks and brackets omitted).

Generally speaking, "there has been a 'trend in recent years away from granting transfers.'" *United States v. Blondet*, No. 16 Cr. 387 (JMF), 2019 WL 5690711, at *2 (S.D.N.Y. Nov. 4, 2019) (quoting *United States v. Quinn*, 401 F. Supp. 2d 80, 85-86 (D.D.C. 2005) (citing cases and treatises)). This trend recognizes that, since the time that *Platt* was decided in 1964, "the massive expansion of technology and the relative decline in costs for long-distance travel over the past few decades" have greatly reduced the circumstances where transfer is justified. *Id.* (quoting *Quinn*, 401 F. Supp. 2d at 86).

10

### B.  Discussion

Application of the relevant *Platt* factors here does not justify deviation from the "general rule" that "a criminal prosecution should be retained in the original district" where the case was charged. *Posner*, 549 F. Supp. at 477. While a trial outside one of Milton's districts of residence will cause some inconvenience for Milton, as it does for any defendant, this inconvenience will be relatively small for Milton and, in any case, this factor standing alone is insufficient to merit a transfer. Transferring the case would require relocation of the Government attorneys and agents, as well as many witnesses, victims, and even defense counsel to the District of Utah or Arizona, imposing significant burdens on all parties. Because all of the *Platt* factors besides the defendant's place of residence are neutral or weigh against transfer, this motion should be denied.

### 1.  Residence of the Defendant

While there is no dispute that Milton does not reside in the Southern District of New York, this fact alone does not justify transfer. It is well established that "the inconvenience of having to stand trial outside of one's home district, without more, is insufficient to warrant a transfer," *United States v. Coriaty*, No. 99 Cr. 1251 (DAB), 2000 WL 1099920, at *2 (S.D.N.Y. Aug. 7, 2000) (internal quotation marks omitted), and a defendant's residence, standing on its own, "has no independent significance in determining whether transfer to [a different] district would be 'in the interest of justice," *United States v. Stein*, 429 F. Supp. 2d 633, 645-46 (S.D.N.Y. 2006) (denying transfer to another district in multi-defendant case where some defendants were from Texas and California). That is because a defendant's desire to be tried in his district of residence is "in tension with the more general presumption that a criminal prosecution should be retained in the original district." *Spy Factory*, 951 F. Supp. at 464.

Milton's motion sets forth no facts that would distinguish this case from the dozens of cases that have come before where a defendant was tried outside of his or her district of residence. Indeed, "[e]very life is significantly disrupted during a trial no matter where it is held. Besides the need to be in court every day, the evenings and weekends are usually consumed analyzing the evidence that has been admitted and preparing for the remainder of trial."' *United States v. Christian*, No. 12 Cr. 41 (KBF), 2012 WL 1134035, at *1 (S.D.N.Y. Apr. 2, 2012) (quoting *United States v. Wilson*, No. 01 Cr. 53 (DLC), 2001 WL 798018, at *1 (S.D.N.Y. July 13, 2001)). The duration of any disruption here—which would occur regardless of where Milton is tried—is not nearly so long as in other cases where motions to transfer have been denied. *See, e.g.*, *Stein*, 429 F. Supp. 2d at 645 (denying a motion to transfer where the trial was anticipated to last between six and eight months).

Moreover, Milton is better positioned to bear any inconvenience than many defendants for whom motions to transfer are denied. *See, e.g.*, *Larsen*, 2014 WL 177411, at *3 (denying transfer where an indigent defendant living in another state would be unable to care for his children or attend his job at a pizzeria during trial); *see also United States v. Avenatti*, No. 19 Cr. 374 (DAB), 2019 WL 4640232, at *3 (S.D.N.Y. Sept. 24, 2019) (concluding that the location of the defendant's residence outside of New York does not weigh heavily in favor of transfer and noting that the defendant "does not claim that he is unable to afford the expenses of defending his case in this District"). Milton, who was released upon his signing of a $100 million bond, is extremely wealthy and has ready access to and indeed owns multiple convenient means of travel. While facing trial away from his homes may present some inconvenience to Milton, he does not, and could not credibly, claim that travel to New York City to stand trial represents a significant difficulty for

him. In sum, this is not a case where the defendant's interests in a trial near his residence are unusually strong or where the defendant is able to point to an extraordinary circumstance necessitating a trial in his home district; rather, the interests here are, if anything, considerably weaker than those present in cases where transfer has been deemed to be warranted.

### 2.      Location of Witnesses

The location of witnesses who are likely to be called at trial does not weigh in favor of transfer. A defendant claiming that the location of witnesses warrants a transfer of venue bears the burden of "specifically describ[ing] how particular witnesses would be entirely prevented from testifying at trial in the Southern District of New York." *United States v. Blakstad*, No. 19 Cr. 486 (ER), 2020 WL 5992347, at *4 (S.D.N.Y. Oct. 9, 2020); *see also Spy Factory*, 951 F. Supp. at 456 (defendants seeking to transfer venue bear the burden of offering the Court "specific examples of witnesses' testimony and their inability to testify because of the location of trial"). The "naked allegation that witnesses will be inconvenienced by trial in a distant forum will not suffice for transfer." *Spy Factory*, 951 F. Supp. at 456; *see also United States v. Juncal*, No. 97 Cr. 1162 (JFK), 1998 WL 473949, *5 (S.D.N.Y. Aug. 7, 1998) ("there is no basis to grant the motion to transfer" where defendant fails to make "a specific proffer of testimony from specific witnesses to allow the court to make an informed decision about the importance of these witnesses to [the defendant's] case"). Rather, "the court must rely on concrete demonstrations of the proposed testimony." *Spy Factory*, 951 F. Supp. at 456 (quotations and citations omitted). Moreover, "in this age of easy air travel, this factor is generally much less relevant than it was in 1964, when the Supreme Court decided *Platt*." *United States v. Ebbers*, No. 02 Cr. 1144 (BSJ), 2004 WL 2346154, at *1 (S.D.N.Y. Oct. 18, 2004).

Although Milton names a number of potential witnesses (Def.'s Mot. 17 n.8), he does not even describe how they would be inconvenienced by travel, let alone attempt a showing that any witness would be prevented from testifying at a trial in New York City. Indeed, Milton lists witnesses who live either in Utah or Arizona, conceding, apparently, that no matter where the trial is held, many witnesses will be forced to travel. Of course, the inconvenience of a slightly longer flight to New York City as opposed to between Phoenix, Arizona and Salt Lake City, Utah is not a basis for transfer. *E.g.*, *Blakstad*, 2020 WL 5992347, at *4 (witnesses must be entirely prevented from testifying to favor transfer). Nor does Milton take any account of the witnesses who are likely to be called who do not live in Utah or Arizona, including victims who reside across the country. *See Calk*, 2020 WL 703391, at *2 ("The convenience of 'any victim' must also be considered following the amendment of Rule 21(b) in 2010."). And Milton is simply wrong when he asserts that "[n]one of the anticipated witnesses is in New York." (Def.'s Mot. 17.) Although the Government has not finalized a witness list, it does anticipate calling New York-based witnesses, including witnesses who interacted directly with Milton and victim witnesses.

In these circumstances, courts have repeatedly found that this factor does not weigh in favor of transfer. *See, e.g.*, *United States v. Kolfage*, No. 20 Cr. 412 (AT), 2020 WL 7342796, at *3 (S.D.N.Y. Dec. 14, 2020) (proffer that failed to identify witnesses or their testimony and to explain details as to why witnesses could not travel to New York was "insufficiently specific to demonstrate that this factor weighs in favor of transfer"); *Blakstad*, 2020 WL 5992347, at *4 (location of witnesses did not favor transfer where defendant merely asserted that his witnesses were located in California and that travel expenditures would be burdensome); *United States v. Brooks*, No. 08 Cr. 35 (PKL), 2008 WL 2944626, at *2 (S.D.N.Y. July 31, 2008) ("bare assertion"

of hardship was insufficient to tip this factor in favor of transfer); *Stein*, 429 F. Supp. 2d at 645-46 (location of the witnesses did not support transfer where defendants failed to put forward any evidence that potential defense witnesses would be unable or unwilling to travel to the Southern District of New York); *Ebbers*, 2004 WL 2346154, at *1 (defendant did not allege that "witnesses would be unable to testify in New York, that he would be unable to call them, or that he would be financially incapable of paying such witness' expenses"). Milton has failed to meet his burden to demonstrate that this factor favors transfer.

### 3. Location of Events

The location of the charged events—in which Milton perpetrated a massive securities fraud scheme targeting investors across the country to cause trading of his company's stock through a New York exchange—does not favor transfer. Although it is true that Milton made many of his false and misleading statements while at his home or office outside of New York, the geographic breadth of the scheme and, specifically, the fact that he broadcast these misrepresentations from Utah and Arizona across the country counsel against transfer. *See, e.g.*, *Kolfage*, 2020 WL 7342796, at *4 (transfer not favored by location of events even where the defendants never entered New York because the fraud "was national in scale" as it "was carried out throughout the country over the internet"); *Blakstad*, 2020 WL 5992347, at *4 ("'Because the criminal activity that was alleged to have occurred in this case was concededly national in scope, the location of the events at issue favors neither side.'" (quoting *Spy Factory*, 951 F. Supp. at 457)); *United States v. Estrada*, 880 F. Supp. 2d 478, 483 (S.D.N.Y. 2012) (noting that "[t]he majority of 'the events likely to be at issue' are alleged to have occurred in Los Angeles," but concluding that "this factor is not particularly persuasive when defendants are alleged to have intentionally projected their fraud

15

nationwide, including into this District"); *Ebbers*, 2004 WL 2346154, at *1 (finding third *Platt* factor did not weigh in favor of transfer when securities fraud involved national company listed on Nasdaq and Government's case involved conversations with New York entities); *Spy Factory*, 951 F. Supp. at 457 (though the defendant's company was in Texas, his illegal sales were national in scope, making New York an equally appropriate venue).

Accordingly, while the trial in this case will undoubtedly relate to some events that took place outside the Southern District of New York, that would be an inevitability in any district in which this case was tried. Moreover, while this case of course concerns Milton's false claims, it is far from obvious that the "nerve center" of the case is in Arizona or Utah. The focus of this case is on a scheme to mislead investors in a company that was publicly listed on an exchange in New York City. In fact, it was through Nikola's merging with an entity—VectoIQ—located in the Southern District of New York, that Milton was able to carry out his scheme to defraud. Events that took place in New York are therefore critical to Milton's fraudulent scheme, and the abuse of New York institutions is central to this case. *See Ebbers*, 2004 WL 2346154, at *1 (observing that the relevant company, Worldcom, may have been headquartered in Mississippi but was listed on the Nasdaq and had shareholders in New York). This factor, therefore, weighs against transfer or, at a minimum, is neutral.

### 4.      Location of Documents and Physical Evidence

The fourth *Platt* factor, the location of documents, does not weigh in favor in transfer, particularly when modern developments in electronics and computing render documents readily available to a defendant wherever he or she is located. *See United States v. Datta*, 797 F. Supp. 2d 448, 450 (S.D.N.Y. 2011) (finding that electronic format of documents "neutraliz[ed] any issue

concerning the location of documents"); *Brooks*, 2008 WL 2944626, at *2 ("the location of documents and records is not a major concern in these days of easy and rapid transportation"). In fact, evidence relied upon by the Government in charging the case was gathered and is maintained in Manhattan, and as a result, transfer of venue would require the Government to transport documents, hard drives containing evidence, and other materials to Colorado. *See United States v. Stephenson*, 895 F.2d 867, 875 (2d Cir. 1990) (presence of documents and recordings in this District favored retaining venue); *United States v. Keuylian*, 602 F.2d 1033, 1038 (2d Cir. 1979) (presence of most of the exhibits in the charging district favored retaining venue).

Milton contends that this factor favors transfer because he "intends to introduce at trial physical evidence including the Nikola One semi-truck prototype," "Badger pickup truck prototypes," "multi-ton hydrogen electrolyzers," and "the Nikola Tre semi-truck." (Def.'s Mot. 18.) Milton even suggests that the jury will need to visit the offices where Milton worked. (Def.'s Mot. 19.) What Milton does not do, or even attempt to do, is provide any proffer or explanation for how these items would be admissible or what their relevance or use to the jury might be (or, for that matter, why inspection of these items would not be confusing, misleading, a waste of time, and cumulative). Although the Government agrees that the Nikola One semi-truck prototype is "immovable" (Def.'s Mot. 19)—indeed, that fact forms one of the central allegations in the case (*see* Indictment ¶¶ 28-36)—there will be no reason for the jury to inspect it or any of the other items described by the defendant, none of which are admissible. As can be expected, the evidence in this case will be comprised of, among other things, testimony and documents demonstrating Milton's statements and explaining why they were false. Other than confirming that they exist, which is not in dispute and can be readily proven by photographs and testimony, the prototypes,

electrolyzers, and fueling station (not to mention the conference room and offices at Nikola's headquarters) would serve no relevant purpose at trial.[2]

In short, the location of the actual evidence in this case does not favor transfer.

### 5.    Disruption of the Defendant's Business

Milton asserts that he "now owns and operated a working ranch in Utah," which, he claims, "supports, at least to some extent, transfer to the Districts of Utah or Arizona." (Def.'s Mot. 20.) Milton does not provide any additional detail as to what his role at the ranch is, nor does he even claim that his travel to New York will have an impact on his business. *See, e.g.*, *Blakstad*, 2020 WL 5992347, at *5 (bare assertions that travel across the United States will cause substantial disruption is insufficient for factor to favor transfer). In any case, as noted above, "[e]very life is significantly disrupted during a trial wherever it is held." *Christian*, 2012 WL 1134035, at *1. If a trial in New York will disrupt Milton's ability to operate his ranch, then so too would a trial in any location, and Milton "never alleges, specifically, why his absence from his physical place of business will cause more disruption if he is on trial in New York rather than in [Utah or Arizona]." *United States v. Parrilla*, No. 13 Cr. 360 (AJN), 2014 WL 1621487, at *15 (S.D.N.Y. Apr. 22, 2014). Finally, one is left to wonder why travel to New York would disrupt the operation of

---

[2]      In his reply brief in support of an analogous motion to transfer venue in the parallel civil case filed by the SEC against him, in an effort to explain why these physical objects might be admitted at trial, Milton asserts, without further elaboration, that "all of these items represent complex technology, and witness testimony (from witnesses who are all based in Arizona, at Nikola's headquarters) will not suffice." (Reply Memorandum at 1, *SEC v. Milton*, No. 21 Civ. 6445 (AKH) (Dkt. No. 30).) Apparently, the suggestion is that engineers or other witnesses, aided by exhibits, will not be able to explain relevant products or technology to a jury, but a jury will be able to understand how a truck or an electrolyzer or their parts work by standing in physical proximity to and observing them. Reason dictates otherwise.

Milton's Utah ranch, but travel to Arizona would not. Milton has not provided a sufficient basis to conclude that disruption of his business offers any support for transferring this case.

### 6.   Expense to the Parties

The expense to the parties weighs against transfer. Milton concedes that he "is able to bear the costs of his defense," but argues that because trial in the Southern District of New York would be more costly to him than trial in the District of Utah or Arizona, this factor favors transfer. (Def.'s Mot. 20.) However, Milton entirely ignores the substantial cost that the Government would bear in relocating the trial and investigative team to the District of Utah or Arizona. The Government's resources are not unlimited, and unnecessary expenses incurred by the Government are ultimately paid for by taxpayers. Transferring this case to Utah or Arizona would require an entire New York based investigative and prosecutorial team—including three Assistant U.S. Attorneys, multiple paralegals, and several federal law enforcement agents—to relocate for weeks, and would require the transportation of large amounts of data and physical evidence to another district. Courts in this District have repeatedly denied transfer motions in part because the expense of transfer to the Government was too significant to warrant transfer. *See, e.g., Avenatti*, 2019 WL 4640232, at *5 (denying transfer because "the entire prosecution team—including several Assistant United States Attorneys, paralegals, and multiple law enforcement agents—would be forced to relocate to California for the duration of the trial"); *United States v. Canale*, No. 14 Cr. 713 (KBF), 2015 WL 3767147, at *4 (S.D.N.Y. June 17, 2015) (denying transfer where it "would require the Government to transport and house two prosecutors, as well as a paralegal and several case agents"); *Ebbers*, 2004 WL 2346154, at *2 ("It would impose an enormous burden on the

government to move the prosecutors, investigators, support staff, court staff, and others familiar with the case … to another jurisdiction").

"Where the effect of a motion to transfer is merely to shift the economic burden to the government, this factor generally weighs against transfer." *Kolfage*, 2020 WL 7342796, at *5 (internal quotation marks and citation omitted). And where the "[d]efendant has not shown that the additional expense is unduly onerous in light of his circumstances, nor that he would be unable to bear such expense" again this factor does not favor transfer. *Calk*, 2020 WL 703391, at *4. For both of these reasons, and the substantial expense that transfer would impose on the taxpayers in this case, the expense to the parties weighs against transfer.

### 7.   Location of Counsel

The location of counsel weighs against transfer. Although Milton vaguely asserts that his "longstanding legal counsel is based in Utah and Arizona" (Def.'s Mot. 20), his criminal defense attorneys, who have been representing him with respect to this investigation for some time (*see* Def.'s Mot. 20), are all either based in New York City or have offices in both New York City and in Washington, D.C. None have offices in Utah or Arizona.[3]

Furthermore, this factor is not limited to the location of defense counsel. As the Second Circuit has made clear, the location of the prosecution team is an appropriate consideration in denying a motion to transfer venue. *Stephenson*, 895 F.2d at 875 (considering "location of the prosecutor"); *Keuylian*, 602 F.2d at 1038 (considering location of "the Government attorney and

---

[3]     Although the signature blocks on Milton's Motion to Dismiss the Indictment or, in the Alternative, to Transfer Venue for two of his attorneys list only Washington, D.C. addresses, the electronic docket sheet for this case lists New York City addresses for each of the three attorneys representing Milton.

the ATF case agent"); *see also Blakstad*, 2020 WL 5992347, at *5 (observing that more of the attorneys in the case, when the prosecutors are included, are based in New York); *Kolfage*, 2020 WL 7342796, at *5 (considering location of both defense and Government lawyers). Here, as detailed above, the location of the prosecution team, which consists of three Assistant U.S. Attorneys, paralegals, and multiple case agents, weighs against transfer—as does the location of defense counsel.

### 8.     Relative Accessibility of the Place of Trial

The relative accessibility of the districts at issue does not favor a transfer. It is not reasonably subject to dispute that Manhattan is one of the most accessible locations in the United States. *See Avenatti*, 2020 WL 5992347, at *5 ("Manhattan is clearly one of the most accessible locations in the United States with three major airports and a variety of other public transportation."); *United States v. Percoco*, No. 16 Cr. 776 (VEC), 2017 WL 6314146, at *17 (Dec. 11, 2017) (denying transfer because, *inter alia*, "New York City is clearly an accessible transportation hub"); *Christian*, 2012 WL 1134035, at *2 (denying transfer because, *inter alia*, "New York is easily accessible by air with three major airports, as well as a variety of other public transportation"). Accordingly, to the extent that any witnesses are required to travel from outside of New York to testify, the inconvenience will be minimal. By contrast, direct flights to Phoenix or Salt Lake City are comparatively more difficult to find and are not available from as many locations, and therefore Milton's proposed districts of transfer are, if anything, comparably less accessible than New York.

Rather than address the relative accessibility of the districts in question, Milton claims that in light of the uncertainty of the COVID-19 pandemic, "[t]he ability of all parties and witnesses

stay within a reasonable driving distance of the place of trial may turn out to be essential." (Def.'s Mot. 21.) Even setting aside that the fact that it takes more than 10 hours to drive between Phoenix and Salt Lake City, and notwithstanding Milton's persistence in focusing on only his own convenience and the convenience of individuals in Phoenix or Salt Lake City, the witnesses at this trial, including victims, as described above, reside across the country.[4] Especially during the COVID-19 pandemic, the relative accessibility of New York City weighs heavily against transfer.

### 9.      Docket Conditions

The ninth *Platt* factor, the docket conditions of the district courts involved, does not support transfer. Although Milton states that "[t]he dockets in the District of Utah and District of Arizona appear to allow for an earlier trial date" (Def.'s Mot. 21), he provides no support for this claim. Instead, he refers to 2020 statistics reflecting the total number of cases pending in each district, without apparent acknowledgment that the three districts do not have the same number of judgeships. (Def.'s Mot. 22 n.10.) Although it is difficult to compare the total docket conditions of the districts, in the 12-month period ended June 30, 2021, the Southern District of New York had 495 filings and 686 pending cases per judgeship, while the District of Arizona had 756 filings and 437 pending cases per judgeship, and the District of Utah had 483 filings per judgeship and 556 pending cases per judgeship. During that time period, judges in the Southern District of New

---

[4]      It is uncertain what the state of the pandemic will be, assuming there still is an ongoing pandemic, at the time of trial in this case. Nonetheless, at the time of the filing of this brief, New York County was experiencing a daily average of 21.9 new cases per 100,000 people (with a vaccination rate of 78% having received one or more doses), while Salt Lake County was experiencing 36.8 new cases each day per 100,000 people (with a vaccination rate of 63% having received one or more doses), and Maricopa County was experiencing 41.9 new cases each day per 100,000 people (with a vaccination rate of 53% having received one or more doses). *See* https://covidactnow.org/ (accessed Sept. 1, 2021).

York were able to complete 15 trials per judgeship, while judges in the District of Arizona completed 8 trials per judgeship and judges in the District of Utah completed 6 trials per judgeship.[5]

In any case, the Southern District of New York "has a well-managed docket and the ability to hear this matter." *Avenatti*, 2019 WL 4640232, at *5. Milton does not argue otherwise, and has made no showing to justify weighing this factor in favor of transfer.

### 10.  Other Factors

Milton identifies three additional factors that he claims support transfer. (Def.'s mot. 22.) None do. First, Milton suggests that the existence of the COVID-19 pandemic in some way supports his transfer request, though he fails to explain how, other than to vaguely refer to the Confrontation Clause and "a host of complicated issues." (Def.'s Mot. 22.) "But this is an argument against holding any trial at all, rather than where to hold the trial." *Blakstad*, 2020 WL 5992347, at *6. There have been multiple trials in recent months, and there continue to be trials, in the Southern District of New York involving out-of-state defendants and witnesses. As noted above, if anything, the circumstances presented by the COVID-19 pandemic favor trial in New York City.

Second, Milton claims that "[t]he continuity of Mrs. Milton's medical care requires that she and Mr. Milton remain at either their home in Utah or in Arizona." (Def.'s Mot. 22.) Milton provides no additional detail as to why his wife (assuming she decides to attend trial every day) can receive care only in Utah or Arizona and not in New York City, why Milton's presence in his

---

[5]    *See* U.S. District Courts—Federal Court Management Statistics–Profiles—During the 12-Month Periods Ending June 30, 2016 Through 2021 (June 30, 2021), https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0630.2021.pdf (accessed Sept. 1, 2021).

Utah or Arizona home would be required during trial, unlike during other trips Milton has made to the east coast, or why Milton, notwithstanding his resources, has to personally oversee his wife's medical care. In any case, as courts in this district have observed in similar circumstances, Milton's trial commitments will interfere with his responsibilities to his wife regardless of where trial proceeds, and he cannot "show that trial here 'would be so unduly burdensome that fairness requires the transfer' to" Utah or Arizona. *Estrada*, 880 F. Supp. 2d at 485 (quoting *Posner*, 549 F. Supp. at 477); *see also United States v. Jones*, No. 21 Cr. 59 (LAP), 2021 WL 3500806, at *3 (S.D.N.Y. Aug. 5, 2021) ("Although the importance of [familial] obligations is not lost on the Court, the fact of the matter is that '[e]very life is significantly disrupted during a trial wherever it is held.'" (quoting *Wilson*, 2001 WL 798018, at *3)). Any disruption to Milton's wife is unfortunate, but Milton has not provided a sufficient basis to conclude that trial cannot proceed in New York.

Third, Milton points generally to the existence of private civil securities fraud actions proceeding in the District of Arizona. (Def.'s Mot. 22.) Milton claims that there will be "significant overlap in both witnesses and evidence between the civil and criminal litigation" and that "transfer of this criminal case to the District of Arizona or the nearby District of Utah will result in enormous cost and resource savings for all parties." (Def.'s Mot. 22.) Milton does not provide any basis or explanation for why any of these claims are true. To the contrary, as described above, transfer to the District of Arizona would impose substantial costs on the taxpayers and result in no efficiency or resource saving, and there is no logical connection between a civil case occurring in the District of Arizona and transfer of this case more than 650 miles from Phoenix to the District of Utah. In

24

any case, Milton points to no authority suggesting that the existence of a private civil suit is relevant to the consideration of a transfer motion in a criminal case.

* * *

In sum, the circumstances here strongly favor denial of the motion to transfer the case. Even in cases where some of the *Platt* factors "favor or perhaps favor transfer," *Datta*, 797 F. Supp. 2d at 450, courts nonetheless deny such motions where defendants do not meet their burden of overcoming the presumption that a trial shall be held in the initial district, *see, e.g.*, *id.* (denying motion to transfer even while noting "[i]t appears that more of the events pertinent to the indictment occurred in Texas than here, defendant's business is centered there, and the defendant's family now resides in Texas" and that "it may be that more trial witnesses ultimately will prove to be Texas rather than New York area residents"); *United States v. Pastore*, No. 17 Cr. 343 (NSR), 2018 WL 395490, at *5 (S.D.N.Y. Jan. 11, 2018) (denying transfer where two of the *Platt* factors—residence of defendant and location of counsel—favored transfer and the others were neutral or militated against transfer); *Percoco*, 2017 WL 6314146, at *18 (denying transfer despite location of defendants, a number of witnesses, and a number of relevant events in other district); *Larsen*, 2014 WL 177411, at *3 (denying transfer despite indigent defendant's residence, job and child care responsibilities supporting motion where other factors were opposed or neutral).

Here, the only factor that favors transfer—and only minimally so—is the location of the defendant. All other factors are either neutral or counsel in favor of trial in this Court. The motion to transfer should therefore be denied. *Blakstad*, 2020 WL 5992347, at *6 (denying transfer because "the only factor counseling in favor of transfer in this case is Blakstad's residence in San Diego, while all other factors are either neutral or weigh slightly in the Government's favor").

25

III.    **CONCLUSION**

For the reasons set forth above, the defendant's motion should be denied.

Dated:  New York, New York
        September 1, 2021

Respectfully submitted,

AUDREY STRAUSS
United States Attorney
for the Southern District of New York

By:      _s/_____
Jordan Estes
Matthew Podolsky
Nicolas Roos
Assistant United States Attorneys
One Saint Andrew's Plaza
New York, New York 10007
Telephone: (212) 637-2543/1947/2421

26