UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
                                                         :

UNITED STATES OF AMERICA,      :

                                                          :      Case No. 21-cr-478

            - against -                   :

TREVOR MILTON,                       :

                     Defendant.            :
------------------------------------------------------x


# REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

# THE INDICTMENT OR, IN THE ALTERNATIVE, TO TRANSFER VENUE

Bradley J. Bondi
CAHILL GORDON & REINDEL LLP
1990 K Street, NW, Suite 950
Washington, DC 20006
(202) 862-8910
bbondi@cahill.com

Marc Mukasey
MUKASEY FRENCHMAN LLP
570 Lexington Avenue, Suite 3500
New York, NY 1002
(212) 466-6400
Marc.Mukasey@mfsllp.com

Terence Healy
HUGHES HUBBARD & REED LLP
1775 I Street, NW
Washington, DC 20006
(202) 721-4676
terence.healy@hugheshubbard.com

*Counsel for Trevor Milton*

# TABLE OF CONTENTS

                                                                             **Page**

ARGUMENT ..........................................................................................................................1

    I. The Court Should Dismiss Because Venue in this District Is Improper .........................1

    II. The Court Should Transfer Venue to the District of Arizona or the District of Utah ....................................................................................................................................4

        A. Fairness and the Interests of Justice Require Transfer Under Rule 21(b).......... 4

        B. The Location of Defendant Weighs Heavily in Favor of Transfer .................... 4

        C. The Location of Relevant Witnesses Weighs Heavily in Favor of Transfer ............................................................................................................... 5

        D. The Location of Events Weighs Heavily in Favor of Transfer .......................... 7

        E. The Location of Documents and Physical Evidence Weighs Heavily in Favor of Transfer ................................................................................................ 8

        F. Other Special Considerations Weigh Heavily in Favor of Transfer .................. 9

        G. Remaining Platt Factors Are Neutral or Weigh Slightly in Favor of Transfer ............................................................................................................... 9

CONCLUSION.....................................................................................................................10

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                                                                    **Page(s)**

*Borteanu v. Nikola Corp.*,
   No. 2:20 Civ. 01797 (D. Ariz. filed Sept. 15, 2020) ............................................................... 10

*Leroy v. Great Western United Corp.*,
   443 U.S. 173 (1979) .................................................................................................................. 2n

*Platt v. Minnesota Mining & Mfg. Co.*,
   376 U.S. 240 (1964) ................................................................................................................... 4

*Salem v. Nikola Corp.*,
   No. 2:20 Civ. 04354 (GRB) (E.D.N.Y. Nov. 23, 2020), ECF No. 45 ....................................... 6

*SEC v. Milton*,
   No. 21 Civ. 6445 (AKH) (S.D.N.Y. Aug. 26, 2021), ECF No. 27 ........................................... 4n

*United States v. Blakstad*,
   No. 19-CR-486 (ER), 2020 WL 5992347 (S.D.N.Y. Oct. 9, 2020) ..................................... 7, 8

*United States v. Brooks*,
   No. 08 Cr. 35 (PKL), 2008 WL 2944626 (S.D.N.Y. July 31, 2008) ........................................ 9

*United States v. Canale*,
   No. 14 Cr. 713 (KBF), 2015 WL 3767147 (S.D.N.Y. June 17, 2015) ..................................... 9

*United States v. Ebbers*,
   No. S4 02 CR. 1144 (BSJ), 2004 WL 2346154 (S.D.N.Y. Oct. 18, 2004) .......................... 7, 8

*United States v. Estrada*,
   880 F. Supp. 2d 478 (S.D.N.Y. 2012) ............................................................................... 7, 10n

*United States v. Hanley*,
   No. 94 Crim. 394 (DAB), 1995 WL 60019 (S.D.N.Y. Feb. 10, 1995) ..................................... 8

*United States v. Jessup*,
   38 F.R.D. 42 (M.D. Tenn. 1965) ............................................................................................... 5

*United States v. Johnson*,
   53 F. Supp. 596 (D. Del. 1944) ............................................................................................... 3n

*United States v. Johnson*,
   323 U.S. 273 (1944) .............................................................................................................3, 3n

*United States v. Keuylian*,
 602 F.2d 1033 (2d Cir. 1979) ............................................................................... 8, 9-10

*United States v. Kolfage*,
 No. 20-Cr.412 (AT), 2020 WL 7342796 (S.D.N.Y. Dec. 14, 2020) ........................7

*United States v. Larsen*,
 No. 13-CR-688 (JMF), 2014 WL 177411 (S.D.N.Y. Jan. 16, 2014)..........................5

*United States v. Layne*,
 No. 05-Cr-87 (HB), 2005 WL 1009765 (S.D.N.Y. May 2, 2005)..............................5

*United States v. Maldonado-Rivera*,
 922 F.2d 934 (2d Cir. 1990)....................................................................................10n

*United States v. Martino*,
 No. S1-00-CR-389 (RCC), 2000 WL 1843233 (S.D.N.Y. Dec. 14, 2000) ...............4

*United States v. Ohle*,
 678 F. Supp. 2d 215 (S.D.N.Y. 2010)......................................................................2n

*United States v. Posner*,
 549 F. Supp. 475 (S.D.N.Y. 1982) .......................................................................4, 5

*United States v. Rodriguez*,
 No. 16 Cr. 41 (FPG) (HBS), 2018 WL 2126429 (W.D.N.Y. May 9, 2018) ..............4

*United States v. Russell*,
 582 F. Supp. 660 (S.D.N.Y. 1984) .........................................................................10n

*United States v. Spy Factory, Inc.*,
 951 F. Supp. 450 (S.D.N.Y. 1997) .......................................................................7, 9

*United States v. Szur*,
 No. 97 Cr. 108 (JGK), 1998 WL 132942 (S.D.N.Y. Mar. 20, 1998) ......................2n

*United States v. Wilson*,
 No. 01 Cr. 53 (DLC), 2001 WL 798018 (S.D.N.Y. July 13, 2001)..........................4

**Statutes**

15 U.S.C. § 78aa ................................................................................................................2n

18 U.S.C. § 3237................................................................................................................2n

56 Stat. 1087 (Dec. 24, 1942); codified at 18 U.S.C. § 420f (since repealed)...............3n

**Rules**

Federal Rule of Criminal Procedure 18 ................................................................................2n, 3

Federal Rule of Criminal Procedure 21(b)..............................................................................4, 10

**Constitutional Provisions**

U.S. Const. amend. VI ..................................................................................................................1

U.S. Const. art. III, § 2, cl. 3 .....................................................................................................1, 2

Defendant Trevor Milton respectfully submits this reply in further support of his motion.

**ARGUMENT**

Trevor Milton is innocent. Mr. Milton did not commit securities or wire fraud from November 2019 to September 2020 when he made statements while located in Utah or Arizona mostly on social media—and none directed specifically to the Southern District of New York—regarding the products and technology of Nikola Corporation ("Nikola"), the Arizona-based automotive company he founded in Utah in 2015. This case hinges on the reasonable beliefs underlying Mr. Milton's opinions and descriptions of *physical* evidence located at Nikola's Arizona headquarters; this case is *not* about insider trading, inflated revenues, banking transactions, or any other alleged securities or wire fraud in which New York is the typical background. The government brought this criminal case in this District to prejudice Mr. Milton in direct violation of jury vicinage protections doubly enshrined in Article III, Section 2 of, and the Sixth Amendment to, the Constitution. The Court should dismiss this case for improper venue, or, in the alternative, exercise its discretion to transfer the case to the District of Arizona or the District of Utah.

**I.    The Court Should Dismiss Because Venue in this District Is Improper.**

The Constitution unequivocally commands that "*Trial* shall be held in the State where the said Crimes *shall have been committed*," U.S. Const. art. III, § 2, cl. 3 (emphasis added), "by an *impartial jury* of the States and district wherein the crime shall have been committed, which district shall have been previously ascertained by law," *id.* amend. VI (emphasis added). These provisions were designed to preclude the government from shopping for a venue that would not afford the defendant an impartial jury—which is exactly what has happened here. Employing the most generic of allegations—that Mr. Milton committed crimes "in the Southern District of New York and elsewhere," Indictment ¶¶ 82, 84, 86, and that Nikola combined with a New

York-based SPAC and was listed on NASDAQ, *id.* ¶¶ 13, 15-16, Government's Opposition Brief ("Opp.") at 2 [Doc. 15]—the government demands that this Court must accept those bald allegations, ignore substantive allegations of events occurring elsewhere, and permit the jury to decide at trial whether Mr. Milton's alleged acts were indeed committed in this District.[1] But to delegate the decision on venue in a case like this to the very jury that Mr. Milton challenges as impartial is to deny Mr. Milton his constitutional rights.

Before any defendant can be subjected to a constitutionally permissible trial, regardless of whether he is ultimately convicted or acquitted, the judge must decide that the "crime" charged "shall have been committed" in that venue. U.S. Const. art. III, § 2, cl. 3. Neither the government nor a jury can decide whether the "trial" shall be "held." *Id.* Only the judge may determine—subject to appellate review of this issue of law—that the constitutionally required prerequisites to a criminal trial have been satisfied.

If venue *is* improper, and yet the case nonetheless can proceed through *trial* on the weak conclusory allegations in this Indictment—as the government contends is all that is necessary—then the protections afforded by the Constitution against (i) trial and (ii) a not impartial jury would be eviscerated. The plain language of the Constitution protects against subjecting a defendant to the harm and inconvenience of *trial* when venue is improper, regardless of the ultimate outcome. The government cannot rewrite the Constitution to substitute the word

---

[1] The government misunderstands Mr. Milton's argument, made in detail in pages 4 through 12 of Defendant's Opening Brief ("Def's Br.")[Doc. 11], which is a *legal* argument about statutory interpretation of the applicable venue statutes (15 U.S.C. § 78aa, 18 U.S.C. § 3237) and Federal Rule of Criminal Procedure 18, and not a challenge to the sufficiency of the government's *factual* pleadings. *See, e.g., United States v. Ohle*, 678 F. Supp. 2d 215, 231 (S.D.N.Y. 2010); *United States v. Szur*, No. 97 Cr. 108 (JGK), 1998 WL 132942, at *9 (S.D.N.Y. Mar. 20, 1998). Moreover, review of cases in the civil context is powerfully instructive by way of analogy. *See Leroy v. Great Western United Corp.*, 443 U.S. 173, 186-87 (1979) ("[S]uch a reading of § 1391(b) is inconsistent with the underlying purpose of the provision, *for it would leave the venue decision entirely in the hands of plaintiffs,* rather than making it 'primarily a matter of convenience of litigants and witnesses.'") (emphasis added).

"outcome" for "trial." Our legal system was designed to ensure that judges determine the law and serve as gatekeepers to protect the constitutional rights of the accused—both the right not to go to "trial" in an improper venue *and* the right against trial by a jury that is not impartial.

Further, the government misconstrues *United States v. Johnson*, 323 U.S. 273 (1944), which firmly reiterates the fundamental canon of statutory construction that every statute, including venue statutes, be interpreted to avoid constitutional challenge.[2] On Count I, if Mr. Milton's tweets, posts, podcasts, and interviews were to constitute an "act or transaction constituting" a violation of Section 10(b), those acts logically occurred in the *sending* state, not every state where they were received (like the dentures in *Johnson*). On Count II, under the Second Circuit's substantial contacts test, Arizona plainly has far more substantial contacts than New York, and Rule 18 should be construed not to authorize venue in this District. On Count III, *Johnson* speaks directly to the imperative of construing a venue statute focused on sending-and-receiving crimes to favor criminal trial in the *sending* jurisdiction, especially when it is the defendant's home. Under Article III, Section 2 of, and the Sixth Amendment to, the Constitution and applying the Supreme Court's reasoning in *Johnson*, this Court should dismiss this case for improper venue, or, in the alternative, transfer the case to avoid serious constitutional concerns.

---

[2] The court's decision in *Johnson* involved criminal indictments in the District of Delaware against defendants in Illinois charged with violating federal law by sending dentures from Chicago, Illinois into Delaware. *See United States v. Johnson*, 53 F. Supp. 596, 596-97 (D. Del. 1944). The statute provided that "it shall be unlawful … to use the mails … for the purpose of sending or bringing into" a state any dentures that were not cast by a person licensed to practice dentistry in the receiving state or authorized by a licensed dentist in the receiving state. 56 Stat. 1087 (Dec. 24, 1942); codified at 18 U.S.C. § 420f (since repealed). The district court explained that "[d]efendants contend that unlawful use of the mails under this statute can be prosecuted only in the district in which the prohibited matter was deposited in the mails. I think this position sound." *Johnson*, 53 F. Supp. at 597. The district court quashed the indictment and the Supreme Court affirmed, holding that venue was only proper in the Northern District of Illinois. *See Johnson*, 323 U.S. at 278. As the Supreme Court explained: "if the enactment reasonably permits the trial of the sender of outlawed dentures to be confined to the district of sending, . . . such construction should be placed on the Act. Such construction, while not required by the compulsion of Article III, s 2 of the Constitution and of the Sixth Amendment, is more consonant with the considerations of historic experience and policy which underlie those safeguards in the Constitution regarding the trial of crimes." *Id.* at 275. The Supreme Court's example in *Johnson* illustrates the extent to which courts should interpret federal statutes to prevent the government from choosing a venue for prosecution that is remote or unfavorable to a defendant.

3

## II. The Court Should Transfer Venue to the District of Arizona or the District of Utah.

### A. Fairness and the Interests of Justice Require Transfer Under Rule 21(b).

This case is so "peculiarly and inherently" an Arizona case that fairness and the interests of justice require transfer under Federal Rule of Criminal Procedure 21(b).[3] *See United States v. Posner*, 549 F. Supp. 475, 480 (S.D.N.Y. 1982). Here, the location of the defendant, the location and convenience of witnesses, the location of events, the location of physical evidence, *and* special considerations—five factors endorsed by the Supreme Court in *Platt v. Minnesota Mining & Mfg. Co.*, 376 U.S. 240 (1964)—heavily favor transfer to the District of Arizona. *See, e.g., Posner*, 549 F. Supp. at 480; *United States v. Rodriguez*, No. 16 CR 41 (FPG) (HBS), 2018 WL 2126429, at *7 (W.D.N.Y. May 9, 2018) ("Importantly, the two factors that carry particular weight in this Circuit – the location of Defendants and the timing of the motion – both favor transfer"); *compare United States v. Wilson,* No. 01 Cr. 53 (DLC), 2001 WL 798018 (S.D.N.Y. July 13, 2001) (denying transfer where "the only factor that argues for transfer is the location of the defendants" in California). The District of Utah is the second-best transferee forum because Mr. Milton and key witnesses are located or have homes there, the District of Utah oversees Mr. Milton's pre-trial supervision, and he is permitted to travel freely between Utah and Arizona.

### B. The Location of Defendant Weighs Heavily in Favor of Transfer.

Notwithstanding the government's protests to the contrary, the presumption in favor of prosecution in the original district "does not outweigh consideration of the defendant's residence." *United States v. Martino*, No. S1-00-CR-389 (RCC), 2000 WL 1843233, at *6 (S.D.N.Y. Dec. 14, 2000). In an attempt to evade precedent in this District, the government

---

[3] In the parallel civil case, the SEC acknowledged that venue would be proper in both the Districts of Arizona and Utah. *See SEC v. Milton*, No. 21 Civ. 6445 (AKH) (S.D.N.Y. Aug. 26, 2021), ECF No. 30 at 15, n.8. The government does not appear to contest that conclusion here.

erroneously claims there must be some "extraordinary circumstance necessitating a trial in his home district." Opp. at 13. That is not the law. *See, e.g., Posner*, 549 F. Supp. at 477. Mr. Milton—who has homes in Arizona and Utah, has only been to this District *twice* in his entire life before this case and provides care for his chronically ill wife—should be tried in Arizona or Utah. *See* Def's Br. at 16, 22 [Doc. 11];[4] c*ompare, e.g., United States v. Layne*, No. 05-CR-87 (HB), 2005 WL 1009765, at *2-*3 (S.D.N.Y. May 2, 2005) (defendant had responsibilities to incapacitated mother), *with United States v. Larsen*, No. 13-CR-688 (JMF), 2014 WL 177411, at *3 (S.D.N.Y. Jan. 16, 2014) (trial brevity would minimize impact on child care). The government's veiled suggestion that the first *Platt* factor can be disregarded due to Mr. Milton's financial resources hardly bears any response. *See* Opp. at 12; *cf. United States v. Jessup*, 38 F.R.D. 42, 46 (M.D. Tenn. 1965) ("Surely the Government does not contend that Rule 21(b) was only intended to benefit the poor.").

### C. The Location of Relevant Witnesses Weighs Heavily in Favor of Transfer.

All of the more than fifty fact witnesses that Mr. Milton anticipates calling as trial witnesses live and work in Arizona or Utah or well outside this District. Decl. of Bradley J. Bondi ¶ 2. The vast majority of the fact witnesses live and work in Arizona. These witnesses include engineers, executives, and marketing personnel currently employed at Nikola in Arizona, as well as former Nikola employees and other individuals who were never employed by Nikola.[5] Their testimony will center collectively on the accuracy of Mr. Milton's statements regarding Nikola's products and technology; legal advice provided to, and followed by, Mr. Milton; and

---

[4] Mr. Milton is also filing today a motion for leave to file under seal two declarations, one from Mrs. Milton and one from a treating physician, describing her medical condition in greater detail.
[5] Nikola's counsel from Kirkland & Ellis LLP has restricted undersigned counsel's access to exculpatory information and company witnesses.

5

the review and approval of Mr. Milton's statements at all levels of Nikola. *Id.* ¶ 3. At this juncture, Mr. Milton does not foresee calling at trial *any* fact witness located in New York. *Id.* ¶ 2.

The government's dismissal of any concerns regarding the inconvenience to the scores of witnesses located in Arizona and neighboring Utah if this case proceeds in New York, especially during the COVID-19 pandemic, is unfounded. Although Mr. Milton has every confidence in this Court's ability to hold a trial safely, certain critical defense witnesses, some of whom are not vaccinated and/or possess COVID-19 co-morbidities, believe they are substantially safer driving to trial and staying in their own homes than flying across the country to New York and staying in a hotel. *Id.* ¶ 5. Further, Nikola, through its legal counsel, Kirkland & Ellis LLP, moved for the transfer of a securities fraud action (premised on nearly the same alleged conduct at issue here) from New York to Arizona based on their clear understanding that "the majority of the relevant documents and potential witnesses (including Nikola employees) are located in Arizona" and "the convenience of the parties and witnesses . . . warrants transfer" under Section 1404. *See Salem v. Nikola Corp.*, No. 2:20 Civ. 04354 (GRB) (E.D.N.Y. Nov. 23, 2020), ECF No. 45 at 3. We agree.

The government is unwilling or unable to name a single witness it intends to call, yet expects this Court to conclude that the *unknown* location of its *unnamed* witnesses weighs against transfer. The government merely asserts that "it does anticipate calling New York-based witnesses, including witnesses who interacted directly with Milton and victim witnesses." Opp. at 14. Yet, by all indication, the government obtained the vast majority of its discovery from witnesses in Arizona and Utah. Mr. Milton has met his burden by providing specific examples

of testimony by numerous witnesses located in Arizona and by providing information about witnesses who are reluctant to testify if the trial were held in New York.

### D. The Location of Events Weighs Heavily in Favor of Transfer.

Despite the government's best efforts to characterize the Indictment otherwise, *see* Opp. at 15, the events at issue are Mr. Milton's statements—all of which were made on social media, podcasts, or broadcast interviews while he was in Arizona or Utah—about Nikola's products and technology. Indictment ¶¶ 2, 4, 26-79; Bondi Decl. ¶ 6. This case is wholly unlike any other case cited by the government, *all* of which include phone calls, email exchanges, and other communications exhibiting a directionality absent in this case. *Compare United States v. Blakstad*, No. 19-CR-486 (ER), 2020 WL 5992347, at *1, *4 (S.D.N.Y. Oct. 9, 2020) (phone calls and email exchanges with Manhattan-based co-conspirator); *United States v. Kolfage*, No. 20 Cr. 412 (AT), 2020 WL 7342796, at *4 (S.D.N.Y. Dec. 14, 2020) (communications by co-conspirators, who are residents of multiple states, to and from various states); *United States v. Ebbers*, No. S4 02 CR. 1144 (BSJ), 2004 WL 2346154, at *1 (S.D.N.Y. Oct. 18, 2004) (conversations with analysts in New York); *United States v. Spy Factory, Inc.*, 951 F. Supp. 450, 457 (S.D.N.Y. 1997) (telephone calls made and illegal devices received in New York); *United States v. Estrada*, 880 F. Supp. 2d 478, 483 (S.D.N.Y. 2012) (distribution of allegedly mislabeled pills into New York). Here, the Indictment does *not* allege that Mr. Milton communicated purposefully or directly with any purportedly aggrieved investor in the District. His social media acts were received in every single state (and elsewhere), so there is nothing unique to New York.

The government's argument that "the abuse of New York institutions is central to this case" is also unpersuasive. Opp. at 16. A reverse merger between Nikola and VectoIQ, two

7

*Delaware* corporations, is not an "event that took place in New York." *Id*. Moreover, neither *Blakstad* nor *Ebbers* stands for the audacious proposition that the mere act of being publicly listed on NASDAQ shifts the locus of all company-related events to New York. *See Blakstad*, 2020 WL 5992347, at *1, *4; *Ebbers*, 2004 WL 2346154, at *1. The "nerve center" of this case is indisputably in Arizona. *See, e.g., United States v. Hanley*, No. 94 Crim. 394 (DAB), 1995 WL 60019, at *3 (S.D.N.Y. Feb. 10, 1995).

### E. The Location of Documents and Physical Evidence Weighs Heavily in Favor of Transfer.

The government's claim that transfer to Arizona or Utah would require transporting its "documents, hard drives containing evidence, and other materials," Opp. at 17, is rich with irony.[6] The government cites *United States v. Keuylian*, 602 F.2d 1033 (2d Cir. 1979), in which the Court declined transfer to California in part because "luggage, firearms, and ammunitions"—all physical evidence—were in New York where they were seized. *Id.* at 1038. This case—like *Keuylian*—involves *tangible* physical evidence.[7] Defense counsel anticipates that multiple fact and expert witnesses (including engineers and potentially Mr. Milton) will rely heavily on that physical evidence during testimony to demonstrate the functionality of the Nikola One, Nikola Two and Badger prototypes, the hydrogen dispensing station, and the component parts in these vehicles, and to establish that Mr. Milton had a well-founded basis for the opinions he expressed in the statements at issue. *See* Bondi Decl. ¶¶ 7-8. For instance, the Indictment alleges that Mr.

---

[6] The government appears to have made an inadvertent "copy and paste" error from a brief in a different matter, most likely *Kolfage*, because there is no conceivable reason to ship evidence in this case to "Colorado." Opp. at 17.
[7] This physical evidence includes (1) the multi-ton Nikola One semi-truck prototype, Indictment ¶¶ 27-40; (2) two Nikola Two semi-truck prototypes, Indictment ¶ 37; (3) two Badger pickup truck prototypes, Indictment ¶¶ 41, 42, 50, 61; (4) a fixed hydrogen demonstration station, Indictment ¶ 63, and large, multi-ton, hydrogen electrolyzers, ¶ 64; and (5) the component parts in the vehicles such as the lithium batteries, axles, inverters, and infotainment, heating and cooling systems, Indictment ¶¶ 73-75. These items cannot be transported practically or safely to this District. *See* Def's Br. at 18-19.

8

Milton made specific misstatements that the Badger prototypes would be "fully functioning vehicle[s] inside and outside . . . not just some mock-up thing that other people have done." Indictment ¶ 50. The two Badger prototypes, located in Arizona, are functioning and drivable. Bondi Decl. ¶ 9. At least one witness has ridden in a Badger prototype and will be able to guide the jury through the features that Nikola engineered. *Id.* All of the physical evidence represents complex technology, and witness testimony with diagrams and photos will not suffice.

F. **Other Special Considerations Weigh Heavily in Favor of Transfer.**

It is indisputable that Mr. Milton brought this motion to dismiss or transfer venue right "out of the gate." Tr. of Aug. 13, 2021 Conference at 4. By contrast, the government relies in its Opposition Brief on numerous cases in which the courts deny transfer, relying at least in part on factors not present here—most often, undue delay by the defendant or duplication of judicial resources. *See, e.g., Spy Factory*, 951 F. Supp. at 462 (1997) ("inexcusable delay" by defendants in filing motion); *Keuylian*, 602 F.2d at 1038 ("The most important factor was appellant's delay in moving to transfer the case."); *United States v. Canale*, No. 14 Cr. 713 (KBF), 2015 WL 3767147, at *4 (S.D.N.Y. June 17, 2015) (transfer "would very likely result in delays and duplication of judicial resources"); *United States v. Brooks*, No. 08 Cr. 35 (PKL), 2008 WL 2944626, at *3 (S.D.N.Y. July 31, 2008) (giving "significant weight" to unreasonable delay). The case is at its beginning, and there is no risk of prejudice or delay, or duplication of judicial resources by transfer.

G. **Remaining Platt Factors Are Neutral or Weigh Slightly in Favor of Transfer.**

Two of the three undersigned defense lawyers of record in this litigation reside and work in the Washington, D.C. area; Mr. Milton's longstanding Arizona counsel, along with undersigned counsel from Washington, D.C., is already defending private securities litigation

9

pending against Mr. Milton in the District of Arizona. Bondi Decl. ¶ 10; *Borteanu v. Nikola Corporation*, No. 2:20 Civ. 01797 (D. Ariz. filed Sept. 15, 2020). The increased cost to the government of moving the New York-based prosecutorial team to Arizona for trial would be offset by the reduced cost of transporting and housing its witnesses, most of whom appear to be based primarily in Arizona or, secondarily, in Utah.[8] The remaining *Platt* factors—disruption to the defendant's business, expense to the parties, location of counsel, relative accessibility of place of trial and docket conditions—are either neutral or weigh slightly in favor of transfer to the District of Arizona. *See* Def's Br. at 19-22 [Doc. 11].

*   *   *

Because the location of the defendant, the location and convenience of witnesses, the location of events, the location of physical evidence, and special considerations overwhelmingly support transfer, this Court should transfer this case under Rule 21(b) to the District of Arizona or the District of Utah, both of which are clearly proper venues as the SEC acknowledged in a parallel case. *See supra* n.2. The District of Arizona is the superior venue under the *Platt* factors, while the District of Utah would be a close second. Venue is *not* proper in this District.

## CONCLUSION

For the foregoing reasons and the reasons set forth in the opening brief, Defendant Trevor Milton respectfully requests that the Court dismiss this action for improper venue, or, in the alternative, transfer this action to the District of Arizona or to the District of Utah.

---

[8] The government erroneously asserts that the location of the prosecution team is relevant to the seventh *Platt* factor, the location of counsel. The Second Circuit reads that *Platt* factor to mean "location of defense counsel." *See United States v. Maldonado-Rivera*, 922 F.2d 934, 966 (2d Cir. 1990). In *Estrada*, the court explained that the *Platt* factor considers only defense counsel because "[t]he burdens of travel on prosecutors are part of the general preference for holding trials where the indictment is returned." 880 F. Supp. 2d at 485; *see also United States v. Russell*, 582 F. Supp. 660, 664 (S.D.N.Y. 1984) ("[T]he major governmental interest in keeping the case in New York is to retain the prosecution team . . . While it is understandable that the Government would wish to keep this outstanding team on the case, it is no great problem to move them to [transferee district] for the trial.").

Dated: September 8, 2021                    Respectfully submitted,

                                                                              /s/
                                                           _____

Bradley J. Bondi
CAHILL GORDON & REINDEL LLP
1990 K Street, NW, Suite 950
Washington, DC 20006
(202) 862-8910
bbondi@cahill.com

Marc Mukasey
MUKASEY FRENCHMAN LLP
570 Lexington Avenue, Suite 3500
New York, NY 1002
(212) 466-6400
Marc.Mukasey@mfsllp.com

Terence Healy
HUGHES HUBBARD & REED LLP
1775 I Street, NW
Washington, DC 20006
(202) 721-4676
terence.healy@hugheshubbard.com

*Counsel for Trevor Milton*