UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————

|  | x |  |
| --- | --- | --- |
| UNITED STATES OF AMERICA | : | |
| | : | |
| -against- | : | |
| | : | |
| | : | Case No. 1:21-cr-00478-ER |
| | : | |
| TREVOR MILTON, | : | |
| | : | |
| Defendant. | : | |
| | x | |

———————————————————————

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION
TO DISMISS COUNTS TWO AND THREE OF THE INDICTMENT FOR FAILURE TO
SUFFICIENTLY ALLEGE THAT THE OBJECT OF DEFENDANT'S ALLEGED
SCHEME WAS MONEY OR PROPERTY**

Bradley J. Bondi
CAHILL GORDON & REINDEL LLP
1990 K Street NW, Suite 950
Washington, DC 20006
(202) 862-8910
bbondi@cahill.com

Marc Mukasey
MUKASEY FRENCHMAN LLP
570 Lexington Avenue, Suite 3500
New York, NY 10022
(212) 466-6400
Marc.Mukasey@mfsllp.com

Terence Healy
HUGHES HUBBARD & REED LLP
1775 I Street NW
Washington, DC 20006
(202) 721-4676
terence.healy@hugheshubbard.com

*Counsel for Trevor Milton*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...........................................................................................1

FACTUAL BACKGROUND ...........................................................................................2

ARGUMENT ...........................................................................................5

I.  The Constitution and the Federal Rules of Criminal Procedure
Require that an Indictment Contain Sufficient Factual Allegations
That, if Proven, Would Establish Each Element of the Charged
Offense. ...........................................................................................5

II.  Counts Two and Three of the Indictment Fail To Include Sufficient
Factual Allegations That, if Proven, Would Establish that the Object
of Mr. Milton's Alleged Misstatements Was Money or Property. ......................10

A.  A Scheme To Defraud Under 18 U.S.C. § 1348 (Count Two) or
18 U.S.C. § 1343 (Count Three) Must Have Money or Property
as its Object. ...........................................................................................10

B.  The Indictment Fails To Include Sufficient Factual Allegations
That, if Proven, Would Establish that Mr. Milton's Alleged
Misstatements Were the "Basis of the Bargain." .......................................11

III.  The Proper Remedy Is Dismissal of the Indictment. ....................................13

# TABLE OF AUTHORITIES

**Cases**          **Page(s)**

*Boyce Motor Lines, Inc. v. United States,*
   342 U.S. 337 (1952)..................................................................................2n, 7

*Goldman Sachs Grp., Inc. v. Arkansas Teacher Ret. Sys.,*
   141 S. Ct. 1951 (2021)...................................................................................5n

*Hamling v. United States,*
   418 U.S. 87 (1974).........................................................................................6

*In re Merck & Co., Inc. Sec. Litig,,*
   432 F.3d 261 (3d Cir. 2005)............................................................................5

*Kelly v. United States,*
   140 S.Ct. 1565 (2020)..............................................................................10, 12

*McNally v. United States,*
   483 U.S. 350, 359 (1987).............................................................................10

*New York v. Tanella,*
   374 F.3d 141 (2d Cir. 2004)..........................................................................2n

*Pasquantino v. United States,*
   544 U.S. 349 (2005)......................................................................................10

*Russell v. United States,*
   369 U.S. 749 (1962)........................................................................................6

*Stinn v. United States,*
   856 F. Supp. 2d 531 (E.D.N.Y. 2012) ..........................................................9

*United States v. Berlin,*
   472 F.2d 1002 (2d Cir. 1973)........................................................................13

*United States v. Laurent,*
   861 F. Supp. 2d 71 (E.D.N.Y 2011) ............................................................13

*United States v. Aleynikov,*
   737 F. Supp. 2d 173 (S.D.N.Y. 2010)......................................................7, 13

*United States v. Autuori,*
   212 F.3d 105 (2d Cir. 2000)..........................................................................10

*United States v. Biba*,
   395 F. Supp. 3d 227 (E.D.N.Y. 2019) ...................................................................9

*United States v. Blaszczak*,
   947 F.3d 19 (2d Cir. 2019)...............................................................................9

*United States v. Calderon*,
   944 F.3d 72 (2d Cir. 2019)...........................................................................10

*United States v. Coscia*,
   866 F.3d 782 (2d Cir. 2017)............................................................................7

*United States v. Forbes*,
   249 F. App'x 233 (2d Cir. 2007) ...................................................................5n

*United States v. Frenkel*,
   682 F. App'x 20 (2d Cir. 2017) ......................................................................8

*United States v. Gonzalez*,
   686 F.3d 122 (2d Cir. 2012)....................................................................1n, 6, 7

*United States v. Hatfield*,
   724 F. Supp. 2d 321 (E.D.N.Y. 2010) .............................................................8

*United States v. Kurtz*,
   No. 04 Cr. 0155 (RJA), 2008 WL 1820903 (W.D.N.Y. Apr. 21, 2008) ...............11

*United States v. Mahaffy*,
   693 F.3d 113 (2d Cir. 2012)............................................................................7

*United States v. Mittelstaedt*,
   31 F.3d 1208 (2d Cir. 1994)......................................................................11, 12

*United States v. Nejad*,
   No. 18 Cr. 224 (AJN), 2019 WL 6702361 (S.D.N.Y. Dec. 6, 2019) ......................6

*United States v. Pacione*,
   738 F.2d 567 (2d Cir. 1984)............................................................................8

*United States v. Pierce*,
   224 F.3d 158 (2d Cir. 2000)............................................................................8

*United States v. Pirro*,
   212 F.3d 86 (2d Cir. 2000)...........................................................................7, 9

*United States v. Serrano*,
   191 F. Supp. 3d 287 (S.D.N.Y. 2016)..............................................................9

*United States v. Shellef*,
   507 F.3d 82 (2d Cir. 2007)..................................................................10

*United States v. Starr*,
   816 F.2d 94 (2d Cir. 1987)..................................................................11

*United States v. Takhalov*,
   827 F.3d 1307 (11th Cir. 2016) ..........................................................11

*United States v. Vorley*,
   420 F. Supp. 3d 784 (N.D. Ill. 2019) .................................................10

*United States v. Walsh*,
   194 F.3d 37 (2d Cir. 1999)..............................................................6, 13

## Constitutional Provisions

U.S. Const. amend. V...................................................................................1, 6

U.S. Const. amend. VI..................................................................................1, 6

## Regulations

17 C.F.R. § 230.424(b)(3)........................................................................5n, 13n

## Rules

Fed. R. Crim. P.

   Rule 7(c)..................................................................................................1, 6

   Rule 12................................................................................................1, 6, 9

## Statutes

18 U.S.C.

   § 1343 ............................................................................................. *passim*

   § 1348............................................................................................. *passim*

Securities Exchange Act of 1934

   § 12.......................................................................................................6n, 7n

   § 15.......................................................................................................6n, 7n

**Other Authorities**

*Nikola Corporation, a Global Leader in Zero Emissions Transportation*
*Solutions, to Be Listed on NASDAQ Through Merger With VectoIQ*, Nikola
Corporation (March 3, 2020), https://nikolamotor.com/press_releases/nikola-
corporation-a-global-leader-in-zero-emissions-transportation-solutions-to-be-
listed-on-nasdaq-through-a-merger-with-vectoiq-74 ..............................................................3n

VectoIQ Acquisition Corp., Current Report (Form 8-K) (March 2, 2020),
https://www.sec.gov/Archives/edgar/data/1731289/000110465920028234/
tm2011332d1_8k.htm. .........................................................................................................3n

Pursuant to Rule 12(b)(3)(B) of the Federal Rules of Criminal Procedure, the Court should dismiss Counts Two and Three of the Indictment for failure to plead an offense and for lack of specificity.[1]  This prosecution violates Mr. Milton's constitutional rights under the Fifth and Sixth Amendments and Rule 7(c)(1) of the Federal Rules of Criminal Procedure because Counts Two and Three of the Indictment do *not* contain sufficient factual allegations that, if proven, would establish an essential element of each charged offense—that Mr. Milton's alleged misstatements were made to obtain "money or property."  If the Court does not dismiss Counts Two and Three, the Court at a minimum should order the government to provide a bill of particulars setting forth the essential facts of all elements of the charged offenses.[2]

## PRELIMINARY STATEMENT

Trevor Milton is innocent.  The Indictment charges Mr. Milton with two counts of securities fraud and one count of wire fraud based on alleged misrepresentations he made from November 2019 to September 2020 in "social media and television, print, and podcast interviews" as the Chief Executive Officer ("CEO") and later Executive Chairman of Nikola Corporation ("Nikola").  Indictment ¶ 1.  The Indictment alleges that Mr. Milton made these misrepresentations, going as far back as 2016, and primarily about Nikola products, in furtherance of an alleged scheme to defraud so-called "*retail* investors" in 2020 who might have seen these statements (some of which were years old) and partially relied upon them in

---

[1] As set forth in Mr. Milton's Motion to Dismiss the Indictment or, in the Alternative, to Transfer Venue (ECF 11), and his pending appeal of the Court's venue decision (ECF 33), this case should be dismissed because, respectfully, venue is not proper in the Southern District of New York.  Mr. Milton does not waive his constitutional right to venue in a proper district and submits this motion to the Court pursuant to the Court's previously ordered schedule.
[2] Although "it is a settled rule that a bill of particulars cannot save an invalid indictment," *United States v. Gonzalez*, 686 F.3d 122, 128 (2d Cir. 2012) (quoting *Russell v. United States*, 369 U.S. 749, 770 (1962), we argue that the court should order a bill of particulars if this Court were to hold the Indictment valid.  *See* Mr. Milton's Motion for a Bill of Particulars filed contemporaneously herewith.  In the Motion for a Bill of Particulars, Mr. Milton seeks, among other things, the basis on which the government contends each Alleged Misstatements (as defined therein) was made to obtain "money or property."

purchasing Nikola stock.  The Indictment fails to present any information concerning how Mr.

Milton's product-related statements—none of which pertained to Nikola's stock price, financial

performance or its key performance metrics (*e.g.*, profit/loss, earnings, etc.)—formed the basis

upon which these so-called "retail" investors were allegedly defrauded.  The Indictment entirely

lacks any factual allegations that, if proven, would establish that Mr. Milton's alleged

misstatements were made for the purpose of obtaining "money or property."  The Court should

dismiss Counts Two and Three of the Indictment for failure include sufficient factual allegations

that, if proven, would establish an *essential* element of each charged offense: that Mr. Milton's

alleged misstatements were made to obtain "money or property."

## FACTUAL BACKGROUND[3]

Mr. Milton founded Nikola, a company developing and building low- and zero-emissions

heavy duty trucks, as a privately held company in 2015.  Indictment ¶ 5.  In December 2016,

Nikola unveiled a prototype of its first-generation semi-truck, the Nikola One.  Indictment ¶ 27.

Nikola subsequently completed two prototypes of its second-generation semi-truck, the Nikola

Two, in April 2019.  Indictment ¶ 37.  In late 2020, Nikola entered into a partnership with an

internationally recognized Original Equipment Manufacturer to produce the Badger, a zero-

emissions pick-up truck which was intended to compete with the popular Ford F-150, and

completed at least one prototype of the Badger.  Indictment ¶¶ 47, 49, 59.

Mr. Milton, as founder, spoke publicly about Nikola and its products through various

forms of social and digital media.  Indictment ¶¶ 28, 36, 43, 50, 52, 73.  The government's

---

[3] We dispute the government's factual allegations, but on this motion to dismiss, we must accept the factual allegations on their face. *See Boyce Motor Lines, Inc. v. United States*, 342 U.S. 337, 343 n.16 (1952) (In reviewing a motion to dismiss, "the allegations of the indictment must be taken as true."); *New York v. Tanella*, 374 F.3d 141, 148 (2d Cir. 2004) (When reviewing a motion to dismiss, "we view the evidence in the light most favorable to the [government] and assume the truth of the allegations in the indictment.").

allegations show that the overwhelming majority of Mr. Milton's statements concerned Nikola's products and were not made to investors or through media channels directed to investors, but instead were made to auto enthusiasts, transportation industry followers, entrepreneurs, and other consumers.  *See, e.g.*, Indictment ¶¶ 28, 50, 66.  The Indictment does not allege—and cannot allege—that Mr. Milton intended to deprive any prospective purchaser of a Nikola product of money or property.

In November 2019, Nikola began negotiating to take the company public through a potential merger with VectoIQ, a publicly traded special purpose acquisition company ("SPAC").  Indictment ¶¶ 14, 19.  VectoIQ's shares were traded on the Nasdaq stock exchange under the ticker "VTIQ."  Indictment ¶ 15.  On March 3, 2020, Nikola and VectoIQ announced that they had entered into an agreement under which Nikola would become a publicly traded company through a "reverse" merger with VectoIQ, subject to the satisfaction of certain conditions.  Those conditions included shareholder approval and a six-month "lock-up" period, where Mr. Milton was prohibited from selling his shares in Nikola beginning June 3, 2020. Indictment ¶¶ 15, 19–20.[4]

The agreement also included a sale to a number of institutional investors by means of a private investment in public equity ("PIPE") offering.  Indictment ¶ 15.  VectoIQ and the institutional investors toured Nikola's facilities, reviewed Nikola's books and records, and otherwise conducted extensive diligence on Nikola's technology, facilities, and finances. Indictment ¶¶ 14–15.  The Indictment does not allege—and cannot allege—that those institutional investors were defrauded of "money or property."

---

[4] *See also Nikola Corporation, a Global Leader in Zero Emissions Transportation Solutions, to Be Listed on NASDAQ Through a Merger With VectoIQ*, Nikola Corporation, (March 3, 2020), https://nikolamotor.com/press_releases/nikola-corporation-a-global-leader-in-zero-emissions-transportation-solutions-to-be-listed-on-nasdaq-through-a-merger-with-vectoiq-74

The merger took place on June 3, 2020, at which point Nikola's stock became publicly traded on the Nasdaq stock exchange under the ticker "NKLA."  Indictment ¶ 16.  Accordingly, until June 3, 2020, there was no such thing as a publicly traded security in Nikola, and therefore no so-called "retail" investors *could* purchase Nikola stock.  Prior to June 3, 2020, Nikola investors consisted primarily of early private equity investors, many of whom partnered with Nikola and accepted roles on the Board of Directors, and all of whom conducted extensive technical and valuation due diligence on Nikola.  Indictment ¶ 17.  Additionally, since Nikola has become publicly traded, all trading of Nikola stock by so-called "retail" investors has been conducted on the secondary market.

In conjunction with Nikola's announced merger with VectoIQ, VectoIQ filed a Form 8-K with the Securities and Exchange Commission ("SEC") on March 2, 2020.  VectoIQ Acquisition Corp., Current Report (Form 8-K) (March 2, 2020).[5]  The government has not alleged—and cannot allege—any misstatement in VectoIQ's or Nikola's SEC filings.  Nikola also held regular calls with private investors seeking additional investments and made pitches to analysts and potential investors while Nikola was private.  Mr. Milton did not participate in pitches to analysts or in analyst calls; the Indictment contains no such allegations, and there are no allegations that any pitches made to private equity investors contained misstatements.

Since Nikola has become publicly traded on June 3, 2020, all trading of Nikola stock by so-called "retail" investors has been conducted *only* on the secondary market.  Because Mr. Milton was subject to a six-month lock up provision with respect to trading on his own behalf, he was unable to sell his shares until December 3, 2020 at the earliest—three months after the

---

[5] https://www.sec.gov/Archives/edgar/data/1731289/000110465920028234/tm2011332d1_8k.htm.

relevant period concluded in September 2020.  Indictment ¶ 20.[6]  Only on the following

convoluted theory could Mr. Milton have defrauded or intended to defraud anyone of "money or

property": that his alleged misstatements (including those that were years old and had been

publicly superseded by Nikola's subsequent technological advancements and official filings)

caused an artificial inflation in Nikola's stock price, those so-called "retail" investors paid too

much for their shares, and Mr. Milton stood to profit at some time in the future by selling his

shares in the company at that artificially inflated price (yet, paradoxically, a price that the market

had sustained).  The Indictment, however, does not allege—and cannot allege—that Mr. Milton's

alleged misstatements caused an artificial inflation of the price of Nikola stock.  If the Court does

not dismiss the Indictment in its entirety, Mr. Milton will establish at trial—as the government

knows from prior interactions with defense counsel—that none of the alleged misstatements

caused any material impact on the stock price of either VectoIQ or Nikola.  *In re Merck & Co.,*

*Inc. Sec. Litig,*, 432 F.3d 261, 269 (3d Cir. 2005).[7]

## ARGUMENT

**I.     The Constitution and the Federal Rules of Criminal Procedure Require that an
       Indictment Contain Sufficient Factual Allegations That, if Proven, Would Establish
       Each Element of the Charged Offense.**

        The Constitution of the United States provides that citizens shall not be "deprived of life,

liberty, or property, without due process of law" and that a criminal defendant must "be informed

---

[6] In order for Mr. Milton to profit while the lock-up was in place, the government would have to allege that Mr. Milton intended to keep the price of Nikola stock inflated for at least six months until his lock-up period expired. Even if the government could so allege, which it does not and cannot, Nikola would be required to issue a prospectus upon Mr. Milton's sale of securities given his controlling shareholder status.  17 C.F.R. § 230.424(b)(3). The prospectus would be another official filing by Nikola and would serve to cure any alleged misrepresentations in the market, thus rendering this illogical plan moot.

[7] *See Goldman Sachs Grp., Inc. v. Arkansas Teacher Ret. Sys.*, 141 S. Ct. 1951, 1961 n.2 (2021) ("[M]ateriality and price impact are overlapping concepts and . . . evidence relevant to one will almost always be relevant to the other."); *United States v. Forbes*, 249 F. App'x 233, 236 (2d Cir. 2007) (approving of the government's "references to the decline in Cendant's stock price or investor losses" because they "were probative on the issue of materiality and permissible under Federal Rule of Evidence 403.").

of the nature and cause of the accusation" against him.  U.S. Const. amends. V, VI.  Rule 7 of the

Federal Rules of Criminal Procedure, which codifies those rights enshrined in the Fifth and Sixth

Amendments to the Constitution, requires that all criminal indictments include "a plain, concise,

and definite written statement of the essential facts constituting the offense charged."  Fed. R.

Crim. P. 7(c)(1).  "The wording of this Rule imposes two requirements: the statement of the

essential facts *and* the citation of the statute.  *They are separate requirements and not a*

*restatement of one another*."  *United States v. Gonzalez*, 686 F.3d 122, 128 (2d Cir. 2012)

(emphasis in original; internal alterations and citation omitted).

        The Second Circuit further explains these requirements:  An indictment must "'first,

contain[] the elements of the offense charged and fairly inform[] a defendant of the charge

against which he must defend, and, second, enable[] him to plead an acquittal . . . in bar of future

prosecutions for the same offense.'"  *United States v. Nejad*, No. 18 Cr. 224 (AJN), 2019 WL

6702361, at *15 (S.D.N.Y. Dec. 6, 2019) (quoting *United States v. Stringer*, 730 F.3d 120, 124

(2d Cir. 2013)); *see also Hamling v. United States*, 418 U.S. 87, 117 (1974).  An indictment also

must "contain some amount of factual particularity to ensure that the prosecution will not fill in

elements of its case with facts other than those considered by the grand jury."  *United States v.*

*Walsh*, 194 F.3d 37, 44 (2d Cir. 1999); *see also Russell v. United States*, 369 U.S. 749, 764

(1962) (striking the indictment for failure to specify the question that the defendant failed to

answer during a congressional committee hearing and for which he was now being prosecuted).

        When an indictment fails to satisfy the requirements of Rule 7, Rule 12 of the Federal

Rules of Criminal Procedure empowers a defendant to move to dismiss the indictment due to a

"defect" therein, including a "lack of specificity" and "failure to state an offense."  Fed. R. Crim.

P. 12(b)(3)(B).  Upon a defendant's motion to dismiss, the Court must accept the factual

allegations on their face, *see Boyce Motor Lines, Inc.*, 342 U.S. at 343 n.16, but is not bound to accept as true a legal conclusion couched as a factual allegation.  *See Gonzalez*, 686 F.3d at 129 ("Stating that an act is in violation of a cited statutory section adds no factual information as to the act itself.") (internal quotation marks and citation omitted).  Because Rule 7 codifies constitutional safeguards, "the indictment must be considered as it was actually drawn, not as it might have been drawn."  *United States v. Pirro*, 212 F.3d 86, 92 (2d Cir. 2000).

At the pretrial stage, a court may not weigh the sufficiency of the *evidence* underlying an indictment.  The court, however, may evaluate the sufficiency of the government's *allegations,* "so that it may decide whether [the facts alleged] are sufficient in law to support a conviction."  *United States v. Aleynikov*, 737 F. Supp. 2d 173, 176 (S.D.N.Y. 2010) (internal quotation marks and citation omitted).  "Dismissal is required where the conduct alleged in the indictment as a factual basis for the offense is not actually prohibited by the language of the statute."  *Id.*; *see also Gonzalez*, 686 F.3d at 132.

Count Two of the Indictment charges Mr. Milton with securities fraud in violation of 18 U.S.C. § 1348.[8]  Indictment ¶ 84.  To establish a violation of Section 1348(1), the government must demonstrate (i) fraudulent intent, (ii) a scheme or artifice to defraud, and (iii) nexus with a security.  18 U.S.C. § 1348(1); *United States v. Coscia*, 866 F.3d 782, 796 (2d Cir. 2017); *United States v. Mahaffy*, 693 F.3d 113, 125 (2d Cir. 2012).  To establish a violation under Section

---

[8] 18 U.S.C. § 1348 provides in pertinent part:

> Whoever knowingly executes, or attempts to execute, a scheme or artifice—
> **(1)** to defraud any person in connection with . . . any security of an issuer with a class of securities registered under section 12 of the Securities Exchange Act of 1934 (15 U.S.C. 78*l*) or that is required to file reports under section 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78*o*(d)); or
> **(2)** to obtain, by means of false or fraudulent pretenses, representations, or promises, any money or property in connection with . . . any security of an issuer with a class of securities registered under section 12 of the Securities Exchange Act of 1934 (15 U.S.C. 78*l*) or that is required to file reports under section 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78*o*(d));
> shall be fined under this title, or imprisoned not more than 25 years, or both.

1348(2), the government must demonstrate (i) a scheme or artifice, (ii) to obtain money or property, (iii) through false representations, (iv) in connection with the purchase or sale of a security, (v) with fraudulent intent.  18 U.S.C. § 1348(2); *United States v. Hatfield*, 724 F. Supp. 2d 321, 324 (E.D.N.Y. 2010).

Count Three of the Indictment charges Mr. Milton with wire fraud in violation of 18 U.S.C. § 1343.[9]  Indictment ¶ 86.  The elements of wire fraud are "(i) a scheme to defraud (ii) to get money or property, (iii) furthered by the use of interstate wires."  *United States v. Pierce*, 224 F.3d 158, 165 (2d Cir. 2000) (citing *United States v. Autuori,* 212 F.3d 105, 115 (2d Cir.2000)); *see also United States v. Frenkel*, 682 F. App'x 20, 22 (2d Cir. 2017).  "To establish the first element, the government must prove (i) the existence of a scheme to defraud, (ii) the requisite scienter (or fraudulent intent) on the part of the defendant, and (iii) the materiality of the misrepresentations."  *Pierce*, 224 F.3d at 165 (internal citations omitted).

The Indictment here is fatally flawed.  With respect to Counts Two and Three, the Indictment does *not* contain sufficient factual allegations that, if proven, would establish an essential element of each charged offense—that Mr. Milton's alleged misstatements were made to obtain "money or property" from the so-called "retail" investors that the Indictment intimates were purported victims.  For example, nowhere does the Indictment identify public statements by Mr. Milton discussing Nikola's financial performance and its key performance metrics (*e.g.*, profit/loss, earnings, etc.).  *See* Indictment ¶ 22 (stating that the alleged misstatements concerned Nikola's products and "milestones").  In another example, the Indictment appears to claim that a

---

[9] 18 U.S.C. § 1343 provides in pertinent part:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

commercial, which was filmed by a large multinational corporation (Phillips Industries), a corporation not affiliated with Nikola, was released for the purpose of defrauding so-called "*retail*" investors of money or property, despite being shot and released over two years before those "*retail*" investors were able to purchase Nikola stock.  *See* Indictment ¶¶ 35–37.  That example illustrates that, on the face of the Indictment, the chronology does not support a viable allegation of fraud when the alleged fraudulent act occurred over *two years before* any public investor could have viewed and acted upon it and while intervening company announcements (including detailed prospectuses) and other events had occurred.

The Indictment crosses the line into absurdity, and in doing so, runs afoul of the law. Because the Indictment fails to allege an essential element of the charged offense in Counts Two and Three—that the alleged misstatements were made to obtain "money or property—the Court must dismiss those counts.  *See* Fed. R. Crim. P. 12(b)(3)(B); *see also Pirro*, 212 F.3d at 91 (affirming the dismissal of a charge for failure to report a third party's "ownership interest" on the income tax return of commercial real property owned by an S Corporation); *United States v. Pacione*, 738 F.2d 567, 572–73 (2d Cir. 1984) (affirming the dismissal of loan sharking charges when the indictment failed to allege that the defendants sought to collect on the loan using illegal means as required by the statute); *United States v. Serrano*, 191 F. Supp. 3d 287, 289–90 (S.D.N.Y. 2016) (dismissing charges for felon in possession of body armor where the indictment failed to allege that the body armor passed through interstate or foreign commerce); *United States v. Biba*, 395 F. Supp. 3d 227, 236–39 (E.D.N.Y. 2019) (dismissing charges for usage or carrying of firearm during a crime of violence where indictment failed to include factual allegation that defendant brandished a firearm).

II.     **Counts Two and Three of the Indictment Fail To Include Sufficient Factual Allegations That, if Proven, Would Establish that the Object of Mr. Milton's Alleged Misstatements Was Money or Property.**

      A.     **A Scheme To Defraud Under 18 U.S.C. § 1348 (Count Two) or 18 U.S.C. § 1343 (Count Three) Must Have Money or Property as its Object.**

Securities fraud under 18 U.S.C. § 1348 (Count Two) and wire fraud under 18 U.S.C. § 1343 (Count Three) both require a scheme to obtain money or property.  *See, e.g.*, *United States v. Calderon*, 944 F.3d 72, 85 (2d Cir. 2019) (wire fraud); *Autuori*, 212 F.3d at 116 (wire fraud); *Stinn v. United States*, 856 F. Supp. 2d 531, 538 n.6 (E.D.N.Y. 2012) (Section 1348 securities fraud), *aff'd* 515 F. App'x 4 (2d Cir. 2013); *United States v. Vorley*, 420 F. Supp. 3d 784, 793–96 (N.D. Ill. 2019) (Section 1348 commodities fraud).  Under each of these fraud statutes, the word "property" is construed in accordance with its ordinary meaning: "something of value" in the possession of the property holder (in this context, the fraud victim).  *Pasquantino v. United States*, 544 U.S. 349, 349 (2005) (wire fraud); *McNally v. United States*, 483 U.S. 350, 359 (1987) (mail fraud) *superseded by statute on other grounds as stated in Skilling v. United States*, 561 U.S. 358, 130 S.Ct. 2896, 177 L.Ed.2d 619 (2010).  The deprivation of money or property must be the *object* of the allegedly fraudulent conduct.  *Kelly v. United States*, 140 S.Ct. 1565, 1573 (2020).  An incidental deprivation of money or property does not fall within the purview of the federal fraud statutes.  *Id*.

The Second Circuit draws "a fine line between schemes that do no more than cause their victims to enter into transactions they would otherwise avoid—which do not violate the mail or wire fraud statutes—and schemes that depend for their completion on a misrepresentation of an essential element of the bargain—which do violate the mail and wire fraud statutes."  *United States v. Shellef*, 507 F.3d 82, 108 (2d Cir. 2007).  An allegation of "but for" causation—that the purported victim would have not entered into a transaction *but for* the alleged

misrepresentations—is insufficient to establish a scheme to obtain money or property.  *See*

*United States v. Takhalov*, 827 F.3d 1307, 1310 (11th Cir. 2016).  The misrepresentation must

instead form a "basis of the bargain," *United States v. Starr*, 816 F.2d 94, 99 (2d Cir. 1987), such

that it "bear[s] on the ultimate value of the transaction."  *United States v. Mittelstaedt*, 31 F.3d

1208, 1217 (2d Cir. 1994).  There cannot be a deprivation of "property" within the meaning of

the federal fraud statutes where the alleged misrepresentations "amount[] only to a deceit," and

there is no "discrepancy between benefits reasonably anticipated because of the misleading

representations and the actual benefits which the defendant delivered, or intended to deliver."

*Starr*, 816 F.2d at 98; *see also Mittelstaedt*, 31 F.3d at 1219 (reversing conviction on conspiracy

to commit mail fraud charge based on property sold at fair market value).  If the government fails

to include sufficient allegations to constitute a deprivation of property, the proper remedy is

dismissal of the indictment.  *See United States v. Kurtz*, No. 04 Cr. 0155 (RJA), 2008 WL

1820903, at *5–6 (W.D.N.Y. Apr. 21, 2008).

      **B.**    **The Indictment Fails To Include Sufficient Factual Allegations That, if
Proven, Would Establish that Mr. Milton's Alleged Misstatements Were the
"Basis of the Bargain."**

The government appears to imply, without specifically saying, in the Indictment that the

"money or property" at issue is Nikola stock or a change in the value in Nikola stock.  *See, e.g.*,

Indictment ¶ 80.  The Indictment makes only conclusory allegations—without any factual

allegations to support those conclusions—that Mr. Milton's alleged misstatements were

"intended to drive *demand* for Nikola's stock among *retail* investors," Indictment ¶ 22 (emphasis

added), and "to increase and *support* Nikola's stock price," Indictment ¶ 26 (emphasis added).

The intangible concepts of "demand" and "support" hardly constitute the essential element of

money or property.

-11-

Even assuming that the Indictment is trying to suggest some deprivation of value from "retail" investors relating to Nikola's stock, Mr. Milton did not make—and the Indictment does not allege he made—*any* statements about Nikola's financial performance and its key performance metrics (*e.g.*, profit/loss, earnings, etc.) often associated with the value of a security. *See* Indictment ¶ 22 (stating that the alleged misstatements concerned Nikola's products and "milestones").  Because the alleged misstatements are insufficiently related to the value of Nikola's stock, *see* Memorandum of Law in Support of Defendant's Motion to Dismiss Counts One and Two of the Indictment for Lack of Fair Notice (the "Fair Notice Memorandum") and the Memorandum of Law in Support of Defendant's Motion to Dismiss Counts One and Two of the Indictment for Failure to Allege the Requisite Connection with a Security ("Requisite Connection Memorandum"), those misstatements cannot constitute the "basis of the bargain" or "bear on the ultimate value of the transaction" in Nikola stock.  *Mittelstaedt*, 31 F.3d at 1217.

As fully discussed in both the Fair Notice Memorandum and Requisite Connection Memorandum, the overwhelming majority of Mr. Milton's statements concerned the attributes of Nikola's products.  For an alleged scheme to defraud based upon misstatements related to product promotion, the *object* of the deprivation must necessarily relate to the product being promoted.  *Cf. Kelly*, 140 S.Ct. at 1573 (explaining that the deprivation of money or property must be the *object* of the allegedly fraudulent conduct).  Here, the alleged misstatements were not made to induce the purchase or sale of a security, and certainly not to induce the purchase or sale of any security owned by Mr. Milton.  Any augmentation in the value of Nikola's stock—of which none is alleged—would be *incidental to* the allegedly fraudulent conduct, rather than the requisite *object of* such conduct.

As the Indictment acknowledges, Mr. Milton was subject to a six-month lock-up as part of the merger agreement, prohibiting him from selling any of his shares from the date of the merger on June 3, 2020 until December 3, 2020.  Indictment ¶ 20.  In order for Mr. Milton to profit while the lock-up was in place, the government would have to allege that Mr. Milton intended to keep the price of Nikola stock inflated for at least six months until his lock-up period expired.  The Indictment has not alleged—and cannot allege—that any of the alleged misstatements caused the stock's price to be inflated.  Absent an allegation that the stock was inflated—and it was not—and that any artificial inflation in the price of Nikola stock would continue long enough for Mr. Milton to sell his shares[10]—and the government has made no allegation to that effect—Mr. Milton could not have obtained "money or property."

## III.    The Proper Remedy Is Dismissal of the Indictment.

The allegations contained in this Indictment constitute a clear violation of Rule 7 of the Federal Rule of Criminal Procedure by failing to contain any factual particularity as to materiality, which is required "to ensure that the prosecution will not fill in elements of its case with facts other than those considered by the grand jury."  *Walsh*, 194 F.3d at 44.  An indictment may be dismissed "where it fails to allege the essential facts constituting the offense charged."  *Aleynikov*, 737 F. Supp. 2d at 176 (internal quotation marks omitted); *see also United States v. Berlin*, 472 F.2d 1002, 1006-08 (2d Cir. 1973) (holding that the trial court should have dismissed certain counts in the indictment because they did not sufficiently allege an essential element of the charged statute); *United States v. Laurent*, 861 F. Supp. 2d 71, 109 (E.D.N.Y.

---

[10] Even if the government could allege, which it does not and cannot, an intent to inflate artificially the price of Nikola stock for a period in excess of six months, Nikola would be required to issue a prospectus upon Mr. Milton's sale of securities given his controlling shareholder status.  17 C.F.R. § 230.424(b)(3).  The prospectus would be another official filing by Nikola and would serve to cure any alleged misrepresentations in the market, thus rendering this illogical plan moot.

2011) ("A trial court may dismiss an indictment that does not state an offense under the charged statute."). Counts Two and Three of the Indictment fail to include sufficient factual allegations to establish an essential element of each charged offense—that Mr. Milton's alleged misstatements, if proven, were made to obtain "money or property." Because the Indictment does not allege the essential elements of an offense under 18 U.S.C. § 1348 and 18 U.S.C. § 1343, the Court should dismiss Counts Two and Three of the Indictment.

If the Court does not dismiss the Indictment, the Court at a minimum should order the government to provide a bill of particulars, identifying with specificity the basis on which the government contends the alleged misrepresentations were made to obtain "money or property." *See* Motion for a Bill of Particulars, filed contemporaneously herewith. Without this information, the Indictment is too vague to inform Mr. Milton the nature of the securities fraud charges, to allow for the preparation of expert and lay witnesses and the gathering evidence to rebut the government's charges, and to avoid unfair surprise at trial.

Dated: December 15, 2021

Respectfully submitted,

/s/

_____
Bradley J. Bondi
CAHILL GORDON & REINDEL LLP
1990 K Street NW, Suite 950
Washington, DC 20006
(202) 862-8910
bbondi@cahill.com

Marc Mukasey
MUKASEY FRENCHMAN LLP
570 Lexington Avenue, Suite 3500
New York, NY 1002
(212) 466-6400
Marc.Mukasey@mfsllp.com

Terence Healy
HUGHES HUBBARD & REED LLP
1775 I Street NW
Washington, DC 20006
(202) 721-4676
terence.healy@hugheshubbard.com

*Counsel for Trevor Milton*