UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA

       -against-

TREVOR MILTON,

               Defendant.

_____

x
:
:
:
:   Case No. 1:21-cr-00478-ER
:
:
:
:
x

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE INDICTMENT FOR FAILURE TO SUFFICIENTLY ALLEGE MATERIALITY

Bradley J. Bondi
CAHILL GORDON & REINDEL LLP
1990 K Street NW, Suite 950
Washington, DC 20006
(202) 862-8910
bbondi@cahill.com

Marc Mukasey
MUKASEY FRENCHMAN LLP
570 Lexington Avenue, Suite 3500
New York, NY 10022
(212) 466-6400
Marc.Mukasey@mfsllp.com

Terence Healy
HUGHES HUBBARD & REED LLP
1775 I Street NW
Washington, DC 20006
(202) 721-4676
terence.healy@hugheshubbard.com

*Counsel for Trevor Milton*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................................1

FACTUAL BACKGROUND .................................................................................................2

ARGUMENT ..........................................................................................................................8

I.    The Constitution and the Federal Rules of Criminal Procedure Require That an Indictment Contain Sufficient Factual Allegations That, if Proven, Would Establish Each Element of the Charged Offense. ..........................8

II.    The Indictment Fails To Include Sufficient Factual Allegations That, if Proven, Would Establish an Essential Element of Each Charged Offense—That Mr. Milton's Alleged Misstatements Were Material. .................11

    A.    For a Misstatement To Be Material Under Section 10(b) (Count One), the Misstatement Must Significantly Alter the Total Mix of Information Available to a Reasonable Investor. ................11

    B.    For a Misstatement To Be Material Under 18 U.S.C. §§ 1348 (Count Two) and 1343 (Count Three), the Misstatement Must "Actually Matter in a Meaningful Way" To a Rational Decision Maker ..............................................................................14

    C.    The Indictment Fails To Include Sufficient Factual Allegations That, if Proven, Would Establish An Essential Element of Each Charged Offense—That Mr. Milton's Alleged Misstatements "Significantly Altered" the Total Mix of Information or "Actually Mattered in a Meaningful Way" to a Reasonable Investor. ............................................................15

        1.    The Indictment Uses the Incorrect Standard for Materiality and Fails To Allege That the Alleged Misstatements Were Material to a Reasonable Investor. ...............16

        2.    The Indictment Quotes Mr. Milton's Statements Out of Context, Fails To Acknowledge the Contemporaneous Statements by Nikola and Its Executives, and Fails To Allege That the Alleged Misstatements Would Affect the "Total Mix" of Information Available to a Reasonable Investor. .................................................17

        3.    Certain Statements Constitute Nonactionable Puffery...................21

III.    The Proper Remedy Is Dismissal.............................................................................22

# TABLE OF AUTHORITIES

**Cases**                                                                                              **Page(s)**

*In re Apple Computer Sec. Litig.*,
   886 F.2d 1109 (2d Cir. 1989) ...............................................................................13

*Basic Inc. v. Levinson*,
   485 U.S. 224 (1988) .............................................................................................11

*Boyce Motor Lines, Inc. v. United States*,
   342 U.S. 337 (1952) ..........................................................................................2n, 9

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
   752 F.3d 173 (2d Cir. 2014) ...........................................................................12, 22

*ECA, Local 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*,
   553 F.3d 187 (2d Cir. 2009) ...........................................................................12, 21

*In re Eros Int'l Sec. Litig.*,
   No. 15 Cv. 8956 (AJN), 2017 WL 6405846 (S.D.N.Y. Sept. 22, 2017) ................11

*Finn v. Barney*,
   471 F. App'x. 30 (2d Cir. 2012) .........................................................................18n

*In re Ford Motor Co. Sec. Litig.*,
   381 F.3d 563 (6th Cir. 2004) ................................................................................21

*Ganino v. Citizens Utils. Co.*,
   228 F.3d 154 (2d Cir. 2000) ...........................................................................13, 19

*Ganske v. Mensch*,
   480 F. Supp. 3d 542 (S.D.N.Y. 2020) ............................................................13, 20

*Golden Hill Paugussett Tribe of Indians v. Rell*,
   463 F. Supp. 2d 192, 197 (D. Conn. 2006) ........................................................18n

*Goldman Sachs Grp., Inc. v. Arkansas Teacher Ret. Sys.*,
   141 S.Ct. 1951 (2021) ...........................................................................................6n

*Grecco v. Age Fotostock America, Inc.*,
   No. 21 Cv. 423 (JSR), 2021 WL 3353926 (S.D.N.Y. Aug. 2, 2021) ...................18n

*Grimes v. Navigant Consulting, Inc.*,
   185 F. Supp. 2d 906 (N.D. Ill. 2002) ...................................................................7n

*Hamling v. United States*,
    418 U.S. 87 (1974)............................................................................................8

*Kavowras v. N.Y. Times Co.*,
    328 F.3d 50 (2d Cir. 2003) ............................................................................18n

*Kungys v. United States*,
    485 U.S. 759 (1988).......................................................................................15

*Lopez v. CTPartners Exec. Search Inc.*,
    173 F. Supp. 3d 12 (S.D.N.Y. 2016)..............................................................21

*Loveman v. Lauder*,
    484 F. Supp. 2d 259 (S.D.N.Y. 2007) .............................................................7n

*Neder v. United States*,
    527 U.S. 1 (1999)...........................................................................................14

*New York v. Tanella*,
    374 F.3d 141 (2d Cir. 2004)............................................................................2n

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
    575 U.S. 175 (2015)...............................................................................13, 20

*Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/S*,
    11 F.4th 90 (2d Cir. 2021) .............................................................................20

*Porrazzo v. Bumble Bee Foods, LLC*,
    822 F. Supp. 2d 406 (S.D.N.Y. 2011) ..............................................................5n

*In re ProShares Tr. Sec. Litig.*,
    728 F.3d 96 (2d Cir. 2013)..............................................................................16

*Pryor v. USX Corp.*,
    No. 82 Cv. 216 (KMW), 1991 WL 346368 (S.D.N.Y. Nov. 27, 1991) ..............7n

*Rand v. Cullinet Software, Inc.*,
    847 F. Supp. 200 (D. Mass. 1994)..................................................................20

*Russell v. United States*,
    369 U.S. 749 (1962)...................................................................................1n, 8

*SEC v. Aly*,
    No. 16 Cv. 3853 (PGG), 2018 WL 1581986 (S.D.N.Y. Mar. 27, 2018)...............7n

*In re Time Warner Inc. Sec. Litig.*,
  794 F. Supp. 1252 (S.D.N.Y. 1992), *aff'd in part, rev'd in part on other grounds*, 9 F.3d 259 (2d Cir. 1993) ......................................................................20

*Tongue v. Sanofi*,
  816 F.3d 199 (2d Cir. 2016).......................................................................................21

*TSC Indus., Inc. v. Northway, Inc.*,
  426 U.S. 438 (1976)........................................................................................11, 16

*In re UBS Auction Rate Sec. Litig.*,
  No. 08 Cv. 2967 (LMM), 2010 WL 2541166 (S.D.N.Y. June 10, 2010)............................18n

*United States v. Aleynikov*,
  737 F. Supp. 2d 173 (S.D.N.Y. 2010)................................................................9, 22

*United States v. Berlin*,
  472 F.2d 1002 (2d Cir. 1973)........................................................................................22

*United States v. Biba*,
  395 F. Supp. 3d 227 (E.D.N.Y. 2019) ........................................................................11

*United States v. Calderon*,
  944 F.3d 72 (2d Cir. 2019)........................................................................................14

*United States v. Carroll*,
  No. 19 Cr. 545 (CM), 2020 WL 1862446 (S.D.N.Y. Apr. 14, 2020)....................................12

*United States v. Chandler*,
  98 F.3d 711 (2d Cir. 1996)........................................................................................14n

*United States v. Contorinis*,
  692 F.3d 136 (2d Cir. 2012)........................................................................................13

*United States v. Coscia*,
  866 F.3d 782 (7th Cir. 2017)  ..............................................................................14, 14n

*United States v. Ferro*,
  252 F.3d 964 (8th Cir. 2001) ..............................................................................15, 15n

*United States v. Fiumano*,
  No. 14 Cr. 518 (JFK), 2016 WL 1629356 (S.D.N.Y. 2016) ..................................................14

*United States v. Frenkel*,
  682 F. App'x. 20 (2d Cir. 2017) ..............................................................................14

*United States v. Gonzalez*,
  686 F.3d 122 (2d Cir. 2012)........................................................................................1n, 8, 9

*United States v. Hatfield,*
    724 F. Supp. 2d 321 (E.D.N.Y. 2010) ................................................................10

*United States v. Laurent,*
    861 F. Supp. 2d 71 (E.D.N.Y. 2011) ..................................................................22

*United States v. Litvak,*
    808 F.3d 160 (2d Cir. 2015).................................................................................12

*United States v. Litvak,*
    889 F.3d 56 (2d Cir. 2018)...................................................................10, 11, 12

*United States v. Martoma,*
    993 F. Supp. 2d 452 (S.D.N.Y. 2014).................................................................7n

*United States v. Nejad,*
    No. 18 Cr. 224 (AJN), 2019 WL 6702361 (S.D.N.Y. Dec. 6, 2019) ......................8

*United States v. Pacione,*
    738 F.2d 567 (2d Cir. 1984).................................................................................11

*United States v. Pierce,*
    224 F.3d 158 (2d Cir. 2000).................................................................................10

*United States v. Pirro,*
    212 F.3d 86 (2d Cir. 2000)................................................................................9, 10

*United States v. Ragosta,*
    970 F.2d 1085 (2d Cir. 1992)...............................................................................14n

*United States v. Rigas,*
    490 F.3d 208 (2d Cir. 2007)............................................................................14, 19

*United States v. Rodriguez,*
    140 F.3d 163 (2d Cir. 1998).................................................................................15

*United States v. Serrano,*
    191 F. Supp. 3d 287 (S.D.N.Y. 2016).................................................................11

*United States v. Stringer,*
    730 F.3d 120 (2d Cir. 2013)..................................................................................8

*United States v. Walsh,*
    194 F.3d 37 (2d Cir. 1999)...............................................................................8, 22

*United States v. Weaver,*
    860 F.3d 90 (2d Cir. 2017)...................................................................................14

*United States v. Wey*,
  No. 15 Cr. 611 (AJN), 2017 WL 237651 (S.D.N.Y. Jan. 18, 2017)..............................14, 14n

*Van Praagh v. Gratton*,
  993 F. Supp. 2d 293 (E.D.N.Y. 2014) ...................................................................................5n

*Wang v. Bear Stearns Cos. LLC*,
  14 F. Supp. 3d 537 (S.D.N.Y. 2014)..............................................................................12, 21

*Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*,
  127 F. Supp. 3d 156 (S.D.N.Y. 2015) ...................................................................................18n

*White v. H&R Block, Inc.*,
  No. 02 Cv. 8965 (MBM), 2004 WL 1698628 (S.D.N.Y. July 28, 2004) ...............................13

**Constitutional Provisions**

U.S. Const. amend. V........................................................................................................................8

U.S. Const. amend. VI.......................................................................................................................8

**Rules**

Fed. R. Crim. P.

  7.................................................................................................................................8, 9, 22

  7(c)(1) ...........................................................................................................................1, 8

  12...........................................................................................................................................9

  12(b)(3)(B).....................................................................................................................1, 9, 10

Fed. R. Evid. 201 ...........................................................................................................................18n

**Statutes**

18 U.S.C.

  § 1343.......................................................................................................................10, 10n, 14

  § 1348.............................................................................................................9, 9n, 10, 14, 14n

Securities and Exchange Act of 1934

  § 10(b)....................................................................................................................9, 10, 11

§ 12 (15 U.S.C. 78*l*)................................................................................................10n

§ 15(d) (15 U.S.C. 78*o*(d))....................................................................................10n

**Other Authorities**

*Historical Data*, *Nikola Corporation (NKLA)*, Yahoo! Finance,
    https://finance.yahoo.com/quote/NKLA/history?p=NKLA (last visited Dec.
    11, 2021) ..........................................................................................................7n

Nikola Corp., Current Report (Form 8-K) (June 8, 2020),
    https://www.sec.gov/Archives/edgar/data/1731289/000110465920070923/tm2
    021982d1_8k.htm ............................................................................................20n

Nikola Corp., Preliminary Prospectus (Form S-1) (June 15, 2020),
    https://www.sec.gov/Archives/edgar/data/0001731289/000104746920003604/
    a2241863zs-1.htm ........................................................................................6n, 18

Nikola Corp., Prospectus (Form 424(B)(3)) (July 17, 2020),
    https://www.sec.gov/Archives/edgar/data/0001731289/000104746920004141/
    a2242084z424b3.htm....................................................................................6n, 18

*Nikola Corporation, a Global Leader in Zero Emissions Transportation
    Solutions, to Be Listed on NASDAQ Through a Merger With VectoIQ*, Nikola
    Corp., (March 3, 2020), https://nikolamotor.com/press_releases/nikola-
    corporation-a-global-leader-in-zero-emissions-transportation-solutions-to-be-
    listed-on-nasdaq-through-a-merger-with-vectoiq-74 ..........................................3n

VectoIQ Acquisition Corp., Current Report (Form 8-K) (March 2, 2020),
    https://www.sec.gov/Archives/edgar/data/1731289/000110465920028234/tm2
    011332d1_8k.htm ..............................................................................................4n

Pursuant to Rule 12(b)(3)(B) of the Federal Rules of Criminal Procedure, the Court should dismiss the Indictment in its entirety for failure to plead an offense and for lack of specificity.[1]  This prosecution violates Mr. Milton's constitutional rights under the Fifth and Sixth Amendments and Rule 7(c)(1) of the Federal Rules of Criminal Procedure, because the Indictment does *not* contain sufficient factual allegations that, if proven, would establish an *essential* element of the charged offenses—that Mr. Milton's alleged misstatements were material.  If the Court does not dismiss the Indictment, the Court at a minimum should order the government to provide a bill of particulars setting forth the essential facts of all elements of the charged offenses.[2]

## PRELIMINARY STATEMENT

Trevor Milton is innocent.  The Indictment charges Mr. Milton with two counts of securities fraud and one count of wire fraud based on alleged misrepresentations he made from November 2019 to September 2020 in "social media and television, print, and podcast interviews" as Chief Executive Officer ("CEO") and later Executive Chairman of Nikola Corporation ("Nikola").  Indictment ¶¶ 1, 5.

The Indictment does not allege, and cannot allege, that Mr. Milton's alleged misstatements were material to a *reasonable* investor.  Instead, the Indictment vaguely refers to so-called *"retail"* investors (which is not the legal standard) who *might* have invested, *in part*,

---

[1] As set forth in Mr. Milton's Motion to Dismiss the Indictment or, in the Alternative, to Transfer Venue (ECF 11), and his pending appeal of this Court's venue decision (ECF 33), this case should be dismissed because, respectfully, venue is not proper in the Southern District of New York.  Mr. Milton does not waive his constitutional right to venue in a proper district and submits this motion to the Court pursuant to the Court's previously ordered schedule.

[2] Although "it is a settled rule that a bill of particulars cannot save an invalid indictment," *United States v. Gonzalez*, 686 F.3d 122, 128 (2d Cir. 2012) (quoting *Russell v. United States*, 369 U.S. 749, 770 (1962)), we argue that the Court should order a bill of particulars if this Court were to hold the Indictment valid.  *See* Mr. Milton's Motion for a Bill of Particulars filed contemporaneously herewith.  In the Motion for a Bill of Particulars, Mr. Milton seeks, among other things, the basis on which the government contends each Alleged Misstatement (as defined therein) was material.

due to some part of some statement.  The Indictment quotes Mr. Milton selectively and out of context, citing social media posts and podcast interviews, some from several years before Nikola's shares were publicly traded.  Indeed, in many instances, the government fails to provide the specific language alleged to be false and misleading, instead paraphrasing Mr. Milton's words, *see, e.g.*, Indictment ¶¶ 25, 39, 54, and the name of the media at issue, referring generally to podcasts without naming them.  *See, e.g.*, Indictment ¶¶ 25, 28.  The Indictment does not allege that reasonable public investors in 2020 were aware of Mr. Milton's statements from well before Nikola became public (some statements from as far back as 2016), much less that those dated and stale statements—in the context of contemporaneous statements by Nikola and its executives—"significantly altered" the total mix of information available at the time of any purchase or sale of a security in 2020, or that those statements would matter in any meaningful way to a *reasonable* investor.  Simply put, no reasonable investor considered the alleged misstatements to be material.  Because materiality is an *essential* element of all three charged offenses, the Indictment is fatally deficient and the Court should dismiss the Indictment in its entirety.

## FACTUAL BACKGROUND[3]

Mr. Milton founded Nikola, a company developing and building low- and zero-emissions heavy duty trucks, as a privately held company in 2015.  Indictment ¶ 5.  In December 2016, Nikola unveiled a prototype of its first-generation semi-truck, the Nikola One.  Indictment ¶ 27. Nikola subsequently completed two prototypes of its second-generation semi-truck, the Nikola

---

[3] We dispute the government's factual allegations, but on this motion to dismiss, we must accept the factual allegations on their face. *See Boyce Motor Lines, Inc. v. United States*, 342 U.S. 337, 343 n.16 (1952) (In reviewing a motion to dismiss, "the allegations of the indictment must be taken as true."); *New York v. Tanella*, 374 F.3d 141, 148 (2d Cir. 2004) (When reviewing a motion to dismiss, "we view the evidence in the light most favorable to the [government] and assume the truth of the allegations in the indictment.").

Two, in April 2019.  Indictment ¶ 37.  In November 2019, Nikola began negotiating to take the company public through a potential merger with VectoIQ, a publicly traded special purpose acquisition company ("SPAC").  Indictment ¶ 14.  VectoIQ's shares were traded on the Nasdaq stock exchange under the ticker "VTIQ."  Indictment ¶ 15.

On March 3, 2020, Nikola and VectoIQ announced that they had entered into an agreement under which Nikola would become a publicly traded company through a "reverse" merger with VectoIQ, subject to the satisfaction of certain conditions.  Those conditions included shareholder approval and a six-month "lock-up" period, where Mr. Milton was prohibited from selling his shares in Nikola beginning June 3, 2020.  Indictment ¶¶ 15, 19–20.[4]  The agreement also included a sale to a number of institutional investors by means of a private investment in public equity ("PIPE") offering.  Indictment ¶ 15.  VectoIQ and the institutional investors toured Nikola's facilities, reviewed Nikola's books and records, and otherwise conducted extensive diligence on Nikola's technology, facilities, and finances.  Indictment ¶¶ 14–15.

The merger took place on June 3, 2020, at which point Nikola's stock became publicly traded on the Nasdaq stock exchange under the ticker "NKLA."  Indictment ¶ 16.  Accordingly, until June 3, 2020, there was no such thing as a publicly traded security in Nikola, and therefore no so-called "retail" investors could purchase Nikola stock.  Prior to June 3, 2020, Nikola investors consisted primarily of early private equity investors, many of whom partnered with Nikola and accepted roles on the Board of Directors, and all of whom conducted extensive technical and valuation due diligence on Nikola.  Indictment ¶ 17.  Additionally, since Nikola

---

[4] *See also Nikola Corporation, a Global Leader in Zero Emissions Transportation Solutions, to Be Listed on NASDAQ Through a Merger With VectoIQ*, Nikola Corp., (March 3, 2020), https://nikolamotor.com/press_releases/nikola-corporation-a-global-leader-in-zero-emissions-transportation-solutions-to-be-listed-on-nasdaq-through-a-merger-with-vectoiq-74.

has become publicly traded, all trading of Nikola stock by so-called "retail" investors has been conducted on the secondary market.

In conjunction with Nikola's announced merger with VectoIQ, VectoIQ filed a Form 8-K with the Securities and Exchange Commission ("SEC") on March 2, 2020.  VectoIQ Acquisition Corp., Current Report (Form 8-K) (March 2, 2020).[5]  The Form 8-K included the following as exhibits: a "Business Combination Agreement," a "Stockholder Support Agreement," and a "Subscription Agreement."  *Id*.  The filing also included three investor-focused communications: a "Press Release, dated March 3, 2020," a "Conference Call Script," and a "Form of Investor Presentation."  *Id*.  Numerous disclaimers in the filings explicitly warned investors that the filings included forward-looking statements, such as in the Conference Call Script:  "You should understand that such forward-looking statements [concerning the merger] involve risks and uncertainties . . . VectoIQ and Nikola are under no obligation, and expressly disclaim[] any obligation, to update, alter or otherwise revise any forward-looking statement whether as a result of new information, future events or otherwise, except as required by law."  *Id.*, Exhibit 99.2. The government has not alleged—and cannot allege—any misstatement in VectoIQ's or Nikola's SEC filings.  Nikola also held regular calls with private investors seeking additional investment and made pitches to analysts and potential investors while Nikola was private.  Mr. Milton did not participate in pitches to analysts or in analyst calls; the Indictment contains no such allegations, and there are no allegations that any pitches made to private equity investors contained misstatements.

Instead, the Indictment focuses on dozens of statements (near in time to those statements above by Nikola) that Mr. Milton made through social media posts, podcasts and interviews

---

[5] https://www.sec.gov/Archives/edgar/data/1731289/000110465920028234/tm2011332d1_8k.htm.

about the company he founded and its groundbreaking products.  According to the Indictment,

Mr. Milton made misstatements concerning five main categories: (i) the 2016 Nikola One semi-

truck prototype, (ii) the Badger pickup truck prototypes, (iii) Nikola's hydrogen fuel production,

(iv) Nikola's in-house technology capabilities, and (v) reservations for future delivery of Nikola

semi-trucks.  Indictment ¶ 2.  The Indictment's allegations show that the overwhelming majority

of Mr. Milton's statements concerned Nikola's products and were not made to investors or

through media channels directed to investors, but instead were made to auto enthusiasts,

transportation industry followers, entrepreneurs, and other consumers.  For example, Mr. Milton

spoke to auto enthusiasts about the Nikola One on the Transport Topics RoadSigns Podcast, a

podcast about the trucking industry's future.  Indictment ¶ 28.[6]  Mr. Milton spoke about the

Badger pickup truck on the Truck Show Podcast, a podcast devoted to amateur trucking and

hosted by a trucking expert and a longtime automotive journalist.  Indictment ¶ 50.[7]  Mr. Milton

likewise tweeted about the Nikola One, the Badger, and the use of in-house technology for these

products.  *See, e.g.*, Indictment ¶¶ 36, 43, 52, 73.  Mr. Milton was proud of the products that

Nikola was developing, stating his confidence that the Nikola Badger was a "real truck" that

could "whoop a Ford F-150."  Indictment ¶¶ 41–61.  He also discussed Nikola's plans to produce

hydrogen fuel and the related costs of hydrogen fuel production through tweets and podcast

interviews, including on the Transport Topics RoadSigns Podcast.  *See, e.g.*, Indictment ¶ 66.[8]

---

[6] Although the name of this podcast has not been provided in the Indictment, it has been identified using the quoted language and date.  This court may take judicial notice of this podcast, as it is both publicly available on YouTube and has been incorporated by reference into the Indictment.  *See Porrazzo v. Bumble Bee Foods, LLC*, 822 F. Supp. 2d 406, 411 (S.D.N.Y. 2011) ("[I]t is well-established that courts may take judicial notice of publicly available documents on a motion to dismiss."); *Van Praagh v. Gratton*, 993 F. Supp. 2d 293, 298 (E.D.N.Y. 2014) (taking judicial notice of documents incorporated by reference in plaintiff's complaint).

[7] *See supra* note 6.

[8] *See supra* note 6.

During this time, Nikola continued to submit SEC filings which provided a detailed and accurate understanding of the business's development and outlook. *See, e.g.*, Nikola Corp., Preliminary Prospectus (Form S-1) (June 15, 2020); Nikola Corp., Prospectus (Form 424(B)(3)) (July 17, 2020).[9]  Mr. Milton never publicly discussed Nikola's financial performance or any key performance metrics (*e.g.*, profit/loss, earnings, etc.) usually associated with the value of an investment; the Indictment contains no such allegations.  Mr. Milton believed in Nikola's business and its progressive, environmentally responsible products, and he shared those beliefs.

As a matter of law, the Indictment fails to allege that Mr. Milton's purported misstatements are material.  The Indictment is littered with references to the so-called "retail" investor, alleging that the "retail" investor relied "at least in part" on Mr. Milton's alleged misstatements.  *See, e.g.*, Indictment ¶¶ 3, 17, 64, 71, 80–81.  The correct legal test, however, asks what a "reasonable" investor would consider important—a phrase entirely absent from the Indictment.  If the Court does not dismiss the Indictment in its entirety, Mr. Milton will establish at trial—as the government knows from prior interactions with defense counsel—that none of the alleged misstatements caused any material impact on the stock price of either VectoIQ or Nikola.[10]  Simply put, the stock market, which is the quintessential proxy for a *reasonable*

---

[9] https://www.sec.gov/Archives/edgar/data/0001731289/000104746920003604/a2241863zs-1.htm;
https://www.sec.gov/Archives/edgar/data/0001731289/000104746920004141/a2242084z424b3.htm.
[10] *See Goldman Sachs Grp., Inc. v. Arkansas Teacher Ret. Sys.*, 141 S.Ct. 1951, 1961 n.2 (2021) ("[M]ateriality and price impact are overlapping concepts and … evidence relevant to one will almost always be relevant to the other.").

investor,[11] did not react in a statistically significant way to the alleged misstatements, which must explain the government's blatant attempt to rewrite the standard for materiality.[12]

Also absent from the Indictment is any mention of official Nikola regulatory filings or official company statements available to the reasonable investor.  That critical context is provided by Exhibit A to the Declaration of Bradley J. Bondi submitted herewith—a chart setting forth Mr. Milton's alleged misstatements within the larger context of the SEC filings, press releases, and other official statements of Nikola, VectoIQ, and their executives.[13]  When viewed in context, the Indictment has not alleged, and cannot allege, that Mr. Milton's alleged misstatements in tweets, social media posts, and the like "significantly altered" the total mix of information available to a reasonable investor.  This Court should dismiss the Indictment for failure to include sufficient factual allegations that, if proven, would establish an *essential* element of each charged offense: that Mr. Milton's alleged misstatements were material.

---

[11] *See SEC v. Aly*, No. 16 Cv. 3853 (PGG), 2018 WL 1581986, at *15 (S.D.N.Y. Mar. 27, 2018) ("[I]nformation important to reasonable investors . . . is immediately incorporated into the stock price.") (internal quotation marks omitted); *United States v. Martoma*, 993 F. Supp. 2d 452, 457 (S.D.N.Y. 2014) (same).

[12] For example, the government relies on a podcast published on Friday, July 3, 2020, during which Mr. Milton stated that Nikola was "the first company to [] launch the zero emission semi-truck . . . ."  *See* Indictment ¶ 28.  Not only did Nikola's stock not go up on July 6, 2020 (which was the next trading day), but it actually went *down* from $58.90 at the beginning of trading that day to $48.92 at the close of trading.  *Historical Data*, *Nikola Corporation (NKLA)*, YAHOO! FINANCE, https://finance.yahoo.com/quote/NKLA/history?p=NKLA (last visited Dec. 11, 2021). The court may take judicial notice of the opening and closing prices of stock based on historical price data from publicly available records.  *See Loveman v. Lauder,* 484 F. Supp. 2d 259, 267 n.48 (S.D.N.Y. 2007); *see also Pryor v. USX Corp.*, No. 82 Cv. 216 (KMW), 1991 WL 346368, at *16 n.17 (S.D.N.Y. Nov. 27, 1991); *Grimes v. Navigant Consulting, Inc.*, 185 F. Supp. 2d 906, 913 (N.D. Ill. 2002).

[13] *See* December 15, 2021 Declaration of Bradley J. Bondi Accompanying Defendant's Memorandum of Law In Support of Defendant's Motion to Dismiss the Indictment for Failure to Sufficiently Allege Materiality ("Bondi Decl."), at Exhibit A (Statements Attributed to Trevor Milton in Indictment v. Market Statements).  Although the government often did not provide cites to the specific alleged misstatements, we have identified the source to the extent of our ability based upon the date and the language quoted in the Indictment where such information was provided.  However, other statements are alleged in vague terms using summary language and general dates, and purport to be only examples of additional alleged misstatements.  Mr. Milton is unable to identify all statements referenced in the Indictment and, in the Motion for a Bill of Particulars filed contemporaneously herewith, he seeks, among other things, identification of every statement that the government alleges was a criminal act.

## ARGUMENT

**I.     The Constitution and the Federal Rules of Criminal Procedure Require That an Indictment Contain Sufficient Factual Allegations That, if Proven, Would Establish Each Element of the Charged Offense.**

The Constitution of the United States provides that citizens shall not be "deprived of life, liberty, or property, without due process of law" and that a criminal defendant must "be informed of the nature and cause of the accusation" against him.  U.S. Const. amends. V, VI.  Rule 7 of the Federal Rules of Criminal Procedure, which codifies those rights enshrined in the Fifth and Sixth Amendments to the Constitution, requires that all criminal indictments include "a plain, concise, and definite written statement of the essential facts constituting the offense charged."  Fed. R. Crim. P. 7(c)(1).  "The wording of this Rule imposes two requirements: the statement of the essential facts *and* the citation of the statute.  *They are separate requirements and not a restatement of the other*."  *Gonzalez*, 686 F.3d at 128 (emphasis in original) (internal quotation marks and citation omitted).

The Second Circuit further explains these requirements:  An indictment must "'first, contain[] the elements of the offense charged and fairly inform[] a defendant of the charge against which he must defend, and, second, enable[] him to plead an acquittal … in bar of future prosecutions for the same offense.'"  *United States v. Nejad*, No. 18 Cr. 224 (AJN), 2019 WL 6702361, at *15 (S.D.N.Y. Dec. 6, 2019) (quoting *United States v. Stringer*, 730 F.3d 120, 124 (2d Cir. 2013)); *see also Hamling v. United States*, 418 U.S. 87, 117 (1974).  An indictment also must "contain some amount of factual particularity to ensure that the prosecution will not fill in elements of its case with facts other than those considered by the grand jury."  *United States v. Walsh*, 194 F.3d 37, 44 (2d Cir. 1999); *see also Russell*, 369 U.S. at 764 (striking down the indictment for failure to specify the question that the defendant failed to answer during a congressional committee hearing and for which he was now being prosecuted).

When an indictment fails to satisfy the requirements of Rule 7, Rule 12 of the Federal Rules of Criminal Procedure empowers a defendant to move to dismiss the indictment due to a "defect" therein, including a "lack of specificity" and "failure to state an offense."  Fed. R. Crim. P. 12(b)(3)(B).  "[I]t is a settled rule that a bill of particulars cannot save an invalid indictment." *Gonzalez*, 686 F.3d at 128 (internal quotation marks and citation omitted).  Upon a defendant's motion to dismiss, the Court must accept the factual allegations on their face, *see Boyce Motor Lines, Inc.*, 342 U.S. at 343 n. 16, but the Court is not bound to accept as true a legal conclusion couched as a factual allegation.  *See Gonzalez*, 686 F.3d at 129 ("Stating that an act is 'in violation of' a cited statutory section adds no factual information as to the act itself.") (internal marks and citation omitted).  Because Rule 7 codifies constitutional safeguards, "the indictment must be considered as it was actually drawn, not as it might have been drawn."  *United States v. Pirro*, 212 F.3d 86, 92 (2d Cir. 2000).

At the pretrial stage, a court may not weigh the sufficiency of the *evidence* underlying an indictment.  The court, however, may evaluate the sufficiency of the government's *allegations,* "so that it may decide whether [the facts alleged] are sufficient in law to support a conviction."  *United States v. Aleynikov*, 737 F. Supp. 2d 173, 176 (S.D.N.Y. 2010) (citation omitted).  "Dismissal is required where the conduct alleged in the indictment as a factual basis for the offense is not actually prohibited by the language of the statute."  *Id.*; *see also Gonzalez*, 686 F.3d at 132.

Count One of the Indictment charges Mr. Milton with securities fraud in violation of Section 10(b) of the Securities and Exchange Act of 1934.  Indictment ¶ 82.  Count Two of the Indictment charges Mr. Milton with securities fraud in violation of 18 U.S.C. § 1348.[14]

---

[14] 18 U.S.C. § 1348 provides in pertinent part:
Whoever knowingly executes, or attempts to execute, a scheme or artifice—

Indictment ¶ 84.  Count Three of the Indictment charges Mr. Milton with wire fraud in violation of 18 U.S.C. § 1343.[15]  Indictment ¶ 86.

The Indictment is fatally flawed because it does *not* contain sufficient factual allegations that, if proven, would establish an *essential* element of each charged offense—that Mr. Milton's statements were material.  Materiality of the alleged misrepresentations is an essential element of each charged offense.  *See United States v. Litvak* ("*Litvak II*"), 889 F.3d 56, 64 (2d Cir. 2018) (Section 10(b)); *United States v. Hatfield*, 724 F. Supp. 2d 321, 324 (E.D.N.Y. 2010) (18 U.S.C. § 1348(2)); *United States v. Pierce*, 224 F.3d 158, 165 (2d Cir. 2000) (18 U.S.C. § 1343).  For example, the Indictment alleges in conclusory terms that many retail investors purchased Nikola stock "based, at least in part," on Mr. Milton's alleged misstatements.  *See, e.g.*, Indictment ¶ 17.  Indeed, the Indictment does not—because it cannot—conclusively state whether any of these retail investors read or heard any of Mr. Milton's alleged misrepresentations, much less describe the *impact* that those statements had on the total mix of information available to the reasonable investor once Nikola stock became publicly available.  Because the Indictment fails to allege an *essential* element of the offense, the Court must dismiss the Indictment as defective on its face.  *See* Fed. R. Crim. P. Rule 12(b)(3)(B); *see also Pirro,* 212 F.3d at 91 (affirming the dismissal of a charge for failure to report a third party's "ownership interest" on the income tax return of

---

> **(1)** to defraud any person in connection with . . . any security of an issuer with a class of securities registered under section 12 of the Securities Exchange Act of 1934 (15 U.S.C. 78*l*) or that is required to file reports under section 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78*o*(d)); or
> **(2)** to obtain, by means of false or fraudulent pretenses, representations, or promises, any money or property in connection with . . . any security of an issuer with a class of securities registered under section 12 of the Securities Exchange Act of 1934 (15 U.S.C. 78*l*) or that is required to file reports under section 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78*o*(d));
> shall be fined under this title, or imprisoned not more than 25 years, or both.

[15] 18 U.S.C. § 1343 provides in pertinent part:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

commercial real property owned by an S Corporation); *United States v. Pacione*, 738 F.2d 567, 572–73 (2d Cir. 1984) (affirming the dismissal of loan sharking charges when the indictment failed to allege that the defendants sought to collect on the loan using illegal means as required by the statute); *United States v. Serrano*, 191 F. Supp. 3d 287, 289–90 (S.D.N.Y. 2016) (dismissing charges for felon in possession of body armor where the indictment failed to allege that the body armor passed through interstate or foreign commerce); *United States v. Biba*, 395 F. Supp. 3d 227, 236–39 (E.D.N.Y. 2019) (dismissing charges for usage or carrying of firearm during a crime of violence where indictment failed to include factual allegation that defendant brandished a firearm).

## II.     The Indictment Fails To Include Sufficient Factual Allegations That, if Proven, Would Establish an Essential Element of Each Charged Offense—That Mr. Milton's Alleged Misstatements Were Material.

### A.     For a Misstatement To Be Material Under Section 10(b) (Count One), the Misstatement Must Significantly Alter the Total Mix of Information Available to a Reasonable Investor.

Under Section 10(b) (Count One), a statement is material only if there is a "substantial likelihood that a reasonable investor would find the . . . misrepresentation important in making an investment decision." *Litvak II*, 889 F.3d at 64.  A misrepresentation is important if it "would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Id.* (quoting *Basic Inc. v. Levinson*, 485 U.S. 224, 231–32 (1988)); *see also In re Eros Int'l Sec. Litig.*, No. 15 Cv. 8956 (AJN), 2017 WL 6405846, at *6 (S.D.N.Y. Sept. 22, 2017) ("Disclosure is not required simply because an investor might find the information relevant or of interest."), *aff'd*, 735 F. App'x 15 (2d Cir. 2018)  The Second Circuit recently reaffirmed that the "standard of a reasonable investor, like the negligence standard of a reasonable man, is an objective one," *Litvak II*, 889 F.3d at 64 (*citing TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976) (internal quotation marks omitted)), with the apt

observation that "[m]ateriality cannot be proven by the mistaken beliefs of the worst informed trader in a market." *Id.* at 65.

Although the question of materiality is considered a mixed question of law and fact and typically submitted to a jury for determination, a court should determine materiality as a matter of law where the alleged misstatements are "so obviously unimportant to the reasonable investor that reasonable minds could not differ on the question of their importance." *United States v. Litvak* ("*Litvak I*"), 808 F.3d 160, 175 (2d Cir. 2015); *see also Litvak II*, 889 F.3d at 66. For instance, opinions and puffery—statements which do "not express matters of objective fact which can be assessed against an objective standard but instead convey[] a belief or judgment whose determination is inherently subjective"—are immaterial as a matter of law, and such findings are "routinely made by courts on motions to dismiss." *Wang v. Bear Stearns Cos. LLC*, 14 F. Supp. 3d 537, 548 (S.D.N.Y. 2014) (internal quotation marks and citation omitted); *see also ECA, Local 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 206 (2d Cir. 2009) ("The statements are too general to cause a reasonable investor to rely upon them."); *United States v. Carroll*, No. 19 Cr. 545 (CM), 2020 WL 1862446, at *3 (S.D.N.Y. Apr. 14, 2020) ("Materiality is the same in both the civil and criminal context") (internal quotation marks omitted); *see also City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 185 (2d Cir. 2014) ("[W]hile importance is undoubtedly a *necessary* element of materiality, importance and materiality are not synonymous. To be 'material' . . . the alleged misstatement must be sufficiently specific for an investor to reasonably rely on that statement as a guarantee of some concrete fact or outcome which, when it proves false or does not occur, forms the basis for a . . . fraud claim.").

The context in which a statement is made—including both the medium in which the statement is disseminated and the existence of otherwise available information—is critical to the determination of materiality.  *See United States v. Contorinis*, 692 F.3d 136, 143 (2d Cir. 2012) ("Information … comes in varying degrees of specificity and reliability, and the extent to which a newly reported item of information alters the total mix may depend on the specificity or reliability of that information.").  Material information "transmitted to the public with [sufficient] intensity and credibility" can "effectively counter-balance" any misleading representations or omissions.  *In re Apple Computer Sec. Litig.*, 886 F.2d, 1109, 1116 (2d Cir. 1989) (citing *Basic Inc.*, 485 U.S. at 249); *see also White v. H&R Block, Inc.*, No. 02 Cv. 8965 (MBM), 2004 WL 1698628, at *12 (S.D.N.Y. July 28, 2004) (holding there was no materiality; "[i]n short, the truth was all over the market.").

The Supreme Court has further cautioned against ascribing materiality to "off-the-cuff judgments, of the kind that an individual might communicate in daily life."  *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 190 (2015).  When reasonable investors are faced with a conflict between public statements, those investors will rely on "formal documents," including those "filed with the SEC."  *Id.*; *see also Ganske v. Mensch*, 480 F. Supp. 3d 542, 553 (S.D.N.Y. 2020) (observing that "readers . . . give less credence to . . . remarks published on the Internet than to similar remarks made in other contexts") (internal quotation marks omitted).  And it is well established that "a misrepresentation is immaterial if the information is already known to the market because the misrepresentation cannot then defraud the market."  *Ganino v. Citizens Utilities Co.*, 228 F.3d 154, 167 (2d Cir. 2000).

**B.    For a Misstatement To Be Material Under 18 U.S.C. §§ 1348 (Count Two) and 1343 (Count Three), the Misstatement Must "Actually Matter in a Meaningful Way" To a Rational Decision Maker.**

For the purposes of securities fraud under 18 U.S.C. § 1348 (Count Two) and wire fraud under 18 U.S.C. § 1343 (Count Three), a statement is material "if a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question." *United States v. Frenkel*, 682 F. App'x. 20, 22 (2d Cir. 2017) (wire fraud) (quoting *Neder v. United States*, 527 U.S. 1, 22 n.5 (1999)); *see also United States v. Wey*, No. 15 Cr. 611 (AJN), 2017 WL 237651, at *9 n.6 (S.D.N.Y. Jan. 18, 2017) (securities fraud); *United States v. Coscia*, 866 F.3d 782, 799 (7th Cir. 2017) (securities fraud).[16]  The Second Circuit bluntly summarized the materiality inquiry as follows:   "[W]ould the misrepresentation actually *matter* in a *meaningful way* to a rational decision maker?"  *United States v. Calderon*, 944 F.3d 72, 86 (2d Cir. 2019) (emphasis in original) (wire and bank fraud).   "The role of the ordinary prudence and comprehension standard in the materiality element is to assure that the defendant's conduct was calculated to deceive . . . ."  *United States v. Weaver*, 860 F.3d. 90, 95 (2d Cir. 2017) (internal quotation marks omitted).  The test for materiality focuses on the "potential effect of the false statement *when it is made* rather than on the false statement's actual effect after it is discovered."  *United States v. Fiumano*, No.14 Cr. 518 (JFK), 2016 WL 1629356, at *2 (S.D.N.Y. 2016) (emphasis added) (internal quotation marks omitted).  Further, any analysis of the effect of allegedly false statements "must be in the context in which they were made."  *United States v. Rigas*, 490 F.3d 208, 231 (2d Cir. 2007) (bank fraud).

---

[16] Because Section 1348 "was modeled on the federal mail and wire fraud statutes," *see Coscia*, 866 F.3d at 799, courts in the Second Circuit use case law construing the mail and wire fraud statutes to guide their analysis of Section 1348.  *See Wey*, 2017 WL 237651, at *9 n.6 (as cited in *Coscia*, 866 F.3d at 799); *United States v. Ragosta*, 970 F.2d 1085, 1090 n.2 (2d Cir. 1992) (stating that, because the bank fraud statute was modeled after the mail and wire fraud statutes, precedents established under those statutes could be helpful in interpreting allegations of bank fraud); *accord United States v. Chandler*, 98 F.3d 711, 715 (2d Cir. 1996).

Because "a criminal defendant is entitled to have a jury determine his guilt on every element of his alleged crime," meaning "the jury must [typically] pass on the materiality of a defendant's misrepresentations," *id.* at 231 n.29, a decision by any court that alleged misrepresentations are immaterial as a matter of law would be highly unusual in the criminal context.  Mr. Milton submits that the Indictment against him presents that highly unusual case.  Where, as here, the government's allegations of materiality are "so factually weak" such that "no reasonable jury could make the requisite finding of materiality," a court should make the pretrial determination that such statements or omissions are immaterial.  *United States v. Ferro*, 252 F.3d 964, 968 (8th Cir. 2001) (mail fraud)[17]; *compare United States v. Rodriguez*, 140 F.3d 163, 168 (2d Cir. 1998) (bank fraud) (vacating conviction in part because "no rational trier of fact could have found that [defendant] engaged in a deceptive course of conduct"); *Kungys v. United States*, 485 U.S. 759, 772 (1988) (concluding misrepresentation in naturalization petition was immaterial as a matter of law).

**C.     The Indictment Fails To Include Sufficient Factual Allegations That, if Proven, Would Establish An Essential Element of Each Charged Offense— That Mr. Milton's Alleged Misstatements "Significantly Altered" the Total Mix of Information or "Actually Mattered in a Meaningful Way" to a Reasonable Investor.**

Here, Mr. Milton made statements, many of which stated his subjective opinions about the attributes of Nikola's products, and he directed the large majority of those statements to consumers using consumer and general interest-oriented media, not media directed to and reasonably relied upon by investors.  The government vaguely asserts only that "many *retail* investors were purchasing Nikola stock *at least in part* on the basis of false and misleading

---

[17] The court in *Ferro* concluded that the indictment at issue was sufficient on its face, but acknowledged "the *possibility* that the government's well-pleaded allegation of materiality might be so factually weak as to permit a pretrial determination that no reasonable jury could make the requisite finding of materiality." *Ferro*, 252 F.3d at 968 (emphasis in original).

claims by" Mr. Milton.  Indictment ¶ 81 (emphasis added).  Yet the government fails to make factual allegations that amount to any particular statement by Mr. Milton (or the combined impact of all statements) being substantially likely to "significantly alter" the total mix of information available or "actually matter in a meaningful way" to a reasonable investor.

> 1.   **The Indictment Uses the Incorrect Standard for Materiality and Fails To Allege That the Alleged Misstatements Were Material to a Reasonable Investor.**

As a threshold matter, the government critically fails to connect its allegations, all of which involve the so-called "retail" investor, to the objective standard for materiality, which requires a *reasonable* investor.  *See, e.g.,* Indictment ¶¶ 1, 3, 17, 22, 24, 26, 37, 64, 71, 80, 81. Indeed, at no place whatsoever does the Indictment use the appropriately-phrased, applicable standard of a "reasonable investor."  Perhaps this is because the Indictment concedes in several places that other classes of investors were clearly not deceived.  *See, e.g.,* Indictment ¶ 14, 15, 17, 81.

At best, the government's "*at least in part*" allegations amount to saying that a so-called "retail" investor, idiosyncratic or not, "*might* have considered the [alleged] misrepresentation[s] or omission[s] important."  *In re ProShares Tr. Sec. Litig.*, 728 F.3d 96, 102 (2d Cir. 2013) (emphasis added) (internal quotation marks omitted).  In other words, according to the Indictment, some "retail" investor might have considered the alleged misrepresentation or omission important.  Yet "[t]he 'might' formulation" as applied to the correct *reasonable* investor—i.e., a reasonable investor *might* consider a statement important—is insufficient to establish materiality as a matter of law.  *TSC Indus., Inc.*, 426 U.S. at 449.  Because the government fails to make any allegations that, if proven, would establish that the alleged misstatements were material to a *reasonable* investor, the Indictment fails to allege an essential

element of each charged offense—that the alleged misstatements were material—and the Court

must dismiss the Indictment.

        **2.**       **The Indictment Quotes Mr. Milton's Statements Out of Context, Fails To Acknowledge the Contemporaneous Statements by Nikola and Its Executives, and Fails To Allege That the Alleged Misstatements Would Affect the "Total Mix" of Information Available to a Reasonable Investor.**

Even if the government's allegations referred to a reasonable investor, which they do not,

the government *cannot* allege facts that make any particular statement by Mr. Milton (or the

combined impact of all statements) substantially likely to "significantly alter" the total mix of

information available or "actually matter in a meaningful way."  Mr. Milton's alleged

misstatements must be read for meaning in their entirety rather than quoted out of context, as the

government attempts to do.  Further, Mr. Milton's alleged misstatements were all made

contemporaneously with more formal statements by Nikola through SEC filings, press releases,

and other official communications by Nikola and its executives.

Attached as Exhibit A to the Bondi Declaration submitted herewith is a chart with the

statements the government contends were material misstatements by category, placed into their

appropriate and full context, together with contemporaneous formal statements and disclosures

on the same topics by Nikola and its executives.  Bondi Decl., Ex. A.  For example, although the

government asserts that Mr. Milton made false statements concerning Nikola's ability to produce

hydrogen fuel and construct hydrogen fueling stations, the government makes that assertion by

quoting selectively from the entirety of Mr. Milton's statements and without acknowledgment of

similar statements by Nikola and its executives.[18]  Indictment ¶¶ 62–69.  In the June 11, 2020

Autoline After Hours podcast, *see* Indictment ¶ 67, the podcast hosts asked Mr. Milton a future-

oriented question: "how is cross continental trucking going to work out?"  Bondi Decl., Ex. B

(Transcript of June 11, 2020 Autoline After Hours Podcast) at 11-12.[19]  In response, Mr. Milton

used both the present and future tense, clearly referencing Nikola's "plan" to pre-sell routes and

produce hydrogen on the freeways on those routes, which he described as a process that would

take seven years.  *Id.*  At the conclusion of the podcast interview, the Autoline After Hours hosts

confirmed they understood Mr. Milton's statements to reflect Nikola's future plans when they

expressed skepticism about Nikola's business plan because the stations were "not going to be up

yet" at the time of the Badger's planned release in 2021.  *Id.* at 28.  Viewing the statements

quoted by the government in their entirety, Mr. Milton clearly and irrefutably was speaking in

the future tense—and listeners accurately understood Mr. Milton.

Further, Mr. Milton did not speak in a vacuum.  As the government acknowledges, *see*

Indictment ¶ 62, Mr. Milton's statements about hydrogen fuel were made contemporaneously

with formal statements by Nikola.  For example, in the June 15, 2020 and July 17, 2020

Prospectuses, Nikola unambiguously stated that it "may not be able to produce or source the

hydrogen needed to establish our planned hydrogen fueling stations," that its "inability to cost-

---

[18] The Court may take judicial notice of statements from public filings with the SEC, as well as publicly available statements published on Nikola's website.  *See Grecco v. Age Fotostock America, Inc.*, No. 21 Cv. 423 (JSR), 2021 WL 3353926 (S.D.N.Y. Aug. 2, 2021) (holding that, on a motion to dismiss, "a court may take judicial notice of information publicly announced on a party's website, as long as the website's authenticity is not in dispute") (quoting *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 167 (S.D.N.Y. 2015)); *Golden Hill Paugussett Tribe of Indians v. Rell*, 463 F. Supp. 2d 192, 197 (D. Conn. 2006) ("As a general rule[,] 'judicial notice may be taken of public filings.'") (quoting *Kavowras v. N.Y. Times Co.*, 328 F.3d 50, 57 (2d Cir. 2003)).

[19] *See supra* note 6.  The Court may take judicial notice of publicly available media reports under Federal Rule of Evidence 201.  *See Finn v. Barney*, 471 F. App'x. 30, 32 (2d Cir. 2012) (affirming a district court taking judicial notice of media reports because they could "be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"); *In re UBS Auction Rate Sec. Litig.*, No. 08 Cv. 2967 (LMM), 2010 WL 2541166, at *14 (S.D.N.Y. June 10, 2010) (taking judicial notice of press coverage).

effectively source the energy requirements to conduct electrolysis at our fueling stations may [make] our hydrogen uneconomical compared to other vehicle fuel sources," and that its "ability to economically produce hydrogen for our FCEV trucks requires us to secure a reliable source of electricity for each of our fueling stations at a price per kilowatt hour that is below the current retail rates in the geographic areas we target." Nikola Corp., Preliminary Prospectus (Form S-1) (June 15, 2020), at 12; Nikola Corp., Prospectus (Form 424(B)(3)) (July 17, 2020), at 12. In other words, days before *and* days after the June 11, 2020 Autoline After Hours podcast in which there was an alleged misstatement relating to hydrogen fuel, Nikola made statements, which the government has conceded were accurate, explaining that hydrogen fuel production would not occur until the future. Those contemporaneous, formal statements are the Achilles' heel of the Indictment's attempt to establish materiality. Indeed, no jury could find that a *reasonable* investor would consider Mr. Milton's statements material, and as a matter of law, the June 11, 2020 alleged misstatement cannot be material. *See Ganino*, 228 F.3d at 167; *Rigas*, 490 F.3d at 231 (finding that, in assessing the materiality of misstatements in wire fraud claims, "[a]nalysis of the misrepresentations must be made in the context in which [the alleged misstatements] were made.").

This example is only one of the many instances demonstrated in Exhibit A to the Bondi Declaration submitted herewith in which the government has cherry-picked certain sentences from the entirety of Mr. Milton's statements and utterly failed to mention the contemporaneous statements by Nikola, thereby ignoring the "total mix" of information available to the market. *See* Bondi Decl., Ex. A. As a matter of law, any *reasonable* investor would rely upon the formal statements issued by Nikola, many of which were made in documents filed by the SEC, instead of Mr. Milton's alleged misstatements, which were made in informal settings such as tweets,

social media posts, podcasts and other media interviews.  *See Omnicare, Inc.*, 575 U.S. at 190;
*Ganske*, 480 F. Supp. 3d at 553.

Further, many of the alleged misstatements seized upon by the government and cited in
the Indictment were made many months and even *years* before the merger of Nikola with
VectoIQ in June 2020.  The proxy statement and Form 8-K filed with the SEC supplanted any
statements made by Mr. Milton that preceded the closing of the merger between VectoIQ and
Nikola.  *See* Nikola Corp., Current Report (Form 8-K) (June 8, 2020).[20]  Accordingly, Mr.
Milton's stale statements were immaterial as a matter of law.  *See Plumber & Steamfitters Loc.
773 Pension Fund v. Danske Bank A/S*, 11 F.4th 90, 102 (2d Cir. 2021) (finding that statements
made 39 months before investment were rendered immaterial by the passage of time and the
"outpouring of information" regarding the issue); *see also In re Time Warner Inc. Sec. Litig.*, 794
F. Supp. 1252, 1260 (S.D.N.Y. 1992), *aff'd in part, rev'd in part on other grounds*, 9 F.3d 259
(2d Cir. 1993) (determining that a statement made ten months before the plaintiff's purchase,
"even if utterly false and fraudulently made, cannot have formed a basis for plaintiffs'
expectations" because "innumerable intervening factors could have changed the company's
value" in the interim); *Rand v. Cullinet Software, Inc.*, 847 F. Supp. 200, 210 (D. Mass. 1994)
(reasoning that allegedly misleading statements had "lost any possible materiality" by the time
the plaintiff purchased stock seven months later given the "intervening time" and new
"information . . . enter[ing] the market").  The Indictment quotes Mr. Milton out of context, fails
to acknowledge contemporaneous statements by Nikola and its executives, and fails to allege that
the alleged misstatements would affect the "total mix" of information available to a reasonable
investor.  As a result, the Indictment fails to allege an essential element of each charged

---

[20] https://www.sec.gov/Archives/edgar/data/1731289/000110465920070923/tm2021982d1_8k.htm.

offense—that the alleged misstatements were material—and the Court must dismiss the
Indictment.

### 3.    Certain Statements Constitute Nonactionable Puffery.

The government also ignores that many of Mr. Milton's alleged misstatements either
reflect his subjective opinion, sincerely held and with a good faith basis in fact, or represent
characteristic corporate optimism, neither of which is actionable under securities law.  *See
Tongue v. Sanofi*, 816 F.3d 199, 209–10 (2d Cir. 2016); *Wang*, 14 F. Supp. 3d at 545.  As the
Sixth Circuit aptly summarized,

> All public companies praise their products and their objectives.  Courts
> everywhere have demonstrated a willingness to find immaterial as a matter of law
> a certain kind of rosy affirmation commonly heard from corporate managers and
> numbingly familiar to the marketplace—loosely optimistic statements that are so
> vague, so lacking in specificity, or so clearly constituting the opinion of the
> speaker, that no reasonable investor could find them important to the total mix of
> information available.  *In re Ford Motor Co. Sec. Litig.*, 381 F.3d 563, 570–71
> (6th Cir. 2004) (internal quotation marks and citation omitted).

For instance, with respect to the Badger pickup truck, the government takes issue with
Mr. Milton's opinion that the Badger prototypes were "real truck[s]" that could "whoop a Ford-
F-150."  Indictment ¶ 41–61.  The government, however, implicitly admits that the prototypes
worked and could be driven.  *Id.* at ¶ 61.  At worst, Mr. Milton's description of the Badger
prototype as a "real truck" able to "whoop" a competitor represents Mr. Milton's subjective
opinion, sincerely held and with a good faith basis in fact, about what constitutes a "real"
vehicle, and puffery.  Exhibit C to the Bondi Declaration submitted herewith sets forth the
statements in the Indictment that are clearly nonactionable puffery and as such, immaterial as a
matter of law.  *See* Bondi Decl., Ex. C (Statements of Opinion and Puffery in the Indictment);
*see also JP Morgan Chase Co.*, 553 F.3d at 206 (2d Cir. 2009) (finding that "statements [that]
are too general to cause a reasonable investor to rely upon them" are puffery); *see also Lopez v.*

*CTPartners Exec. Search Inc.*, 173 F. Supp. 3d 12, 27–28 (S.D.N.Y. 2016) (quoting *UBS AG*, 752 F.3d at 185).  Because the statements in Exhibit C constitute nonactionable puffery, to the extent the Indictment relies upon those statements, the Indictment fails to allege an essential element of each charged offense—that the alleged misstatements were material—and the Court must dismiss the Indictment as it relates to those statements.

## III.      The Proper Remedy Is Dismissal.

The allegations contained in this Indictment constitute a clear violation of Rule 7 of the Federal Rule of Criminal Procedure by failing to contain any factual particularity as to materiality, which is required "to ensure that the prosecution will not fill in elements of its case with facts other than those considered by the grand jury." *Walsh*, 194 F.3d at 44.  A court may dismiss an indictment "where it fails to allege the essential facts constituting the offense charged." *Aleynikov*, 737 F. Supp. 2d at 176 (S.D.N.Y. 2010) (internal quotation marks omitted); *see also United States v. Berlin*, 472 F.2d 1002, 1006–08 (2d Cir. 1973) (holding that the trial court should have dismissed certain counts in the indictment because it did not sufficiently allege an essential element of the charged statute); *United States v. Laurent*, 861 F. Supp. 2d 71, 109 (E.D.N.Y. 2011) ("A trial court may dismiss an indictment that does not state an offense under the charged statute.").

Because the Indictment fails to include sufficient factual allegations to establish that Mr. Milton's alleged misstatements, if proven, were material, the Indictment must be dismissed in its entirety.  If this Court does not dismiss the Indictment at this stage, the Court at a minimum should order the government to provide a bill of particulars, identifying with specificity the facts that the government alleges in support of its allegations of materiality.  *See* Mr. Milton's Motion for a Bill of Particulars.  Without this information, the Indictment is too vague to inform Mr. Milton the nature of the securities fraud charges, to allow for the preparation of expert and lay

witnesses and the gathering evidence to rebut the government's charges, and to avoid unfair surprise at trial.

Dated:  December 15, 2021

Respectfully submitted,

/s/

_____

Bradley J. Bondi
CAHILL GORDON & REINDEL LLP
1990 K Street NW, Suite 950
Washington, DC 20006
(202) 862-8910
bbondi@cahill.com

Marc Mukasey
MUKASEY FRENCHMAN LLP
570 Lexington Avenue, Suite 3500
New York, NY 1002
(212) 466-6400
Marc.Mukasey@mfsllp.com

Terence Healy
HUGHES HUBBARD & REED LLP
1775 I Street NW
Washington, DC 20006
(202) 721-4676
terence.healy@hugheshubbard.com

*Counsel for Trevor Milton*