UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

|                                      |     |
|--------------------------------------|-----|
| UNITED STATES OF AMERICA             |  x  |
|                                      |  :  |
|                                      |  :  |
|          - against -                 |  :  |
|                                      |  :  Case No. 1:21-cr-00478-ER |
|                                      |  :  |
| TREVOR MILTON,                       |  :  |
|                                      |  :  |
|          Defendant.                  |  :  |
|                                      |  x  |

_____

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS CHARGES OF SCHEME LIABILITY UNDER COUNT ONE OF THE INDICTMENT

Bradley J. Bondi
CAHILL GORDON & REINDEL LLP
1990 K Street NW, Suite 950
Washington, DC 20006
(202) 862-8910
bbondi@cahill.com

Marc Mukasey
MUKASEY FRENCHMAN LLP
570 Lexington Avenue, Suite 3500
New York, NY 1002
(212) 466-6400
Marc.Mukasey@mfsllp.com

Terence Healy
HUGHES HUBBARD & REED LLP
1775 I Street NW
Washington, DC 20006
(202) 721-4676
terence.healy@hugheshubbard.com

*Counsel for Trevor Milton*

## TABLE OF CONTENTS

INTRODUCTION.............................................................................................................................1

FACTUAL BACKGROUND.........................................................................................................3

ARGUMENT...................................................................................................................................4

      I.       **The Constitution and the Federal Rules of Criminal Procedure Require that an Indictment Contain Sufficient Factual Allegations That, if Proven, Would Establish Each Element of the Charged Offense.**..................................................................................................... 4

      II.      **The Court Should Strike All Allegations of Scheme Liability from Count One of the Indictment.**............................................................................. 6

CONCLUSION ...........................................................................................................................11

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*In re Alstom SA Sec. Litig.*,
406 F. Supp. 2d 433 (S.D.N.Y. 2005)....................................................................11

*Boyce Motor Lines, Inc. v. United States*,
342 U.S. 337 (1952)......................................................................................3n

*Fogel v. Vega*,
759 F. App'x 18 (2d Cir. 2018) .........................................................................7

*Hamling v. United States*,
418 U.S. 87 (1974)...........................................................................................4

*Lentell v. Merrill Lynch & Co., Inc.*,
396 F.3d 161 (2d Cir. 2005).........................................................................7, 8

*Lorenzo v. SEC*,
139 S. Ct. 1094 (2019)................................................................9, 10, 10n, 11

*In re Mindbody, Inc. Sec. Litig.*,
489 F. Supp. 3d 188 (S.D.N.Y. 2020)..............................................................6

*In re Parmalat Sec. Litig.*,
376 F. Supp. 2d 472 (S.D.N.Y. 2005)............................................................11

*Menaldi v. Och-Ziff Capital Mgmt. Grp. LLC*,
164 F. Supp. 3d 568 (S.D.N.Y. 2016) ..............................................................7

*New York v. Tanella*,
374 F.3d 141 (2d Cir. 2004)..........................................................................3n

*Puddu v. 6D Glob. Techs., Inc.*,
No. 15 Cv. 8061 (AJN), 2021 WL 1198566 (S.D.N.Y. Mar. 30, 2021)..............10n

*Russell v. United States*,
369 U.S. 749 (1962)..........................................................................................5

*Schnell v. Conseco, Inc.*,
43 F. Supp. 2d 438 (S.D.N.Y. 1999)..................................................................8

*SEC v. China Ne. Petroleum Holdings Ltd.*,
27 F. Supp. 3d 379 (S.D.N.Y. 2014)..................................................................8

*SEC v. Fiore*,
416 F. Supp. 3d 306 (S.D.N.Y. 2019)..............................................................10n

*SEC v. Kelly*,
   817 F. Supp. 2d 340 (S.D.N.Y. 2011)...................................................................................7

*SEC v. KPMG LLP*,
   412 F. Supp. 2d 349 (S.D.N.Y. 2006)...................................................................................7

*SEC v. Lee*,
   720 F. Supp. 2d 305 (S.D.N.Y. 2010)...................................................................................7

*SEC v. Lucent Techs., Inc.*,
   610 F. Supp. 2d 342 (D.N.J. 2009) .....................................................................................11

*SEC v. Rio Tinto plc*,
   No. 17 Cv. 7994 (AT), 2019 WL 1244933 (S.D.N.Y. Mar. 18, 2019)...........................6, 7, 10

*SEC v. SeeThruEquity, LLC*,
   No. 18 Cv. 10374 (LLS), 2019 WL 1998027 (S.D.N.Y. Apr. 26, 2019) ...............................10n

*SEC v. Sequential Brands Grp., Inc.*,
   No. 20 Cv. 10471 (JPO), 2021 WL 4482215 (S.D.N.Y. Sept. 30, 2021)..............................10n

*In re Smith Barney Transfer Agent Litig.*,
   884 F. Supp. 2d 152 (S.D.N.Y. 2012)...................................................................................7

*United States v. Aleynikov*,
   676 F.3d 71 (2d Cir. 2012)...................................................................................................5

*United States v. Aleynikov*,
   737 F. Supp. 2d 173 (S.D.N.Y. 2010) .................................................................................5

*United States v. Gonzalez*,
   686 F.3d 122 (2d Cir. 2012)..............................................................................................4, 5

*United States v. Hess*,
   124 U.S. 483 (1888)..............................................................................................................5

*United States v. Nejad*,
   No. 18 Cr. 224 (AJN), 2019 WL 6702361 (S.D.N.Y. Dec. 6, 2019) .....................................4

*United States v. Stringer*,
   730 F.3d 120 (2d Cir. 2013)..................................................................................................4

*United States v. Walsh*,
   194 F.3d 37 (2d Cir. 1999)....................................................................................................4

*Walsh v. Rigas*,
   No. 17 Cv. 4089 (NRB), 2019 WL 294798 (S.D.N.Y. Jan. 23, 2019) ...................................7

## Constitutional Provisions

U.S. Const. amend. V ...................................................................................................................4

U.S. Const. amend. VI .................................................................................................................4

## Regulations

17 C.F.R.

§ 240.10b-5 ...................................................................................................................2, 3n, 6

§ 240.10b-5(a) ...........................................................................................................2, 6, 7, 9, 10

§ 240.10b-5(b) ........................................................................................................................6, 7, 9

§ 240.10b-5(c) ...........................................................................................................2, 6, 7, 9, 10

## Rules

Fed. R. Crim. P.

7(c)(1) .........................................................................................................................................4

12(b)(3)(B) ..................................................................................................................................5

12(b)(3)(B)(v) ....................................................................................................................1, 5, 11

## Statutes

15 U.S.C. § 78j(b) .........................................................................................................2, 3n, 6

Securities Exchange Act of 1934 § 10(b) ...........................................................................2, 3n, 6

## Other Authorities

Nikola, Nikola Corporation Q1 2021 Earnings Call Transcript (May 7, 2021), at
    9, https://d32st474bx6q5f. cloudfront.net/nikolamotor/uploads/
    investor/presentation/transcript_file/27/Q1_2021_Nikola_Earnings_Call_Tran
    script.pdf.  ...............................................................................................................................2n

Press Release, Nikola, *IVECO and Nikola inaugurate joint-venture manufacturing
    facility for electric heavy-duty trucks in Ulm, Germany* (Sept. 15, 2021),
    https://nikolamotor.com/press_releases/iveco-and-nikola-inaugurate-joint-
    venture-manufacturing-facility-for-electric-heavy-duty-trucks-in-ulm-
    germany-131.  ..........................................................................................................................2n

Press Release, U.S. Dep't of Just., *Former Nikola Corporation CEO Trevor Milton Charged in Securities Fraud Scheme* (July 29, 2021), https://www.justice.gov/usao-sdny/pr/former-nikola-corporation-ceo-trevor-milton-charged-securities-fraud-scheme.................................................................2n

Defendant Trevor Milton submits this memorandum of law in support of his motion to dismiss charges of scheme liability under Count One of the Indictment pursuant to Rule 12(b)(3)(B)(v) of the Federal Rules of Criminal Procedure.[1]

**INTRODUCTION**

Trevor Milton is innocent.  The Indictment charges Mr. Milton with two counts of securities fraud and one count of wire fraud based on alleged misrepresentations he made from November 2019 to September 2020 in "social media and television, print, and podcast interviews" as Chief Executive Officer ("CEO") and later Executive Chairman of Nikola Corporation ("Nikola").  Indictment, ¶¶ 1, 5.

Nikola was formed in 2015 with the goal of dramatically reducing greenhouse emissions from Class 8 heavy trucks.  At that time, the concept of developing low- and zero-emission tractor-trailers was something few industry participants even considered, much less pursued. Nikola became an industry leader in this area and, in addition to a battery-electric powertrain, engineered a powertrain fueled by hydrogen, enabling longer ranges and heavier loads.  There was no established blueprint for much of this work.  Nikola and its partners had to address many novel technical challenges for the first time in the automotive industry.

Now, only six years after its founding, Nikola has designed, constructed, driven, and tested multiple versions of both battery-electric (BEV) and hydrogen fuel cell-electric (FCEV) vehicles.  Earlier this year, Nikola unveiled its manufacturing facility in Ulm, Germany where

---

[1] As set forth in Mr. Milton's Motion to Dismiss the Indictment or, in the Alternative, to Transfer Venue (ECF 11), and his pending appeal of the Court's venue decision (ECF 33), this case should be dismissed because, respectfully, venue is not proper in the Southern District of New York.  Mr. Milton does not waive his constitutional right to venue in a proper district and submits this motion to the Court pursuant to the Court's previously ordered schedule.

the first Nikola Tre trucks are currently being produced.[2]  Commercial delivery of those trucks to

customers will begin in 2022.[3]  As one JP Morgan analyst commented, the speed of progress at

Nikola has been "really breathtaking."[4]  Nikola is thus on the cusp of realizing the very vision

Mr. Milton and his cofounders had in 2015.

Notwithstanding this remarkable progress, the government chose to investigate Nikola

and, on July 29, 2021, unsealed an Indictment charging Mr. Milton (and no other person or

entity) with securities and wire fraud, and in a press conference the same day accused him of

lying about "all aspects"[5] of the company he created.

In its sweeping and overreaching Indictment, the government alleges Mr. Milton engaged

in a "scheme" to defraud investors "through false and misleading statements" concerning Nikola

and its products.  Indictment ¶ 1.  Yet despite littering the word "scheme" freely throughout the

Indictment, the government does not allege even a *single* instance in which Mr. Milton (or

anyone else) is said to have engaged in any fraudulent conduct other than making allegedly false

statements.  The Indictment on its face cannot support charges for "scheme" liability under

Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5(a)

---

[2] Press Release, Nikola, *IVECO and Nikola inaugurate joint-venture manufacturing facility for electric heavy-duty trucks in Ulm, Germany* (Sept. 15, 2021), https://nikolamotor.com/press_releases/iveco-and-nikola-inaugurate-joint-venture-manufacturing-facility-for-electric-heavy-duty-trucks-in-ulm-germany-131.
[3] *See id.*
[4] Nikola, Nikola Corporation Q1 2021 Earnings Call Transcript (May 7, 2021), at 9, https://d32st474bx6q5f.cloudfront.net/nikolamotor/uploads/investor/presentation/transcript_file/27/Q1_2021_Nikola_Earnings_Call_Transcript.pdf.
[5] Press Release, U.S. Dep't of Just., *Former Nikola Corporation CEO Trevor Milton Charged in Securities Fraud Scheme* (July 29, 2021), https://www.justice.gov/usao-sdny/pr/former-nikola-corporation-ceo-trevor-milton-charged-securities-fraud-scheme.

and (c)[6] and is therefore deficient as a matter of law.  The Court should dismiss any charges for scheme liability under Count One.

## FACTUAL BACKGROUND[7]

The Indictment charges Mr. Milton with two counts of securities fraud and one count of wire fraud based on alleged misrepresentations he made between November 2019 and September 2020 in "social media and television, print, and podcast interviews."  Indictment ¶ 1.  The present motion concerns only Count One, which charges Mr. Milton with violations of Section 10(b) of the Exchange Act and Rule 10b-5(a)–(c), and is limited to charges of "scheme" liability under those provisions.

The Indictment alleges, as the sole basis for the charges against Mr. Milton, that he made false and misleading statements about Nikola's "products and milestones," Indictment ¶¶ 22–26, including false and misleading statements about the Nikola One, ¶¶ 27–40; the Badger pickup truck, ¶¶ 41–61; hydrogen production, ¶¶ 62–69; in-house technology, ¶¶ 70–75; and reservations for Nikola's trucks, ¶¶ 76–79.  Nowhere within the four corners of the Indictment does the government allege Mr. Milton committed any other deceptive act or misconduct.  The charges rest *solely* on his having *made* allegedly "false and misleading statements" to investors.  *See* Indictment ¶¶ 1, 22.

---

[6] The relevant provisions of the Exchange Act and Rule 10b-5 are codified at 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5.  For ease of discussion in this brief, citations to both the original statutory and rules sections and the codified sections are used.

[7] We dispute the government's factual allegations, but on this motion to dismiss, we must accept the factual allegations on their face.  *See Boyce Motor Lines, Inc. v. United States*, 342 U.S. 337, 343 n.16 (1952) (In reviewing a motion to dismiss, "the allegations of the indictment must be taken as true."); *New York v. Tanella*, 374 F.3d 141, 148 (2d Cir. 2004) (When reviewing a motion to dismiss, "we view the evidence in the light most favorable to the [government] and assume the truth of the allegations in the indictment.").

-3-

## ARGUMENT

**I.**     **The Constitution and the Federal Rules of Criminal Procedure Require that an Indictment Contain Sufficient Factual Allegations That, if Proven, Would Establish Each Element of the Charged Offense.**

The Constitution of the United States provides that citizens shall not to be "deprived of life, liberty, or property, without due process of law" and that a criminal defendant must "be informed of the nature and cause of the accusation" against him.  U.S. Const. amends. V, VI. Rule 7 of the Federal Rules of Criminal Procedure, which safeguards those rights enshrined in the Fifth and Sixth Amendments to the Constitution, requires that all criminal indictments include "a plain, concise, and definite written statement of the essential facts constituting the offense charged."  Fed. R. Crim. P. 7(c)(1).  "The wording of this Rule imposes two requirements: the statement of the essential facts *and* the citation of the statute.  *They are separate requirements and not a restatement of the other*."  *United States v. Gonzalez*, 686 F.3d 122, 128 (2d Cir. 2012) (emphasis in original; internal alterations and citation omitted).

The Second Circuit further explains:  "An indictment is sufficient if it 'first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal . . . in bar of future prosecutions for the same offense.'"  *United States v. Nejad*, No. 18 Cr. 224 (AJN), 2019 WL 6702361, at *15 (S.D.N.Y. Dec. 6, 2019) (quoting *United States v. Stringer*, 730 F.3d 120, 124 (2d Cir. 2013)); *see also Hamling v. United States*, 418 U.S. 87, 117 (1974).  An indictment also must "contain some factual particularity to ensure that the prosecution will not fill in elements of its case with facts other than those considered by the grand jury."  *United States v. Walsh*, 194 F.3d 37, 45 (2d Cir. 1999); *see also Hamling*, 418 U.S. at 117–18 ("Undoubtedly the language of the statute may be used in the general description of an offence, but it must be accompanied with such a

statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged." (quoting *United States v. Hess*, 124 U.S. 483, 487 (1888))); *Russell v. United States*, 369 U.S. 749, 764 (1962) (striking down an indictment tracking language of the relevant criminal statute and alleged failure to answer questions "pertinent to the inquiry" without any allegations as to the subject of the inquiry).

An indictment that fails to allege the essential elements of the crime charged offends both the Fifth and Sixth Amendments. *Russell* 369 U.S. at 760–61. Under Rule 12 of the Federal Rules of Criminal Procedure, a defendant may move to dismiss an indictment due to a "defect" therein, including a "lack of specificity" and "failure to state an offense." Fed. R. Crim. P. 12(b)(3)(B). Rule 12(b)(3)(B)(v) provides that challenges to an indictment for "failure to state an offense" "must be raised by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits." Fed. R. Crim. P. 12(b)(3)(B)(v).

Although it is improper at the pretrial stage to weigh the sufficiency of the *evidence* underlying an indictment, a court may evaluate the sufficiency of the government's *allegations* "so that it may decide whether [the facts alleged] are sufficient in law to support a conviction." *See United States v. Aleynikov*, 737 F. Supp. 2d 173, 176 (S.D.N.Y. 2010). Because "federal crimes are solely creatures of statute . . . a federal indictment can be challenged on the ground that it fails to allege a crime within the terms of the applicable statute." *United States v. Aleynikov*, 676 F.3d 71, 75–76 (2d Cir. 2012) (internal quotation marks and citation omitted). "Dismissal is required where the conduct alleged in the indictment as a factual basis for the offense is not actually prohibited by the language of the statute." *Aleynikov*, 737 F. Supp. 2d at 176*; see also Gonzalez*, 686 F.3d at 132 ("In sum, stating that an act is 'in violation of' a

cited statutory section adds no factual information as to the act itself." (internal marks and

citation omitted)).

## II.   The Court Should Strike All Allegations of Scheme Liability from Count One of the Indictment.

The applicable statute, Section 10(b) of the Exchange Act, provides that

> [i]t shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce . . . to use or employ, in connection with the purchase or sale of any security registered on a national securities exchange . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b).  The regulation referenced in Count One of the Indictment, Rule 10b-5, lists

three kinds of such unlawful "manipulative and deceptive devices":

> (a) To employ any device, scheme or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of circumstances under which they were made, not misleading, or
>
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,
>
> in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5(a)–(c).  Courts have long analyzed claims brought under Rule 10b-5(a)

and (c) together, describing them as alleging "scheme liability," by contrast to Rule 10b-5(b),

which targets "maker" liability.  *See*, *e.g.*, *SEC v. Rio Tinto plc*, No. 17 Cv. 7994 (AT), 2019 WL

1244933, at *16 (S.D.N.Y. Mar. 18, 2019), *motion to certify appeal granted*, No. 17 Cv. 7994

(AT) (DCF), 2021 WL 1893165 (S.D.N.Y. May 11, 2021).

To charge scheme liability, the government must allege and prove: "(1) that the defendant

committed a deceptive or manipulative act, (2) in furtherance of the alleged scheme to defraud,

(3) with scienter." *In re Mindbody, Inc. Sec. Litig.*, 489 F. Supp. 3d 188, 216 (S.D.N.Y. 2020)

(quoting *Menaldi v. Och-Ziff Capital Mgmt. Grp. LLC*, 164 F. Supp. 3d 568, 577 (S.D.N.Y.

2016)).  But the Second Circuit has found that a "claim under Rule 10b-5(a) and (c)" does not lie

where "the sole basis for [scheme liability] is alleged misrepresentations or omissions." *Lentell*

*v. Merrill Lynch & Co., Inc.*, 396 F.3d 161, 177 (2d Cir. 2005) (citation omitted); *see also SEC v.*

*KPMG LLP*, 412 F. Supp. 2d 349, 378 (S.D.N.Y. 2006) ("Because the core misconduct alleged

is in fact a misstatement, it would be improper to impose primary liability on [the defendant] by

designating the alleged fraud a 'manipulative device'" under 10b-5(a) or (c)), *superseded on*

*other grounds as recognized in SEC v. Wey*, 246 F. Supp. 3d 894, 926 (S.D.N.Y. 2017); *In re*

*Smith Barney Transfer Agent Litig.*, 884 F. Supp. 2d 152, 161 (S.D.N.Y. 2012) ("[T]he three

subsections of Rule 10b-5 are distinct, and courts must scrutinize pleadings to ensure that

misrepresentation or omission claims do not proceed under the scheme liability rubric."); *SEC v.*

*Kelly*, 817 F. Supp. 2d 340, 344 (S.D.N.Y. 2011) ("Scheme liability under subsections (a) and (c)

of Rule 10b-5 hinges on the performance of an inherently deceptive act that is distinct from an

alleged misstatement."); *Walsh v. Rigas*, No. 17 Cv. 4089 (NRB), 2019 WL 294798, at *12

(S.D.N.Y. Jan. 23, 2019) ("In the Second Circuit, a plaintiff cannot make out a claim under Rule

10b-5(a) or (c) where the sole bases for such claims are alleged misrepresentations or

omissions."); *Rio Tinto*, 2019 WL 1244933, at *16.

Rather, a plaintiff must "allege a deceptive act, aside from the misstatements he alleges

are actionable under 10b-5(b)" to plead a claim for scheme liability. *Fogel v. Vega*, 759 F.

App'x 18, 25 (2d Cir. 2018).  Typical examples of such acts include executing manipulative

stock trading, forging board meeting minutes or altering computer metadata, or creating or

financing a sham entity. *See, e.g., SEC v. Lee*, 720 F. Supp. 2d 305, 334 (S.D.N.Y. 2010) (listing

examples); *SEC v. China Ne. Petroleum Holdings Ltd.*, 27 F. Supp. 3d 379, 385 (S.D.N.Y. 2014)

(related-party transactions funneled company's net revenue into family accounts).

The Indictment fails to allege *any* deceptive acts by Mr. Milton (or anyone else for that

matter) separate from his alleged misstatements. *See* Indictment ¶¶ 22–26 ("scheme" to defraud

through misrepresentations), ¶¶ 27–40 (misstatements about Nikola One), ¶¶ 41–61

(misstatements about Badger pickup), ¶¶ 62–69 (misstatements about hydrogen production),

¶¶ 70–75 (misstatements about "in-house" technology), ¶¶ 76–79 (misstatements about truck

reservations). Such allegations are insufficient to support charges under Rule 10b-5(a) and (c)

under binding Second Circuit decisional law.

The extent to which the Indictment, as written, flies in the face of Second Circuit

precedent is striking. In *Lentell*, the court observed that an "aggregation of material

misrepresentations to inflate stock" does not constitute a "schem[e] to defraud." *Lentell*, 396

F.3d at 177 (describing and citing *Schnell v. Conseco, Inc.*, 43 F. Supp. 2d 438, 447–48

(S.D.N.Y. 1999)). But the Indictment—in paragraph one no less—states in a conclusory fashion

that Mr. Milton "engaged in a scheme to defraud investors by inducing them to purchase shares

of Nikola corporation" through making "false and misleading statements." Indictment ¶ 1. The

Indictment asserts that Mr. Milton's "motive" for engaging in this so-called "scheme" was to

"enrich" himself—*i.e.*, to inflate the stock price of Nikola, as virtually his entire net worth was in

Nikola stock—so that he could be listed in something called "Forbes's 100 richest

people." Indictment ¶ 4. Thus, the government has pleaded the precise fact pattern the Second

Circuit has warned does *not* constitute scheme liability—an "aggregation of material

misrepresentations to inflate stock." *Lentell*, 396 F.3d at 177.

In 2019, the Supreme Court clarified the contours of scheme liability under the Exchange Act in *Lorenzo v. SEC*, 139 S. Ct. 1094 (2019), and, in so doing, left undisturbed the longstanding precedent of the Second Circuit in this area.  In that case, a broker-dealer named Francis Lorenzo emailed potential investors at the direction of his boss about a debt offering by the firm's only client, stating that the client had $10 million in "confirmed assets" when he knew that to be false (the company had previously publicly stated its assets were $370,572).  *Id.* at 1099.  The "relevant conduct . . . consist[ed] of *disseminating* false or misleading information to prospective investors with the intent to defraud."  *Id.* at 1101 (emphasis added).  Although Lorenzo's boss "made" the misstatements at issue by "suppl[ying] the content and 'approv[ing]' the [e-mail] messages," Lorenzo engaged in additional fraudulent acts, despite the fact that he knew the statements he disseminated were false.  Specifically, with intent to deceive, he sent out emails with the lie stating $10 million in "confirmed assets," "signed the e-mails with his own name, "identified himself as 'Vice President—Investment Banking,'" and "invited the recipients to 'call with any questions.'"  *Id.* at 1099.  In taking those additional actions that were not part of the "making" of the statements, Lorenzo put his own imprimatur on the emails' accuracy (which he knew were lies), thereby "induc[ing] reliance" on the misstatements by potential investors.  *Id.* at 1104.  The Supreme Court held that Lorenzo's additional conduct in forwarding emails that he himself "understood to contain material untruths" was itself a "'device,' 'scheme,' and 'artifice to defraud,'" as well as an "'act, practice or course of business' that 'operate[d] . . . as a fraud'" within the meaning of Rule 10b-5(a) and (c).  *Id.* at 1101 (alterations in original).

*Lorenzo* clarified that subsections (a) and (c) can impose liability for deceptive conduct involving misstatements or omissions, but *only if* the allegations specify deceptive conduct distinct from the making of the challenged misrepresentations or omissions.  *Lorenzo* is fully

consistent with *Lentell* which requires that a claim under subsections (a) and (c) involve

allegations distinct from the making of the alleged misrepresentations.

Indeed, the court in *Rio Tinto* very recently affirmed the principle that scheme liability

under Rule 10b-5(a) and (c) requires deceptive acts distinct from material misstatements or

omissions.  The Securities and Exchange Commission ("SEC") argued it had alleged that the

defendants took "actions" and "conduct" that would form the basis of scheme liability.  The

court flatly rejected that position because "everything [the SEC] listed was either a misstatement

or omission that would form the basis of liability under Rule 10b–5(b)."  *Rio Tinto*, 2019 WL

1244933, at *16.  Applying *Lentell*, the court held that the SEC had failed to state a claim for

scheme liability under Rules 10b–5(a) and (c), *Lorenzo* notwithstanding.  *Id.*[8]

In summary, scheme liability under *Lorenzo* is limited to persons who engage in

fraudulent conduct distinct from, or in addition to, the making of the misstatements, such as "the

direct transmission of false statements to prospective investors intended to induce reliance" in

that case.  *See Lorenzo*, 139 S. Ct. at 1104.  *Lorenzo* provides no reason to disturb longstanding

Second Circuit precedent holding that scheme liability claims cannot be based entirely on the

---

[8] One district judge has misread *Lorenzo* to require courts to permit allegations of scheme liability based *solely* on allegations of making material misstatements.  *See Puddu v. 6D Glob. Techs., Inc.*, No. 15 Cv. 8061 (AJN), 2021 WL 1198566, at *11 (S.D.N.Y. Mar. 30, 2021) (citing *Lorenzo* to support scheme liability claims based solely on the making of alleged misrepresentations).  Although the court in *SEC v. Sequential Brands Grp., Inc.* No. 20 Cv. 10471 (JPO), 2021 WL 4482215, at *6 (S.D.N.Y. Sept. 30, 2021) cited other cases as espousing this misinterpretation of *Lorenzo*, those cases did not involve alleged misstatements or omissions as the sole basis for the scheme liability claims.  *See SEC v. SeeThruEquity, LLC*, No. 18 Cv. 10374 (LLS), 2019 WL 1998027, at *5 (S.D.N.Y. Apr. 26, 2019) (scheme liability claim permitted under *Lorenzo* where "[t]he complaint alleges that the defendants' entire business model, *beyond any misstatements or omissions*, is deceptive" (emphasis added)); *SEC v. Fiore*, 416 F. Supp. 3d 306, 321 (S.D.N.Y. 2019) (scheme liability claim permitted under *Lorenzo* where the SEC alleged a deceptive scheme involving multiple forms of market manipulation, as well as various misstatements or omissions and a misleading promotional campaign, were all designed to convince the public that there was more market interest in Plandai stock than in fact existed).  Nowhere in *Lorenzo* did the Court address purported schemes that consisted *solely* of misstatements or omissions.  In fact, the Supreme Court expressly cabined its holding to the conduct of *disseminating* statements known to be false independent of the "making" of those alleged misrepresentations.  *See Lorenzo,* 139 S. Ct. at 1101, 1104.

making of alleged misrepresentations.  The reasons for distinguishing scheme liability from

maker liability have been discussed extensively by courts.  *See, e.g.*, *SEC v. Lucent Techs., Inc.*,

610 F. Supp. 2d 342, 359 (D.N.J. 2009) (scheme liability should not be "a back door" to evade

limitations on liability for making misstatements (citation omitted)); *In re Parmalat Sec. Litig.*,

376 F. Supp. 2d 472, 503 (S.D.N.Y. 2005) (if scheme liability applied to persons who did no

more than "help others make a false statement or omission," then there would be no meaningful

distinction between primary and secondary liability); *In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d

433, 475 (S.D.N.Y. 2005) (scheme liability cannot be used to "evade the pleading requirements

imposed in misrepresentation cases").  Because *Lorenzo* did not involve allegations based, as

here, solely on making alleged misstatements, the Supreme Court had no reason to—and did

not—address any of the above rationales for why allegations of falsehoods alone cannot support

scheme liability.

In short, the Indictment, which recites that Mr. Milton made numerous material

misstatements and omissions but recites no additional deceptive acts that may constitute a

scheme, does not suffice to make a claim within the meaning of Rule 10b-5(a) and (c).  This

Court should dismiss Count One of the Indictment to the extent it relies upon "scheme" liability.

## CONCLUSION

For the reasons set forth above, Trevor Milton respectfully requests that the Court dismiss

pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B)(v) all charges of "scheme" liability

under Count One of the Indictment.

Dated: December 15, 2021

Respectfully submitted,

/s/

_____

Bradley J. Bondi
CAHILL GORDON & REINDEL LLP
1990 K Street NW, Suite 950
Washington, DC 20006
(202) 862-8910
bbondi@cahill.com

Marc Mukasey
MUKASEY FRENCHMAN LLP
570 Lexington Avenue, Suite 3500
New York, NY 1002
(212) 466-6400
Marc.Mukasey@mfsllp.com

Terence Healy
HUGHES HUBBARD & REED LLP
1775 I Street NW
Washington, DC 20006
(202) 721-4676
terence.healy@hugheshubbard.com

*Counsel for Trevor Milton*