UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

—————————————————————
                                                          x
UNITED STATES OF AMERICA                   :
                                                          :
         - against -                                  :
                                                          :   Case No. 1:21-cr-00478-ER
                                                          :
TREVOR MILTON,                                 :
                                                          :
                              Defendant.         :
—————————————————————x


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL THE PRODUCTION OF *BRADY* MATERIAL**

Bradley J. Bondi
CAHILL GORDON & REINDEL LLP
1990 K Street NW, Suite 950
Washington, DC 20006
(202) 862-8910
bbondi@cahill.com

Marc Mukasey
MUKASEY FRENCHMAN LLP
570 Lexington Avenue, Suite 3500
New York, NY 10022
(212) 466-6400
Marc.Mukasey@mfsllp.com

Terence Healy
HUGHES HUBBARD & REED LLP
1775 I Street NW
Washington, DC 20006
(202) 721-4676
terence.healy@hugheshubbard.com

*Counsel for Trevor Milton*

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ........................................................................................1

FACTUAL BACKGROUND ...........................................................................................2

ARGUMENT ..................................................................................................................5

      I.      The Government Must Actively Search Its Own Files for *Brady* Materials..............................................................................5

      II.     The Government Cannot Satisfy its *Brady* Obligations By Producing Clearly Exculpatory Materials among a Large Production of Approximately One Million Documents.........................................................................7

      III.    The Government Cannot Satisfy its *Brady* Obligations By Failing To Review The Documents In Its Possession ................9

      IV.    The Government Must Search the SEC's Files for *Brady* Materials...........................................................................10

CONCLUSION ..............................................................................................................12

# TABLE OF AUTHORITIES

**Cases**                                                                          **Page(s)**

*Brady v. Maryland*,
    373 U.S. 83 (1963)........................................................................................1, 5

*Kyles v. Whitley*,
    514 U.S. 419 (1995)......................................................................................5, 7

*United States v. Bagley*,
    473 U.S. 667 (1985)........................................................................................5

*United States v. Blankenship*,
    14 Cr. 244 (ICB), 2015 WL 3687864 (S.D.W. Va. June 12, 2015) ..................8, 12

*United States v. Coppa*,
    267 F.3d 132 (2d Cir. 2001)............................................................................5

*United States v. Gupta*,
    848 F. Supp. 2d 491 (S.D.N.Y. 2012)....................................................2, 10, 11, 12

*United States v. Hsia*,
    24 F. Supp. 2d 14 (D.D.C. 1998) ........................................................................8, 8n

*United States v. Martoma*,
    990 F. Supp. 2d 458 (S.D.N.Y. 2014)....................................................2, 10, 12

*United States v. Naegele*,
    468 F. Supp. 2d 150 (D.D.C. 2007) ......................................................................8n

*United States v. Quinones*,
    No. 13 Cr 83S (HBS), 2015 WL 6696484 (W.D.N.Y. Nov. 2, 2015)......................8

*United States v. Saffarinia*,
    424 F. Supp. 3d 46 (D.D.C. 2020) ......................................................................9, 10

*United States v. Skilling*,
    554 F.3d 529 (5th Cir. 2009), *vacated in part on other grounds*, 561 U.S. 358
    (2010)..............................................................................................................7, 8, 12

*United States* v. *Thomas*,
    981 F. Supp. 2d 229 (S.D.N.Y. 2013)....................................................................7

*United States v. Villa*,
    No. 12 Cr. 40 (JBA), 2014 WL 280400 (D. Conn. Jan. 24, 2014) ....................10, 11

**Rules**

Fed. R. Crim. P. 5 ................................................................................................5

**Statutes**

Due Process Protections Act, Pub. Law 116-182, 134 Stat. 894 (Oct. 21, 2020)..........................5

**Secondary Sources**

U.S. Dep't of Just., Just. Manual, § 9-5.001 ..............................................................5, 6

**Other Authorities**

Michael Wayland, *DOJ and SEC send warning to SPACs with criminal charges against Nikola founder Trevor Milton*, CNBC (August 2, 2021), https://www.cnbc.com/2021/08/02/nikola-founder-criminal-charges-puts-other-spacs-on-notice.html........................................................................................1n

## PRELIMINARY STATEMENT

Trevor Milton is innocent.  The government would not know of Mr. Milton's innocence, however, because the government has failed to review the entirety of materials in its possession for exculpatory evidence under *Brady v. Maryland*, 373 U.S. 83 (1963).  Instead, the government rushed to Indictment and—together with its investigative partner, the Securities and Exchange Commission ("SEC")—held a joint press conference to tout its ill-founded case against Mr. Milton as the first special purpose acquisition company ("SPAC")-related prosecution.[1]  The government now attempts to avoid its obligations under the Constitution of the United States and well-established Second Circuit precedent in at least two ways.

First, the government has refused to identify any *Brady* material in the nearly one million documents produced to defense counsel, despite its specific and detailed knowledge of such *Brady* material.  In the government's own words, the material it has produced "might be considered covered by the Supreme Court's decision in *Brady* . . . . [But] the Government is under no further obligation to search for or organize materials [Mr. Milton] might characterize as *Brady*."  Declaration of Bradley J. Bondi Accompanying Defendant's Memorandum of Law in Support of Defendant's Motion to Compel Production of Brady Material ("Bondi Decl."), Exhibit A at 1.  Yet the government has an *affirmative obligation* to search for and produce *Brady* materials to Mr. Milton under the terms of Order entered by Magistrate Judge Sarah Netburn—pursuant to the recently-enacted Due Process Protections Act ("DPPA")—and relevant case law.  Rule 5(f) Order at 2 ("Rule 5(f) Order") (ECF 10).

---

[1] *See* Michael Wayland, *DOJ and SEC send warning to SPACs with criminal charges against Nikola founder Trevor Milton*, CNBC (August 2, 2021), https://www.cnbc.com/2021/08/02/nikola-founder-criminal-charges-puts-other-spacs-on-notice.html.

Second, although the government's affirmative obligation under *Brady* includes the *duty* to seek *Brady* information from all officers who have participated in the underlying investigation, *see*, *e.g.*, Rule 5(f) Order at 2, the government has failed to search the files of its partner, the SEC.  The SEC has operated as a quintessential member of the prosecution team in this case and appears to remain one.  *See, e.g.*, *United States v. Gupta*, 848 F. Supp. 2d 491, 493 (S.D.N.Y. 2012); *United States v. Martoma*, 990 F. Supp. 2d 458, 461 (S.D.N.Y. 2014). Although the government's prosecutors have offered to ask the SEC to search its interview memoranda for *Brady* material, this concession is not enough to satisfy the government's *Brady* obligations.  The prosecution's non-delegable duty to identify and produce *Brady* material also extends to identifying and producing *Brady* materials within the SEC's files.

The government's near-total failure to identify *Brady* material within its production and to search the entirety of the documents and files in the SEC's possession blatantly violates Mr. Milton's constitutional rights and the government's obligations under *Brady*, the Due Process Protections Act, and the Rule 5(f) Order in this case.  These violations are especially critical because Mr. Milton has invoked his speedy trial rights, and trial is set for April 4, 2022.  The looming trial underscores the importance of the government complying with Magistrate Judge Netburn's Order and its *Brady* obligations without further delay.

Accordingly, this Court should compel the prosecution to: (1) promptly review its voluminous discovery, to date, for *Brady* materials, and (2) promptly review the entirety of the SEC's files related to this case for *Brady* materials, not merely ask the SEC to review their interview memos.

## **FACTUAL BACKGROUND**

The government concedes that it made little effort to identify *Brady* material prior to seeking the Indictment.  Bondi Decl., Exhibit B at 1 & n.1.  Even now, the government has not

searched its own files for *Brady* material or identified any exculpatory evidence, with the exception of witness interviews that the government has provided "in abundance of caution" without "conced[ing]" that those interviews include exculpatory evidence under *Brady*. Bondi Decl., Exhibit C at 1. In other words, the government astonishingly claims that—after a year-long investigation in a well-publicized criminal case—it has failed to identify, or take *any* steps to identify, *any Brady* material in the documents it has received. The preposterousness of this claim is underscored by the exculpatory information identified to date by defense counsel among the approximately one million documents produced by the government, including in the form of an organized presentation by Nikola's external counsel. *See* Bondi Decl., Exhibit D. Defense counsel has identified the following *Brady* material, among many others, within the government's production:

- Several high-level employees at Nikola stated that the Nikola One was fully functional. *See* Bondi Decl., Exhibit D at 76; *contra* Indictment ¶ 32 (alleging Mr. Milton's claim the Nikola One was fully functioning was false). Several witnesses also stated that Nikola internally designed many components for its vehicles, including controls software. *See* Bondi Decl., Exhibit D at 43; *contra* Indictment ¶¶ 73, 75 (alleging Mr. Milton's claim that "[a]ll major components are done in-house; batteries, inverters, software, controls, infotainment, over the air, etc." was false). Unbeknownst to Mr. Milton, Nikola's counsel identified this information in a presentation to the government, but the government did not identify it as *Brady* material for Mr. Milton in this case.

- Nikola's Global Head of Engineering told senior management that Nikola had internally developed battery technology for the Nikola Tre. *See* Bondi Decl., Exhibit E at 1; *contra*

Indictment ¶¶ 73, 74, 75 ("Nikola had not successfully developed at any time relevant to this Indictment battery technology internally . . . .").

- Executives within both Nikola and its external partners widely understood the Nikola One to be merely a prototype and early iteration of the Nikola Two. *See* Bondi Decl., Exhibit F at 4; *contra* Indictment ¶ 37 (alleging the Nikola Two was a different model than the Nikola One).

In terms of the SEC's role, the government asserts that the SEC somehow conducted a "separate, parallel investigation." Bondi Decl., Exhibit A at 2; Bondi Decl., Exhibit C at 3–4. The government takes this position notwithstanding: (i) an astonishing *71 interviews jointly conducted* by prosecutors, their agents, and the SEC; (ii) the use of broad search warrants instead of grand jury subpoenas, presumably to enable prosecutors to share information with the SEC absent a court order; (iii) attendance of prosecutors at several meetings with the SEC and defense counsel for both Mr. Milton and Nikola; (iv) coordinated charging decisions; (v) filed actions with almost identical allegations on the same morning of the same day; (vi) the press conference held together by prosecutors and the SEC; (vii) the attendance of attorneys from the SEC at Mr. Milton's arraignment hearing; and (viii) the prosecution's filing of a motion for the benefit *of the SEC* in the SEC's enforcement case. Bondi Decl. at 2; Letter Motion for Extension of Time to File Response to Defendant's Motion to Dismiss or Transfer Venue, *SEC v. Milton*, 21 Cv. 06445 (S.D.N.Y. Aug. 13, 2021) (ECF 16).

The government should know that the coordinated investigative and prosecutorial efforts of the United States Attorney's Office and the SEC constitute a joint investigation. The government's own Justice Manual states: "Members of the prosecution team include federal, state, and local law enforcement officers and *other government officials participating in the*

-4-

*investigation* and prosecution of the criminal case against the defendant." U.S. Dep't of Just., Just. Manual, § 9-5.001(B)(2) (emphasis added). Based on the foregoing, the government's position that the SEC has not "participat[ed] in the investigation and prosecution of the criminal case" against Mr. Milton is preposterous. Bondi Decl., Exhibit A at 2; *Id.*, Exhibit C at 3–4.

## ARGUMENT

### I.    The Government Must Actively Search Its Own Files for *Brady* Materials.

The government has both a legal and ethical obligation to identify all material that might aid Mr. Milton's defense. "The basic rule of *Brady* is that the [g]overnment has a constitutional duty to disclose favorable evidence to the accused where such evidence is 'material' either to guilt or to punishment." *United States v. Coppa*, 267 F.3d 132, 139 (2d Cir. 2001) (citing *Brady*, 373 U.S. at 87). In determining whether evidence undisclosed by the government is *Brady* material, a court's analysis "turns on the cumulative effect of all such evidence suppressed by the government." *Kyles v. Whitley*, 514 U.S. 419, 421 (1995) (citing *United States v. Bagley*, 473 U.S. 667, 675 & n.7 (1985)). The cumulative-effect standard affords the government some discretion, but it also imposes a corresponding burden: The prosecution "must be assigned the consequent responsibility to gauge the likely net effect of all such evidence and make disclosure when the point of 'reasonable probability' is reached." *Id.* at 437. In other words, "the individual prosecutor has a *duty to learn of any favorable evidence* known to the others acting on the government's behalf in the case." *Id.* (emphasis added).

Congress strengthened the government's obligations under *Brady* by recently passing the Due Process Protections Act on October 21, 2020. Due Process Protections Act, Pub. Law 116-182, 134 Stat. 894 (Oct. 21, 2020). That law amended Federal Rule of Criminal Procedure 5 to require courts to issue, at the first appearance by a defendant in a criminal case, an order that

confirmed the prosecutor's duty to *affirmatively seek* and *promptly* disclose *Brady* materials, and the consequences for failing to do so.  *See id.*

Magistrate Judge Sarah Netburn issued that required order at Mr. Milton's July 29, 2021 appearance.  *See* Rule 5(f) Order.  That Order specifically provides:

> The [g]overnment shall disclose such information to the defense *promptly* after its existence becomes known to the Government so that the defense may make effective use of the information in the preparation of its case. . . .
>
> [T]he [g]overnment has an *affirmative obligation* to *seek all information* subject to disclosure under this Order from all current or former federal, state, and local prosecutors, law enforcement officers, *and other officers who have participated in the prosecution*, or investigation that led to the prosecution, of the offense or offenses with which the defendant is charged.

*Id.* at 1–2 (emphasis added).  Although a prosecutor in this case acknowledged the government's obligations to Magistrate Judge Netburn, the government has not fulfilled them.

Besides failing to comply with the Order, the government has not complied with its own internal guidance.  The government's own Justice Manual imposes a duty to disclose "exculpatory and impeachment information beyond that which is constitutionally and legally required."  Just. Manual, § 9-5.001(C).  This information includes both "information that is inconsistent with any element of any crime charged against the defendant or that establishes a recognized affirmative defense" *and* "information that either casts a substantial doubt upon the accuracy of any evidence—including but not limited to witness testimony—the prosecutor intends to rely on to prove an element of any crime charged, or might have a significant bearing on the admissibility of prosecution evidence."  *Id.*, § 9-5.001(C)(1)-(2).

Here, the government has abdicated its "duty to learn of any favorable evidence" by dumping a large volume of unexamined documents on Mr. Milton and expecting defense counsel to scavenge for whatever *Brady* material exists in the proverbial haystack.  *See Kyles*, 514 U.S. at 421.  In essence, by refusing to review its own files for any *Brady* material, the

-6-

government has implicitly stated—without any factual basis—that there must be no "cumulative effect" on Mr. Milton's case resulting from its total failure to search for *Brady* materials.  This position is untenable.  *Id.* at 420.  The government "cannot avoid responsibility" for knowing when the suppression of evidence could harm the defendant and undermine the integrity of the process.  *Id.* at 439.  Rather, the government must "exercise some *judgment*."  *Id.* (emphasis added).  Accordingly, the government's failure to search for, produce, or specifically identify *any* evidence in connection with the hundreds of interviews it conducted violates its obligations under *Brady* and the recently-enacted DPPA (along with the Court Order entered specifically to enforce it in this case) and demonstrates disregard for the DOJ's own policy manual.

## II.   The Government Cannot Satisfy Its *Brady* Obligations By Producing Clearly Exculpatory Materials Among a Large Production of Approximately One Million Documents.

Even more, the government cannot meet the obligations outlined above by placing exculpatory material within a larger production of documents.  It is axiomatic that the government cannot "hide *Brady* material as an exculpatory needle in a haystack of discovery materials."  *United States v. Thomas*, 981 F. Supp. 2d 229, 239 (S.D.N.Y. 2013) (granting new trial for failing to identify unredacted version of key police report as *Brady* evidence, even though that report had technically been included in voluminous Jenks Act discovery).  Yet, whether intentional or not, that is what the government seems to have done in this case.  The government has taken material, which it knew or should have known constitutes *Brady* material on its face, and placed it within a large production of approximately one million documents.  As Judge Pauley aptly stated in *Thomas*, *Brady* violations "related to voluminous open file discovery depend on 'what the government does in addition to allowing access to a voluminous open file.'"  *Id.* (quoting *United States v. Skilling*, 554 F.3d 529, 577 (5th Cir. 2009), *vacated in part on other grounds*, 561 U.S. 358 (2010)).

In addition to the obligation to provide a defendant access to the files—which should be reasonably searchable and indexed—the government also must identify known *Brady* material or "hot documents" that are "potentially relevant" to the defense's case. *Skilling*, 554 F.3d at 577; *United States v. Blankenship*, 14 Cr 244 (ICB), 2015 WL 3687864, at *4–6 (S.D.W. Va. June 12, 2015) (rejecting the government's argument that "furnishing a searchable, indexed, digital database of documents" was enough to satisfy *Brady* and directing the government to "specifically designate any known *Brady* material as such and disclose the same to defense counsel"). The fact that a production of documents is large does not relieve the government of its burden to identify documents. *See United States v. Hsia*, 24 F. Supp. 2d 14, 29–30 (D.D.C. 1998) (even when a large number of documents have been produced, the government "must identify [the exculpatory] material")[2]; *cf. United States v. Quinones*, No. 13 Cr 83S (HBS), 2015 WL 6696484, at *3 (W.D.N.Y. Nov. 2, 2015) (requiring government to provide annotation in 3,240 hours of video footage produced in discovery, indicating where in the footage the defendants appear).[3]

In the investigation leading to the Indictment, the government received unmistakable *Brady* information in, among other things, a meticulously organized slideshow from Nikola's counsel that was presented to the government. *See* Bondi Decl., Exhibit D. With respect to that presentation, Nikola's external counsel did the work of identifying the exculpatory information received from Nikola's in-house counsel and other Nikola employees. Instead of specifically identifying that presentation as *Brady* material for Mr. Milton, the government chose to include

---

[2] The court in *Hsia* reluctantly accepted the government's conclusory statements that it understood its *Brady* obligations and would immediately turn over *Brady* material as soon as possible. *Id.* at 30. Nine years later, in a notable turnaround, the same judge emphatically stated that he "can no longer endorse [that] view" and would not accept such "conclusory assertions." *United States v. Naegele*, 468 F. Supp. 2d 150, 152 n.2 (D.D.C. 2007). The holding in *Hsia* and subsequent repudiation in *Naegele* should serve as a cautionary tale to the government.

[3] The government's obligation to identify and produce *Brady* is even more pronounced in this case where the Indictment lacks specificity. *See* Mr. Milton's Motion for a Bill of Particulars filed contemporaneously herewith.

that presentation and other documents constituting *Brady* material within approximately one million documents, effectively burying the *Brady* information. In other words, although the government received the *Brady* information in a form that enabled the government to identify it easily for defense counsel, the government instead placed it in an ocean of documents.

The government likely will fall back on case law that predates the DPPA for the general proposition that prosecutors have no duty to sort or organize *Brady* material disclosed to defendants—a common theme in the government's correspondence to defense counsel. Of course, this position does not address the fact that the government knew in advance what *Brady* material to look for based on detailed presentations from Mr. Milton's counsel, Nikola's counsel, and witnesses the government interviewed. *See* Bondi Decl., Exhibits C and D. The government did not even bother identifying the *Brady* information that was flagged for it by others, despite the government's ability to do so with little effort.

### III.   The Government Cannot Satisfy its *Brady* Obligations By Failing To Review the Documents in Its Possession.

Equally troubling is the government's disregard of Magistrate Judge Netburn's Order in this case. Magistrate Judge Netburn ordered the government *almost five months ago* to affirmatively seek and promptly produce *Brady* materials. The government did not resist that obligation; instead the prosecutor in this case acknowledged the government's willingness to comply. *See* Rule 5(f) Order. What now appears to be the situation is disturbing. The government sought to file the Indictment against Mr. Milton without taking steps to search its files for exculpatory information and then, despite knowing of its failure to review thousands of documents, represented to Magistrate Judge Netburn that it would *affirmatively seek and promptly produce Brady* materials, knowing that would not be able to meet its obligations. This Court should require the government to comply with its obligations. *See United States v.*

-9-

*Saffarinia,* 424 F. Supp. 3d 46, 90 (D.D.C. 2020) (even before the enactment of the DPPA, holding that the government must "specifically identify any known *Brady* material contained in its previously-disclosed production").

## IV.   The Government Must Search the SEC's Files for *Brady* Materials.

Courts in this Circuit have made clear that—even without the clear Rule 5(f) Order by Magistrate Judge Netburn applicable here—the prosecution *must* search its own files and those of its co-investigators for *Brady* material.  *See Gupta*, 848 F. Supp. 2d at 493 ("Where the USAO conducts a 'joint investigation' with another state or federal agency, courts in this Circuit have held that the prosecutor's duty extends to reviewing the materials in the possession of that other agency for *Brady* evidence."); *Martoma*, 990 F. Supp. 2d at 460 (same); *United States v. Villa*, 12 Cr. 40, 2014 WL 280400 (JBA), at *3 (D. Conn. Jan. 24, 2014) ("Courts in this Circuit have generally held that where the U.S. Attorney's Office is engaged in a joint investigation with another federal or state, agency, materials in the possession of that other agency must be disclosed pursuant to Rule 16 and *Brady*.")

The SEC has worked closely with the government for almost a year and is clearly part of the prosecution team.  Despite the government's contention that the SEC has conducted a "separate, parallel investigation" into Mr. Milton's conduct,[4] the facts illustrate otherwise.

First, according to the prosecution, representatives of the United States Attorney's Office for the Southern District of New York and/or the SEC have conducted *71 joint interviews* together.  *See* Bondi Decl., Exhibit C at 4.  Second, the government and the SEC jointly held several meetings with Nikola's counsel and then later with Mr. Milton's counsel.  *See* Bondi Decl. at 2.  Third, the government and the SEC coordinated the filings of their actions against

---

[4] *See* Bondi Decl.,Exhibit A at 2.

Mr. Milton on July 29, 2021 and hosted a joint press conference together to announce their

actions.  *Id*.  Fourth, SEC Staff attended Mr. Milton's arraignment and bail hearing.  *Id*.  And

finally, the government filed a motion in the SEC's civil action on the SEC's behalf.  *Id*.

> Other courts in this Circuit have found the presence of a joint investigation in similar

circumstances.  In *Gupta*, SDNY and the SEC "interviewed no fewer than 44 witnesses" and

"questions were put to the respective witnesses by both the AUSAs and the SEC attorney."  848

F. Supp. 2d at 493.  Even though the SEC attorney did not take notes during the interviews, he

prepared memoranda that summarized the interviews after consulting with the AUSAs.  *Id*. at

493–94.  Just as in this case, the government argued in *Gupta* that the SEC and SDNY

conducted "parallel investigations" but were not a part of the same investigative team.  *Id*. at

494.  Judge Rakoff rejected this unpersuasive argument, stating that:

> For *Brady* purposes it is enough that the agencies are engaged in joint fact-
> gathering, even if they are making separate investigatory or charging decisions,
> because the purpose of *Brady* is to apprise the defendant of exculpatory evidence
> obtained during the fact-gathering that might not otherwise be available to the
> defendant.

*Id.*  Judge Rakoff ordered the prosecutors to review the SEC's memoranda as "only the USAO

is in a position to adequately evaluate whether anything . . . constitutes *Brady* material in the

criminal case."  *Id*. at 494; *see also Villa*, 2014 WL 280400, at *6 ("[I]t is important that the

prosecutors do more than ask other government agencies not familiar with the intricacies of this

case for '*Brady* material.'").  Thus, the United States Attorney's Office must review the SEC's

materials concerning its investigation of Mr. Milton and provide him with any *Brady* material.

> Even *if* the government and the SEC *were* conducting so-called "parallel" investigations,

the government still would need to review *all* of the SEC's files for *Brady* material.  When the

government and another agency are engaged in joint fact-gathering, even if conducting separate

investigations, the government must search "documents in the sole possession of the SEC" for

*Brady* material.  *Martoma*, 990 F. Supp. 2d at 461.  It cannot be said that the government was not working with the SEC to gather facts about in this case:  That fact gathering was the entire purpose of the interviews they jointly conducted.

In the government's latest communication, the prosecution has grudgingly agreed to:

> (1) [E]nsure that all documents that the SEC obtained through subpoenas or requests to third parties will be produced to [Mr. Milton] in the criminal case, and (2) request from the SEC staff any interview notes in their possession, review those materials for immediate disclosure under *Brady*, and produce the balance of those notes to [Mr. Milton] when [the government] produce[s] 3500 material in advance of trial.

Bondi Decl., Exhibit C at 4.  The problem with this apparent courtesy is obvious.  The government has narrowly agreed to review *only* the SECs interview notes for *Brady* material, but as far as the rest of the documents that the SEC obtained through subpoenas or third-party requests, the government merely agrees to "produc[e]" those documents without any *Brady* review.  This production is not enough.  As discussed *supra*, the United States Attorney's Office must review the material collected by the SEC for *Brady* information, and not simply dump it in a haphazard manner on Mr. Milton.  *See Skilling*, 554 F.3d at 577; *Blankenship*, 2015 WL 3687864, at *6; *Gupta*, 848 F. Supp. 2d at 494.

## CONCLUSION

The government has failed to adequately search its own files for *Brady* materials with the effect of harming Mr. Milton's ability to defend this case.  The government must fulfill its responsibilities under the Constitution—and as directed by Magistrate Judge Netburn—to provide Mr. Milton with all materials that may constitute exculpatory evidence.  Accordingly, the Court should compel the government to: (1) review its voluminous discovery, to date, for *Brady* materials, and (2) review the entirety of the SEC's files related to this case for *Brady* materials, not just the interview memos.

-12-

Dated: December 15, 2021                    Respectfully submitted,

                                                /s/

                                           _____
                                           Bradley J. Bondi
                                           CAHILL GORDON & REINDEL LLP
                                           1990 K Street NW, Suite 950
                                           Washington, DC 20006
                                           (202) 862-8910
                                           bbondi@cahill.com

                                           Marc Mukasey
                                           MUKASEY FRENCHMAN LLP
                                           570 Lexington Avenue, Suite 3500
                                           New York, NY 1002
                                           (212) 466-6400
                                           Marc.Mukasey@mfsllp.com

                                           Terence Healy
                                           HUGHES HUBBARD & REED LLP
                                           1775 I Street NW
                                           Washington, DC 20006
                                           (202) 721-4676
                                           terence.healy@hugheshubbard.com

                                           Counsel for Trevor Milton