UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

─────────────────────────────────────── x
UNITED STATES OF AMERICA              :
                                      : No. 1:21-cr-00478-ER
            v.                        :
                                      :
                                      :
TREVOR MILTON,                        :
                                      :
            Defendant.                :
─────────────────────────────────────── x

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE THE TESTIMONY OF DINA MAYZLIN OR, IN THE ALTERNATIVE, FOR A *DAUBERT* HEARING

Bradley J. Bondi
CAHILL GORDON & REINDEL LLP
1990 K Street NW, Suite 950
Washington, DC 20006
(202) 862-8910
bbondi@cahill.com

Marc L. Mukasey
MUKASEY FRENCHMAN LLP
570 Lexington Avenue, Suite 3500
New York, NY 10022
(212) 466-6400
Marc.Mukasey@mfsllp.com

*Counsel for Trevor Milton*

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bourjaily v. United States*,
  483 U.S. 171 (1987) ............................................................................................................. 1

*Daubert v. Merrell Dow Pharm., Inc.*,
  509 U.S. 579 (1993) .................................................................................................. 2, 7, 8

*In re Methyl Tertiary Butyl Ether Prod. Liab. Litig.*,
  MDL No. 1358 (SAS), M21-88, 2008 WL 1971538 (S.D.N.Y. May 7, 2008) ................ 2

*Nimely v. City of New York*,
  414 F.3d 381 (2d Cir. 2005) ............................................................................................ 2

*United States v. Finazzo*,
  682 F. App'x 6 (2d Cir. 2017) ......................................................................................... 7

*United States v. Gatto*,
  986 F.3d 104 (2d Cir. 2021) ............................................................................................ 2

*United States v. Hitt*,
  981 F.2d 422 (9th Cir. 1992) ....................................................................................... 8, 9

*United States v. Litvak*,
  889 F.3d 56 (2d Cir. 2018) .............................................................................................. 5

*United States v. Martoma*,
  993 F. Supp. 2d 452 (S.D.N.Y. 2014) .......................................................................... 5, 9

*United States v. Tin Yat Chin*,
  371 F.3d 31 (2d Cir. 2004) .............................................................................................. 7

*United States v. Zafar*,
  291 F. App'x 425 (2d Cir. 2008) ................................................................................. 4, 5

**Statutes**

18 U.S.C. § 1343 ................................................................................................................ 3, 3n

18 U.S.C. § 1348 ................................................................................................................ 3, 3n

17 C.F.R. § 240.10b-5 ............................................................................................................ 3n

**Rules**

Fed. R. Evid.
    Rule 401 ................................................................................................................1, 5n
    Rule 402 ................................................................................................................1, 5n
    Rule 403 ...........................................................................................................1, 2, 8, 9
    Rule 702 .............................................................................................................. *passim*

Federal R. Crim. P.
    Rule 16 ....................................................................................................................3, 7

**Other Authorities**

David Godes, Dina Mayzlin, Yubo Chen, Sanjiv Das, Chrysanthos Dellarocas, Bruce Pfeiffer, Barak Libai, Subatra Sen, Mengze Shi & Peeter Verlagh, *The Firms Management of Social Interactions*, 16 MARKETING LETTERS 415 ..............................6n

Dina Mayzlin et al., *Promotional Reviews—An Empirical Investigation of Online Review Manipulation*, 104 AM. ECON. REV. 2421 (2014) .........................................................6n

Dina Mayzlin, *Managing Social Interactions*, in THE OXFORD HANDBOOK OF THE ECONOMICS OF NETWORKS 792 (2016) ......................................................................................6n

Mr. Milton moves pursuant to Federal Rule of Evidence 702 and Federal Rules of Evidence 401, 402 and 403 to exclude the proposed expert testimony of Professor Dina Mayzlin. The Indictment charges Mr. Milton with securities and wire fraud of so-called "retail investors." Professor Mayzlin is a *marketing* professor whose "academic research focuses on . . . how businesses manage interactions with *consumers*." June 20, 2022, Declaration of Bradley J. Bondi in Support of Defendant's Motion *in Limine* to Exclude the Testimony of Dina Mayzlin or, In the Alternative, for a *Daubert* Hearing ("Bondi Decl."), Ex. A at 1 (emphasis added). Professor Mayzlin's proposed testimony does not meet the requirements for the admissibility of expert testimony or the relevancy requirements.[1] Further, the risk of unfair prejudice, confusing the issues, or misleading the jury substantially outweighs the probative value of Professor Mayzlin's proposed testimony.

## **LEGAL STANDARD**

Rule 702 of the Federal Rules of Evidence permits expert testimony where:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The party offering the expert testimony must establish its admissibility by a preponderance of the evidence. *Bourjaily v. United States*, 483 U.S. 171, 175–76 (1987).

---

[1] Mr. Milton further contends that the government's disclosures with respect to Professor Mayzlin's proposed testimony are inadequate and incomplete, referencing the possibility of future, additional analyses not yet conducted. If the Court concludes that any of Professor Mayzlin's proposed expert testimony is admissible, Mr. Milton reserves the right to seek further information and clarification from the government (including the bases, research, data, methodologies, or studies upon which Professor Mayzlin relied) and to seek additional relief from the court.

Rule 702 requires that the proposed expert testimony be both relevant and reliable. The Supreme Court describes the relevance inquiry as "one of 'fit.'" *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 591 (1993); *see also United States v. Downing*, 753. F.2d 1224, 1242 (3rd Cir. 1985) ("An additional consideration under Rule 702—and another aspect of relevancy—is whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute."). Because "scientific validity for one purpose is not necessarily scientific validity for other, unrelated purposes," Rule 702 "requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility." *Daubert*, 509 U.S. at 591–592. "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Id*. at 591 (quoting 3 Jack B. Weinstein & Margaret A. Berger, Weinstein's Evidence ¶ 702(2) (1988)).

The reliability inquiry under Rule 702 often involves the following considerations: (1) whether the theory or technique upon which the expert bases his or her conclusions "can be (and has been) tested"; (2) whether such theory or technique has been subjected to "peer review or publication"; (3) "the known or potential rate of error" of such theory or technique; and (4) whether such theory or technique has been widely accepted within the scientific community. *Id*. at 593–94; *see also Nimely v. City of New York*, 414 F.3d 381, 396 (2d Cir. 2005). Related to that inquiry, a proposed expert witness must be an expert in the area about which he or she intends to testify. *Nimely*, 414 F.3 at 396 n.11. "[A]n expert who is qualified in one field cannot offer an opinion about aspects of the case in another field for which she is not qualified." *In re Methyl Tertiary Butyl Ether Prod. Liab. Litig.*, MDL No. 1358 (SAS), M21-88, 2008 WL 1971538, at *6 n.48 (S.D.N.Y. May 7, 2008).

Even if the proposed expert testimony is admissible under Rule 702 as both relevant and reliable, a court should exclude such testimony if the testimony would be unfairly prejudicial, confuse the issues or mislead the jury. *See* Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."); *United States v. Gatto*, 986 F.3d 104, 117–18 (2d Cir. 2021) (upholding the district court's exclusion of expert testimony because such testimony would not have been helpful and was substantially more prejudicial than probative).

**ARGUMENT**

**I.  The Court Should Exclude Professor Mayzlin's Testimony Because It Does Not Meet the Requirements for Admissibility of Expert Testimony Under Rule 702.**

**A. Professor Mayzlin's Proposed Testimony Is Not Relevant and Fails *Daubert's* "Fit" Test.**

The government disclosed Professor Mayzlin as an expert who may offer testimony at trial regarding: (1) "how online social media statements can influence consumer behavior," (2) "raw and summary statistics concerning [Mr. Milton's] internet following," and (3) "the dissemination of information from [Mr. Milton's] social media posts and online videos." *See* Bondi Decl. Ex. A at 1. The government also disclosed that Professor Mayzlin is in the process of analyzing data pertaining to retail investors' trading volume, and the government may supplement its disclosure under Federal Rule of Criminal Procedure 16 accordingly. *Id.* at 2.

The Indictment charges Mr. Milton with securities fraud in violation of Section 10(b) of the Securities Exchange Act of 1934 and 18 U.S.C. § 1348, and wire fraud in violation of 18 U.S.C. § 1343 based on alleged misrepresentations Mr. Milton made to so-called "retail

investors" from November 2019 to September 2020.² Indictment ¶¶ 1, 5. The government has not charged Mr. Milton with defrauding "consumers," yet Professor Mayzlin intends to testify based on "her experience researching the effect of online speech on consumer behavior." Bondi Decl. Ex. A at 1. The Indictment is focused *solely* on the purported effect of Mr. Milton's alleged misrepresentations on individual, non-professional investors—so-called "retail investors."

Professor Mayzlin's proposed testimony about social media's effect on consumer behavior or the dissemination of information from Mr. Milton's social media posts and online videos lacks any connection to these "retail investors."³ *See United States v. Zafar*, 291 F. App'x 425, 427 (2d Cir. 2008) (upholding the district court's exclusion of expert testimony as "well within its discretion" where the testimony lacked a "critical missing link" for relevance). "Consumers" and "retail investors" are not the same. The government attempts to shoehorn Professor Mayzlin's consumer expertise to fit this case by using the phrase "consumer behavior, *including investor behavior*" to describe Professor Mayzlin's proposed testimony regarding her analysis of the effects of social media. Bondi Decl. Ex. A at 1 (emphasis added). Any implicit theory that the group of "consumers" researched by Professor Mayzlin necessarily includes the so-called "retail investors" as charged in the Indictment, is vague, conclusory, and unsupported. Despite the government's assertion that Professor Mayzlin's proposed testimony will be based

---

² 17 C.F.R. § 240.10b-5 (essentially requiring proof of a material misrepresentation or material omission, with scienter, in connection with the purchase of a security); 18 U.S.C. § 1348 (requiring proof of (i) a scheme to either defraud a person or obtain money or property by fraudulent pretenses, (ii) in connection with a security, (iii) knowingly and with intent to defraud); 18 U.S.C. § 1343 (requiring proof of (i) a scheme to either defraud or obtain money and property by means of fraudulent pretenses; and (ii) executing the scheme by means of transmissions by wire, radio, or television communications).

³ Indeed, Professor Mayzlin's proposed testimony actually *supports* Mr. Milton's Motion to Dismiss Counts One and Two of the Indictment for Lack of Fair Notice (ECF 38) and Memorandum in Support (ECF 40).

on "her review of the academic literature on social media's effect on investors," *id*., not one paper, lecture, or deposition among Professor Mayzlin's academic achievements pertains to investors. *See* Bondi Decl. Ex. B (Curriculum Vitae of Dina Mayzlin). The government discloses no basis, methodology, or rationale for this unexplained equivalence between "consumers" and "investors." *See* Bondi Decl. Ex. A.

The government likewise does not attempt to connect Professor Mayzlin's proposed testimony to any effect on the hypothetical *reasonable* investor—which is the proper legal standard that must be applied. *See United States v. Martoma*, 993 F. Supp. 2d 452, 458–59 (S.D.N.Y. 2014) (excluding certain expert testimony as "not probative on the central question of materiality—whether the alleged . . . information . . . would have been important to a *reasonable investor* at the time") (emphasis added); *see also* December 15, 2021, Memorandum of Law in Support of Defendant's Motion to Dismiss the Indictment for Failure to Sufficiently Allege Materiality (ECF 47). Professor Mayzlin's proposed testimony not only lacks, using the Second Circuit's language in *Zafar*, a "critical missing link" between the consumer and the so-called "retail investor," but her proposed testimony is devoid of any connection between the "consumer" and the particular market against which the hypothetical "reasonable investor" standard must be evaluated—that is, the *entirety* of the Nasdaq stock exchange, which includes not only so-called "retail investors" but also institutional investors like investment banks, mutual funds, hedge funds, pension funds, and private equity investors. *See United States v. Litvak*, 889 F.3d 56, 64–65 (2d Cir. 2018).

In short, the Court should exclude Professor Mayzlin's proposed testimony because it does not make any fact at issue more or less probable, lacks relevance to the formal elements of the charges against Mr. Milton, and fails *Daubert*'s "fit" test.[4] *See Zafar*, 291 F. App'x at 427.

**B. Professor Mayzlin's Proposed Testimony Is Not Reliable.**

Although Professor Mayzlin may be qualified to provide testimony on social media's influence on consumer behavior and/or testimony regarding the dissemination of social media posts (consistent with her experience as an expert in two civil cases),[5] Professor Mayzlin is not qualified to testify about *any* effect on investors ("retail investors" or otherwise) or their investment behavior, much less these investors' trading volume (with or without a connection to social media). Indeed, in the entirety of Professor Mayzlin's published work, seventeen papers, the word "investor" appears only three times and the word "stock" twice. Upon deeper review, these stray "investor" and "stock" references describe academic papers written by *other* researchers.[6] Nothing in the government's disclosure suggests Professor Mayzlin previously has analyzed the relationship between information of any kind, including social media posts, and

---

[4] Rule 401 provides that evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. "Irrelevant evidence is not admissible." Fed. R. Evid. 402. For the same reasons set forth above, Professor Mayzlin's proposed testimony likewise should be excluded as irrelevant under Rules 401 and 402.

[5] Professor Mayzlin has not been qualified as an expert by any court and, it seems, has never consulted in a criminal case.

[6] *See* Dina Mayzlin, *Managing Social Interactions*, in THE OXFORD HANDBOOK OF THE ECONOMICS OF NETWORKS 792, 796 (2016) ("An early paper by Das and Chen (2007) extracts investor sentiment from online message boards and connects this information to stock performance."); Dina Mayzlin et al., *Promotional Reviews—An Empirical Investigation of Online Review Manipulation*, 104 AM. ECON. REV. 2421, 2436 (2014) ("Della Vigna and La Ferrara (2010) infer arms embargo violations if weapon-making companies' stocks react to changes in conflict intensity."); David Godes, Dina Mayzlin, Yubo Chen, Sanjiv Das, Chrysanthos Dellarocas, Bruce Pfeiffer, Barak Libai, Subatra Sen, Mengze Shi & Peeter Verlagh, *The Firms Management of Social Interactions*, 16 MKTG. LETTERS 415, 425 ("Das and Chen (2004) . . . find evidence of a relationship between these conversations [on financial message boards] and stock returns. Their analysis suggests that market activity influences small investor [word of mouth]. The algorithms may be used to assess the impact on investor opinion of management announcements, press releases, third-party news, and regulatory changes.").

investors or investment behavior.  There is no indication that Professor Mayzlin previously has analyzed trading volume in any context.  Professor Mayzlin is a marketing professor who writes about promoting products and services to consumers.  *See* Bondi Decl. Ex. B.

Any opinion that Professor Mayzlin could provide as to investors (whether so-called "retail investors" or otherwise), investment behavior and/or trading volume would be unsupported by any research, data, methodologies, or studies with which Professor Mayzlin has demonstrated expertise.  *See United States v. Finazzo*, 682 F. App'x 6, 10–11 (2d Cir. 2017) ("A court may conclude that there is simply too great an analytical gap between the data [relied on by an expert] and the opinion proffered.") (citing *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 264 (2d Cir. 2002)).  Indeed, the government does not purport to set forth any bases or reasons for such opinion in its disclosure under Rule 16.  *See United States v. Tin Yat Chin*, 371 F.3d 31, 40 (2d Cir. 2004) (emphasizing that the district court must "compare the area in which the witness has superior knowledge, education, experience, or skill with the subject matter of the proffered testimony").

Further, to the extent Professor Mayzlin testifies to "the total number of 'likes,' comments and re-tweets" that certain of Mr. Milton's tweets generated, "the average audience size of particular television shows and podcasts," or "the total number of views of particular videos," Bondi Decl. Ex. A at 1–2, such testimony does not require "scientific, technical, or other specialized knowledge" and would not aid the jury in its understanding of Mr. Milton's social media following.  Fed. R. Evid. 702(a); Fed. R. Evid. 702, advisory committee's note to the 1972 proposed rules (affirming that expert testimony is inappropriate when an "untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized knowledge of the subject

involved in the dispute," and when such expert opinion would be "unhelpful" and "a waste of time").

Because Professor Mayzlin's proposed testimony entirely fails *Daubert*'s "fit" test and lacks both relevance and reliability, the Court should exclude her testimony in its entirety under Rule 702. In the alternative, Mr. Milton respectfully requests a *Daubert* hearing regarding Professor Mayzlin's proposed testimony and her expertise related to investors and investment behavior.[7]

## II. The Court Should Exclude Professor Mayzlin's Testimony Because the Danger of Unfair Prejudice, Confusing the Issues, or Misleading the Jury Substantially Outweighs the Probative Value of Such Testimony Under Rule 403.

Professor Mayzlin's proposed testimony fails each prong of *Daubert* and should be excluded. Even if Professor Mayzlin's proposed testimony were otherwise admissible pursuant to Rule 702, the Court should exclude such evidence because the danger of unfair prejudice, confusing the issues, or misleading the jury substantially outweighs any probative value of such testimony. Fed. R. Evid. 403. Unfair prejudice "means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Fed. R. Evid. 403, advisory committee's note to 1972 proposed rules. Importantly, the precise likelihood of "substantial prejudice" necessary to exclude evidence under Rule 403 depends on how much probative value the evidence has. "Where the evidence is of very slight (if any) probative value, it's an abuse of discretion to admit it if there's even a modest likelihood of unfair prejudice or a small risk of misleading the jury." *United States v. Hitt*, 981 F.2d 422, 424 (9th Cir. 1992).

---

[7] To the extent the government intends to offer Professor Mayzlin's testimony on trading volume—an area which the government has left open in its disclosure—a *Daubert* hearing also should address Professor Mayzlin's expertise on that subject. *See* Bondi Decl. Ex. A at 2 ("Fourth, Professor Mayzlin is in the process of analyzing data pertaining to retail investors' trading volume. In the event that she is anticipated to testify about the analysis, we will likely supplement our expert disclosure.").

Professor Mayzlin's proposed expert testimony bears, at best, tangential relevance to the charges against Mr. Milton and a substantial likelihood of unfair prejudice, confusing the issues, or misleading the jury. The concerns warranted by Rule 403 are particularly salient here where the government seeks to introduce confusing testimony from a marketing professor concerning consumer behavior—in marked contrast to countless other criminal prosecutions for alleged securities fraud where expert testimony on materiality has focused almost exclusively on economics. *See*, *e.g.*, *United States v. Cole*, No. 19 Cr. 869 (ER); *United States v. Block*, No. 16 Cr. 595 (JPO). By offering Professor Mayzlin's testimony, the government seemingly invites the jury to conflate the consumer with the investor, to empathize with the consumer, and to conclude that what matters is whether Mr. Milton's alleged misstatements defrauded consumers. *See Martoma*, 993 F. Supp. 2d at 456–57.

In sum, because Professor Mayzlin's proposed testimony is not relevant to the charges against Mr. Milton and, in any event, is more prejudicial than probative, the Court also should exclude Professor Mayzlin's testimony under Rule 403. *Hitt*, 981 F.2d at 424

Dated: June 20, 2022

Respectfully submitted,

/s/ Bradley J. Bondi
_____
Bradley J. Bondi
CAHILL GORDON & REINDEL LLP
1990 K Street NW, Suite 950
Washington, DC 20006
(202) 862-8910
bbondi@cahill.com

Marc L. Mukasey
MUKASEY FRENCHMAN LLP
570 Lexington Avenue, Suite 3500
New York, NY 10022
(212) 466-6400
Marc.Mukasey@mfsllp.com

*Counsel for Trevor Milton*