UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

─────────────────────────────────────── x
UNITED STATES OF AMERICA              :
                                      : No. 1:21-cr-00478-ER
         v.                           :
                                      :
                                      :
TREVOR MILTON,                        :
                                      :
              Defendant.              :
─────────────────────────────────────── x

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION *IN LIMINE* TO ALLOW ALL TESTIMONY CONCERNING BRITTON WORTHEN'S COMMUNICATIONS RELATED TO ANY STATEMENTS ALLEGEDLY MADE BY MR. MILTON

Bradley J. Bondi
CAHILL GORDON & REINDEL LLP
1990 K Street NW, Suite 950
Washington, DC 20006
(202) 862-8910
bbondi@cahill.com

Marc L. Mukasey
MUKASEY FRENCHMAN LLP
570 Lexington Avenue, Suite 3500
New York, NY 10022
(212) 466-6400
Marc.Mukasey@mfsllp.com

*Counsel for Trevor Milton*

## TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| LEGAL STANDARD | | 1 |
| ARGUMENT | | 2 |
| I. | NIKOLA WAIVED PRIVILEGE OVER ALL COMMUNICATIONS BY GENERAL COUNSEL WORTHEN RELATED TO THE ALLEGED STATEMENTS. | 2 |
| | A. Nikola Waived Privilege Pursuant to the Stipulation. | 2 |
| | B. Nikola Waived Privilege Through Its Prior and Subsequent Disclosures. | 8 |
| II. | MR. MILTON IS ENTITLED UNDER THE FIFTH AND SIXTH AMENDMENTS TO EXAMINE GENERAL COUNSEL WORTHEN AND OTHER NIKOLA PERSONNEL CONCERNING GENERAL COUNSEL WORTHEN'S COMMUNICATIONS RELATED TO THE ALLEGED STATEMENTS. | 9 |
| CONCLUSION | | 12 |

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc. v. Alcoa S.S. Co.*,
    232 F.R.D. 191 (S.D.N.Y. 2005) ........................................................................... 7

*Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*,
    No. 14 Cv. 6867 (VEC), 2016 WL 1071107 (S.D.N.Y. Mar. 18, 2016) ............... 12

*In re Cnty. of Erie*,
    473 F.3d 413 (2d Cir. 2007) ................................................................................. 1

*Crane v. Kentucky*,
    476 U.S. 683 (1986) ........................................................................................... 11

*Janus Capital Group, Inc. v. First Derivative Traders*,
    131 S. Ct. 2296 (2011) ................................................................................ 3, 7, 10

*Lorenzo v. SEC*,
    139 S. Ct. 1094 (2019) .................................................................................... 7, 10

*Pearlstein v. BlackBerry Ltd.*,
    No. 13 Cv. 07060 (CMKHP), 2019 WL 1259382 (S.D.N.Y. Mar. 19, 2019) ......... 3

*Perry v. Rushen*,
    713 F.2d 1447 (9th Cir. 1983) ............................................................................ 11

*Stolarik v. N.Y. Times Co.*,
    No. 17 Cv. 5083 (PGG), 2019 WL 4565070 (S.D.N.Y. Sept. 20, 2019) ............... 6

*United States v. Almonte*,
    956 F.2d 27 (2d Cir. 1992) ................................................................................... 9

*United States v. Amodeo*,
    71 F.3d 1044 (2d Cir. 1995) ............................................................................... 11

*United States v. Bilzerian*,
    926 F.2d 1285 (2d Cir. 1991) ............................................................................... 9

*United States v. Mount Sinai Hosp.*,
    185 F. Supp. 3d 383 (S.D.N.Y. 2016) .................................................................. 1

*United States v. Nixon*,
    418 U.S. 683 (1974) ............................................................................................. 9

*United States v. Scheffer*,
  523 U.S. 303 (1998) ................................................................................................11

*United States v. Scully*,
  877 F.3d 464 (2d Cir. 2017) ....................................................................................11

*United States v. Shapiro*,
  No. 06 Cr. 357, 2007 WL 2914218 (S.D.N.Y. Oct. 1, 2007) ....................................2

*United States v. W.R. Grace*,
  439 F. Supp. 2d 1125 (D. Mont. 2006) ................................................................9, 10

*United States v. Weisberg*,
  No. 08 Cr. 347 (NGG RML), 2011 WL 1327689 (E.D.N.Y. Apr. 5, 2011) ............10

*United States v. Wells Fargo Bank, N.A.*,
  132 F. Supp. 3d 558 (S.D.N.Y. 2015) .....................................................................10

*US Airline Pilots Ass'n v. Pension Ben. Guar. Corp.*,
  274 F.R.D. 28 (D.D.C. 2011) ....................................................................................9

**Other Authorities**

Federal Rule of Evidence 502 ..................................................................................1, 1

Federal Rule of Evidence 502(e) .................................................................................3

Federal Rules of Evidence Rule 502(a) .......................................................................2

Rule 17(c) ...................................................................................................................10

Defendant Trevor Milton moves pursuant to Federal Rule of Evidence 502 and the Fifth and Sixth Amendments to the Constitution of the United States to allow all testimony by Britton Worthen, general counsel of Nikola Corporation ("Nikola"), and other Nikola personnel concerning General Counsel Worthen's communications related to any public-facing or so-called "retail investor"-facing statements allegedly made by Mr. Milton (the "Alleged Statements"), without any limitation based on purported attorney-client privilege.[1] Pursuant to the June 25, 2021 Disclosure Stipulation between the government and Nikola (the "Stipulation"), and by prior and subsequent disclosures to the government, Nikola voluntarily has waived any possible privilege over all communications by General Counsel Worthen concerning the Alleged Statements. *See* Bondi Decl., Exhibit A. Even if Nikola had not waived privilege, Mr. Milton has a constitutional right to present a complete defense, which requires examining General Counsel Worthen and other Nikola personnel concerning General Worthen's communications related to the Alleged Statements notwithstanding any assertion of privilege.[2]

## LEGAL STANDARD

Courts must construe the attorney-client privilege "narrowly because it renders relevant information undiscoverable." *In re Cnty. of Erie*, 473 F.3d 413, 418 (2d Cir. 2007). "The burden is on the party resisting discovery to establish the facts necessary to show that the privilege applies and that it has not been waived." *United States v. Mount Sinai Hosp.*, 185 F.

---

[1] As detailed *infra*, Nicole Rose, Vince Caramella, and Elizabeth Fretheim all communicated with General Counsel Worthen concerning the Alleged Statements. General Counsel Worthen, Ms. Rose, Mr. Caramella and Ms. Fretheim are anticipated government trial witnesses.

[2] Mr. Milton has requested formally that the government seek and produce this exculpatory evidence twice previously. *See*, Jan. 28, 2022 Ltr. from Brad Bondi to Jordan Estes, Bondi Decl., Exhibit B; June 19, 2022 Ltr. from Brad Bondi to the government, Bondi Decl., Exhibit C.

Supp. 3d 383, 391 (S.D.N.Y. 2016). This burden can be satisfied only "through competent evidence, not 'mere conclusory or *ipse dixit* assertions.'" *United States v. Shapiro*, No. 06 Cr. 357, 2007 WL 2914218, at *2 (S.D.N.Y. Oct. 1, 2007) (indirectly quoting *In re Bonanno*, 344 F.2d 830, 833 (2d Cir. 1965)).

## ARGUMENT

I.  **Nikola Waived Privilege Over All Communications by General Counsel Worthen Related to the Alleged Statements.**

    A.    **Nikola Waived Privilege Pursuant to the Stipulation.**

Pursuant to the Stipulation, Nikola voluntarily produced to the government "documents that reflect or contain communications that Trevor Milton sent or received, prior to September 10, 2020, that request or contain legal advice from Britton Worthen concerning investor and/or public communications (in whatever form including through any form of media) by Trevor Milton or Nikola (the "Disclosed Communications")" and voluntarily permitted General Counsel Worthen "to discuss with the [g]overnment the substance of those" Disclosed Communications. *See* Stipulation at 2, Bondi Decl., Exhibit A.

Rule 502(a) of the Federal Rules of Evidence provides that a waiver of attorney-client privilege resulting from a disclosure to a federal agency extends to undisclosed information if (1) the disclosure to the governmental agency was voluntary or intentional, (2) the disclosed and undisclosed information concerns the same subject matter, and (3) in fairness ought to be considered together. Fed. R. Evid. 502(a). "In other words, the principles underlying the fairness doctrine have been incorporated to some extent into Rule 502(a) and, depending on the facts and circumstances, disclosure of privileged information or work product to a governmental agency may result in a broader subject matter waiver of undisclosed attorney-client communications and fact work product pertaining to the subject matter of the disclosure."

2

*Pearlstein v. BlackBerry Ltd.*, No. 13 Cv. 07060 (CMKHP), 2019 WL 1259382, at *8 (S.D.N.Y. Mar. 19, 2019).

All three of those requirements are clearly met here.

**First**, Nikola voluntarily and intentionally entered into the Stipulation.[3]

**Second**, the subject matter of the communications—that is, General Counsel Worthen's review and approval of the Alleged Statements, especially those explicitly alleged in the Indictment to be misstatements—is indisputably the same, whether the communications *directly* involved Mr. Milton (that is, the Disclosed Communications) or *indirectly* involved Mr. Milton (that is, the undisclosed communications). The government has acknowledged both implicitly and explicitly that Mr. Milton's participation in the communications with General Counsel Worthen was not necessary for General Counsel Worthen's review and approval of the statements. For instance, the government explained in a letter to Nikola that communications with General Counsel Worthen played a "central role . . . in the chronology of events" and recognized that Mr. Milton "could file a non-frivolous motion seeking the judicial piercing of any corporate privilege that would stand in the way of his asserting an advice-of-counsel defense." *See* June 10, 2020 Ltr. from Matthew Podolsky to Kirkland & Ellis, LLP, Bondi Decl. Exhibit D; *see also* Stipulation, Bondi Decl., Exhibit A, at 1 (describing the government's request as documents "relating to" Mr. Milton's "requesting or receiving legal advice from"

---

[3] Nikola cannot avoid the subject matter waiver through contractual agreement. Although the Stipulation provides that "Nikola [did] not intend to waive any attorney-client privilege, work-product protection or other applicable privilege with respect to the subject matter," Federal Rule of Evidence 502(e) provides that "[a]n agreement on the effect of disclosure in a federal proceeding is binding *only* on the parties to the agreement, unless it is incorporated into a court order." Fed. R. Evid. 502(e) (emphasis added). "The rule makes clear that if parties [to the agreement] want protection against non-parties from a finding of waiver by disclosure, the agreement must be made part of a court order." *Id.*, advisory committee explanatory note. Nikola's improper attempt to avoid subject matter waiver is not part of any court order.

3

General Counsel Worthen "with respect to the propriety of statements made to the public and investors" and without limitation to Mr. Milton's inclusion in the communications).

This conclusion—that the subject matter is indisputably the same—is further evidenced by a series of emails concerning the Tesla Charts podcast—a podcast in which the government alleges Mr. Milton made certain misstatements. *See* Indictment ¶¶ 68–69. In a July 18, 2020 email from Nicole Rose (Director, PR & Corporate Communications) to Vince Caramella (Global Head of Marketing) and Mr. Milton informing them that Ms. Rose had received the audio file of the prerecorded Tesla Charts interview, Mr. Milton told Ms. Rose that he was "leav[ing] it up to you guys to listen to it and approve [the podcast]" and to let him know "if there's issues." July 18, 2020 E-mail Chain re Tesla Charts Podcast, Bondi Decl. Exhibit E. Mr. Milton knew that the review and approval process included General Counsel Worthen. Ms. Rose "listened to the podcast in its entirety" and informed the podcast host that she was waiting to hear back from "our legal team." July 18, 2020 E-mail from Nicole Rose to Tesla Charts, Bondi Decl., Exhibit F. That evening, in an email that Nikola has withheld in its entirety,[4] Ms. Rose sent an e-mail to General Counsel Worthen and Mr. Caramella with the subject line "IMMEDIATE APPROVAL NEEDED Tesla Charts Podcast." Screenshot of Metadata from

---

[4] The government failed to enforce the requirement of its subpoena to Nikola that any documents withheld on the basis of privilege be identified on a privilege log. *See* Sept. 19, 2020 Grand Jury Subpoena to Nikola Corporation, Instruction 3 ("Any documents withheld on grounds of privilege must be specifically identified on a privilege log with descriptions sufficient to identify their dates, authors, recipients, and general subject matter."). Defense counsel has requested repeatedly that the government enforce the requirement of its subpoena and require Nikola to produce a privilege log. *See*, Jan. 28, 2022 Ltr. from Brad Bondi to Jordan Estes, Bondi Decl., Exhibit B (requesting that "your office . . . enforce promptly its subpoena to Nikola to obtain specific documents referenced by Bates number and any other communications relating to Mr. Milton's statements," and explaining that, because of the absence of a privilege log, "we are unable to determine what, if any, other documents and communications were withheld for privilege that may concern Mr. Milton's statements, including but not limited to agendas and minutes from weekly leadership meetings"); June 19, 2022 Ltr. from Brad Bondi to the government, Bondi Decl., Exhibit C ("To the extent that Nikola continues to withhold any of the Requested Documents on the basis of privilege, we request that you enforce the current subpoena and demand that Nikola produce a privilege log.").

July 18, 2020 E-mail, Bondi Decl., Exhibit G.  Following the email, Ms. Rose texted General Counsel Worthen and Mr. Caramella—yet the operative part of the text has been redacted.  July 18, 2020 Text Message, Bondi Decl., Exhibit H.  In the early morning hours of July 19, 2020, the day the podcast was released publicly, Ms. Rose emailed the podcasters, confirming that "[w]e are all set to go" and thanking them "for your understanding as we went through our internal process."  July 19, 2020 Email, Exhibit I.  Based on that communication by Ms. Rose to the podcasters, Ms. Rose presumably received via text the immediate legal approval she sought—because the podcasters subsequently released the podcast publicly, and Nikola posted links to the podcast on its Twitter, Facebook and LinkedIn social media feeds.  Ms. Rose also informed Mr. Milton that General Counsel Worthen approved the podcast before its release.[5]

With respect to the same Tesla Charts podcast, General Counsel Worthen again re-reviewed and re-approved Nikola's public release of the podcast and posting in Nikola's social media after Elizabeth Fretheim, Nikola's Head of Business development, raised concerns to Mr. Worthen and other executives.  Ms. Fretheim sent a text message to General Counsel Worthen, CEO Mark Russell and CFO Kim Brady—all of whom, along with Ms. Fretheim, appear on the government's witness list for trial—with a link to the podcast and stated that she was "really worried about some of what Trevor says on his latest podcast," and that she "asked the marketing team to remove references to it until it is properly reviewed by the right people."  July 19, 2020 text message, Bondi Decl., Exhibit J.  After hearing no response for several hours, Ms. Fretheim

---

[5] The government *knows* that Mr. Milton *indirectly* received legal advice from General Counsel Worthen through other Nikola personnel.  When the government questioned Ms. Rose, Ms. Rose indicated that General Counsel Worthen and Mr. Caramella "address[ed] her concerns" and she "let [Mr. Milton] know they were good."  *See, e.g.,* Nicole Rose July 13, 2021 proffer notes, Exhibit R, at 7.  Neither the government nor Nikola can dispute that the subject matter of the communications where Mr. Milton *directly* sought or received legal advice from General Counsel Worthen is the same as the subject matter of the communications where Mr. Milton *indirectly* sought or received legal advice from General Counsel Worthen through other Nikola personnel.

5

informed them that "the references are going to stay live until they get direction from you which is understandable." *Id*. The following day, Ms. Fretheim followed-up with General Counsel Worthen by email, listing her specific concerns regarding the Tesla Charts podcast. July 20, 2020 Email from Elizabeth Fretheim to General Counsel Worthen, Bondi Decl. Exhibit K.

General Counsel Worthen appears to have subsequently reviewed, again, the Tesla Charts podcast, which Nikola previously had posted to its social media. Following Ms. Fretheim's email, General Counsel Worthen emailed Ms. Rose and Mr. Caramella, the substance of which has been redacted, apparently requesting a transcript of the Tesla Charts podcast, which Ms. Rose provided. July 30, 2020 Email from General Counsel Worthen to Ms. Rose and Mr. Caramella, Bondi Decl., Exhibit L. Because links to the Tesla Charts podcast remained live on Nikola's social media pages through at least September 2020, General Counsel Worthen— having reviewed the substance of Mr. Milton's interview *twice*—was comfortable *not* advising Nikola (and Mr. Milton) to cease publicizing the interview, *not* asking the Tesla Charts podcast hosts to edit or remove the podcast, and otherwise *not* correcting, modifying or clarifying the content.

Because the undisclosed communications—using as illustrative examples these communications between General Counsel Worthen, Ms. Rose, Mr. Caramella and Ms. Fretheim—concern the same subject matter as the Disclosed Communications, Nikola also has waived privilege over the undisclosed communications. *See Stolarik v. N.Y. Times Co.*, No. 17 Cv. 5083 (PGG), 2019 WL 4565070, at *4 (S.D.N.Y. Sept. 20, 2019) (finding that waiver of privilege with respect to advice of counsel must also result in subject matter waiver regarding other legal advice that went into the party's relevant decision).

**Third**, fairness absolutely requires that the defense be able to present to the jury the *entire* scope of General Counsel Worthen's review and explicit approval of Mr. Milton's statements.[6] These communications *negate* any finding that: (1) Mr. Milton was the "maker" of such statements under *Janus Capital Group, Inc. v. First Derivative Traders*, 131 S. Ct. 2296 (2011), because the statements were reviewed, approved, and released by Nikola; (2) Mr. Milton was the disseminator of the statements under *Lorenzo v. SEC*, 139 S. Ct. 1094 (2019), because Nikola approved the release of the statements; (3) the statements were false because they were checked for accuracy; and (4) Mr. Milton possessed the requisite *mens rea* because he relied upon others to "review and approve" the release.

Preventing Mr. Milton from introducing evidence of General Counsel Worthen's review and approval in the instances where Mr. Milton was not copied *directly* in the communications would be severely prejudicial to Mr. Milton's defense. *See, e.g., Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc. v. Alcoa S.S. Co.*, 232 F.R.D. 191, 199 (S.D.N.Y. 2005), adhered to in part on reconsideration sub nom. *Am. Steamship Owners Mut. Prot. & Indem. Ass'n, Inc. v. Alcoa S.S. Co.*, No. 04 Cv. 4309 (LAK JCF), 2005 WL 2254463 (S.D.N.Y. Sept. 15, 2005) (holding that Plaintiff waived privilege with respect to an opinion letter where it was "'one among several related communications'" that Plaintiff had "already divulged in this litigation.").

---

[6] Nikola had an established procedure for reviewing public statements and press releases. Mr. Milton typically would prepare an initial draft, followed by a second-line review by the PR team, General Counsel Worthen, and others. After receiving legal approval, the PR team then would circulate a clean copy for final review. There are multiple examples of this process being followed. *See*, *e.g.*, June 26, 2020 Email from General Counsel Worthen to Mr. Milton, Ms. Rose and Mr. Caramella providing edits to a June 29, 2020 Badger Pre Order Press Release, Bondi Decl. Exhibit M; June 3, 2020 E-mail chain regarding Nikola's electrolyzer equipment purchase Press Release, Bondi Decl., Exhibit N. Nikola's internal PR policy, which contains a matrix showing that Mr. Caramella and Ms. Rose (both members of the PR team) would direct statements to the legal department as necessary, also reflects this internal review process. *See* Presentation on PR and Social Media Policies, Bondi Decl., Exhibit O.

## B. Nikola Waived Privilege Through Its Prior and Subsequent Disclosures.

In addition to the Stipulation, Nikola repeatedly waived privilege through its prior and subsequent intentional disclosures to the government, including: (1) Nikola's November 12, 2020 presentation to the government, in which Nikola disclosed General Counsel Worthen's legal advice to Mr. Milton regarding Mr. Milton's public statements, *see* Nikola Presentation to the DOJ and SEC, Phase One Investigative Report (Nov. 12, 2020) (the "Government Presentation"), Exhibit P at 63 (quoting an interview of General Counsel Worthen stating that "Nikola did not and still does not have 'commercializable' battery technology" and that Mr. Milton's statements to the contrary were a "terrible and stupid idea" and Worthen told him not to make the statement"); (2) Nikola's decision not to withhold anything for privilege from the SEC, as stated in a memorandum[7] by Nikola's auditor, *see* Auditor's Memorandum, Exhibit Q, at 14 ("Since November 6, [Nikola's counsel] has produced documents for SEC review on a weekly basis, including internal Company documents, e-mails, text messages, interview summaries, and similar documents."); *id*. at 4 (stating that "nothing has been withheld for privilege"); and (3) as we recently became aware, witness proffer sessions with the government where Nikola allowed its employees to discuss, among other topics, the review and approval process of Mr. Milton's public statements by General Counsel Worthen outside of the presence of Mr. Milton,[8] specific

---

[7] According to a memorandum by Nikola's auditor, EY, "Since November 6, [Nikola's counsel] has produced documents for SEC review on a weekly basis, including internal Company documents, **e-mails**, text messages, **interview summaries**, and similar documents." Auditor's Internal Memorandum at 14, Bondi Decl., Exhibit O. The memorandum further states that, based on verbal confirmation from Nikola's counsel, the auditor received the same documents from Nikola as the SEC, and "**nothing** has been withheld for privilege." *Id.* at 4 (emphasis added).
[8] For example, the government specifically questioned Nicole Rose and Elizabeth Fretheim on the communications between each of them and General Counsel Worthen regarding Mr. Milton's statements—yet Nikola withheld those statements under some purported claim of privilege. *See, e.g.,* Nicole Rose July 13, 2021 proffer notes at 7, Bondi Decl. Exhibit R ("[Nicole Rose] sent it to [Britton Worthen] and [Vince Caramella] to listen to it[.] [Nicole Rose] told them certain areas that gave her pause so they listened to those parts[.] . . . [They] did address her concerns[.]"); Elizabeth Fretheim Feb. 4, 2021 proffer notes at 14, Bondi Decl., Exhibit S ("had a second conversation w/ [Britton Worthen] later after he heard podcast"). The lack of any discernable distinction between the communications Nikola considers to be privileged and those communications Nikola considers not privileged (and when Nikola chooses to claim the purported privilege) raises serious concerns about the motivations underlying the assertion or

8

advice sought and received by General Counsel Worthen, the weekly leadership meetings and the talking points and Q&As to which Mr. Milton and General Counsel Worthen had access. *See US Airline Pilots Ass'n v. Pension Ben. Guar. Corp.*, 274 F.R.D. 28, 31 (D.D.C. 2011) ("[A] deliberate disclosure constitutes an intentional waiver, at least absent credible evidence that the disclosing party was unaware of the contents of the disclosed material.").

II. **Mr. Milton Is Entitled Under the Fifth and Sixth Amendments To Examine General Counsel Worthen and Other Nikola Personnel Concerning General Counsel Worthen's Communications Related to the Alleged Statements.**

Even if Nikola had a valid claim of privilege—and there is not one—Mr. Milton nonetheless would be entitled under the Fifth and Sixth Amendments to examine General Counsel Worthen and other Nikola personnel concerning General Worthen's communications related to the Alleged Statements. "The due process clause of the Fifth Amendment and the compulsory process clause of the Sixth Amendment guarantee each criminal defendant the right to present a defense." *United States v. Almonte*, 956 F.2d 27, 30 (2d Cir. 1992) (citing *Rosario v. Kuhlman*, 839 F.2d 918, 924 (2d Cir.1988)). "It is the manifest duty of the courts to vindicate those guarantees, and to accomplish that it is essential that all relevant and admissible evidence be produced." *United States v. Nixon*, 418 U.S. 683, 711 (1974).

Numerous courts have held that a criminal defendant may introduce privileged information over a company's objection when the balancing test first outlined in *United States v. W.R. Grace*, 439 F. Supp. 2d 1125 (D. Mont. 2006) warrants such introduction. *See id*. at 1145 (holding that "some of each individual Defendant's privileged documents appear to be

---

waiver of purported privilege. Nikola cannot use privilege at its choosing both as a sword to disclose seemingly inculpatory communications against Mr. Milton and a shield to prevent disclosure of exculpatory communications. *See United States v. Bilzerian*, 926 F.2d 1285, 1292–93 (2d Cir. 1991) ("[T]he attorney-client privilege cannot at once be used as a shield and a sword.").

9

admissible" because they were "of such probative and exculpatory value as to compel admission of the evidence over [the company's] objection as the attorney-client privilege holder."); *see also United States v. Weisberg*, No. 08-CR-347 NGG RML, 2011 WL 1327689, at *4 (E.D.N.Y. Apr. 5, 2011) (concluding that, although "[t]here is a dearth of binding authority regarding the balance that must be struck between a criminal defendant's right to subpoena evidence from third parties under Rule 17(c) and those third parties' valid assertion of attorney-client or work product privilege[, ] it is clear that criminal defendants have a constitutional right to present a complete defense") (citing *W.R. Grace*, 439 F. Supp. 2d at 1140-42); *but see United States v. Wells Fargo Bank, N.A.*, 132 F. Supp. 3d 558, 565 (S.D.N.Y. 2015) (declining to follow *W.R. Grace* in the civil context, reasoning that "*Grace,* however, was a criminal case, and its analysis was based explicitly on a criminal defendant's rights under the Sixth Amendment.").

Applying the *W.R. Grace* balancing test, Mr. Milton's constitutional interests in the testimony by General Counsel Worthen concerning his communications related to the Alleged Statements *far* outweigh any purported privilege under either attorney-client privilege or the work product protection. The factor that weighs "most heavily" is "the exculpatory value of the lost evidence to the accused." *W.R. Grace*, 439 F. Supp. 2d at 1140. The exculpatory value of the evidence here is extraordinary: General Counsel Worthen's review and explicit approval of Mr. Milton's alleged misstatements establish that Mr. Milton was neither the maker of these statements under *Janus*, 564 U.S. 135, nor the disseminator of these statements under *Lorenzo*, 139 S. Ct. 1094—which negates the *actus reus* element of the charged offenses.

General Counsel Worthen's review and explicit approval of Mr. Milton's alleged misstatements also directly negates the *mens rea* and falsity of the alleged misstatements. *See* June 10, 2021 Letter from Matthew Podolsky to Kirkland & Ellis, LLP, Bondi Decl., Exhibit B

10

(explaining that the privileged statements are "crucial to understanding the factual background" and may support "an advice-of-counsel defense"); *United States v. Scully*, 877 F.3d 464, 476 (2d Cir. 2017) ("[T]he claimed advice of counsel is evidence that, if believed, can raise a reasonable doubt in the minds of the jurors about whether the government has proved the required element of the offense that the defendant had an 'unlawful intent.'"). Where fundamental elements of the defense are at issue, the Constitution supersedes any evidentiary rules. *See United States v. Scheffer*, 523 U.S. 303, 315 (1998) (explaining, as a counterexample, that exclusions of evidence violate the Constitution when they "undermine[] fundamental elements of the defendant's defense").

Further, although the jury will be the ultimate arbiter of the strength of any potential advice-of-counsel defense,[9] General Counsel Worthen's approval of Mr. Milton's public statements is "all but indispensable to any chance of [that defense] succeeding." *Crane v. Kentucky*, 476 U.S. 683, 691, (1986) (reversing trial court's decision to exclude evidence of the physical circumstances that yielded defendant's confession under the Sixth and Fourteenth Amendments because that evidence was indispensable to his argument that the confession was coerced); *see also Perry v. Rushen*, 713 F.2d 1447, 1452–53 (9th Cir. 1983) (explaining that "exclusion of significant defense evidence implicates constitutional values," and a court should consider "whether it is the sole evidence on the issue or merely cumulative" before excluding it). Nikola—as a publicly traded corporation—also has a diminished expectation of privacy. *See United States v. Amodeo*, 71 F.3d 1044, 1052 (2d Cir. 1995) (explaining that the "expectation of

---

[9] As more fully explained in Mr. Milton's Motion for a Bill of Particulars (ECF 52) and the Memorandum in Support of a Bill of Particulars (ECF 53), the Indictment fails to identify each statement by Mr. Milton that the government contends was false and misleading. The omitted information constitutes the factual basis for the charges against Mr. Milton. Mr. Milton cannot assess sufficiently any potential advice-of-counsel defense until he knows the universe of the alleged misstatements with which he is being charged.

privacy" afforded by "a lawyer's representation of a client" is "diminished where the client is a body such as a . . . publicly held corporation because a substantial number of citizens rely upon the representation but cannot control it"). Nikola's privacy interest is "simply not the same as a single person's desire for privacy in his strategic direction of his counsel." *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, No. 14 Cv. 6867 (VEC), 2016 WL 1071107, at *15 (S.D.N.Y. Mar. 18, 2016), *aff'd*, 814 F.3d 132 (2d Cir. 2016).

Because Mr. Milton's constitutional interests in the testimony by General Counsel Worthen concerning his communications related to the Alleged Statements *far* outweigh any purported attorney-client privilege, the Court should allow all testimony by General Counsel Worthen and other Nikola personnel concerning General Counsel Worthen's communications related to the Alleged Statements.

## **CONCLUSION**

For the reasons above, Mr. Milton moves the Court to allow all testimony by General Counsel Worthen and other Nikola personnel concerning General Counsel Worthen's communications related to any public-facing or so-called "retail investor"-facing statements allegedly made by Mr. Milton, without any limitation based on purported attorney-client privilege.

Dated: June 20, 2022                    Respectfully submitted,

                                                  /s/ Bradley J. Bondi
Bradley J. Bondi
CAHILL GORDON & REINDEL LLP
1990 K Street NW, Suite 950
Washington, DC 20006
(202) 862-8910
bbondi@cahill.com

Marc L. Mukasey
MUKASEY FRENCHMAN LLP
570 Lexington Avenue, Suite 3500
New York, NY 10022
(212) 466-6400
Marc.Mukasey@mfsllp.com

*Counsel for Trevor Milton*