UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————— x

UNITED STATES OF AMERICA                  :   No. 1:21-cr-00478-ER
                                          :
                    v.                    :
                                          :
                                          :
TREVOR MILTON,                            :
                                          :
                    Defendant.            :
———————————————————————— x

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION *IN LIMINE* TO
EXCLUDE EVIDENCE OF, AND REFERENCE TO, ALLEGATIONS OUTSIDE OF
INDICTMENT PERIOD**

Bradley J. Bondi
CAHILL GORDON & REINDEL LLP
1990 K Street NW, Suite 950
Washington, DC 20006
(202) 862-8910
bbondi@cahill.com

Marc L. Mukasey
MUKASEY FRENCHMAN LLP
570 Lexington Avenue, Suite 3500
New York, NY 10022
(212) 466-6400
Marc.Mukasey@mfsllp.com

*Counsel for Trevor Milton*

# TABLE OF CONTENTS

Page

INTRODUCTION .................................................................................................................1

DISCUSSION .....................................................................................................................4

I.      LEGAL STANDARD..................................................................................................4

      A.     Admissibility of Uncharged Conduct as Direct Evidence. ....................................4

      B.     Admissibility of Uncharged Conduct Under 404(b)..............................................4

      C.     Rule 403 Balancing Test. .......................................................................................5

II.     ARGUMENT ...............................................................................................................6

A.     The Court Should Exclude Evidence Concerning Mr. Milton's Uncharged
December 2016 Statements Because Such Evidence Is Neither Direct Evidence
Nor Evidence of Other Acts Under 404(b). ..........................................................6

      1.     The December 2016 Statements Are Not Relevant to, or Direct Evidence
of, the Crimes Alleged. .........................................................................7

      2.     The December 2016 Statements Are Offered for an Improper Purpose,
Irrelevant to the Charged Conduct, Unfairly Prejudicial and Will Confuse
the Jury under Rules 404(b) and 403. ....................................................9

B.     The Government Should Exclude Evidence Concerning the 2017 Commercial
Footage and Nikola's January 25, 2018 Social Media Posts Relating to the Truck
Rolling Down the Hill Because Such Evidence Is Neither Direct Evidence Nor
Evidence of Other Acts Under 404(b). ...............................................................11

      1.     The 2017 Footage and 2018 Social Media Posts Are Not Relevant or
Direct Evidence of the Crimes Alleged in the Indictment....................11

      2.     The 2017 Footage and 2018 Social Media Posts Relating to the Truck
Rolling Down the Hill Are Offered for an Improper Purpose, Irrelevant to
the Charged Conduct, Will Confuse the Jury and Are More Inflammatory
Than the Charged Conduct Under Rules 404(b) and 403.......................12

C.     Evidence Concerning 2016 Statements Relating to Natural Gas Wells Are Offered
for an Improper Purpose, Irrelevant to the Charged Conduct, Unfairly Prejudicial,
and Will Confuse the Jury...................................................................................15

D.     Evidence Concerning Mr. Milton's Solar Panel Statements Is Offered for an
Improper Purpose, Irrelevant to the Charged Conduct, Unfairly Prejudicial and
Will Confuse the Jury. ........................................................................................16

<u>Page</u>

E.     Evidence Concerning Mr. Milton's and Mr. Milton's Father's Loans to Nikola Is
       Offered for an Improper Purpose, Is Irrelevant to the Charged Conduct, Is
       Unfairly Prejudicial, and Will Confuse the Jury.............................................................. 17

CONCLUSION...................................................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Beastie Boys v. Monster Energy Co.*,
   983 F. Supp. 2d 354 (S.D.N.Y. 2014).........................................................................18

*Blue Cross and Blue Shield of N.J., Inc. v. Philip Morris, Inc.*,
   138 F. Supp. 2d 357 (E.D.N.Y. 2001) .......................................................................11

*Contreras v. Artus*,
   778 F.3d 97 (2d Cir. 2015)...........................................................................................9

*Janus Capital Group, Inc. v. First Derivative Traders*,
   564 U.S. 135 (2011).....................................................................................................12

*Old Chief v. United States*,
   519 U.S. 172 (1997).......................................................................................................6

*SEC v. Badian*,
   822 F. Supp. 2d 352 (S.D.N.Y. 2011).......................................................................10

*United States v. Carboni*,
   204 F.3d 39 (2d Cir. 2000)...........................................................................................4

*United States v. Curley*,
   639 F.3d 50 (2d Cir.2011).............................................................................................4

*United States v. Downing*,
   297 F.3d 52 (2d Cir. 2002)...........................................................................................5

*United States v. Johnson*,
   469 F. Supp. 3d 193 (S.D.N.Y. 2019).........................................................................5

*United States v. Kaplan*,
   490 F.3d 110 (2d Cir. 2007).........................................................................................5

*United States v. Martoma*,
   No. 12 Cr. 973 (PGG), 2014 WL 31191 (S.D.N.Y. Jan. 6, 2014)...........................4

*United States v. McCallum*,
   584 F.3d 471 (2d Cir. 2009).....................................................................................5, 10

*United States v. Ravich*,
   421 F.2d 1196 (2d Cir.1970).......................................................................................18

*United States v. Stein*,
  521 F.Supp.2d 266 (S.D.N.Y.2007)...................................................................4, 8, 9, 16

*United States v. Ulbricht*,
  79 F. Supp. 3d 466 (S.D.N.Y. 2015)..................................................................6, 10

*United States v. Zhong*,
  26 F.4th 536 (2d Cir. 2022) ........................................................... *passim*

**Other Authorities**

Rule 401 ....................................................................................................................2, 5

Rules 402 ....................................................................................................................5

Rule 403 .............................................................................................................. *passim*

Rule 404(b) ......................................................................................................... *passim*

Peter Campbell & Claire Bushey, *Nikola admits rolling truck down hill as it
  counters 'fraud' claims*, FT.com (Sept. 14, 2020)..................................13

*Nikola electric lorry just rolling downhill in promo, BBC.com (Sept. 15, 2020)* .........................13

Timothy B. Lee, *Nikola admits prototype was rolling downhill in promotional
  video* (Sept. 14, 2020) .......................................................................13

Mr. Milton respectfully moves under Federal Rules of Evidence 401, 402, 403 and 404(b) to exclude five categories of evidence the government intends to admit at Mr. Milton's upcoming trial.  Because all evidence in these five categories is irrelevant, not offered for a proper purpose, would be unduly prejudicial, and will necessitate a series of "trials within the trial" that unnecessarily will complicate and delay the proceedings, the Court should preclude these categories of evidence.

## INTRODUCTION

The government describes its own case as involving a "scheme [by Mr. Milton to] *target[] . . . 'retail investors'* by making false and misleading statements *directly to the investing public*" to "*inducing them to purchase shares* of Nikola," an "*electric- and hydrogen*-powered vehicle and energy company."  Indictment ¶ 1.  The government alleges that these misstatements fall into five distinct categories—(1) statements made in 2020 regarding the early success and functionality of Nikola's alpha prototype semi-truck known as the Nikola One, which was unveiled in 2016, (2) the Nikola Badger prototypes, (3) Nikola's hydrogen production cost and capabilities, (4) Nikola's technology used in its planned semi-trucks, and (5) the binding nature of Nikola's reservations, *see* Indictment ¶ 2—and that the scheme *began* in November 2019.  Gov't Mem. (ECF 71) at 30 ("As the Indictment makes clear, Milton has been charged with a securities fraud scheme *beginning in November 2019*.").[1]  All of the allegations deal with public statements to so-called "retail investors," who were not able to trade in Nikola stock until June 4, 2020, when Nikola went public through a merger with VectoIQ.

On June 17, 2022, the government sent a letter to defense counsel outlining an additional five categories of uncharged conduct that the government intends to offer into evidence from

---

[1]    Unless otherwise specified, emphasis is added and citations omitted throughout this memorandum.

years—namely 2015 to February 2019—prior to the time period of the conduct alleged in the

Indictment.  All such evidence also is unrelated to the distinct categories of misstatements

alleged in the Indictment and not directed to the so-called "retail investors," who are the

purported "victims" of Mr. Milton's alleged misstatements in the Indictment.

Although the government expressly has acknowledged that it is not charging Mr. Milton

based on *any* pre-November 2019 activity,[2] the government intends to introduce the following as

direct evidence under Rule 401, or as evidence of other acts under Rule 404(b)(2):

- *December 2016 Statements*.  The government contends that Mr. Milton made statements in December 2016 relating to the functionality of the Nikola One, Nikola's alpha prototype truck that was designed to run on compressed natural gas ("CNG"), *see also* Indictment ¶¶ 29–33; and

- *2017 Commercial Footage and Corresponding January 25, 2018 Twitter and Facebook Posts*.  The government contends that that a "large multinational corporation"—not Nikola and not Mr. Milton—filmed the Nikola One for a commercial in October 2017. According to the government, the prototype was towed to the top of a hill and then allowed to roll down the hill to make the prototype appear to be moving under its own power.  Mr. Milton's only alleged involvement was that he attended the film shoot (which, in fact, he did not), *see also id*. ¶ 35.  The government also contends that on or about January 25, 2018, Nikola posted a condensed version of the 2017 commercial footage on its Twitter and Facebook accounts that made it appear as if the Nikola One was moving on its own power on a level road.  *Id.* ¶ 36.  The government asserts in a conclusory manner that these social media posts were made at Mr. Milton's "direction." *Id.*

As evidence of other acts under Rule 404(b)(2), the government also intends to introduce

the following evidence not referenced anywhere in the Indictment:

- *2016 Natural Gas Wells Statements*.  The government contends that in 2016, Mr. Milton represented on Nikola's website and its Twitter account that Nikola owned natural gas wells, and that these statements were false because Nikola never owned natural gas wells.

- *February 2019 Solar Panel Statements*.  The government contends that in February 2019, Mr. Milton represented that Nikola had solar panels on its roof producing energy for the

---

[2] *See* Gov't Mem. (ECF 71) at 10 (affirming that "the Indictment does not allege that those statements, standing alone, constitute securities fraud"); Indictment ¶¶ 82, 84 (charging Mr. Milton with engaging in securities fraud from November 2019 to September 2020).

company's headquarters, and that these statements were false because Nikola never installed panels on its roof.

- *2015 Loans to Nikola*.  The government contends that Mr. Milton and his father made loans to Nikola at an inappropriately high interest rate.  According to the government's letter, after Nikola subsequently retained a major accounting firm, which determined that some of the interest should not have been paid to Mr. Milton, Mr. Milton was asked to repay a portion of the funds to the company.

The Court should preclude the five categories of "direct" or "other acts" evidence that the government seeks to introduce.  Each of these categories amounts to an improper attempt to introduce evidence of Mr. Milton's purported criminal propensity.  The crux of the government's alleged "scheme" is that Mr. Milton misrepresented aspects of Nikola's business and technology to "induce retail and other investors to purchase Nikola's stock . . . to increase and support Nikola's stock price."  Indictment ¶¶ 22–24.  All of the prior uncharged conduct falls well outside of the start of the Indictment period—as far back as ***five years***— long before Nikola announced a plan merger with VectoIQ on March 3, 2020, and even longer before Nikola actually merged with VectoIQ to become a public company on June 4, 2020.  *Id*. ¶¶ 14–15.  As a practical matter, any activity between 2015 and June 4, 2020 cannot constitute a fraud on the investing public.  Indeed, the Indictment does not allege that Mr. Milton misled any institutional or private investors.  The *only* purpose of introducing this uncharged conduct—all of which occurred well before the indictment period and none of which is relevant—is improperly to show Mr. Milton's supposed propensity to commit the charged crimes.  Because the possibility of prejudice substantially outweighs any probative value and the introduction of such evidence would create multiple "trials within the trial" that would risk confusing the jury and cause undue delay, the Court also should exclude these categories of evidence under Rule 403.

3

## DISCUSSION

### I.   LEGAL STANDARD

#### A.   Admissibility of Uncharged Conduct as Direct Evidence.

Uncharged conduct can be admitted as direct evidence of the crimes charged *only* "if (1) it arose out of the same transaction or series of transactions as the charged offense, (2) if it is inextricably intertwined with the evidence regarding the charged offense, or (3) if it is necessary to complete the story of the crime on trial." *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000) (quoting *United States v. Gonzalez*, 110 F.3d 936, 942 (2d Cir.1997)).

Uncharged conduct is "inextricably intertwined" with charged conduct if "[the] details of the uncharged transaction are necessary to understand the charged transaction." *United States v. Stein,* 521 F.Supp.2d 266, 271 (S.D.N.Y.2007).  Uncharged conduct is *not* inextricably intertwined where "[t]he charged crimes are straightforward and may be fully understood without reference to [the uncharged conduct]" or where the Indictment "tells a compelling, complete, and detailed story with almost no mention of the uncharged conduct." *United States v. Martoma*, No. 12 CR 973 PGG, 2014 WL 31191, at *3 (S.D.N.Y. Jan. 6, 2014) (citations omitted).  "If 'necessary,' the government may introduce evidence of uncharged criminal conduct 'to complete the story of the crime on trial,' *not to tell a new one*." *United States v. Zhong*, 26 F.4th 536, 552 (2d Cir. 2022) (quoting *United States v. Robinson*, 702 F.3d 22, 37 (2d Cir. 2012)).

#### B.   Admissibility of Uncharged Conduct Under 404(b).

"Rule 404(b) . . . governs the admissibility of evidence . . . of crimes, wrongs, or acts other than those charged in the indictment" as indirect evidence of the crimes charged. *United States v. Curley*, 639 F.3d 50, 56 (2d Cir.2011).  The government must show that the evidence is

"(1) offered for a proper purpose, (2) relevant [under Rules 401 and 402], and (3) substantially more probative than prejudicial" under Rule 403.  *United States v. Downing*, 297 F.3d 52, 58 (2d Cir. 2002).

Although evidence of prior uncharged acts may be admissible under Federal Rule of Evidence 404(b) for the purpose of showing "intent . . . plan, knowledge [or] . . . absence of mistake," Fed. R. Evid. 404(b)(2), such evidence is inadmissible for the purpose of "generalizing a defendant's bad act into bad character and taking that as raising the odds that he did the later bad act now charged."  *United States v. McCallum*, 584 F.3d 471, 476 (2d Cir. 2009) (quoting *Old Chief v. United States*, 519 U.S. 172, 180-81 (1997)); *Zhong*, 26 F.4th at 551 (asserting that a court may not allow evidence of conduct as "propensity evidence in sheep's clothing" (citation omitted)).  To be relevant under Rule 401, "(1) [t]he evidence must be probative of the proposition it is offered to prove, and (2) the proposition to be proved must be one that is of consequence to the determination of the action."  *United States v. Kaplan*, 490 F.3d 110, 121 (2d Cir. 2007) (quoting *United States v. Diaz*, 878 F.2d 608, 614 (2d Cir.1989)).

## C.     Rule 403 Balancing Test.

Notwithstanding whether uncharged conduct constitutes direct evidence or "other acts" evidence, "uncharged conduct must still survive scrutiny under the Fed. R. Evid. 403 balancing test to be admissible."  *United States v. Johnson*, 469 F. Supp. 3d 193, 205 (S.D.N.Y. 2019).  Rule 403 provides that a "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, [or] undue delay."  *Zhong*, 26 F.4th at 552.  Evidence is unfairly prejudicial when it has "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."  *Old Chief*, 519 U.S. at 180.  The Second Circuit has vacated convictions where

the government introduced "evidence of uncharged crimes describ[ing] conduct that was significantly more sensational and disturbing than the charged crimes," which could "lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Zhong*, 26 F.4th at 553 (citation omitted).

Evidence also may be excluded under Rule 403 if proving and contesting the facts surrounding the uncharged conduct will create multiple "mini-trial[s] within the trial" that would unduly delay the proceedings and risk confusing the jury.  *United States v. Ulbricht*, 79 F. Supp. 3d 466, 492–93 (S.D.N.Y. 2015) (precluding evidence where allowing it would risk confusing the jury into convicting defendant for uncharged conduct and lead to a mini-trial on collateral issues).

Applying these fundamental evidentiary rules, the Court should exclude any conduct prior to June 4, 2020 when Nikola first was publicly traded or, at the very least, the start of the Indictment period (November 2019).

## II. ARGUMENT

### A. The Court Should Exclude Evidence Concerning Mr. Milton's Uncharged December 2016 Statements Because Such Evidence Is Neither Direct Evidence Nor Evidence of Other Acts Under 404(b).

The government intends to offer evidence of uncharged statements Mr. Milton made in December 2016 regarding the functionality of Nikola's alpha prototype called the Nikola One as direct evidence of the charged crimes, or, in the alternative, to prove intent, plan, knowledge, and lack of mistake.  The Court should exclude that evidence for either purpose.

1.  **The December 2016 Statements Are Not Relevant to, or Direct Evidence of, the Crimes Alleged.**

In an apparent attempt to bootstrap uncharged conduct into the charged period, the Indictment asserts that Mr. Milton's statements in December 2016 at the unveiling event for the Nikola One were misleading because those statements indicated that the Nikola One prototype was fully functioning when it was (allegedly) not functional, and that public investors relied on these statements *four years later*, between June and September 2020 when they watched YouTube recordings of Mr. Milton making those statements.  Indictment ¶ 37.  But the government has acknowledged that it is *not* charging Mr. Milton based on the December 2016 statements.  *See* Gov't Mem. (ECF 71) at 10 (affirming that "the Indictment does not allege that those statements, standing alone, constitute securities fraud").

That admission invites the obvious question:  How are the uncharged December 2016 statements and their claimed falsity relevant to the government's claims here?  The government's answer is that Mr. Milton's December 2016 statements about the Nikola One "were made newly relevant in 2020 when Milton began promoting a false narrative that Nikola had been a first-mover in the zero-emissions trucking business in 2016 when it debuted the Nikola One."  *Id.*

But none of the alleged 2020 statements makes the assertion that the government alleges Mr. Milton made in December 2016.  To the extent those 2020 statements address the functionality of the Nikola One at all, those 2020 statements affirm that the Nikola One prototype in 2016 did *not* "drive under its own power:"[3]

- A March 3, 2020 pre-recorded conference call in which Mr. Milton said: "I founded the company to completely disrupt the energy and transportation market. When our

---

[3] For example, the March 3, 2020 conference call and the January and July 2020 podcasts make no mention of the operability of the Nikola One.  *See* Indictment ¶ 28; Bondi Decl. Exs. 1–4.  In the June 2020 article and the June and July 2020 appearances, Mr. Milton acknowledged that the Nikola One was not driving under its own power in 2016 and 2017.  *See* Indictment ¶¶ 38, 40; Exs. 5–7.

company first announced the Nikola One Semi truck in 2016, most other brands said zero emission would never work. WOW, were they wrong." Indictment ¶ 28.

- A podcast recorded in January 2020 and broadcast on the internet in March 2020, in which Mr. Milton denied that the Nikola One was "vaporware," and claimed instead that "what we did is we came out and we proved to everyone that we really did have what we promised, and that was a humongous kind of drop the mic moment for the industry. Every OEM [Original Equipment Manufacturer] around the world now is spending billions just to catch up because they thought that Nikola was not legitimate, and now they're terrified." *Id*.

- A July 2020 podcast in which Mr. Milton stated that "Nikola was the first company to actually launch the zero emission semi-truck back in 2016." *Id.*

- A June 2020 article asserting that the Nikola One was not functioning at its December 1, 2016 unveiling event, in which Mr. Milton "conceded that the truck did not drive under its own power, but claimed that this was because the motors and gears were removed from the truck for safety reasons and that he 'never deceived anyone.'" *Id*. ¶ 38. The Indictment also refers to subsequent tweets by Mr. Milton criticizing the article. *Id.*

- Television and social media appearances in June or July 2020, during which Mr. Milton stated that "the Nikola One was operable, but that parts were removed and the prototype was not actually driven because of safety concerns." *Id*. ¶ 40.

The government further does not allege that any investors found any statements made about the Nikola One during 2020 to be important.[4]  Perhaps recognizing the weakness of the claims actually pending against Mr. Milton, the government instead attempts to litigate the accuracy of the uncharged December 2016 statements.

The December 2016 statements also do not arise out of the same transaction or series of transactions as the charged 2020 statements. *See Stein*, 521 F.Supp.2d at 271.  In addition to the *four-year* temporal difference between the statements, Mr. Milton's 2016 statements were made before Nikola even contemplated going public.  These statements did not and could not "arise

---

[4] The government would be hard-pressed to show that investors found any statements about the Nikola One during the time period of the allegedly fraudulent scheme to be important.  As the Indictment alleges, by November 2019, the Nikola One had been discontinued without ever having been put into production (Indictment ¶ 34), articles had been published asserting that the Nikola One was not fully functional in 2016, and Mr. Milton himself had stated that the Nikola One had not run on its own power. *Id.* ¶¶ 38-39.

out" of Mr. Milton's alleged scheme to "induce retail and other investors to purchase Nikola's stock . . . to increase and support Nikola's stock price."  Indictment ¶¶ 22–24.

The December 2016 statements relating to the unveiling of the Nikola One prototype likewise are not necessary "to understand the charged transaction," *Stein*, 521 F.Supp.2d at 271, or to complete the story of the crimes alleged.  Even a cursory review of the Indictment illustrates that the government's focus on Mr. Milton's December 2016 statements is an improper attempt to inject the question of the accuracy of these stale, uncharged statements into the later post-November 2019 conduct charged against Mr. Milton.

The *only* relevant factual issue regarding the accuracy of the 2020 statements would be whether the Nikola One was functional in 2016.  The truth or falsity of Mr. Milton's December 2016 statements does not prove or disprove whether the Nikola One was actually functional at the time.  Using the language of the Second Circuit in *Zhong*, the government now attempts to tell a new story using the December 2019 statements.  *Zhong*, 26 F.4th at 552.  Because Mr. Milton's December 2016 statements have no probative value on the accuracy of Mr. Milton's 2020 statements, the Court should exclude the December 2016 statements as irrelevant.  *See, e.g.*, *Contreras v. Artus*, 778 F.3d 97, 108 (2d Cir. 2015) ("Evidence is relevant if it has any tendency in reason to prove the existence of any material fact, i.e., it makes determination of the action more probable or less probable than it would be without the evidence.") (citation omitted).

### 2. The December 2016 Statements Are Offered for an Improper Purpose, Irrelevant to the Charged Conduct, Unfairly Prejudicial and Will Confuse the Jury under Rules 404(b) and 403.

The only conceivable reason the government seeks to introduce Mr. Milton's 2016 statements is to establish (improperly) an inference that Mr. Milton misrepresented the status of the Nikola One in 2016 and thus must have continued those alleged misrepresentations in

2020—*i.e.*, that Mr. Milton is a "fraudster."  Under Rule 404(b), however, the government cannot proffer propensity evidence.  *See McCallum*, 584 F.3d at 476; *see also SEC v. Badian*, 822 F. Supp. 2d 352, 366 (S.D.N.Y. 2011) (excluding reference to prior criminal complaint involving similar conduct "as it would likely lead the jury to make improper propensity inferences" about the defendant).  The government cannot allege plausibly that Mr. Milton's 2016 statements—made ***four years*** earlier, before Nikola was publicly traded, to private investors who had "access to more complete and accurate information" and are not alleged to have been misled, Indictment ¶ 17—is probative of Mr. Milton's intent, plan, knowledge or lack of mistake to induce retail investors to purchase Nikola stock and artificially increase the stock price.

   *Even if* the government were able to identify a proper purpose, the Court should exclude Mr. Milton's December 2016 statements under Rule 403.  The December 2016 statements are highly prejudicial as the conduct "would likely lead the jury to make improper propensity inferences" about the defendant. *See Badian*, 822 F. Supp. 2d at 366.  The admission of the December 2016 statements also creates the risk of confusing the jury as to which statements Mr. Milton has been charged; gives rise to the possibility of the jury finding Mr. Milton guilty based on 2016 statements for which he has not been charged; and would require a "mini-trial within the trial" into the accuracy and impact of statements made years before the charged conduct occurred.  *See, e.g.*, *United States v. Ulbricht*, 79 F. Supp. 3d 466, 492–93 (S.D.N.Y. 2015) (precluding evidence where allowing it would risk confusing the jury into convicting defendant for uncharged conduct and lead to a mini-trial on collateral issues).

**B. The Government Should Exclude Evidence Concerning the 2017 Commercial Footage and Nikola's January 25, 2018 Social Media Posts Relating to the Truck Rolling Down the Hill Because Such Evidence Is Neither Direct Evidence Nor Evidence of Other Acts Under 404(b).**

The government also intends to offer evidence of a television commercial that was filmed by non-party Phillips Industries in October 2017 to celebrate its 90th anniversary (the "Phillips Commercial"). In the Phillips Industries Commercial, the Nikola One is rolling down a hill. Nikola subsequently posted footage from the Phillips Industries Commercial to its social media feeds on January 25, 2018 and described the Nikola One as being "in motion." The government intends to introduce the 2017 footage and 2018 social media posts as direct evidence of the charged crimes, or, in the alternative, to prove intent, plan, knowledge, and lack of mistake. The Court should exclude this evidence for either purpose.

**1. The 2017 Footage and 2018 Social Media Posts Are Not Relevant or Direct Evidence of the Crimes Alleged in the Indictment.**

Whatever arguments the government can muster regarding Mr. Milton's December 2016 being made "newly relevant in 2020 when Milton began promoting a false narrative that Nikola had been a first-mover in the zero-emissions trucking business in 2016 when it debuted the Nikola One," *supra*, those arguments are completely unrelated to either the 2017 commercial footage or Nikola's January 25, 2018 social media posts. None of the video footage has any relevance to the question posed by the government's allegations—whether Mr. Milton misstated in 2020 that the Nikola One was fully functional at the time of its unveiling in December 2016. The footage from the Phillips Industries Commercial—which was filmed by Philips Industries for its own marketing campaign in October 2017—has no probative value regarding whether the prototype was functional at the time the prototype was unveiled in December 2016. *See, e.g.*, *Blue Cross and Blue Shield of N.J., Inc. v. Philip Morris, Inc.*, 138 F. Supp. 2d 357, 365

(E.D.N.Y. 2001).  Further, in April 2019, over a year before Nikola went public, and five months

before the time period of the conduct charged in the Indictment, Nikola successfully had

completed two prototypes of its second-generation, hydrogen fuel cell semi-truck, the Nikola

Two.  Indictment ¶ 37.  In other words, Nikola had a functioning prototype during the entirety of

the Indictment period—and statements regarding the Nikola One have no relevance to Nikola or

its products during the period of the alleged "scheme."

    For the same reasons, the 2017 footage and 2018 social media posts likewise do not arise

out of the same transaction or series of transactions as Mr. Milton's allegedly misleading

statements in 2020 about the functionality of the Nikola One prototype in 2016, are not

inextricably intertwined with the evidence regarding the truth or falsity of the 2020 statements

and are wholly unnecessary to "complete the story."  *Zhong*, 26 F.4th at 552.

### 2. The 2017 Footage and 2018 Social Media Posts Relating to the Truck Rolling Down the Hill Are Offered for an Improper Purpose, Irrelevant to the Charged Conduct, Will Confuse the Jury and Are More Inflammatory Than the Charged Conduct Under Rules 404(b) and 403.

    As with the December 2016 statements, the government seeks to introduce the highly

inflammatory footage and social media posts for the improper purpose of inferring Mr. Milton is

a fraudster.  Regardless, the government cannot show that the evidence is probative of Mr.

Milton's intent, plan, knowledge, and lack of mistake because neither the footage nor the social

media posts was a statement "made" by Mr. Milton under *Janus Capital Group, Inc. v. First*

*Derivative Traders*, 564 U.S. 135 (2011):

- The Indictment concedes that Mr. Milton was not involved in the shooting of the 2017 commercial footage other than to allegedly attend the shoot, which was conducted by a third party "multinational corporation" (that is, Phillips Industries)—Mr. Milton did not play any role in the design, filming or production of the commercial.  Indictment ¶ 35. Contrary to the allegations of the Indictment, Mr. Milton did not attend the shoot.

- Although the Indictment states that Nikola's January 2018 social media posts were at Mr. Milton's "direction," the government does not contend that Mr. Milton played any role in the wording of the posts or the creation of the condensed versions of the 2017 commercial footage embedded in those posts, or that those posts by Nikola otherwise are attributable to Mr. Milton. *Id.* ¶ 36.

*Even if* the footage from the Phillips Industries Commercial had some minor probative value—which it does not—the Court should exclude the footage because it is more inflammatory than the charged conduct and unfairly prejudicial under Rule 403. The allegation that the Phillips Industries Commercial filmed in October 2017 showed a Nikola One prototype rolling downhill to give the impression that the truck was driving under its own engine power has been the subject of numerous sensational media articles suggesting that the Phillips Industries Commercial misrepresented the capabilities of the Nikola One.[5] The government undoubtedly will offer the video footage in a similar manner—to suggest that the Nikola One (and, by extension, Mr. Milton) was a sham—despite the reality that Phillips Industries created the Phillips Industries Commercial for its own commercial purposes without input from Mr. Milton.

The Second Circuit has vacated convictions where the government introduced "evidence of uncharged crimes describ[ing] conduct that was significantly more sensational and disturbing than the charged crimes," which could "lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Zhong*, 26 F.4th 536, 553 (2d Cir. 2022) (citation omitted) (quotations omitted). In *Zhong*, the government sought to bolster its case by presenting evidence of uncharged conduct that was "more extreme" than the charged conduct

---

[5] *See, e.g.*, Timothy B. Lee, *Nikola admits prototype was rolling downhill in promotional video,* ARSTECHNICA.COM (Sept. 14, 2020), *available at* https://arstechnica.com/cars/2020/09/nikola-admits-prototype-was-rolling-downhill-in-promotional-video/; *Nikola electric lorry just rolling downhill in promo*, BBC.COM (Sept. 15, 2020), *available at* https://www.bbc.com/news/technology-54161343; Peter Campbell & Claire Bushey, *Nikola admits rolling truck down hill as it counters 'fraud' claims*, FT.COM (Sept. 14, 2020), *available at* https://www.ft.com/content/a875fe3f-f59e-4dcb-aebc-ee54280122be.

"and that took place almost a decade before the indictment period," arguing that it "was admissible both to complete the story of Zhong's charged crimes . . . and to prove Zhong's intent, knowledge, and pla[ning] of the charged crimes . . . during the indictment period." *Id*. at 552 (citations omitted).  The Second Circuit held that the district court abused its discretion by admitting the pre-indictment period evidence because, even assuming the government had a valid basis for admitting the evidence, the offered evidence was "***more inflammatory*** than the charged crime." *Id*. at 553 (emphasis added).  The Second Circuit also found it highly relevant that, as here, the government failed to allege that "[the defendant] was personally involved with" the pre-indictment acts.  *Id*.

The admission of the 2017 Phillips Industries Commercial or the corresponding January 2018 social media posts of the truck rolling down the hill would confuse the issues and potentially mislead the jury into believing that Mr. Milton was somehow responsible for the either the video footage or the social media posts or that the video footage forms the basis for the charges against Mr. Milton for conduct beginning in November 2019.  The admission of the 2017 Phillips Industries Commercial or the January 2018 social media posts likewise would lead to unnecessary "trials within a trial" on otherwise collateral issues (e.g., who was responsible for the 2017 video footage; who was responsible for the Nikola social media postings; to what extent Mr. Milton was involved in either the video footage or the social media posts; why the footage was filmed in the manner it was; and what the purpose of the footage was).  Because the prejudicial impact of the 2017 Phillips Industries Commercial and the January 2018 social media posts far outweighs any nominal probative value, the Court should exclude such evidence, and any references to such evidence, under Rule 403.

**C. Evidence Concerning 2016 Statements Relating to Natural Gas Wells Are Offered for an Improper Purpose, Irrelevant to the Charged Conduct, Unfairly Prejudicial, and Will Confuse the Jury.**

The government intends to offer evidence of statements made on Nikola's website and social media account in that Nikola owned natural gas wells in 2016 as proof that Mr. Milton's allegedly false public statements on unrelated topics in 2020 were not the product of mistake, as well as intent, plan, and knowledge. This evidence is entirely irrelevant to the charged conduct. As the government acknowledges, "[a]t all times relevant to this Indictment, Nikola was a corporation that described itself as a designer and manufacturer of zero-emission *battery-electric and hydrogen-electric vehicles* . . . and *hydrogen station infrastructure*." Indictment ¶ 6. How Nikola planned to fuel its semi-trucks in the early stages of Nikola's development, and what Nikola may have communicated to private investors during 2016, is completely irrelevant to the course of conduct outlined in the Indictment.

Nikola stopped pursuing natural gas vehicles in mid-2016. Nikola's statements relating to natural gas wells has no absolutely bearing on Mr. Milton's intent, plan, knowledge or lack of mistake with respect to the alleged misstatements in the Indictment concerning entirely different topics: (1) Mr. Milton's 2020 statements about the functionality of the Nikola One prototype, (2) the Nikola Badger prototypes (powered by batteries and *hydrogen*), (3) Nikola's *hydrogen* production cost and capabilities, (4) Nikola's technology for its battery and h*ydrogen* vehicles, and (5) the binding nature of Nikola's reservations for its battery and *hydrogen* vehicles. *See* Indictment ¶ 2. The only plausible purpose for the introduction of such evidence is—once again— to suggest improperly that Mr. Milton is a "fraudster."

Any probative value of the evidence is greatly outweighed by the risk of confusing the issues and misleading the jury, as well as undue delay. If the government were to introduce this

evidence, the defense will explain the reasonable basis for, and truth of, Nikola's statements, which will require calling multiple witnesses from across the country.  The defense further will explain CNG and Nikola's mid-2016 pivot from a CNG fueling system to a hydrogen fuel cell, which—once again—will confuse the issues unnecessarily.  *See Stein*, 521 F. Supp. 2d at 270 (S.D.N.Y. 2007) (excluding evidence of uncharged transactions under Rule 403 because of the "risks confusion of the issues and undue delay *in a trial that promise[ed] to be complex and lengthy even in the absence of any Rule 404(b) evidence*," where the government could "not avoid tackling the complicated task of explaining the [uncharged]" (emphasis added)).

### D. Evidence Concerning Mr. Milton's Solar Panel Statements Is Offered for an Improper Purpose, Irrelevant to the Charged Conduct, Unfairly Prejudicial and Will Confuse the Jury.

The government intends to offer ambiguous evidence of "several" statements Mr. Milton made in 2019 regarding solar panels on the roof of Nikola's Phoenix headquarters as proof of other instances in which Mr. Milton allegedly made false public statements regarding unrelated topics.  We believe the government to be referring to a statement that Mr. Milton made on February 21, 2019 during *private* oral remarks to a small group of non-investors at the Sacramento Clean Cities Coalition's "Fuel Cell Vehicles - A Rapidly Emerging Solution for Zero-Emission Transportation" conference for policymakers in California.  There were no video cameras at the private event, but someone in the audience improperly recorded part of Mr. Milton's remarks and later posted an excerpt of the recording to YouTube on April 29, 2019 without Mr. Milton's consent.  The authenticity, legality, and completeness of the recording are all in dispute.

The Indictment does not charge any misstatement relating to solar panels.  As with the statements the government seeks to introduce regarding Nikola's ownership of natural gas wells,

whether Nikola powered its headquarters using solar panels is completely irrelevant to the

charged conduct.  These alleged misstatements about solar panels cannot be introduced to show

"intent . . . plan, knowledge [or] . . .  absence of mistake" under Rule 404(b) and would be used

improperly to suggest propensity.  *See* Section III, *supra*.  As described above, rebutting the

falsity of this alleged uncharged misstatement would result in a separate "trial within the trial"

and create a sideshow untethered to the allegations of the Indictment.  Because the risk of

confusing the issues, misleading the jury and undue delay far outweighs any minimal probative

value of such evidence, the Court should exclude the evidence under Rule 403.

**E.   Evidence Concerning Mr. Milton's and Mr. Milton's Father's Loans to Nikola Is Offered for an Improper Purpose, Is Irrelevant to the Charged Conduct, Is Unfairly Prejudicial, and Will Confuse the Jury.**

The government intends to offer evidence regarding the allegedly high interest rate at

which Mr. Milton and his father lent money to Nikola in the nascent stages of the Company back

in 2015 to prove Mr. Milton's motive to profit improperly from Nikola, his intent in committing

the charged offenses, and the absence of mistake.  These bases are irrelevant, improper, and

highly prejudicial.

The Indictment alleges only that Mr. Milton committed securities and wire fraud by

making misstatements targeted at so-called "retail investors" in an attempt to inflate Nikola's

stock price artificially and presumably to increase the value of his stock.  *See* Indictment ¶¶ 1,

84, 86.  Mr. Milton has not been charged with accounting fraud or improprieties, and the

government does not allege that profiting improperly from Nikola was Mr. Milton's motive to

engage in the scheme.

*Even if* these allegations were true, the high interest rate on loans that Mr. Milton and his

father charged to Nikola is entirely unrelated to Mr. Milton's "intent" and the "lack of mistake"

related to alleged misstatements about Nikola's business and technology.  *See United States v. Ravich*, 421 F.2d 1196, 1204 n. 10 (2d Cir.1970) (Friendly, J.) ("The length of the chain of inferences necessary to connect the evidence with the ultimate fact to be proved necessarily lessens the probative value of the evidence, and may therefore render it more susceptible to exclusion as unduly confusing, prejudicial, or time-consuming.").

Here, the risk of confusing the issues, misleading the jury and undue delay far outweighs any minimal probative value of such evidence (and there is none).  Even assuming the relevance of the information, there has been no prior adjudication that the interest rate that Nikola was charged was fraudulent or inappropriate for an early stage and risky technology company.  To rebut the suggestion that Mr. Milton and his father charged inappropriately high interest rates to Nikola, the defense would need to call multiple witnesses, including an accounting expert, a lending expert, and General Counsel Britton Worthen (who advised both Mr. Milton and the board concerning these transactions).  Again, the introduction of this evidence would "require the paradigmatic 'trial within a trial' that Rule 403 disfavors."  *Beastie Boys v. Monster Energy Co.*, 983 F. Supp. 2d 354, 358 (S.D.N.Y. 2014) (excluding evidence because there had been no prior adjudication as to whether the prior uncharged acts constituted copyright infringement "that might somehow tie [the defendant] to them so as to support a claim of willfulness with regard to the [allegations at issue].").

## CONCLUSION

For the reasons set forth above, Trevor Milton respectfully requests that the Court enter an order precluding the government from introducing at trial or eliciting through testimony any evidence of, or reference to, (i) Mr. Milton's December 2016 statements; (ii) the Phillips Industries Commercial, including the 2017 video footage and Nikola's January 25, 2018

Facebook and Twitter posts; (iii) Mr. Milton's 2016 statements regarding natural gas wells; (iv) Mr. Milton's 2019 statements regarding solar panels and (v) Mr. Milton's and Mr. Milton's father's loans to Nikola.

Dated: June 20, 2022                                        Respectfully submitted,

                                                           /s/ Bradley J. Bondi
                                                           Bradley J. Bondi
                                                           CAHILL GORDON & REINDEL LLP
                                                           1990 K Street NW, Suite 950
                                                           Washington, DC 20006
                                                           (202) 862-8910
                                                           bbondi@cahill.com

                                                           Marc L. Mukasey
                                                           MUKASEY FRENCHMAN LLP
                                                           570 Lexington Avenue, Suite 3500
                                                           New York, NY 10022
                                                           (212) 466-6400
                                                           Marc.Mukasey@mfsllp.com

                                                           *Counsel for Trevor Milton*