UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

───────────────────────────────────── x
                                                    :
UNITED STATES OF AMERICA          :
                                                    :  No. 1:21-cr-00478-ER
            v.                          :
                                                    :
TREVOR MILTON,                      :
                                                    :
                    Defendant.      :
───────────────────────────────────── x

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE IRRELEVANT AND UNFAIRLY PREJUDICIAL EVIDENCE

                                                      Bradley J. Bondi
                                                      CAHILL GORDON & REINDEL LLP
                                                      1990 K Street NW, Suite 950
                                                      Washington, DC 20006
                                                      (202) 862-8910
                                                      bbondi@cahill.com

                                                        Marc L. Mukasey
                                                      MUKASEY FRENCHMAN LLP
                                                      570 Lexington Avenue, Suite 3500
                                                      New York, NY 10022
                                                      (212) 466-6400
                                                      Marc.Mukasey@mfsllp.com

                                                       *Counsel for Trevor Milton*

**TABLE OF CONTENTS**

|  |  | Page |
|---|---|---|
| FACTUAL BACKGROUND | | 1 |
| ARGUMENT | | 3 |
| I. | THE DISPUTED EVIDENCE IS IRRELEVANT. | 3 |
| | A. Mr. Milton's Sale or Voting of Nikola Shares and the Price of Nikola Shares | 3 |
| | B. Mr. Milton's Wealth, Lifestyle and Spending Habits | 5 |
| | C. Impact of the COVID-19 Pandemic on So-Called "Retail Investors" and the Effects of the Alleged Misstatements | 6 |
| II. | THE DISPUTED EVIDENCE IS UNFAIRLY PREJUDICIAL. | 8 |
| | A. Mr. Milton's Sale or Voting of Nikola Shares and the Price of Nikola Shares | 8 |
| | B. Mr. Milton's Wealth, Lifestyle and Spending Habits | 10 |
| | C. Impact of the COVID-19 Pandemic on So-Called "Retail Investors" and the Effects of the Alleged Misstatements | 11 |
| CONCLUSION | | 12 |

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Americas*,
   No. 04 Cv. 10014 (PKL), 2009 WL 3111766 (S.D.N.Y. Sept. 28, 2009) ............................... 10

*Kinsey v. Cendant Corp.*,
   588 F. Supp. 2d 516 (S.D.N.Y. 2008) ................................................................................... 10

*Newmark Realty Capital, Inc. v. BGC Partners, Inc.*,
   No. 16 Cv. 01702 (BLF), 2018 WL 6439133 (N.D. Cal. Dec. 7, 2018) ................................... 8

*Old Chief v. United States*,
   519 U.S. 172 (1997) ................................................................................................................. 8

*United States v. Amuso*,
   21 F.3d 1251 (2d Cir. 1994) ..................................................................................................... 6

*United States v. Ewings*,
   936 F.2d 903 (7th Cir. 1991) .................................................................................................... 5

*United States v. Hatfield*,
   685 F. Supp. 2d 320 (E.D.N.Y. 2010) ..................................................................................... 5

*United States v. Hendricks*,
   921 F.3d 320 (2d Cir. 2019) ..................................................................................................... 7

*United States v. Hitt*,
   981 F.2d 422 (9th Cir. 1992) ............................................................................................ 10, 11

*United States v. Kaplan*,
   490 F.3d 110 (2d Cir. 2007) ..................................................................................................... 3

*United States v. Litvak*,
   889 F.3d 56 (2d Cir. 2018) ....................................................................................................... 7

*United States v. McCallum*,
   584 F.3d 471 (2d Cir. 2009) ................................................................................................ 8, 11

*United States v. Mitchell*,
   172 F.3d 1104 (9th Cir. 1999) .................................................................................................. 5

*United States v. Napout*,
   No. 15 Cr. 252 (PKC), 2017 WL 6375729 (E.D.N.Y. Dec. 12, 2017) ..................................... 3

*United States v. Nill*,
    518 F.2d, 793, 801-02 (5th Cir. 1975) ...................................................................................10

*United States v. Ross*,
    626 F.2d 77 (9th Cir. 1980) ......................................................................................................9

*United States v. Shkreli*,
    No. 15 Cr. 637 (KAM), 2017 WL 3623626 (E.D.N.Y. June 24, 2017) ...................................4

*United States v. Socony-Vacuum Oil Co.*,
    310 U.S. 150 (1940) .............................................................................................................9, 10

*United States v. Son*,
    No. 16 Cr. 75, 2017 WL 462636 (M.D. La. Feb. 3, 2017) .......................................................8

*United States v. Stahl*,
    616 F.2d 30 (2d Cir. 1980) ......................................................................................................10

*United States v. Tavarez*,
    13 Cr. 947 (JGK), 2015 WL 1137550 (S.D.N.Y. Mar. 12, 2015) ............................................6

*United States v. Yoon*,
    128 F.3d 515 (7th Cir. 1997) ....................................................................................................9

**Statutes**

18 U.S.C. § 1343 ..............................................................................................................................2

18 U.S.C. § 1348 ..............................................................................................................................2

17 C.F.R. § 240.10b-5 .....................................................................................................................2

**Other Authorities**

Fed. R. Evid.
    Rule 401 ................................................................................................................................1, 3
    Rule 402 ................................................................................................................................1, 3
    Rule 403 ..........................................................................................................................1, 8, 10

@TrevorsPlanes, Twitter (last visited December 19, 2021),
    https://www.twitter.com/trevorsplanes ...................................................................................3

Ty Kara, *Trevor Milton takes off in his private jet to his private million dollar
    home to Turks and Caicos*, YouTube, (Aug. 3, 2020),
    https://www.youtube.com/watch?v=X5fFlmVra9g ..................................................................2

Defendant Trevor Milton respectfully moves, pursuant to Federal Rules of Evidence 401, 402, 403 and 404(b), to exclude any evidence of, and reference to, the following: (1) Mr. Milton's disposition or voting of Nikola Corporation ("Nikola") shares after the end of his lockup period in December 2020 and the price of Nikola shares after September 21, 2020; (2) Mr. Milton's purported wealth, lifestyle or spending habits; and (3) the impact of the COVID-19 pandemic on so-called "retail investors" who may have faced financial and/or health challenges, and the effects of Mr. Milton's alleged misstatements on those investors (collectively, "Disputed Evidence"). The Disputed Evidence is not relevant to any element of the crimes with which Mr. Milton is charged. *Even if* the Disputed Evidence had minimal relevance (and it does not), the risk of unfair prejudice, confusing the issues, misleading the jury or undue delay substantially outweighs the probative value of any such evidence.

## FACTUAL BACKGROUND

*Mr. Milton's Disposition or Voting of Nikola Shares*

As part of the business combination between VectoIQ and Nikola, Mr. Milton agreed to a six-month lockup of his Nikola shares. *See* VectoIQ, Annual Report (Form 10-K) (March 6, 2020) at 6. Mr. Milton resigned from his position as Executive Chairman of Nikola in September 2020. After the lockup term ended in December 2020, Mr. Milton began selling and otherwise disposing of his Nikola shares. For example, in March 2021, Mr. Milton sold approximately 4 million shares for approximately $56 million; in August 2021, he sold approximately 7.5 million shares for approximately $76.6 million; and in November 2021, he sold approximately 14 million shares for approximately $164 million.[1] To date, Mr. Milton

---

[1] *See* Trevor Milton, Statement of Changes in Beneficial Ownership (Form 4) (Mar. 2, 2021); Trevor Milton, Statement of Changes in Beneficial Ownership (Form 4) (Mar. 31, 2021); Trevor Milton, Statement of Changes in Beneficial Ownership (Form 4) (Aug. 6, 2021); Trevor Milton, Statement of Changes in Beneficial Ownership

continues to own approximately 50 million shares in Nikola, making him Nikola's largest shareholder. Subsequent to September 2020, Mr. Milton has voted his Nikola shares both in accordance with the agreement with Nikola entered into at the time of Mr. Milton's resignation and in accordance with his good faith belief in the best path forward for Nikola.

*The Indictment*

The Indictment charges Mr. Milton with securities fraud in violation of Section 10(b) of the Securities Exchange Act of 1934 and 18 U.S.C. § 1348, and wire fraud in violation of 18 U.S.C. § 1343 based on alleged misrepresentations Mr. Milton made to so-called "retail investors" from November 2019 to September 2020.² Indictment ¶¶ 1, 5. The Indictment alleges that these so-called "retail investors" in Nikola included "investors who had no prior experience in the stock market and had begun trading during the COVID-19 pandemic to replace or supplement lost income or to occupy their time while in lockdown." Indictment ¶ 3. The Indictment further alleges that "some of the retail investors . . . suffered tens and even hundreds of thousands of dollars in losses, including, in certain cases, the loss of their retirement savings or funds that they had borrowed to invest in Nikola," when Nikola's stock price dropped "after certain of [Mr. Milton's] statements were revealed to be false and misleading." *Id*. The Indictment repeatedly references Mr. Milton's compensation and assets. *See*, *e.g.*, *id*. ¶¶ 4, 18–19, 21, 53.³

---

(Form 4) (Aug. 12, 2021); Trevor Milton, Statement of Changes in Beneficial Ownership (Form 4) (Nov. 23, 2021).

² 17 C.F.R. § 240.10b-5 (essentially requiring proof of a material misrepresentation or material omission, with scienter, in connection with the purchase of a security); 18 U.S.C. § 1348 (requiring proof of (i) a scheme to either defraud a person or obtain money or property by fraudulent pretenses, (ii) in connection with a security, (iii) knowingly and with intent to defraud); 18 U.S.C. § 1343 (requiring proof of (i) a scheme to either defraud or obtain money and property by means of fraudulent pretenses; and (ii) executing the scheme by means of transmissions by wire, radio, or television communications).

³ The government has produced in discovery social media documenting Mr. Milton's family vacations. *See* Ty Kara, *Trevor Milton takes off in his private jet to his private million dollar home to Turks and Caicos*, YouTube,

# ARGUMENT

**I.      The Disputed Evidence Is Irrelevant.**

Evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  Fed. R. Evid. 401; *see also United States v. Kaplan*, 490 F.3d 110, 120–21 (2d Cir. 2007).  "Irrelevant evidence is not admissible."  Fed. R. Evid. 402.  "Whether a fact is 'of consequence' is 'framed by the elements of, and cognizable defenses to,' the underlying charges."  *United States v. Napout*, No. 15 Cr. 252 (PKC), 2017 WL 6375729, at *9 (E.D.N.Y. Dec. 12, 2017) (citation omitted).  "Although a fact need not be directly probative of an 'element' of the offense charged, the fact must be 'logically related, either directly or indirectly through an inferential chain of proof, to at least one of the formal elements of the charges made or defenses raised in the case.'"  *Id.* (citations omitted).

**A.      Mr. Milton's Sale or Voting of Nikola Shares and the Price of Nikola Shares**

Any evidence of, or reference to, Mr. Milton's disposition of Nikola stock after his lockup period, Mr. Milton's voting of Nikola stock or the price of Nikola stock after September 21, 2020 is not relevant to the formal elements of the charges against Mr. Milton.  Mr. Milton did not sell Nikola stock until his lockup period expired in December 2020—*after* the time period charged in the Indictment and *after* the government alleges the market learned the purported "truth" about Mr. Milton's alleged misstatements.  *See* Indictment ¶ 80 ("The value of Nikola's stock plummeted after the fact that certain of [Mr. Milton's] statements had been false and misleading was disclosed to the market in or around September 2020.").  Even under the

---

(Aug. 3, 2020), https://www.youtube.com/watch?v=X5fFlmVra9g.  There are also social media accounts devoted exclusively to voyeuristic documentation of Mr. Milton's wealth.  *See* @TrevorsPlanes, Twitter (last visited December 19, 2021), https://www.twitter.com/trevorsplanes.

government's theory of the case, Mr. Milton's post-lockup sale of stock occurred at the "plummeted" market price—and not at a price allegedly inflated by Mr. Milton's misstatements.

The alleged fact pattern of this case represents the mirror inverse of the fact pattern in *United States v. Shkreli*, No. 15 Cr. 637 (KAM), 2017 WL 3623626 (E.D.N.Y. June 24, 2017). The defendant in that case compensated the investors of funds he had founded (and subsequently wound down) with stock in a pharmaceutical company that he also founded named Retrophin. *Id.* at *12–13. This compensation scheme, according to the government, was fraudulent. *Id.* At trial, the defendant wanted to introduce evidence of how Retrophin's stock performed to show lack of bad faith. *Id.* In other words, the defendant wanted to show that investors made money because Retrophin's stock went up, and therefore he acted in good faith by compensating them with the stock in the first place. *Id.* The court granted the government's motion to exclude such evidence because the defendant had no way of knowing whether Retrophin's stock would go up, meaning a jury could not retroactively infer the defendant's state of mind from the stock's later performance. *Id.*

Just as the defendant in *Shkreli* could not have known that Retrophin's stock would go up, Mr. Milton could not have known that Nikola's stock would "plummet" in September 2020 based on supposedly corrective disclosures—especially if the scheme alleged by the government actually existed (which it did not). At that point, Nikola's stock price indisputably was not inflated. Mr. Milton's post-lockup sale of Nikola stock at an uninflated price has no relevance to any possible motivation to inflate Nikola's stock price in the first place. The only thing the government can establish with such evidence is that Mr. Milton became rich by *legal* means after his so-called scheme had ended.

Nikola's stock price after September 21, 2020 also has no relevance to allegations in the Indictment. Mr. Milton resigned from his position as Executive Chairman of Nikola in September 2020. The time period charged in the Indictment ends in September 2020, and the government does not allege that Mr. Milton's statements impacted Nikola's stock price after that time period. The Court should exclude evidence of, and reference to, Mr. Milton's post-lockup sales of Nikola stock and Nikola's stock price after September 21, 2020 as irrelevant.

### B. Mr. Milton's Wealth, Lifestyle and Spending Habits

Any evidence of, or reference to, Mr. Milton's wealth, lifestyle or spending habits is not relevant to the elements of the charges against him. Any evidence of wealth has no bearing on any theoretical participation by Mr. Milton in criminal conduct. *See United States v. Hatfield*, 685 F. Supp. 2d 320, 326 (E.D.N.Y. 2010) ("[T]here is no dispute concerning [the defendant's] 'participation' in profitable stock trades . . . . Thus, . . . the relevant question is not how he acquired the money he used to fund his extravagant lifestyle. Instead, it is whether the stock trades and compensation methods he used to acquire this money were legal. And, to resolve this inquiry, it is irrelevant if [the defendant] spent his fortune on lavish parties, instead of donating it to starving Malawian orphans.").

References to Mr. Milton's wealth, lifestyle or spending habits likewise are not probative—directly or indirectly—of motive. As the Ninth Circuit eloquently stated, "A rich man's greed is as much a motive to steal as a poor man's poverty. . . . [A]lmost everyone, poor or not, has a motive to get more money. And most people, rich or poor, do not steal to get it." *United States v. Mitchell*, 172 F.3d 1104, 1108–09 (9th Cir. 1999). There is no probative value in demonstrating Mr. Milton's wealth, lifestyle, or spending habits because there is no socioeconomic status at which a person suddenly develops a greater incentive to commit securities or wire fraud—which Mr. Milton did not do. *See United States v. Ewings*, 936 F.2d

903, 906 (7th Cir. 1991) ("The government maintains that the evidence established the defendant's motive because it showed that Ewings had an 'appetite' for money. But who doesn't?"). A malleable concept like "motive" cannot be used to admit otherwise irrelevant evidence here.

Indeed, other cases where a defendant's wealth may be relevant only highlight the lack of relevancy in this case. The archetypal case where a defendant's wealth *is* relevant involves a fact pattern where the wealth is sudden and *inexplicable*—and as such, may be probative of the defendant's participation in the charged criminal conduct. *See, e.g.*, *United States v. Amuso*, 21 F.3d 1251, 1263 (2d Cir. 1994) ("[Defendants] reported only modest incomes on their tax returns, and a reasonable jury could have concluded that possession of large amounts of unexplained cash and assets indicated additional illicit sources of income."); *United States v. Tavarez*, 13 Cr. 947 (JGK), 2015 WL 1137550, at *8 (S.D.N.Y. Mar. 12, 2015) ("[I]t is well settled that evidence of large amounts of *unexplained* wealth is relevant to create an inference of illicit gain.") (emphasis added) (internal quotation marks and citation omitted).

The source of Mr. Milton's wealth is widely understood: Mr. Milton, along with many others, earned and subsequently sold Nikola stock. Mr. Milton further does not dispute making the comments specifically quoted in the Indictment; instead, Mr. Milton believes, and contends here, that the statements are true, and that the government has misinterpreted them. The Court should exclude evidence of, and reference to, Mr. Milton's wealth, lifestyle or spending habits as irrelevant.

   **C.**   **Impact of the COVID-19 Pandemic on So-Called "Retail Investors" and the Effects of the Alleged Misstatements**

Any evidence of, or reference to, the impact of the COVID-19 pandemic on so-called "retail investors" and the effects of Mr. Milton's alleged misstatements on those investors is not

relevant to the elements of the charges against Mr. Milton.  The potential financial and/or health challenges faced by so-called "retail investors" as a result of the COVID-19 pandemic that *may* have led them to begin trading stocks does not bear on any consequential fact in this action.  Although each charged offense requires that the government establish that Mr. Milton's statements were material, materiality is measured using a hypothetical *reasonable investor*, not the subjective motivation of any individual investor.  *See, e.g.*, *United States v. Litvak*, 889 F.3d 56, 64 (2d Cir. 2018) (explaining in Section 10(b) context that "[a] misstatement in a securities transaction is material so long as there is a substantial likelihood that a reasonable investor would find the . . . misrepresentation important in making an investment decision.") (internal quotation marks and citation omitted).  In other words, the specific circumstances driving individual retail investors to invest in Nikola have no bearing on the materiality of the alleged misrepresentations—which is an objective, not subjective inquiry—and those circumstances likewise are not relevant to any other element of the alleged offenses.

Also irrelevant is any evidence of, or reference to, the extent or consequences of losses suffered by Nikola investors.  Testimony regarding the impact of a crime on an alleged "victim" is only admissible at trial "if it is relevant to prove an element of the charged offense," and the Second Circuit has specifically cautioned courts to "carefully consider the prejudicial potential of such testimony" when evaluating its admissibility.  *United States v. Hendricks*, 921 F.3d 320, 329 (2d Cir. 2019), *cert. denied*, 140 S. Ct. 870, 205 L. Ed. 2d 502 (2020) (holding that the district court erred in permitting victim testimony regarding the impact the alleged robbery had on them weeks later).  Here, any evidence regarding investors' financial losses and the consequences of those losses is not relevant to prove any element of the charged offenses.  Simply put, the circumstances of individual investors do not affect whether or not Mr. Milton

committed securities or wire fraud. The Court should exclude evidence of the impact on these so-called "retail investors" and the effect of Mr. Milton's alleged misstatements on these investors—including the extent and consequences of any of their financial losses—as irrelevant.

## II.     The Disputed Evidence Is Unfairly Prejudicial.

*Even if* the Disputed Evidence had some minor probative value (and it does not), the dangers of unfair prejudice, confusing the issues, misleading the jury and undue delay substantially outweigh any such probative value. Fed. R. Evid. 403. Evidence is unfairly prejudicial when it has "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Old Chief v. United States*, 519 U.S. 172, 180 (1997). A court will evaluate this issue on a sliding scale. "If the incremental value [of the evidence] is slight, and the possibility of prejudice through misuse by the jury great, the court should exclude the evidence under Rule 403." *United States v. McCallum*, 584 F.3d 471, 477 (2d Cir. 2009).

Courts have regularly found that the danger of unfair prejudice outweighs the probative value of evidence when, for instance, the evidence calls on the jury's "sympathy and compassion" related to tragic circumstances. *See, e.g.*, *Newmark Realty Capital, Inc. v. BGC Partners, Inc.*, No. 16 Cv. 01702 (BLF), 2018 WL 6439133, at *2 (N.D. Cal. Dec. 7, 2018) ("[C]alling on the jury's sympathy and compassion related to 9/11 is likely to be inflammatory, hence significantly prejudicial").

### A.     Mr. Milton's Sale or Voting of Nikola Shares and the Price of Nikola Shares

The actions of a defendant that occur long after the completion of an alleged fraud have little probative value and, if presented to the jury, may lead to unfair prejudice. Indeed, multiple courts have upheld this assumption by excluding even *exculpatory actions* of a defendant after the completion of a crime because such actions are minimally probative of the defendant's state of mind at the time of the offense and may mislead the jury. *See United States v. Son*, No. 16 Cr.

- 8 -

75, 2017 WL 462636, at *8 (M.D. La. Feb. 3, 2017) (collecting cases for the proposition that "evidence of actions taken after misconduct occurred was not admissible to prove intent at the time of the misconduct"); *see also United States v. Yoon*, 128 F.3d 515, 525 (7th Cir. 1997) ("Mrs. Yoon's conduct after the fraud was completed is irrelevant to the issue of whether the evidence was sufficient to show that she knowingly participated in the fraud during its existence, and we do not consider it for such a purpose."); *United States v. Ross*, 626 F.2d 77, 81 (9th Cir. 1980) ("The conduct of defendant in the years subsequent to 1972, 1973 and 1974 was not relevant to the charge that defendant had willfully failed to file tax returns in those three years.").

Here, evidence of Mr. Milton's sales of his Nikola stock or subsequent voting of that stock, and evidence of, or reference to, Nikola's stock price after September 21, 2020—all of which occurred after the time period of the conduct alleged in the Indictment—similarly would be confusing and misleading to the jury. Such evidence would focus not on Mr. Milton's actions and state of mind at the time of the alleged misrepresentations but would instead serve to confuse the jury about the time frame of the charged conduct. The government does not argue that Mr. Milton's alleged misstatements influenced Nikola's stock price outside of the time period of the conduct alleged in the Indictment. The jury may infer that Mr. Milton's alleged scheme extended beyond September 2020, which is both unalleged and factually incorrect, and as a result, convict Mr. Milton based on uncharged conduct. Such evidence also would inflame the jury's class prejudice based on the sheer size and value of Mr. Milton's post-lockup sales. *See United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 239 (1940) ("[A]ppeals to class prejudice are highly improper and cannot be condoned and trial courts should ever be alert to prevent them."). The Court should exclude all evidence of, and reference to, Mr. Milton's sales of his Nikola stock or subsequent voting of that stock, and all evidence of, or reference to,

Nikola's stock price after September 21, 2020 as unfairly prejudicial. *United States v. Hitt*, 981 F.2d 422, 424 (9th Cir. 1992).

B. **Mr. Milton's Wealth, Lifestyle and Spending Habits**

Any evidence of, or reference to, Mr. Milton's wealth, lifestyle or spending habits presents far more than a modest likelihood of misleading the jury. "[A]ppeals to class prejudice are highly improper and cannot be condoned and trial courts should ever be alert to prevent them." *Socony-Vacuum Oil Co.*, 310 U.S. at 239; *see also United States v. Stahl*, 616 F.2d 30, 33 (2d Cir. 1980). Indeed, courts in this district routinely exclude such evidence as being unfairly prejudicial. *See, e.g.*, *Kinsey v. Cendant Corp.*, 588 F. Supp. 2d 516, 518 (S.D.N.Y. 2008) ("[T]he parties are not permitted to argue to the fact finder's potential economic sympathies or prejudices."); *Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Americas*, No. 04 Cv. 10014 (PKL), 2009 WL 3111766, at *6 (S.D.N.Y. Sept. 28, 2009) (explaining that any relevance of bondholders' compensation "is outweighed by its potential bias to the jury under Rule 403").

Instructively, in *United States v. Nill*, the Fifth Circuit reversed a criminal conviction specifically because the court deemed references to the defendant being "financially ambitious and [having] the goal of quickly becoming a millionaire," to be "a personal attack, calculated to appeal to bias on the part of the jury." 518 F.2d, 793, 801-02 (5th Cir. 1975). In *Nill*, the prosecutor specifically asked the defendant whether he had a goal "to become a millionaire before [he was] 40," and whether he was "well under way to becoming a millionaire by the time [he was] 32?" *Id*. Likewise, any attempt here to introduce evidence of, or reference to, Mr. Milton's wealth, lifestyle, or spending habits would constitute a personal attack on Mr. Milton— with the necessary implication that he should be punished simply because he had an ambition to succeed economically and made good on that ambition. The Court should exclude all evidence

of, and reference to, Mr. Milton's wealth, lifestyle, or spending habits as unfairly prejudicial. *Hitt*, 981 F.2d at 424.

  **C. Impact of the COVID-19 Pandemic on So-Called "Retail Investors" and the Effects of the Alleged Misstatements**

Any evidence of, or reference to, the COVID-19 pandemic's impact undoubtedly would appeal to the jury's sympathy and compassion. The pandemic has proven to be the worst public health crisis in more than a century, and the pandemic's devastating consequences have been far reaching. From the loss of loved ones and health emergencies to sudden unemployment, social isolation, and decreased income, virtually everyone—including potential jurors—has been affected by the pandemic. Evidence of individual investors' circumstances during the COVID-19 pandemic would cause jury members to reflect upon their own experiences during these difficult years and to sympathize with the alleged circumstances of those investors. The risk of a such powerful—and personal—response by members of the jury would prejudice Mr. Milton unfairly and distract the jury's focus from the elements of the charged offenses.

Similarly, even if the Court found some marginal probative value in evidence regarding the impact of investors' losses—and the Court should not—evidence about, or reference to, investor losses necessarily would elicit sympathy for those investors and their individual circumstances. The risk of unfair prejudice against Mr. Milton substantially outweighs any such probative value.

The Court should exclude any evidence of, and reference to, the impact of the COVID-19 pandemic or the purported financial impact of Mr. Milton's alleged misstatements on these so-called "retail investors" as unfairly prejudicial. *McCallum*, 584 F.3d at 477.

## CONCLUSION

For the reasons above, Mr. Milton moves the Court to exclude any evidence of, and reference to, the following: (1) Mr. Milton's disposition or voting of Nikola shares after the end of his lockup period in December 2020 and the price of Nikola shares after September 21, 2020; (2) Mr. Milton's purported wealth, lifestyle or spending habits; and (3) the impact of the COVID-19 pandemic on so-called "retail investors" who may have faced financial and/or health challenges, and the effects of Mr. Milton's alleged misstatements on those investors.

Dated: June 20, 2022

Respectfully submitted,

/s/ Bradley J. Bondi

Bradley J. Bondi
CAHILL GORDON & REINDEL LLP
1990 K Street NW, Suite 950
Washington, DC 20006
(202) 862-8910
bbondi@cahill.com

Marc L. Mukasey
MUKASEY FRENCHMAN LLP
570 Lexington Avenue, Suite 3500
New York, NY 10022
(212) 466-6400
Marc.Mukasey@mfsllp.com

*Counsel for Trevor Milton*