**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 1:21-cr-00478-ER |
| TREVOR MILTON, | **ECF Case** |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF THIRD-PARTY MOVANT NIKOLA**
**CORPORATION'S MOTION TO INTERVENE AND FOR A PROTECTIVE ORDER**

Jacquelyn M. Kasulis
Robert W. Allen, P.C.
KIRKLAND & ELLIS, LLP
601 Lexington Avenue
New York, NY 10022
Telephone: +1 212 446 4800
Facsimile: +1 212 446 4900

*Attorneys for Nikola Corporation*

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ................................................................................................................. 2

ARGUMENT ..................................................................................................................... 4

I.     NIKOLA SHOULD BE ALLOWED TO INTERVENE FOR THE LIMITED
       PURPOSE OF SEEKING A PROTECTIVE ORDER. ................................................... 4

II.    THE COURT SHOULD PROHIBIT MILTON FROM ELICITING
      PRIVILEGED TESTIMONY FROM WORTHEN OR ANY OTHER WITNESS. .......... 5

      A.    There Is No Basis to Find a Subject Matter Waiver over Legal Advice
            Provided by Worthen to Other Nikola Employees. ................................................. 5

      B.    Milton's Arguments That Nikola Has Already Waived as to the
            Undisclosed Communications Are Meritless. ........................................................ 10

      C.    There Is No Constitutional Basis to Force Nikola to Waive Privilege as to
            the Communications at Issue. ............................................................................... 12

CONCLUSION ................................................................................................................. 14

**<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**Cases**

*Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc. v. Alcoa S.S. Co.*,
    232 F.R.D. 191 (S.D.N.Y. 2005) ............................................................10

*Arkwright Mut. Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*,
    1994 WL 510043 (S.D.N.Y. Sept. 16, 1994).............................................6

*Barron v. First Pa. Bank*,
    1989 WL 33635 (E.D. Pa. Apr. 5, 1989) ...................................................8

*Bernstein v. Bernstein Litowitz Berger & Grossman LLP*,
    2016 WL 1071107 (S.D.N.Y. Mar. 18, 2016) .........................................14

*Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N. A.*,
    511 U.S. 164 (1994)...................................................................................8

*DatabaseUSA.com, LLC v. Van Gilder*,
    2019 WL 6255084 (D. Neb. Nov. 22, 2019) .............................................6

*Dougherty v. Esperion Therapeutics, Inc.*,
    2020 WL 7021688 (E.D. Mich. Nov. 30, 2020) ........................................6

*Freedman v. Weatherford Int'l Ltd.*,
    2014 WL 3767034 (S.D.N.Y. July 25, 2014) ............................................5

*In re Kidder Peabody Secs. Litig.*,
    168 F.R.D. 459 (S.D.N.Y. 1996) ............................................................10

*In re von Bulow*,
    828 F.2d 94 (2d Cir. 1987).........................................................................6

*Janus Capital Group, Inc. v. First Derivative Traders*,
    131 S. Ct. 2296 (2011)...........................................................................8, 9

*Leviton Mfg. Co., Inc. v. Greenberg Traurig LLP*,
    2010 WL 4983183 (S.D.N.Y. Dec. 6, 2010) ............................................9

*Lorenzo v. SEC*,
    139 S. Ct. 1094 (2019)...........................................................................8, 9

*Neogenix Oncology, Inc. v. Gordon*,
    2015 WL 13735953 (E.D.N.Y. July 31, 2015)......................................9, 12

*Pearlstein v. Blackberry Ltd.*,
   2019 WL 1259382 (S.D.N.Y. Mar. 19, 2019) ........................................................5

*Prudential Def. Sols., Inc. v. Graham*,
   517 F. Supp. 3d 696 (E.D. Mich. 2021) ...............................................................5

*SEC v. Collector's Coffee Inc.*,
   338 F.R.D. 309 (S.D.N.Y. 2021) ..........................................................................6

*Seyler v. T-Sys. N. Am., Inc.*,
   771 F. Supp. 2d 284 (S.D.N.Y. 2011) ...................................................................5

*Stolarik v. New York Times Co.*,
   2019 WL 4565070 (S.D.N.Y. Sept. 20, 2019) ....................................................10

*Swidler & Berlin v. United States*,
   524 U.S. 399 (1998) ............................................................................................13

*United States v. Alessa*,
   2021 WL 4498638 (D. Nev. Sept. 30, 2021) .........................................................8

*United States v. Amodeo*,
   71 F.3d 1044 (2d Cir. 1995) ...............................................................................14

*United States v. Crawford Enterprises, Inc.*,
   735 F.2d 174 (5th Cir. 1984) ................................................................................4

*United States v. Cuthbertson*,
   651 F.2d 189 (3d Cir. 1981) .................................................................................4

*United States v. Davis*,
   131 F.R.D. 391 (S.D.N.Y. 1990) ..........................................................................5

*United States v. Martoma*,
   962 F. Supp. 2d 602 (S.D.N.Y. 2013) ..................................................................4

*United States v. RMI Co.*,
   599 F.2d 1183 (3d Cir. 1979) ...............................................................................4

*United States v. Treacy*,
   2009 WL 812033 (S.D.N.Y. Mar. 24, 2009) ...............................................1, 2, 6

*United States v. Venneri*,
   736 F.2d 995 (4th Cir. 1984) ................................................................................7

*United States v. W.R. Grace*,
   439 F. Supp. 2d 1125 (D. Mont. 2006) ..........................................................12, 13

*United States v. Weisberg*,
   2011 WL 1327689 (E.D.N.Y. Apr. 5, 2011) ...........................................................................13

*United States v. Wells Fargo Bank, N.A.*,
   132 F. Supp. 3d 558 (S.D.N.Y. 2015)...............................................................................12, 13

**Rules**

Fed. R. Crim. P. 17 .........................................................................................................................13

Fed. R. Evid. 502 .....................................................................................................................1, 5, 6

Rule 10b-5.........................................................................................................................................9

**Other Authorities**

Nikola Form 10-K (Feb. 25, 2021) ...................................................................................................2

Third-party movant Nikola Corporation ("Nikola" or the "Company") respectfully submits this memorandum of law in support of its Motion to Intervene and for a Protective Order, and in opposition to Defendant Trevor Milton's ("Milton") Motion in Limine to Allow Testimony Concerning Britton Worthen's Communications Related to Any Statements Allegedly Made by Mr. Milton (Dkt. 115) (the "Motion").  As set forth below, the relief that Milton seeks would violate Nikola's attorney-client privilege and is accordingly improper.  Nikola therefore seeks permission to intervene, and a protective order from this Court prohibiting Milton from knowingly eliciting testimony as to privileged communications.

## PRELIMINARY STATEMENT

Milton has been given all of his electronic communications with Nikola's general counsel about his public statements, and he is authorized, by virtue of a limited privilege waiver, to elicit testimony about those communications at trial.  Despite already having everything of relevance to assert an advice-of-counsel or intent defense, Milton is now asking the Court to expand Nikola's waiver to include not just advice that he received about his public statements, but also advice that Nikola's general counsel gave *other employees* that was *never relayed to Milton* and that he accordingly *did not know about* and *could not have relied on* when speaking to investors.  There is no basis for taking the dramatic and unusual step of forcing Nikola to waive privilege over these additional and irrelevant communications.

Courts in this Circuit will expand a limited privilege waiver only in "unusual situations," and this case plainly does not qualify.  *United States v. Treacy*, 2009 WL 812033, at *1 (S.D.N.Y. Mar. 24, 2009) (citing Advisory Comm. Notes to F.R.E. 502(a)).  Nikola is not seeking to use its waiver as both a sword and shield to create an unfair advantage over an adversary, which is the rationale most typically provided in expanding a waiver.  *See id.*  Nikola is not even a party to this matter, and testimony about privileged advice in communications with other employees would not

help Milton:  it would be irrelevant to any *mens rea* or advice-of-counsel defense that Milton may seek to advance and would therefore be inadmissible at trial.  Simply put, Milton cannot have relied on advice that he did not receive.  For this reason and others described below, the Court should enter a protective order prohibiting Milton from examining Nikola's general counsel, or any other witness, as to the privileged communications at issue.

## BACKGROUND

In late 2020, Nikola conducted an internal investigation in response to allegations raised in a short seller report and ultimately concluded that Milton had made certain misstatements regarding the Company's products and technology.  Those conclusions were detailed in contemporaneous SEC filings.  (*See* Nikola Corp. Annual Report Form 10-K (Feb. 25, 2021) (describing statements that were "inaccurate, in whole or in part, when made")).

Milton was separated from Nikola on September 20, 2020, before the Company's investigation was complete.  As part of his separation agreement, the Company provided Milton with his entire email inbox, which included Milton's communications with Britton Worthen ("Worthen"), Nikola's general counsel, and other documentary materials as well.

After completing its review, Nikola continued to cooperate in ongoing investigations by the Department of Justice (the "DOJ") and the Securities and Exchange Commission (the "SEC"). During the course of these investigations, Nikola was informed by the DOJ that Milton had indicated that he intended to assert an advice-of-counsel defense.  (*See* Dkt. 116-4.)  In order to evaluate this defense, the DOJ asked Nikola to "waive the attorney-client privilege or the application of the attorney work product doctrine with respect to certain communications between Trevor Milton and Nikola counsel, including Britton Worthen."  (*Id.* at 1.)  Notably, the DOJ did not ask Nikola to waive privilege as to communications between Worthen and other Nikola employees besides Milton, presumably because any such communications would have been

irrelevant to Milton's asserted advice-of-counsel defense.  Milton could not have been acting in reliance on advice he never received and did not know Worthen ever provided.

Nikola ultimately agreed to the limited waiver the DOJ requested.[1]  This waiver covered any advice regarding Milton's public statements that Worthen provided to Milton, or that another employee conveyed to Milton—in other words, any legal advice upon which Milton could have relied.  As described in a stipulation with the DOJ (the "Stipulation"), Nikola agreed:

> (1) to produce documents that reflect or contain communications that Trevor Milton sent or received, prior to September 10, 2020, that request or contain legal advice from Britton Worthen concerning investor and/or public communications (in whatever form including through any form of media) by Trevor Milton or Nikola (the "Documents"), and (2) to permit Britton Worthen to discuss with the Government the substance of the Documents[.]

(Dkt. 116-1 at 2.)  Nikola did not, however, waive privilege over advice given to other Nikola employees, whether related to Milton's public statements or any other subject.[2]

Following the entry of the Stipulation, Nikola produced additional documents to the Government and allowed Worthen to answer questions regarding advice he provided in a follow-up interview.  This evidence demonstrated that Milton generally did not seek advice on public statements, let alone in advance of such statements being made; and, when he did, he was told to restrain his social media usage—advice that he flatly ignored.

On June 20, 2022, Milton filed the instant motion.  Although it is uncontested that Milton can examine Worthen about advice that Worthen gave to Milton regarding Milton's public

---

[1]   The waiver applied to communications involving only Worthen since he was the only lawyer at Nikola who advised Milton on public statements.

[2]   The Stipulation specifically provided that the waiver was intended to cover only what was provided and nothing further.  (*See* Dkt. 116-1 at 2–3 ("By entering into this Disclosure Stipulation . . . Nikola does not intend to waive any attorney-client privilege, work-product protection or other applicable privilege with respect to the subject matter that the Documents concern, and the Government will not argue that such subject-matter waiver has occurred.").)

statements, Milton now asks the Court to allow him to examine Worthen on advice given to *other* employees that Milton *never knew about*. (*See* Motion at 1.)  Milton argues that Nikola's limited waiver should be extended to these communications; or, in the alternative, that he has a constitutional right to cross-examine Worthen "notwithstanding any assertion of privilege." *Id.* Because this request implicates Nikola's privilege, Nikola respectfully submits that it should be allowed to intervene, and that the Court should prohibit Milton from seeking to elicit the testimony in question, which is privileged and irrelevant to Milton's defense.

## ARGUMENT

## I.   NIKOLA SHOULD BE ALLOWED TO INTERVENE FOR THE LIMITED PURPOSE OF SEEKING A PROTECTIVE ORDER.

As an initial matter, Nikola should be permitted to intervene in this matter for the limited purpose of opposing Milton's motion and seeking a related protective order.  "[I]t is settled law that persons affected by the disclosure of allegedly privileged materials may intervene in pending criminal proceedings." *United States v. Martoma*, 962 F. Supp. 2d 602, 605 (S.D.N.Y. 2013) (quoting *United States v. RMI Co.*, 599 F.2d 1183, 1186 (3d Cir. 1979)).  "A third-party's reasonable assertion of privilege with respect to documents to be produced in a criminal action is sufficient grounds on which to grant the third-party's motion to intervene and to consider the merits of that party's application." *Id.* at 605–06; *see also United States v. Cuthbertson*, 651 F.2d 189, 193 (3d Cir. 1981) ("[A] third party may intervene in a criminal trial to challenge production of subpoenaed documents on the ground of privilege and may appeal from an order granting less protection than that claimed."); *United States v. Crawford Enterprises, Inc.*, 735 F.2d 174, 176 (5th Cir. 1984) ("As a general proposition, persons or corporations which are adversely affected by the disclosure of privileged material have the right to intervene, assuming standing, in pending criminal proceedings to seek protective orders.").

## II.   THE COURT SHOULD PROHIBIT MILTON FROM ELICITING PRIVILEGED TESTIMONY FROM WORTHEN OR ANY OTHER WITNESS.

### A.   There Is No Basis to Find a Subject Matter Waiver over Legal Advice Provided by Worthen to Other Nikola Employees.

Federal Rule of Evidence 502(a) provides that a voluntary disclosure of privileged information extends to undisclosed communications only if three conditions are satisfied: "(1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered together." "Under that rule, waiver is generally limited to the precise communication or information disclosed to the governmental agency." *Pearlstein v. Blackberry Ltd.*, 2019 WL 1259382, at *8 (S.D.N.Y. Mar. 19, 2019). A waiver will only extend to undisclosed content in "unusual" circumstances "limited to situations in which a party intentionally puts protected information into the litigation in a selective, misleading and unfair manner." Advisory Comm. Notes to F.R.E. 502; *see also Seyler v. T-Sys. N. Am., Inc.*, 771 F. Supp. 2d 284, 288 (S.D.N.Y. 2011) ("[The] Advisory Committee Note makes clear the narrow scope of this intentional waiver provision"). Given the importance of the attorney-client privilege, "the burden of breaching the privilege . . . is particularly high." *United States v. Davis*, 131 F.R.D. 391, 398 (S.D.N.Y. 1990); *see also Freedman v. Weatherford Int'l Ltd.*, 2014 WL 3767034, at *3 (S.D.N.Y. July 25, 2014) (noting that subject-matter waivers "[are] reserved for the rare case").

Here, Milton cannot satisfy his burden of proving Rule 502(a)'s third requirement—that the disclosed and undisclosed communications "ought in fairness to be considered together."[3] The

---

[3]   Milton's Motion should also be denied because it seeks to extend Nikola's waiver as to one subject matter (advice given to Milton) to a different one (advice given to other employees). These two areas do not qualify as the "same subject matter" under Rule 502(a)(2), and, as a result, a waiver in connection with one does not automatically extend to the other. *See Prudential Def. Sols., Inc. v. Graham*, 517 F. Supp. 3d 696, 703 (E.D. Mich. 2021) (noting that "courts have generally held that the 'same subject matter' is to be viewed narrowly") (quoting

Government requested that Nikola waive privilege over communications that might be relevant to an advice-of-counsel defense, and Nikola agreed to that request.  Nikola did not formulate its waiver to try to seek any kind of advantage over Milton, and, indeed, is not even a party to this litigation.  *See Treacy*, 2009 WL 812033, at *2 (holding that concerns over "using the privilege as both a 'sword and a shield' [are] . . . not implicated where . . . the holder of the privilege *is not a party to the action* and seeks no advantage against its adversary") (citing *In re von Bulow*, 828 F.2d 94, 101 (2d Cir. 1987)) (emphasis added); *SEC v. Collector's Coffee Inc.*, 338 F.R.D. 309, 323 (S.D.N.Y. 2021) (declining to find waiver because "Holt has not herself tried to use the privilege as a sword inasmuch as she seeks no relief in this litigation *as she is not even a party*") (emphasis added).  Nor is there any reason to believe that the Government attempted to secure an unfair advantage over Milton by entering into the waiver with Nikola, to the extent the Government's motivations are even relevant.

Waiver is also inappropriate when a party has "not demonstrated that the content of legal advice received . . . is directly relevant" to its claims or defenses.  *Arkwright Mut. Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 1994 WL 510043, at *13 (S.D.N.Y. Sept. 16, 1994).  Even if privileged communications "may well contain some factual information that would be useful," that is not enough; the party seeking the waiver must show "that such information is not available through [other means]."  *Id.*; *see also Collector's Coffee Inc.*, 338 F.R.D. at 323 (noting that a party must "show[] that they will suffer [] prejudice" in order for a court to find a waiver as to undisclosed communications under Rule 502(a)).  Milton, however, cannot make this showing for the straightforward reason that the undisclosed communications he seeks are plainly irrelevant to

---

*Dougherty v. Esperion Therapeutics, Inc.*, 2020 WL 7021688, at *4 (E.D. Mich. Nov. 30, 2020)); *DatabaseUSA.com, LLC v. Van Gilder*, 2019 WL 6255084, at *2 (D. Neb. Nov. 22, 2019) ("[W]hat constitutes the 'same subject matter' is narrowly construed.").

6

any possible defense he might advance at trial.  Milton never knew about the advice at issue, and he cannot rely on advice he never received to prove good faith.

Indeed, Milton's contorted explanations for how advice given to other individuals might be relevant simply underscore the shortfalls in his position.  Milton argues, for example, that Worthen's "review and explicit approval" of his statements proves that they "were [not] false because they were checked for accuracy." (Motion at 7.)  This argument has no merit for numerous reasons, not least of which is the fact that Milton offers no support whatsoever for his false assertion that Worthen "approv[ed]" his communications.  Indeed, despite having been provided with a copy of his email inbox as part of his separation, Milton has not yet cited a single document showing that Worthen—or anyone other lawyer—"explicitly approved" his public statements.  In any event, legal advice given to other employees cannot establish the truth or falsity of a statement. Truth or falsity can only be established by witnesses with firsthand knowledge of the underlying facts of Nikola's business.  To the extent Worthen has such knowledge, it likely would not be privileged and can be explored at trial.  But that does not give Milton license to ask about privileged advice that Worthen provided to other employees.

Milton next claims that the communications at issue will show that he lacked "the requisite *mens rea* because he relied on others to 'review and approve'" his public statements.  (*Id.*)  This argument again falls short.  As discussed, Milton can presumably introduce evidence of his own expectation that others would review his public statements at trial.  But there is a difference between the fact that there is a process for reviews and the substance of what was conveyed during those reviews: the latter is only relevant if Milton knew about it.  Indeed, there are numerous examples in which courts have found evidence irrelevant to intent where the defendant was unaware of it at the relevant time. *See, e.g.*, *United States v. Venneri*, 736 F.2d 995, 997 (4th Cir.

1984) ("Since defendant did not know of Taylor's other corrupt practices at the time of the transaction in this case, it can hardly serve to negate his intent."); *United States v. Alessa*, 2021 WL 4498638, at *4 (D. Nev. Sept. 30, 2021) ("[T]he Court finds that such a conflict is irrelevant to Alessa's state of mind or his good faith defense if he was not aware of such conflict."); *Barron v. First Pa. Bank*, 1989 WL 33635, at *3 (E.D. Pa. Apr. 5, 1989) (finding that evidence was "simply irrelevant" because "[w]hat is important is what Hall knew at the time of plaintiff's firing" and not afterwards), *aff'd*, 887 F.2d 260 (3d Cir. 1989).

Finally, Milton claims that the communications at issue "negate any finding" that he "was the 'maker' of the statement under *Janus Capital Group, Inc. v. First Derivative Traders*, 131 S. Ct. 2296 (2011)" or was the "disseminator of the statements under *Lorenzo v. SEC*, 139 S. Ct. 1094 (2019)." (Motion at 7.)  These are both civil cases and do not apply here.  Central to *Janus*'s conclusion, for example, was the fact that "Rule 10b-5's private right of action does not include suits against aiders and abettors." *Janus Cap. Grp., Inc.*, 131 S. Ct. at 2303 (citing *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N. A.*, 511 U.S. 164 (1994)).  Actions against aiders and abettors, however, are obviously allowed when brought by the Government instead of a private party.  *See, e.g., id* at 2302. ("Such suits—against entities that contribute 'substantial assistance' to the making of a statement but do not actually make it—may be brought by the SEC, but not by private parties.") (citations omitted).

In any event, the two in inapposite.  None of the communications Milton seeks, for example, could ever change the fact that he is the "maker" of the alleged misstatements under *Janus*.  Milton claims that he was not the "maker" of such statements under *Janus* "because the statements were reviewed, approved, and released by Nikola." (Motion at 7.)  But even if Nikola had "reviewed, approved, and released" Milton's statements, that would not negate any finding

8

that Milton himself was the "maker" of his own statements.  In *Janus*, the Supreme Court made

clear that "one 'makes' a statement by stating it," and "[f]or purposes of Rule 10b-5, the maker of

a statement is the person or entity with ultimate authority over the statement, including its content

and whether and how to communicate it."  131 S. Ct. at 2302.  Milton was obviously the "maker"

of things he personally said during interviews and posted on social media; even if others at Nikola

"reviewed" or "approved" those statements, or "suggested what to say" beforehand, Milton had

"ultimate authority over the statement, including its contents and whether and how to communicate

it."  *See id.*  Milton was not some low-level employee; he was Nikola's founder and most senior

executive at the time.

     *Lorenzo*, moreover, has no bearing whatsoever on Milton's liability for his own alleged

misstatements.  That case makes clear that, even if one did not "make" an alleged misstatement

under Rule 10b-5(b), he may still be subject to scheme liability under Rule 10b-5(a) and (c) for

knowingly disseminating someone else's false or misleading statements.  *Id.* at 1101–02.

     At bottom, fairness does not require a waiver under these circumstances.  Waiver is only

appropriate when the evidence at issue is "indispensable" to a defense.  *Neogenix Oncology, Inc.*

*v. Gordon*, 2015 WL 13735953, at \*12 (E.D.N.Y. July 31, 2015); *see also Leviton Mfg. Co., Inc.*

*v. Greenberg Traurig LLP*, 2010 WL 4983183, at \*4 (S.D.N.Y. Dec. 6, 2010) (finding that a

subject-matter waiver occurs "where rather than being merely relevant, the privileged documents

are indispensable to a party's claims or defenses.").  It is inappropriate where, as here, the party

seeking a waiver "can pursue other areas of discovery to establish their defense."  *Neogenix*

*Oncology*, 2015 WL 13735953, at \*13; *see also Leviton,* 2010 WL 4983183, at \*6 ("Simply

because those communications might be useful . . . does not mean that the attorney-client privilege

has been impliedly waived.") (citation omitted).  Milton simply cannot show that the privileged

testimony he seeks to elicit from Worthen is admissible and relevant, let alone sufficiently important to his defense that the Court should forcibly waive privilege.[4]

### B.    Milton's Arguments That Nikola Has Already Waived as to the Undisclosed Communications Are Meritless.

Milton also argues in his Motion that Nikola has already and "repeatedly" waived privilege over the communications at issue.  (Motion at 8.)  Nikola, however, has never waived privilege over the communications Milton seeks, nor has it produced such communications or described them to third parties.  Milton's arguments to the contrary are flatly wrong.

First, Milton argues that Nikola waived privilege in its "November 12, 2020 presentation to the government," during which, according to Milton, Nikola "disclosed General Counsel Worthen's legal advice to Mr. Milton regarding Mr. Milton's public statements."  (*Id.*)  Nikola, however, did not disclose any privileged information in that presentation, and nothing Milton says suggests otherwise.  The best Milton offers is a quote from Worthen that a particular technology

---

[4]    None of the other cases Milton cites, moreover, prove otherwise.  In *Stolarik v. New York Times Co.*, the defendants disclosed some favorable privileged communications to support an advice-of-counsel defense yet sought to withhold other, presumably unfavorable, communications that did "not appear to be materially different in any way."  2019 WL 4565070, at *2 (S.D.N.Y. Sept. 20, 2019).  This was an instance of "[t]he quintessential example [of] the defendant who asserts an advice-of-counsel defense and is thereby deemed to have waived his privilege with respect to the advice that he received."  *In re Kidder Peabody Secs. Litig.*, 168 F.R.D. 459, 470 (S.D.N.Y. 1996).  That holding does not apply to the circumstances here.  Similarly, Milton cites *American S.S.* for the proposition that it would be "severely prejudicial" to deny him access to the privileged testimony he seeks.  (Motion at 7.)  That case, however, also features *a party to a case* seeking to withhold communications that the party itself introduced and used in depositions in the same case.  *Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc. v. Alcoa S.S. Co.*, 232 F.R.D. 191 (S.D.N.Y. 2005).  That has no bearing on a situation such as this, where a defendant is seeking a non-party's privileged communications that do not include the defendant.  There can be no prejudice to Milton in denying him access to privileged communications that do not involve him because, as discussed, Milton could not have acted in reliance on advice he never received.

was not actually "commercializable" at the time Milton said it was (*id.*), but that is plainly a factual statement and therefore not privileged. In any event, it does not matter if Nikola, as Milton alleges, "disclosed [] Worthen's legal advice *to Mr. Milton* regarding Mr. Milton's public statements" during that presentation. (*Id.*) (emphasis added). After all, Nikola has already waived privilege over legal advice to Milton regarding his public statements. Those communications are not at issue; the question here is whether Nikola has waived privilege as to legal advice provided by Worthen to *other employees* that was never conveyed to Milton.

Milton next asserts that Nikola decided "not to withhold anything for privilege from the SEC," pointing to an offhand reference in a memorandum by Nikola's auditor. (*Id.*) This argument, however, is plainly wrong and misleading. The reference in the auditor memo to "nothing [] be[ing] withheld for privilege" referred to a single presentation. (Dkt. 116-18 at 4.) It is true that nothing from that particular presentation was withheld for privilege, because there was nothing privileged in that presentation in the first place.

Finally, Milton argues that Nikola waived privilege over the communications he seeks because Nikola "allowed its employees to discuss, among other topics, the review and approval process of Mr. Milton's public statements." (Motion at 8.) Describing "[t]he review and approval process" for public statements, however, does not disclose any privileged information and accordingly cannot cause a waiver. The fact of a corporate process is not privileged, nor is information as to whether that particular process was followed. *See, e.g.*, *Neogenix Oncology,* 2015 WL 13735953, at *10 ("If the disclosure does not reveal the substance of the communication, a court will not find a subject-matter waiver."). Nikola does not object to Milton introducing evidence of Nikola's corporate processes or his expectations regarding the same.

C. **There Is No Constitutional Basis to Force Nikola to Waive Privilege as to the Communications at Issue.**

As a final argument, Milton argues that he is "entitled under the Fifth and Sixth Amendments" to elicit testimony on the communications at issue "[e]ven if Nikola had a valid claim of privilege." (Motion at 9.)  In so arguing, Milton asks the Court to adopt a balancing test that a Montana court used to find waiver in *United States v. W.R. Grace*, 439 F. Supp. 2d 1125 (D. Mont. 2006).  This Circuit, however, has not adopted the *W.R. Grace* test, and this case is not the proper mechanism to do so:  Milton's constitutional argument can be rejected under any standard for the straightforward reason, discussed above, that the information he seeks is unnecessary and irrelevant to his defense.  There is accordingly no basis, constitutional or otherwise, to compel a privilege waiver under these circumstances.

To begin, this Circuit has not adopted the *W.R. Grace* test, and another court in the Southern District has expressly stated that "there are reasons to doubt that *Grace* was correctly decided." *United States v. Wells Fargo Bank, N.A.*, 132 F. Supp. 3d 558, 565 (S.D.N.Y. 2015).  As that Court explained, "it is hard to square the *Grace* Court's holding with the Supreme Court's emphatic 'reject[ion]' of the 'use of a balancing test in defining the contours of the [attorney-client] privilege.'"  *Id.* (quoting *Swidler & Berlin v. United States*, 524 U.S. 399, 408–09 (1998)).[5]  The only case that Milton cites as having applied *W.R. Grace* in this Circuit is *United States v. Weisberg*, 2011 WL 1327689 (E.D.N.Y. Apr. 5, 2011).  That case, however, did not adopt the *W.R. Grace* test and is irrelevant.  In deciding whether to quash a Rule 17(c) subpoena, *Weisberg* cited *W.R. Grace* as an example of how "other courts" outside of the Second Circuit have addressed

---

[5]   *Wells Fargo* was a civil rather than criminal case and rejected the waiver argument for additional reasons as a result.  *See* 132 F. Supp. 3d at 565.  The court's criticism of *W.R. Grace*'s reasoning, however, is unaffected by the fact that the matter was civil.

conflicts between the attorney-client privilege and a defendant's right to present a defense. *Id.* at *5. But the Court ultimately found that the evidence in question was either not privileged or improperly requested under the standards for a Rule 17(c) subpoena; it therefore had no need to address the constitutional issue. *See id.* at *6–8.

*Weisberg*, moreover, undermines Milton's position in another way: as that case explains, *W.R. Grace* applied to situations "where that material is *already in the possession* of the criminal defendant." *Id.* at *5 (emphasis added). Milton, however, does not have possession of the undisclosed communications about which he wants to examine Worthen.

Even applying the standard in *W.R. Grace*, however, Milton's request should be denied. Indeed, the facts in *W.R. Grace* underscore the difference with the circumstances here. In *W.R. Grace*, the defendants sought to use privileged documents "to establish a defense based on the advice of counsel." 439 F. Supp. 2d at 1142. Here, however, the testimony that Milton wants to elicit is, for reasons already discussed, irrelevant to any such defense. Unlike the evidence at issue in *W.R. Grace*, the privileged testimony that Milton seeks to elicit at trial is plainly *not* "of such probative and exculpatory value as to compel admission of the evidence over the company's objection as the attorney-client privilege holder." *Id.* Milton's references to the Government's June 10, 2020 letter to Nikola, in which the Government said that the privileged communications it sought would be "'crucial to understanding the factual background' and may support 'an advice-of-counsel defense'" are unhelpful for the obvious reason that those communications—between Worthen and Milton only—are not at issue. (*See* Motion at 10–11 (quoting the Letter from Matthew Podolsky to Kirkland & Ellis LLP (June 10, 2021)).)

Finally, Milton argues that Nikola has a "diminished expectation of privacy," which he argues weighs in favor of piercing the attorney-client privilege. (*Id.* at 11.) But neither case Milton

cites for support involves the attorney-client privilege.  *See United States v. Amodeo*, 71 F.3d 1044, 1052 (2d Cir. 1995) (noting that the attorney-client privilege did not apply and had not been asserted, while nevertheless reversing the lower court's decision to unseal a confidential document and ordering the court to reconsider unsealing another); *Bernstein v. Bernstein Litowitz Berger & Grossman LLP*, 2016 WL 1071107, at *10 (S.D.N.Y. Mar. 18, 2016) (stating that "Defendants concede that the [relevant material] does not reveal information 'protected by the attorney-client privilege,'" and noting that the attorney-client privilege is "more venerable" and "sacrosanct" than a more general privacy interest), *aff'd*, 814 F.3d 132 (2d Cir. 2016).  Milton also cites no cases finding that the attorney-client or work product privileges are somehow weaker because the holder of the privilege is a corporation as opposed to an individual.

## CONCLUSION

For the reasons set forth above, the Court should permit Nikola to intervene in this matter and issue a protective order prohibiting Milton from examining Worthen and other witnesses as to the privileged communications at issue in his motion.

Dated:  New York, New York
      July 11, 2022

/s/ Robert W. Allen, P.C.
Jacquelyn M. Kasulis
Robert W. Allen, P.C.
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone: +1 212 446 4800
Facsimile: +1 212 446 4900

*Attorneys for Nikola Corporation*