# MUKASEY FRENCHMAN

570 Lexington Ave, Suite 3500
New York, NY 10022

Marc L. Mukasey
Partner
212-466-6406
Marc.mukasey@mfsllp.com

July 11, 2022

**VIA ECF**
The Honorable Edgardo Ramos
United States District Judge
United States Courthouse
40 Foley Square
New York, New York 10007

    Re:    ***United States v. Milton***,
               **S1 21 Cr. 478 (ER)**

Dear Judge Ramos:

    Defendant Trevor Milton respectfully submits this Opposition to the Government's Proposed Examination of Prospective Jurors (ECF 107) ("government's proposed *voir dire*").

    The right of a defendant in a criminal prosecution to a trial "by an impartial jury" is expressly guaranteed by the Sixth Amendment to the Constitution. U.S. Const. amend VI. "[T]rying an accused before a jury that is actually biased" not only transgresses the express guarantee of the Sixth Amendment but also "violates even the most minimal standards of due process." *United States v. Nelson*, 277 F.3d 164, 206 (2d Cir.), *cert. denied*, 537 U.S. 835 (2002); see, e.g., *In re Murchison*, 349 U.S. 133, 136 (1955) ("A fair trial in a fair tribunal is a basic requirement of due process.").

    *Voir dire* is an important method of protecting a defendant's right to trial by an impartial jury. See *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 554 (1984). An impartial jury is one in which all of its members, not just most of them, are free of interest and bias. *See, e.g., United States v. Martinez-Salazar,* 528 U.S. 304, 316 (2000) (an error "in the seating of any juror who should have been dismissed for cause . . . would require reversal"); *Parker v. Gladden,* 385 U.S. 363, 366 (1966) (per curiam) (despite state law authorizing conviction by an affirmative vote of 10 jurors, a new trial was required where at least two members of the 12–person jury were exposed to unauthorized communications; "petitioner was entitled to be tried by 12, not 9 or even 10, impartial and unprejudiced jurors").

    The Second Circuit has held that the defendant deserves "'a full and fair opportunity to expose bias or prejudice on the part of venire[persons].'" *United States v. Barnes*, 604 F.2d 121, 139 (2d Cir. 1979) (quoting *United States v. Robin*son, 475 F.2d 376, 380-81 (D.C. Cir.

1973)), *cert. denied*, 446 U.S. 907 (1980). "[T]here must be sufficient information elicited on voir dire to permit a defendant to intelligently exercise not only his challenges for cause, but also his peremptory challenges, the right to which has been specifically acknowledged by the Supreme Court. . ." *Id*. at 142.

In accord with these principles, the defendant respectfully submits that the government's proposed *voir dire* falls short in the respects set forth below.

1. <u>Presumption of Innocence/Burden of Proof</u>

The government's proposed *voir dire* neglects to mention that the defendant is presumed innocent. In addition, it fails to clearly state that the burden of proof rests at all times with the government; indeed, it does not use the term "burden of proof" at all. Relatedly, the government's proposed *voir dire* omits inquiry into whether the prospective jurors can follow the Court's directions on these two bedrock principles.

2. <u>Familiarity with Mr. Milton</u>

Question 1 of the government's proposed *voir dire* asks whether any of the prospective jurors has "personal knowledge of the *charges*" or has "read or heard anything *about this case*." (emphasis added). Question 14 asks if any jurors "know" Mr. Milton or have had any dealings "directly or indirectly" with him. These inquiries are insufficient to assess juror familiarity with, or attitudes about, Mr. Milton.

The public attention focused on Mr. Milton has been pervasive. Mr. Milton's name has been spread far and wide on social media, traditional media, YouTube, and countless other platforms. According to Google, on or about July 6, 2022, a routine search of the name "Trevor Milton" yielded 5.89 million results. Indeed, the government's initial indictment notes that "[a] video of MILTON[]. . . was posted on Nikola's YouTube channel, and the video was viewed over 1,450,000 times by in or about September 2020. ECF 001, ¶32. And we understand that a Wall Street Journal reporter is working on a podcast about Mr. Milton and Nikola to coincide with the start of the trial.

The government's *voir dire* questions – which are limited to prospective jurors with "personal knowledge of the *charges*" (emphasis added) or those who know Mr. Milton or have had dealings with Mr. Milton or his associates – are far too narrow to test juror familiarity with the defendant. Jurors who have heard of Mr. Milton, but are unfamiliar with the charges and never dealt with him or his associates, would escape scrutiny.

To close this gap, the defense respectfully refers the Court to question 2(c) of the Defendant's Proposed *Voir Dire* of Prospective Jurors: "Have any of you seen or heard any news stories or internet postings about Mr. Milton *or otherwise know about him*?" (emphasis added). That broader formulation will assist the parties in identifying potential jurors who may have a material bias that would impact their service in this case.

3. <u>Familiarity with Nikola</u>

The government's proposed *voir dire* is without a question as to whether any prospective juror is familiar generally with Nikola, the company founded by Mr. Milton.

4. Characterization of Nikola as a "Start-Up"

Question 4 of the government's proposed *voir dire* refers to Nikola as a company that the defendant founded "as a start-up company in or about 2015." The Superseding Indictment charges the defendant with crimes between November 2019 and March 2020. The characterization of Nikola as a "start-up" that was founded in 2015 is therefore curious.

The term "start-up" is not only temporally misplaced; it is prejudicial as used in the government's proposed *voir dire*. As set forth more fully below, the term "start-up" has lately become synonymous in the popular press with scandal and high-profile criminal investigations and prosecutions. *See, e.g.,* Ash Jurberg, *5 Startup Scandals That Show Even The Smartest Investors Get Scammed*, ENTREPRENEUR'S HANDBOOK (July 16, 2021) https://entrepreneurshandbook.co/5-startup-scandals-that-show-even-the-smartest-investors-get-scammed-466897cd2244; Ivan de Luce, *These fraudulent founders were once hailed as 'the next Steve Jobs' of their now-disgraced startups*, THE BUSINESS OF BUSINESS (Nov. 10, 2020) https://www.businessofbusiness.com/articles/startup-founders-fraud-theranos-wework-nikola/. As the *New York Times* summarized on July 7, 2022:

> Since Theranos collapsed in 2018, the company has become a form of shorthand for business grifters, and the world has developed a voracious appetite for messy start-up rise-and-fall stories, such as WeWork's disastrous first attempt to go public and the trickery of Ozy Media.

Erin Griffith, *No. 2 Theranos Executive Found Guilty of 12 Counts of Fraud*, The New York Times, July 7, 2022.

The term "start-up" is improper in this *voir dire*.

5. Prospective Jurors' Investment Experience

Questions 8-11 of the government's proposed *voir dire* are unnecessarily negative in tone – and repetitively so. Rather than asking potential jurors about their investment experiences, the government's questions proceed directly to investment "losses," discount innocuous explanations for the loss of investment funds, and repeat the word "fraud" no less than eight times. The defense submits that a more appropriate and balanced question would ask whether the juror or a friend or relative has been the victim of investment fraud, but also (1) ascertain the juror's investment experiences, including with stock options, (2) incorporate the concept that all investments contain a degree of risk, and (3) recognize that investment losses may result from normal market forces or poor, but innocent decision-making rather than fraud.

6. Law Firm Names

Government Question 16 mentions the name of the defense attorneys' law firms. Mr. Milton defers to the Court as to whether or not it is necessary or appropriate to identify that he is represented by private counsel.

7. Prospective Jurors' Use of Social Media, Podcasts and Television

Counts One, Two and Three of the Superseding Indictment revolve around Mr. Milton's use of social media. The initial Indictment – which remains the government's roadmap – alleged that Mr. Milton "targeted individual, non-professional investors – so-called 'retail investors' – by making false and misleading statements directly to the investing public through social media and television, print, and podcast interviews." ECF 001, ¶ 1. Accordingly, the government's Exhibit List is replete with Mr. Milton's statements on Twitter, in podcasts, in various interview forums and on other social and traditional media platforms. Although government Questions 42(l) and 42(m) ask about potential jurors' newspaper reading and television viewing habits, the government's proposed *voir dire* omits inquiry concerning prospective jurors' opinions about, and use of, newer forms of communication social media and podcasts.

At least some inquiry into jurors' use of social media is necessary given its centrality to the government's case, which includes a proposed expert on the topic. Social media is ubiquitous and research suggests that most of the prospective jurors will use it in some form or another. According to the Pew Research Center, 81% of U.S. adults use YouTube; that platform is home to a video entitled *How To Lie Your Way to $34 Billion [Nikola Motors Fraud]*, that had garnered 3.3 million views as of October 2021. Pew reports that 69% of adults use Facebook, 40% use Instagram, and 23% use Twitter – all platforms that are likely to come into play during the trial. It is therefore critical that the parties be able to identify whether and how potential jurors use social media, what platforms they use, who may have pre-conceived notions about the accuracy (or inaccuracy) of information they consume online, and whether their usage affects their ability to be fair and impartial. This can be accomplished without undue delay of the selection process by incorporating questions 21(a) and (b) of the defendant's proposed *voir dire*.

8. Land Sales

The government's proposed *voir dire* neglects to inquire whether any prospective jurors have experience in purchasing, selling, evaluating, or appraising land, which is the topic of Count Four.

9. Popular Documentaries and Dramatic Mini-Series

The public's interest in the travails of new businesses led by high profile founders is seemingly at an all-time high. Streaming services are currently awash with documentary films and dramatic mini-series about Theranos, WeWork, Uber and others. Inevitably, the founders of these companies are portrayed as con artists, scoundrels and "fake-it-till-you-make-it" imposters who raised enormous sums of money and never delivered promised results or products. *See e.g.,* Rani Molla, *Can TV take down the cult of the tech founder?*, Vox (Mar. 14, 2022) https://www.vox.com/recode/22955040/tech-tv-theranos-uber-wework-apple-hulu-showtime; *The Inventor: Out for Blood in Silicon Valley* (documentary film about Elizabeth Holmes and

Theranos), available on multiple platforms including HBO Max, Amazon Prime, Hulu; *The Dropout*, Hulu (dramatic miniseries about Elizabeth Holmes and Theranos), Hulu; *WeWork: Or the Making and Breaking of a $47 Billion Unicorn*, Hulu; *WeCrashed*, AppleTV+; *Fyre: The Greatest Party That Never Happened*, Netflix; *Inventing Anna*, Netflix.[1]

These limited, but widely-advertised and highly popular series – which are not aired on traditional television channels – would fall outside the government's Question 42(m) concerning "television shows the juror typically watches." The accessibility of these shows – and the way many portray business founders as scam artists and fraudsters – renders necessary some inquiry of what streaming series or documentaries the potential jurors have recently consumed. It is beyond cavil that a juror who recently watched a series about Theranos, for example, would need to be identified and questioned. Such questioning is not unnecessarily burdensome, and will not necessitate endless *voir dire* proceedings.

10. Question 35

It is sufficient in this inquiry to simply ask whether the potential jurors understand that punishment may not enter into "your deliberations." The phrase "as to whether the defendant on trial here is guilty" is surplusage.

11. Trial Schedule

The defense respectfully notes that Jewish holidays fall this year on September 25-27, 2022 (Rosh Hashanah) and October 4-5, 2022 (Yom Kippur). The holidays may affect juror availability on those dates.

\*     \*     \*

In addition to the foregoing objections, the defendant respectfully requests that the Court incorporate into its *voir dire* the questions proposed in Trevor Milton's Proposed *Voir Dire* of Prospective Jurors, ECF 105.

Respectfully submitted,

 /s/ Marc L. Mukasey
Marc L. Mukasey

*Counsel for Defendant Trevor Milton*

---

[1] There is also at least one dramatic miniseries currently airing on Hulu that focuses on a horrific crime that took place in Mr. Milton's home state of Utah. *See* Meredith Blake, *Church members decry TV portrait of Mormon life: 'It's designed to make us look alien'*, LOS ANGELES TIMES (June 4, 2022) https://www.latimes.com/entertainment-arts/tv/story/2022-06-04/under-the-banner-of-heaven-hulu-mormon-church-latter-day-saints-reactions.

The Honorable Edgardo Ramos
July 11, 2022
Page 6


cc: Counsel of Record (via ECF)