UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| UNITED STATES OF AMERICA | : S1 21 Cr. 478 (ER) |
| v. | : |
| TREVOR MILTON, | : |
| Defendant. | : |

---

# MEMORANDUM OF LAW IN OPPOSITION TO THE GOVERNMENT'S MOTION *IN LIMINE* TO PRECLUDE TESTIMONY BY DEFENDANT'S PROPOSED EXPERTS AND TO REQUIRE SUPPLEMENTAL EXPERT DISCLOSURES

Bradley J. Bondi
CAHILL GORDON & REINDEL LLP
1990 K Street NW, Suite 950
Washington, DC 20006
(202) 862-8910
bbondi@cahill.com

Marc L. Mukasey
MUKASEY FRENCHMAN LLP
570 Lexington Avenue, Suite 3500
New York, NY 10022
(212) 466-6400
Marc.Mukasey@mfsllp.com

*Counsel for Trevor Milton*

# TABLE OF CONTENTS

Page

ARGUMENT ...................................................................................................................1

I.   PROFESSOR KURFESS'S PROPOSED TESTIMONY IS RELEVANT AND
     RELIABLE AS REQUIRED BY FEDERAL RULE OF EVIDENCE 702. ..................... 1

     A.   Professor Kurfess's Proposed Testimony Is Relevant and Reliable. ........................1

          1.   Vehicle Development Generally ...............................................................3

          2.   Physical and Virtual Prototypes .................................................................3

          3.   Battery Technology ...................................................................................5

          4.   Hydrogen Fuel Cell Technology ................................................................6

          5.   Collaboration with Suppliers .....................................................................7

     B.   Mr. Milton Provided Sufficient Expert Disclosure with Respect to
          Professor Kurfess. ...................................................................................................8

II.  PROFESSOR FERRELL'S PROPOSED TESTIMONY IS RELEVANT AND
     RELIABLE AS REQUIRED BY FEDERAL RULE OF EVIDENCE 702. ..................... 8

     A.   Professor Ferrell's Testimony Is Relevant and Reliable ..........................................8

     B.   Mr. Milton Provided Sufficient Expert Disclosure with Respect to
          Professor Ferrell. ...................................................................................................10

CONCLUSION ................................................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993)......................................................................................................1, 9

*In re Frescati Shipping Co.*,
  No. 08 Cv. 2898 (E.D. Pa.) ................................................................................................9

*Kao Corp. v. Unilever U.S., Inc.*,
  No. 01 Cv. 680 (D. Del.)....................................................................................................9

*Pereira v. Cogan*,
  No. 00 Cv. 619 (RWS) (S.D.N.Y.).....................................................................................9

*SEC v. McGinnis*,
  161 F. Supp. 3d 318 (D. Vt. 2016)...................................................................................10

*Tiffany (NJ) Inc. v. eBay, Inc.*,
  576 F. Supp. 2d 457 (S.D.N.Y. 2007)................................................................................1

*United States v. Block*,
  No. 16 Cr. 595 (JPO) (S.D.N.Y.) .......................................................................................8

*United States v. Channon*,
  No. 13 Cr. 966 (JCH), 2015 WL 13666980 (D.N.M. Jan. 8, 2015) ..................................9

*United States v. Reulet*,
  No. 14 Cv. 40005 (DDC), 2015 WL 7078917 (D. Kan. Nov. 13, 2015).........................10

*United States v. Tomkins*,
  No. 07 Cr. 227, 2012 WL 1357701 (N.D. Ill. Apr. 19, 2012) .........................................10

**Other Authorities**

Jennifer Bethel & Allen Ferrell, *Policy Issues Raised by Structured Products*,
  BROOKINGS-NOMURA PAPERS ON FINANCIAL SERVICES (Yasuki Fuchita &
  Robert E. Litan eds., 2007) ..............................................................................................11

Allen Ferrell, *A Proposal for Solving the "Payment for Order Flow" Problem*, 74
  S. CAL. L. REV. 1027 (2001)............................................................................................11

Allen Ferrell & John Morley, *New Special Study of the Securities Markets: Intermediaries*, SECURITIES MARKET ISSUES FOR THE 21ST CENTURY (Merritt B. Fox et al. eds., 2018) ......................................................................................................... 11

**Rules**

Fed. R. Crim. P. 16 ............................................................................................................. 2, 10

Fed. R. Evid. 702 ................................................................................................................. 1, 8

Defendant Trevor Milton respectfully submits this memorandum of law in opposition to the government's motions *in limine* to preclude testimony by Mr. Milton's proposed expert witnesses—Professor Thomas Kurfess, an automotive engineering expert, and Professor Allen Ferrell, an economist—and to require supplemental expert disclosures. As Federal Rule of Evidence 702 requires, the proposed testimony by Professor Kurfess and Professor Ferrell "both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993); *see also* Fed. R. Evid. 702. Professor Kurfess and Professor Ferrell are each "qualified to be an expert" in their respective areas, have based their opinions upon "reliable data and methodology," and each will testify on issues that "will assist the trier of fact." *Tiffany (NJ) Inc. v. eBay, Inc.*, 576 F. Supp. 2d 457, 458 (S.D.N.Y. 2007). The Court should deny the government's motions *in limine* with respect to Professor Kurfess and Professor Ferrell in their entirety.

## **ARGUMENT**

**I.    PROFESSOR KURFESS'S PROPOSED TESTIMONY IS RELEVANT AND RELIABLE AS REQUIRED BY FEDERAL RULE OF EVIDENCE 702.**

**A.    Professor Kurfess's Proposed Testimony Is Relevant and Reliable.**

Professor Kurfess is a widely recognized authority in the areas of automotive design, development, and engineering. The government acknowledges that Professor Kurfess "is qualified as an expert in manufacturing engineering generally," yet somehow disputes his expertise with respect to automakers and suppliers. Government's Memorandum of Law in Support of Its Motions *in Limine,* ECF 121 ("Gov't Memo") at 16. His CV and his extensive work with, and publications relating to, the automotive industry puts the lie to such a claim. For example, Professor Kurfess is currently the Professor and BMW Chair of Manufacturing Emeritus at Clemson University, and previously served on an advisory board to BMW. *See*

Gov't Memo, Exhibit B ("Kurfess CV") at 1, 86. Throughout his impressive career, Professor Kurfess has had paid consulting engagements with major automakers, including BMW, Ford and GM, and major OEM suppliers, including Alcoa, Michelin, Delco, and Timken. *See* Kurfess CV at 64, 67, 68, 71. He has advised BMW on such issues as "Efficiency Concepts in X5/X6 Body Shop" and "Prevention of Future Defects," and presented seminars to BMW on "Manufacturing, the Road to Success" and "Long Range, Next Generation Concepts for Advanced Manufacturing." *See* Kurfess CV at 48, 53, 67, 68, 86. He also has presented his research to Ford and GM on, among other things, high speed metrology, precision grinding systems, and machine tools. *See* Kurfess CV at 61, 62. Surely, automakers such as BMW, Ford, and GM, and suppliers such as Alcoa, Michelin, Delco, and Timken would not seek guidance from someone who is not a recognized expert.[1]

As set forth more fully in Mr. Milton's disclosure pursuant to Federal Rule of Criminal Procedure 16, Professor Kurfess will testify on five key issues—vehicle development generally, physical and virtual prototypes, battery technology, hydrogen fuel cell technology, and collaborations with suppliers—all of which are highly relevant to Mr. Milton's defense.

The government contends that Professor Kurfess's testimony "would be irrelevant or cumulative and unhelpful to the jury," Gov't Memo at 11, and "in certain respects unreliable." *Id*. at 10. The government argues that company witnesses, who Nikola has refused to make available to defense counsel, could somehow offer lay testimony concerning "the scope of the efforts" *actually* exerted by Nikola "to produce the prototypes or other technology or products at issue in this case," *id.* at 11, or how those prototypes "*actually* were used," *id.* at 12 (emphasis

---

[1] Professor Kurfess also recently served as "Chief Manufacturing Officer and Senior Distinguished Staff Member" at Oak Ridge National Laboratory, the "U.S. Department of Energy's largest multi-disciplinary laboratory" and the "world's premier research institution." *See* Kurfess CV at 1; https://www.ornl.gov.

added). Putting aside the fact that defense counsel has been denied an opportunity even to speak with these witnesses, there is nothing in their backgrounds or the materials produced by the government to suggest that the government's company witnesses are qualified to opine on practices that are normal and customary throughout the industry (including, but not limited to, the range of meaning that may be attributed to certain industry terminology that are at issue in this case). Contrary to the government's assertions, Professor Kurfess's proposed testimony on each of these above-mentioned five issues is reliable and critical for the jury's understanding and will not be duplicative of other testimony.

1. **Vehicle Development Generally**

Many of the alleged misstatements in this case were made in the early stages of vehicle development, years before Nikola went public, and years before Nikola brought trucks to market. *See, e.g.*, Indictment at ¶¶ 27–33 (charges relating to statements made by Mr. Milton in December of 2016). It takes years to design, develop and manufacture battery electric or hydrogen fuel cell vehicles. Early-stage prototypes may bear little resemblance to the vehicle that ultimately emerges for manufacture and sale. The proposed testimony of Professor Kurfess on vehicle development—and the extended time horizon associated with that development—will assist jurors in understanding the meaning of statements made by Mr. Milton during these early stages. The reliability of this proposed testimony rests upon the more than three decades of industry and academic experience of Professor Kurfess in automotive engineering.

2. **Physical and Virtual Prototypes**

The government takes direct aim at the Badger prototypes in its Indictment, alleging, among other things, that "the two prototype Badgers built were little more than show cars and not real consumer vehicles," and that they "could not be driven on roads." Indictment at ¶ 61.

3

The government makes similar allegations with respect to the Nikola One prototype and certain systems and components that, according to the government, should have been included in the early-stage prototype. *Id.* at ¶¶ 29–31 (alleging that "the Nikola One prototype was not completed, let alone tested and validated, by the time of the unveiling event"). The government contrasts these allegations with the statements of Mr. Milton.

Professor Kurfess's proposed testimony about the physical prototyping process and his opinions about the Badger and Nikola One prototypes (and other relevant prototypes) could hardly be more central. Contrary to the government's assertion that testimony concerning "how prototypes are used" in the automotive industry has no relevance, Gov't Memo at 12, Professor Kurfess's proposed testimony—addressing, among other things, the purpose of early-stage prototypes; what they should and should not include; how and why those prototypes are replaced with more advanced iterations; and the many ways in which prototypes differ from production vehicles—will assist the jurors in evaluating the government's allegations concerning Mr. Milton's statements about prototypes.

The government cannot claim plausibly that Professor Kurfess—who has been analyzing and evaluating automotive prototypes for more than 30 years—is unqualified to render such opinions. His opinions on the physical prototypes rest upon a strong foundation of industry and academic experience and will assist the jury in deciding relevant questions of fact.[2]

---

[2] The defense has sought access to the relevant prototypes for a physical inspection since the outset of this case, and the Court has explicitly (and repeatedly) acknowledged its right to inspect. *See* Conference Transcript at 34, Sept. 15, 2021, ECF 30; Opinion and Order at 14, Nov. 15, 2021, ECF 32 ("Milton will be able to introduce evidence in the usual way in the form of photographs, videos, demonstratives and/or expert testimony"). These efforts are continuing, despite repeated refusals from counsel for Nikola and the government's failure to facilitate such inspection. On or about January 14, 2022, the defense moved to compel the government to provide access to the relevant prototypes for physical inspection. *See* Memorandum in Support of Defendant's Motion to Compel, Jan. 14, 2022, ECF 68. Likewise, on or about June 27, 2022, the defense served a subpoena on Nikola seeking access to the relevant prototypes for physical inspection. If the defense cannot get access to the relevant prototypes for

The proposed testimony of Professor Kurfess on virtual prototypes is no less relevant and important. Indeed, many of the statements Mr. Milton made about the Badger in the spring of 2020, and that have been alleged by the government to be "false and misleading," were supported by simulations performed in a virtual prototype. *See* Indictment at ¶ 50. As discussed in his disclosure, Professor Kurfess will testify that, based on his experience, such use of simulations is customary in the industry. Professor Kurfess will testify about the virtual prototypes that have been received through discovery in this case and that are familiar to him from his work.[3] His proposed testimony will address, among other things, whether those virtual prototypes are consistent with the virtual prototypes of other original equipment manufacturers ("OEMs"); the inputs used in virtual prototypes; the data produced by virtual prototypes; the types of simulations that can be performed on virtual prototypes; and the results of simulations performed by virtual prototypes. This testimony is critical to Mr. Milton's defense. Many of the statements that the government alleges were "false and misleading" were based upon performance simulations on virtual prototypes. It is critical for the factfinder to understand the significant role of virtual prototypes in automotive engineering, and how they were used by Nikola in this case.

### 3. Battery Technology

The government includes gratuitous attacks on the relevance of Professor Kurfess's proposed testimony regarding battery technology, *see* Gov't Memo at 13, but the multiple references to battery technology in the Original Indictment shows the obvious relevance.

---

Professor Kurfess to conduct a physical inspection and evaluation, Professor Kurfess will conduct his inspection by reviewing—to the extent available—photographs, videos, CAD files, and other materials evidencing the relevant prototypes.

[3] In addition to his consulting work in this area, Professor Kurfess has authored numerous publications relating to computer-aided design and simulations. *See* Kurfess CV at 4–21.

Professor Kurfess's proposed testimony about battery technology is narrowly confined to testimony that will help the jurors to understand the advantages and disadvantages of battery technology (as compared with hydrogen fuel cell technology) and to understand why Nikola pivoted largely to hydrogen fuel cell technology in or about the latter half of 2016. This limited testimony is both relevant to the issues and helpful to the factfinder.

4. **Hydrogen Fuel Cell Technology**

The Indictment is replete with allegations doubting the viability of Nikola's hydrogen plans, including concerns relating to, among other things, "the current cost of producing hydrogen" and "Nikola's ability to produce hydrogen." Indictment at ¶ 65. In the face of these allegations, the government's protestations about the relevance of expert testimony concerning hydrogen fuel cells and hydrogen infrastructure similarly make little sense. As described in his disclosure, Professor Kurfess will analyze and evaluate Nikola's plans to produce hydrogen and opine as to their costs and viability. This proposed testimony is both relevant to the issues in the Indictment and important to Mr. Milton's defense.

The government's attack on the qualifications of Professor Kurfess to testify about hydrogen is simply uninformed. From decades of experience in automotive and EV engineering, Professor Kurfess has substantial expertise in the areas of hydrogen fuel cell technology and hydrogen power. As described on the first page of his CV, Professor Kurfess has served as the Chief Manufacturing Officer/Senior Distinguished Staff Member (2019–2021), and the Manufacturing Science Founding Division Director (2020–2021), at the Oak Ridge National Laboratory. Kurfess CV at 1. In these roles, Professor Kurfess provided direction to the Oak Ridge National Laboratory and the Department of Energy ("DOE") on the scale-up that would be necessary for the widespread adoption of hydrogen fuel cell vehicles. This direction included

6

guidance on, among other things, hydrogen fuel cell technology and the infrastructure needed to produce, store and dispense hydrogen at the point of consumption.

Although the prosecution here might not recognize Professor Kurfess's expertise on hydrogen, others in our government certainly do. Last year, a congressional committee invited Professor Kurfess to provide testimony on hydrogen fuel cell technology and hydrogen infrastructure at a Congressional hearing. On March 17, 2021, Professor Kurfess testified before the Subcommittee on Energy and Water Development, for the House Committee on Appropriations on Domestic Manufacturing for a Clean Energy Future. *See* Kurfess CV at 57. Several months later, Professor Kurfess presented to the Department of Energy, again on topics that included hydrogen fuel cell technology and hydrogen infrastructure. *See* Kurfess CV at 58 ("Department of Energy Advanced Scientific Computing Research workshop on Computational Mission Needs in Clean Energy and Manufacturing").[4] There can be no serious debate about Professor Kurfess's eminent qualifications on matters relating to hydrogen fuel cells and hydrogen infrastructure.

5. **Collaboration with Suppliers**

The government accuses Mr. Milton of misleading investors about Nikola's relationships with suppliers because Mr. Milton said that Nikola had "designed the Badger from a clean sheet," and "built the Badger from the ground up." Indictment at ¶ 59. Similarly, the government accuses Mr. Milton of misleading investors by referring to certain components as "in-house technology." *Id.* at ¶¶ 70–75. Professor Kurfess intends to testify about the relationship between automakers and suppliers, the extent to which automakers rely on suppliers,

---

[4] Remarkably, the government claims that Professor Kurfess "has not… given presentations on these topics." Gov't Memo at 15. This assertion is demonstrably false, as evidenced by Professor Kurfess's CV. *See* Kurfess CV at 57–58.

and the extent to which automakers design and develop their own component parts. Professor Kurfess intends to explain, among other things, the meaning of these terms in the auto industry; when components are considered to be the technology of the automaker; and the extent to which every automaker in the industry (no matter how well established) relies on third-party suppliers for parts. These highly relevant opinions speak directly to a central issue in this case: whether Mr. Milton misled investors when he spoke about Nikola's in-house technology and relationships with suppliers. The proposed testimony of Professor Kurfess on these issues is important to the defense, relevant to this case, and reliable.

> B. **Mr. Milton Provided Sufficient Expert Disclosure with Respect to Professor Kurfess.**

The government acknowledges that "Professor Kurfess is qualified as an expert in manufacturing engineering generally," Gov't Memo at 16, but inexplicably questions whether "Professor Kurfess is familiar with the virtual prototypes of established automakers." *Id*. at 13. Over the course of more than thirty years of industry and academic experience, Professor Kurfess estimates that he has worked with at least eight OEMs. Many of these relationships are detailed on his 92-page CV. Professor Kurfess estimates that he has reviewed dozens of virtual prototypes from OEMs and dozens in the academic setting.

## II. PROFESSOR FERRELL'S PROPOSED TESTIMONY IS RELEVANT AND RELIABLE AS REQUIRED BY FEDERAL RULE OF EVIDENCE 702.

> A. **Professor Ferrell's Testimony Is Relevant and Reliable.**

The government seeks to limit the testimony of Professor Allen Ferrell, a well-respected MIT-educated economist and Harvard professor, who has served as an expert witness in economics in scores of cases, providing opinions of a similar nature as here, including as an expert called in a prior case by the prosecution in this district. *See* Trial Transcript at 64, *United*

8

*States v. Block*, 16 Cr. 595 (JPO) (S.D.N.Y. July 20, 2017), ECF 122.  Because Professor Ferrell's credentials, testimony, and disclosures are irreproachable, the government resorts to half-hearted, boilerplate arguments, all of which fail.

Although the government concedes that virtually all of Professor Ferrell's testimony "may well be proper," Gov't Memo at 17, the government claims that Professor Ferrell should not be able to testify that event studies are the "most accepted measure" of whether information "is deemed to be value relevant and new by investors in the market." *Id*.  Contrary to the government's assertion, expert witnesses routinely testify that their sources and methodologies are the "most accepted" in their field.  *See, e.g.*, Trial Transcript at 404, *Pereira v. Cogan*, 00 Cv. 619 (RWS), 2003 WL 25762179 (S.D.N.Y. Nov. 13, 2003) ("[W]e did the most accepted method of doing an income approach which is what we call discounted cash flow."); Trial Transcript at 111, *In re Frescati Shipping Co.*, 08 Cv. 2898, 2010 WL 8566463 (E.D. Pa. Nov. 10, 2020) ("The Barrass formula in my opinion is the most accepted formula that's in use."); Trial Transcript at 234, *Kao Corp. v. Unilever U.S., Inc.*, 01 Cv. 680, 2003 WL 25956617 (D. Del. Oct. 17, 2003) ("It's almost irrefutable. . . . It is by far the most accepted analytical technique for the characterization of chemical structure.").

Such testimony does not usurp the jury.  In fact, "the foundation for admissibility under *Daubert* is the same information that must be presented to the jurors to allow them to determine the weight and credibility of the expert evidence; [d]efendants therefore have the right to have the jury hear this evidence." *United States v. Channon*, No. 13 Cr. 966 (JCH), 2015 WL 13666980, at *7 (D.N.M. Jan. 8, 2015); *see also Daubert*, 509 U.S. at 594 (explaining that "[w]idespread acceptance" can be an important factor in ruling expert testimony admissible).

9

The government also portrays individual sentences from Professor Ferrell's disclosure as standalone opinions and argues that those sentences should be excluded. Gov't Memo at 17 (identifying statements that "Nikola's stock is traded on a public exchange" and "investment in the stock market is risky" as unnecessary testimony). As Professor Ferrell's disclosure makes clear, these statements are part of a broader explanation of the stock market, Gov't Memo, Exhibit A at 8, and they add necessary context to help jurors understand his more complex opinions. *Cf. United States v. Tomkins*, No. 07 Cr. 227, 2012 WL 1357701, at *11 (N.D. Ill. Apr. 19, 2012) (precluding lay witness with finance knowledge from testifying about the stock market because "jurors are 'presumably not well versed' in how financial markets, stocks, and options work" and "defining unfamiliar economic- or stock-based terms for the jury carries with it the imprimatur of expert testimony").

**B.  Mr. Milton Provided Sufficient Expert Disclosure with Respect to Professor Ferrell.**

Rule 16 requires only a "written summary" of expert testimony. Fed. R. Crim. P. 16(b)(1)(C). It "does not require the parties to provide all of the data or other information considered to form the opinions." *United States v. Reulet*, No. 14 Cv. 40005 (DDC), 2015 WL 7078917, at *5 (D. Kan. Nov. 13, 2015) (citation omitted); *see also SEC v. McGinnis*, 161 F. Supp. 3d 318, 323–24 (D. Vt. 2016) (explaining that civil-style expert discovery is "not necessarily . . . available in a criminal prosecution"). There is no basis for the government to demand further disclosures from Professor Ferrell, let alone his event study. Gov't Memo at 18–19. Professor Ferrell's disclosure already provides a detailed list of sources that he relied on to conduct his event study, including public stock price data, public SEC filings, and other widely available third-party resources. Gov't Memo, Exhibit A at 9. Much of this material was provided to Mr. Milton *by the government*. Indeed, Professor Ferrell's disclosure is far more

10

robust than the disclosure provided by the government for its own expert. Professor Dina Mayzlin's disclosure does not list *any* of the sources that she relies on, let alone provide Mr. Milton with her research. *See* June 20, 2022 Declaration of Bradley Bondi Accompanying Defendant's Motion *in Limine* to Exclude The Testimony of Dina Mayzlin or, in The Alternative, For a *Daubert* Hearing, ECF 111, Exhibit A.

The government argues that Professor Ferrell's disclosures do not demonstrate "any particular expertise" in the area of "retail investors" and "social media." Gov't Memo at 18. The government also bemoans a lack of "bases or reasons" and demands that Professor Ferrell disclose the event study he performed "and any other analyses that form the basis of it." *Id*. at 19. Yet, Professor Ferrell's CV, which was provided to the government, contains several publications relating to retail investor behavior. *See, e.g.*, Jennifer Bethel and Allen Ferrell, *Policy Issues Raised by Structured Products*, Brookings-Nomura Papers on Financial Services (Yasuki Fuchita & Robert E. Litan eds., 2007) (discussing implications of offering complex structural products to retail investors); Allen Ferrell & John Morley*, New Special Study of the Securities Markets: Intermediaries*, Securities Market Issues for the 21st Century (Merritt B. Fox et al. eds., 2018) (analyzing importance of broker-dealers as market intermediaries for retail investors); Allen Ferrell, *A Proposal for Solving the "Payment for Order Flow" Problem*, 74 S. Cal. L. Rev. 1027, 1050 (2001) (discussing how market for order flow does not adequately serve retail investors). To account for the mix of retail and institutional investors trading in particular stocks, Professor Ferrell routinely controls for institutional investor holdings (as disclosed in 13F SEC filings) in his academic papers. Professor Ferrell has also analyzed social media disclosures (including tweets) in event studies dozens of times in the

course of his work as a consultant and expert—and Professor Ferrell has experience analyzing the impact of social media on retail investors.

The defense has provided a detailed disclosure, while the government has provided little. Defense counsel has met its obligations to disclose sufficient information for the government to prepare for trial, and the government's demands for additional information should be denied.

## CONCLUSION

For the reasons set forth above, Mr. Milton respectfully requests that the Court deny the government's motions *in limine* to preclude testimony by Professor Kurfess and Professor Ferrell and to require supplemental expert disclosures with respect to Professor Ferrell.

Dated: July 11, 2022

Respectfully submitted,

/s/ Bradley J. Bondi
_____
Bradley J. Bondi
CAHILL GORDON & REINDEL LLP
1990 K Street NW, Suite 950
Washington, DC 20006
(202) 862-8910
bbondi@cahill.com

Marc L. Mukasey
MUKASEY FRENCHMAN LLP
570 Lexington Avenue, Suite 3500
New York, NY 10022
(212) 466-6400
Marc.Mukasey@mfsllp.com

*Counsel for Trevor Milton*