UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————————     x

UNITED STATES OF AMERICA              :     S1 21 Cr. 478 (ER)
                                      :
            v.                        :
                                      :
                                      :
TREVOR MILTON,                        :
                                      :
            Defendant.                :
————————————————————————     x

## MEMORANDUM OF LAW IN OPPOSITION TO THE GOVERNMENT'S MOTIONS *IN LIMINE*

Bradley J. Bondi
CAHILL GORDON & REINDEL LLP
1990 K Street NW, Suite 950
Washington, DC 20006
(202) 862-8910
bbondi@cahill.com

Marc L. Mukasey
MUKASEY FRENCHMAN LLP
570 Lexington Avenue, Suite 3500
New York, NY 10022
(212) 466-6400
Marc.Mukasey@mfsllp.com

*Counsel for Trevor Milton*

## <u>TABLE OF CONTENTS</u>

Page

ARGUMENT ....................................................................................................................1

I.      BECAUSE EVIDENCE OF MR. MILTON'S INTERACTIONS WITH THE
        PROFESSIONALS AROUND HIM, INCLUDING AN ATTORNEY,
        INFORMED MR. MILTON'S STATE OF MIND AND HIS GOOD FAITH,
        THE COURT SHOULD DENY THE GOVERNMENT'S MOTION *IN LIMINE*
        WITH RESPECT TO WHAT THE GOVERNMENT CALLS A PRESENCE-OF-
        COUNSEL DEFENSE.................................................................................................. 1

II.     BECAUSE MR. MILTON HAS A RIGHT TO ARGUE THAT THE
        GOVERNMENT'S INVESTOR WITNESSES ARE NOT REPRESENTATIVE
        OF THE HYPOTHETICAL "REASONABLE INVESTOR," THE COURT
        SHOULD DENY THE GOVERNMENT'S MOTION *IN LIMINE* WITH
        RESPECT TO RETAIL INVESTORS............................................................... 9

III.    BECAUSE MR. MILTON HAS A RIGHT TO ARGUE THAT PURPORTED
        VICTIMS RECEIVED THE FULL ECONOMIC BENEFIT OF THEIR
        BARGAIN WHEN THEY BOUGHT AND SOLD NIKOLA STOCK, THE
        COURT SHOULD DENY THE GOVERNMENT'S MOTION *IN LIMINE* WITH
        RESPECT TO MR. MILTON'S ALLEGED BELIEF ABOUT ULTIMATE
        HARM................................................................................................................. 10

IV.     BECAUSE EVIDENCE OF CERTAIN PRODUCT AND TECHNOLOGY
        DEVELOPMENTS IS RELEVANT TO BOTH THE INTENT AND FALSITY
        ELEMENTS OF THE CHARGED OFFENSES, AND BECAUSE THE
        PROBATIVE VALUE OF SUCH EVIDENCE FAR OUTWEIGHS ANY
        POSSIBLE PREJUDICE, THE COURT SHOULD DENY THE
        GOVERNMENT'S MOTION *IN LIMINE* WITH RESPECT TO NIKOLA'S
        PRODUCT AND TECHNOLOGY DEVELOPMENT AFTER SEPTEMBER
        2020…................................................................................................................ 12

V.      BECAUSE EVIDENCE OF MR. MILTON'S ACCURATE STATEMENTS IS
        RELEVANT TO INTENT AND MATERIALITY, THE COURT SHOULD
        DENY THE GOVERNMENT'S MOTION *IN LIMINE* WITH RESPECT TO
        SO-CALLED "GOOD ACTS" EVIDENCE..................................................... 15

        A.      Accurate Additional Statements Demonstrate Mr. Milton's Good Faith. .............17

        B.      The Total Mix of Information Includes Both Accurate Additional
                Statements and the Allegedly Inaccurate Statements. ...........................................18

VI.     BECAUSE THE PREJUDICIAL IMPACT OF EVIDENCE OF MR. MILTON'S
        COMPENSATION OR PURCHASES FAR OUTWEIGHS ANY POSSIBLE
        PROBATIVE VALUE, THE COURT SHOULD DENY THE GOVERNMENT'S
        MOTION *IN LIMINE* WITH RESPECT TO SUCH EVIDENCE................................. 20

VII. BECAUSE THE GOVERNMENT HAS NOT MET AND CANNOT MEET THE
REQUIREMENTS FOR ADMISSIBILITY, THE COURT SHOULD DENY
THE GOVERNMENT'S MOTION *IN LIMINE* WITH RESPECT TO CERTAIN
STATEMENTS BY NIKOLA EMPLOYEES. ............................................................. 23

    A. The Government Has Not Established, and Cannot Establish, the
Existence of an Employment or an Agency Relationship. ....................................25

    B. Even If There Were an Agency Relationship, the Government Has Not
Established, and Cannot Establish, that Statements Were Made During the
Course and Within the Scope of the Relationship. .................................................30

    C. Because the Government Has Not Established Either an Agency
Relationship or that the Statements Were Made During the Course of the
Agency Relationship, the Government Has Not Met the Requirements for
Admissibility Under Rule 801(d)(2)(D). ...............................................................31

    D. If the Court Allows the Government to Introduce Certain Statements of
Nikola Employees Under Rule 801(d)(2)(D), the Court Should Permit Mr.
Milton to Introduce Additional Evidence. .............................................................31

    E. The Admission of Testimonial Statements by Nikola Employees Would
Violate Mr. Milton's Constitutional Rights Under the Confrontation
Clause.....................................................................................................................32

CONCLUSION....................................................................................................................33

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Abbott Laboratories Derivative S'holders Litig.*,
    325 F.3d 795 (7th Cir. 2003) ...........................................................................5, 32

*Agyin v. Razmzan*,
    986 F.3d 168 (2d Cir. 2021)...................................................................................28

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988)..................................................................................................9

*Bourjaily v. United States*,
    483 U.S. 171 (1987)................................................................................................24

*Crawford v. Washington*,
    541 U.S. 36 (2004)............................................................................................32, 33

*Garanti Finansal Kirilama A.S. v. Aqua Marine and Trading Inc.*,
    697 F.3d 59 (2d Cir. 2012).....................................................................................24

*Hollingsworth v. Perry*,
    570 U.S. 693 (2013)................................................................................................26

*Howard v. SEC*,
    376 F.3d 1136 (D.C. Cir. 2004) ..........................................................................5, 6

*In re Int'l Bus. Machines*,
    163 F.3d at 109–10 ................................................................................................32

*In re Int'l Bus. Machines Corp. Secs. Litig.*,
    163 F.3d 102 109–10 (2d Cir. 1998)........................................................................5

*Kalnit v. Eichler*,
    264 F.3d 131 (2d Cir. 2001)...................................................................................21

*Marcic v. Reinauer Transp. Co.*,
    397 F.3d 120 (2d Cir. 2005).............................................................................24, 30

*Mattox v. United States*,
    156 U.S. 237 (1895)................................................................................................32

*Michigan v. Bryant*,
    562 U.S. 344 (2011)................................................................................................32

*Nekolny v. Painter*,
    653 F.2d 1164 (7th Cir. 1981) ...............................................................29

*Phoenix Assoc. III v. Stone*,
    60 F.3d 95 (2d Cir. 1995).....................................................................31

*SEC v. Ferrone*,
    163 F. Supp. 3d 549 (N.D. Ill. 2016) ...............................................6, 8, 9

*SEC v. Geon Indus., Inc.*,
    531 F.2d 39 (2d Cir. 1976)....................................................................29

*SEC v. Lek Sec. Corp.*,
    2019 WL 5703944 (S.D.N.Y. Nov. 5, 2019) ...........................................8

*SEC v. Tourre*,
    950 F. Supp. 2d 666 (S.D.N.Y. 2013)...............................................4, 7, 8

*SEC v. Wellshire Secs., Inc.*,
    773 F. Supp. 569 (S.D.N.Y. 1991) ....................................................5, 32

*Tagliaferri v. United States*,
    2018 WL 3752371 (S.D.N.Y. Aug. 8, 2018) ...........................................6

*In re Tribune Co. Fraudulent Conveyance Litig.*,
    946 F.3d 66 (2d Cir. 2019).................................................24, 25, 26, 27

*TSC Indus., Inc. v. Northway, Inc.*,
    426 U.S. 438 (1976)...............................................................................9

*United Paperworkers Int'l Union v. Int'l Paper Co.*,
    985 F.2d 1190 (2d Cir. 1993).................................................................9

*United States v. Aboumoussallem*,
    726 F.2d 906 (2d Cir. 1984)..................................................................12

*United States v. Alkins*,
    925 F.2d 541 (2d Cir. 1991)....................................................................3

*United States v. Amico*,
    486 F.3d 764 (2d Cir. 2007)..................................................................10

*United States v. Atias*,
    2017 WL 563978 (E.D.N.Y. Feb. 10, 2017)........................................2, 7

*United States v. Binday*,
    804 F.3d 558 (2d Cir. 2015)..................................................................11

*United States v. Bulgin*,
   563 F. App'x 843 (2d Cir. 2014) ....................................................................................20

*United States v. Cole*,
   No. 19 Cr. 869 (ER) (S.D.N.Y. Dec. 4, 2019) .......................................................17

*United States v. Damti*,
   109 F. App'x 454 (2d Cir. 2004) ...................................................................................16

*United States v.DiBenedetto*,
   571 F.2d 1246 (2d Cir. 1978)........................................................................................17

*United States v. Ferguson*,
   No. 06 Cr. 137 (CFD), 2007 WL 4240782 (D. Conn. Nov. 30, 2007) ............................21, 22

*United States v. Greenspan*,
   923 F.3d 138 (3d Cir. 2019)..........................................................................................6

*United States v. Hatfield*,
   685 F. Supp. 2d 320 (E.D.N.Y. 2010) ..................................................................20

*United States v. King*,
   134 F.3d 1173 (2d Cir. 1998)........................................................................................29

*United States v. Leonard*,
   529 F.3d 83 (2d Cir. 2008)............................................................................................13

*United States v. Levin*,
   No. 15 Cr. 101 (KBF), 2016 WL 8711458 (S.D.N.Y. Jan. 8, 2016) .....................................18

*United States v. Levis*,
   488 F. App'x 481 (2d Cir. 2012) ...................................................................................13

*United States v. Litvak*,
   808 F.3d 160 (2d Cir. 2015).............................................................................. *passim*

*United States v. Litvak*,
   889 F.3d 56 (2d Cir. 2018).........................................................................................9, 10

*United States v. Logan*,
   250 F.3d 350 (6th Cir. 2001) ........................................................................................22

*United States v. McCallum*,
   584 F.3d 471 (2d Cir. 2009).........................................................................................21

*United States v. Mittelstaedt*,
   31 F.3d 1208 (2d Cir. 1994).........................................................................................11

*United States v. Nektalov*,
   No. 03 Cr. 828 (PKL), 2004 WL 1637010 (S.D.N.Y. July 21, 2004) ....................................17

*United States v. Percoco*,
   13 F.4th 158 (2d Cir. 2021) ........................................................................................3

*United States v. Peters*,
   543 F. App'x 5 (2d Cir. 2013) ...................................................................................22

*United States v. Petit*,
   19-cr-0850 (JSR) (S.D.N.Y.) ....................................................................................13

*United States v. Quattrone*,
   441 F.3d 153 (2d Cir. 2006)......................................................................................22

*United States v. Rioux*,
   97 F.3d 648 (2d Cir. 1996)...................................................................25, 26, 27, 30

*United States v. Rybicki*,
   287 F.3d 257 (2d Cir. 2002)......................................................................................10

*United States v. Scarpa*,
   913 F.2d 993 (2d Cir. 1990)......................................................................................16

*United States v. Starr*,
   816 F.2d 94 (2d Cir. 1987)........................................................................................11

*United States v. Summers*,
   598 F.2d 450 (5th Cir. 1979) ....................................................................................29

*United States v. Takhalov*,
   827 F.3d 1307 (11th Cir. 2016) ................................................................................11

*United States v. Thomas*,
   377 F.3d 232 (2d Cir. 2004)......................................................................................10

*United States v. Weiss*,
   914 F.2d 1514 (2d Cir. 1990)....................................................................................22

*United States v. Williams*,
   930 F.3d 44 (2d Cir. 2019)........................................................................................31

*United States v. Young*,
   736 F.2d 565 (10th Cir. 1983) ............................................................................24, 27

*Zaken v. Boerer*,
   964 F.2d 1319 (2d Cir. 1992)...........................................................23, 24, 27, 31

*Zornoza v. Terraform Global, Inc.*,
    419 F. Supp. 3d 715 (S.D.N.Y. 2019)....................................................................30

**Other Authorities**

Hon. Leonard B. Sand et al., *Modern Federal Jury Instructions – Criminal* (2022) ....................3

5 Jack Weinstein et al., *Weinstein's Federal Evidence* (2022)....................................................29

Restatement (Third) of Agency (2006)..........................................................................28, 29, 30

**Rules**

17 C.F.R. § 230.424 ..................................................................................................................21

Fed. R. Civ. 806 ..................................................................................................................31, 32

Fed. R. Evid. 104 ......................................................................................................................24

Fed. R. Evid. 106 ......................................................................................................................31

Fed. R. Evid. 401 ..................................................................................................................4, 15

Fed. R. Evid. 403 ..................................................................................................................7, 15

Fed. R. Evid. 405 ................................................................................................................15, 17

Fed. R. Evid. 801 ............................................................................................................. *passim*

Defendant Trevor Milton respectfully submits this memorandum of law in opposition to the government's motions *in limine* to (i) preclude evidence or argument concerning Mr. Milton's interactions with the professionals around him, including, among others, a Nikola lawyer; (ii) preclude evidence and argument that retail investors were negligent or otherwise to blame; (iii) preclude evidence and argument that Mr. Milton lacked intent to defraud because he believed no ultimate harm would come to the victims; (iv) preclude evidence about Nikola's product and technology development after the alleged scheme ended in September 2020; (v) preclude so-called "good acts" evidence; (vi) admit certain evidence regarding Mr. Milton's compensation and certain purchases; and (vii) admit certain statements by Nikola employees as statements by agents of Mr. Milton.[1]  The Court should deny each motion in its entirety.

## ARGUMENT

**I.  BECAUSE EVIDENCE OF MR. MILTON'S INTERACTIONS WITH THE PROFESSIONALS AROUND HIM, INCLUDING AN ATTORNEY, INFORMED MR. MILTON'S STATE OF MIND AND HIS GOOD FAITH, THE COURT SHOULD DENY THE GOVERNMENT'S MOTION *IN LIMINE* WITH RESPECT TO WHAT THE GOVERNMENT CALLS A PRESENCE-OF-COUNSEL DEFENSE.**

The government contends that "the Court should preclude [Mr. Milton] from offering any advice-of-counsel defense."  Government's Memorandum of Law in Support of Its Motions *in Limine* ("Gov't Memo") at 22, June 20, 2022, ECF 121.  With respect to Counts One, Two and Three, however, this contention is a red herring.  Mr. Milton does not assert that defense to the charges in those Counts.[2]

---

[1] Because the government submitted an oversized brief (43 pages), Mr. Milton respectfully requests permission to file this oversized response brief.

[2] With respect to Count Four, recently added in the Superseding Indictment, defense counsel continue to investigate an advice-of-counsel defense, and will communicate promptly with the Court and the government if counsel intend to raise that defense.

The government next contends, as a fallback position, that the Court should preclude what the government calls a "presence of counsel defense[,]" *id.* at 23, or a "quasi-advice-of-counsel defense[,]" *id.* at 22, which, according to the government, "risks injecting irrelevant or prejudicial information" at trial. *Id.* at 23. As demonstrated below, however, this contention is meritless.

Here, the government itself concedes the following: "Evidence tending to show that others within Nikola, including individuals with shared responsibility for the accuracy of investor communications, were aware of [Mr.] Milton's statements and did not raise objections to [Mr.] Milton may potentially be relevant, depending on the arguments advanced by the defense." *Id.* at 25. And here, the evidence will show that a lawyer, Britton Worthen, Esq., Nikola's Chief Legal Officer, "shared responsibility for the accuracy of investor communications[;]" that he, along with numerous other members of Nikola's senior management group, was or became "aware of [Mr.] Milton's statements[;]" and that he "did not raise objections to Mr. Milton[.]" *Id.* That evidence "obviously would be relevant as to" the question of whether the government can prove that Mr. Milton had "the intent to deceive" the alleged victims, *United States v. Atias*, 2017 WL 563978, at *5 (E.D.N.Y. Feb. 10, 2017) (internal quotation marks omitted), and whether, on the other side of the same coin, the government can prove Mr. Milton's lack of good faith. The Court should therefore deny the government's motion.

\*       \*       \*

2

Second Circuit cases uniformly hold that good faith is a complete defense to a charge of securities fraud or wire fraud.[3]  Judge Sand's pattern jury instructions state the applicable black-letter law:

> Since an essential element of the crime charged is intent to defraud, it follows that good faith on the part of a defendant is a complete defense to a charge of securities fraud.  A defendant, however, has no burden to establish a defense of good faith.  The burden is on the government to prove fraudulent intent and consequent lack of good faith beyond a reasonable doubt.
>
> Under the anti-fraud statutes, *even* false representations or statements or omissions of material facts do not amount to a fraud unless done with fraudulent intent.  However misleading or deceptive a plan may be, it is not fraudulent if it was devised or carried out in good faith.  An honest belief in the truth of the representations made by a defendant is a good defense, however inaccurate the statements may have turned out to be.

Hon. Leonard B. Sand et al., *Modern Federal Jury Instructions – Criminal* ("Sand") ¶ 57.03 (2022) (emphasis in original).

Even the government concedes that "a defendant may request a 'good faith' instruction . . . that acting based on an honestly held belief negates the element of intent[.]"  Gov't Memo at 19–20.

The issue of good faith goes to the defendant's state of mind, which, of course, can be proven only inferentially, from circumstantial evidence.  A district court, therefore, will liberally admit evidence on the issue of good faith.  *See United States v. Litvak* ("*Litvak I*"), 808 F.3d 160, 190 (2d Cir. 2015) ("[S]ince [good faith] may be only inferentially proven, no events or actions which bear even remotely on its probability should be withdrawn from the jury unless the

---

[3] *See, e.g., United States v. Alkins*, 925 F.2d 541, 549–50 (2d Cir. 1991) (approving a substantially similar jury instruction; holding that "[g]ood faith is a complete defense to a mail fraud charge. . . . If an individual believes that the information set forth in a mailing is true, it follows that he cannot have the requisite intent to defraud. The government must prove lack of good faith beyond a reasonable doubt[]"); *United States v. Litvak*, 808 F.3d 160, 189 (2d Cir. 2015) (quoting a substantially similar jury instruction); *United States v. Percoco*, 13 F.4th 158, 177 (2d Cir. 2021) (finding no error where court instructed jury that "[a]n honest belief in the truth of the representations made by a defendant is a complete defense[]") (internal quotation marks omitted).

tangential and confusing elements interjected by such evidence clearly outweigh its

relevance[.]") (internal quotation marks omitted).

Evidence of the defendant's state of mind, relevant to his or her good faith, takes many

forms.  In *Litvak I*, for example, the district court correctly admitted "evidence of Litvak's

supervisors' knowledge or approval" of Litvak's conduct, "because such evidence tend[s] to

prove the absence of intent and could provide a basis for the jury to make a reasonable inference

. . . that they should find no intent to defraud given the nature of what happened at [Litvak's

place of employment]."  *Id*. at 188 (internal quotation marks omitted).

The district court, however, erroneously excluded evidence of the supervisors'

"knowledge or approval of other employees' similar conduct."  *Id*.  The Second Circuit,

reversing the conviction, held that the latter ruling, excluding evidence, "exceeded" the district

court's "allowable discretion" under Rule 401:

> [T]his evidence would provide a fair basis upon which to infer that when Mr.
> Litvak did the very same thing, . . . the supervisors saw and approved of [it] as
> standard operating procedure. . . . Such an inference would support Litvak's
> attempt to introduce a reasonable doubt as to his intent to defraud, *i.e.*, that he
> held an honest belief that his conduct was not improper or unlawful, a belief the
> jury may have found more plausible in light of his supervisors' approval of his
> colleagues' substantially similar behavior.

*Id*. at 190 (internal quotation marks omitted).  The evidence, in short, showed "the environment

in which Mr. Litvak [wa]s operating.  It all goes back to state of mind."  *Id*. at 188 (quoting

Litvak's counsel); *see also SEC v. Tourre*, 950 F. Supp. 2d 666, 684 (S.D.N.Y. 2013) (allowing

"evidence of the numerous individuals and/or committees who participated in the transaction, as

. . . relevant to the context in which the . . . transaction occurred[]").

Similarly, here, Mr. Milton will offer evidence of the environment, and the context, in

which he made the alleged misrepresentations.  Mr. Milton worked daily with others at Nikola—

including General Counsel Britton Worthen, as well as Nikola's President, CFO, Head of Business Development, Director of Public Relations and Corporate Communications, and Global Head of Marketing—who shared responsibility for the accuracy of investor communications. Those individuals were or became aware of Mr. Milton's statements. Those individuals did not object to those statements, despite duties, under Delaware law, to pay "appropriate attention to potentially illegal corporate activities" and to take "steps in an effort to prevent or remedy the situation[.]" *In re Abbott Laboratories Derivative S'holders Litig.*, 325 F.3d 795, 808–09 (7th Cir. 2003) (citing *In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959, 967 (Del. Ch. 1996) (applying law of Delaware (Nikola's state of incorporation)). Those individuals did not correct Mr. Milton's statements, or update Nikola's SEC filings in light of Mr. Milton's statements, despite duties to do so, as and when necessary, under the federal securities laws. *See, e.g.*, *In re Int'l Bus. Machines Corp. Secs. Litig.*, 163 F.3d 102 109–10 (2d Cir. 1998); *SEC v. Wellshire Secs., Inc.,* 773 F. Supp. 569, 573 (S.D.N.Y. 1991).

Such evidence has obvious relevance to Mr. Milton's state of mind and good faith, "because such evidence tend[s] to prove the absence of intent and could provide a basis for the jury to make a reasonable inference . . . that they should find no intent to defraud given the nature of what happened at [Nikola]." *Litvak I*, 808 F.3d at 188 (internal quotation marks omitted). Indeed, as previously noted, the government essentially concedes the issue of relevance. *See* Gov't Memo at 25 (quoted above).

*     *     *

The government contends that evidence regarding a lawyer's words or actions is irrelevant in the absence of a formal reliance-on-advice-of-counsel defense. Gov't Memo at 22–24. But, as the D.C. Circuit held in *Howard v. SEC*, 376 F.3d 1136 (D.C. Cir. 2004), "reliance

on the advice of counsel need not be a formal defense; it is simply evidence of good faith, a relevant consideration in evaluating a defendant's scienter." *Id*. at 1147; *see also Tagliaferri v. United States*, 2018 WL 3752371, at *1–3 (S.D.N.Y. Aug. 8, 2018) (describing pretrial motions practice where "trial court ruled that even though it would not specifically instruct the jury on the advice of counsel defense, it would permit the defendant to elicit testimony that attorneys were involved in the transactions [] and [] to argue that this involvement affected [the defendant's] state of mind, thus bearing on whether he acted with fraudulent intent") (internal quotation marks and citation omitted).

Advice of counsel, in other words, is merely one type, or "species[,] of good-faith defense." *United States v. Greenspan*, 923 F.3d 138, 146 (3d Cir. 2019) (cited by the government, Gov't Memo at 20). "[G]ood faith as a defense . . . can take other forms as well." *SEC v. Ferrone*, 163 F. Supp. 3d 549, 568 (N.D. Ill. 2016).

Here, good faith as a defense does take a form other than a formal reliance-on-advice-of-counsel defense. As shown above, it takes the form of evidence that Mr. Milton's colleagues— including General Counsel Worthen and the numerous others identified above—approved, and/or did not disapprove or object to, Mr. Milton's statements. Such evidence helped shape the environment in which Mr. Milton spoke, and informed Mr. Milton's belief that he was not saying or doing anything wrong. Such evidence is relevant to Mr. Milton's state of mind, whether or not the lawyer gave formal or specific legal advice. *See Howard*, 376 F.3d at 1147 (holding that corporate officer may rely on evidence showing that he "encountered green [flags], as outside and inside counsel approved transactions"). Certainly, the lawyer's words and actions are no less relevant to Mr. Milton's state of mind than the words and actions of Mr. Milton's non-lawyer colleagues.

None of the cases cited by the government supports the government's overbroad and premature contention that the Court should exclude—wholesale, by pretrial ruling—all evidence regarding the presence and/or participation of a lawyer.  Thus, in *Atias*, the court refused to exclude evidence that a witness "heard [the lawyer(s)] say something to the defendants prior to, or contemporaneously with[,] the commission of the fraud charged in [the indictment] which indicated that their conduct vis-a-vis [the alleged victim] was lawful."  2017 WL 563978 at *4–5.  The court continued:

> If the out-of-court statement was legitimately offered to show the effect on the defendant-listener's state of mind, rather than for the truth of the matter asserted, the utterance, by definition is not hearsay. . . . And such evidence obviously would be relevant as to whether the defendant . . . had "the intent to deceive the [victim.]"

*Id*. (quoting Sand at ¶ 37.03).  The court then deferred a Rule 403 "balancing" ruling, which "cannot be done in the abstract[,]" until trial, when the court would have "specific information[]" on which to base a ruling.  *Id*. at *5.

Similarly, here, as demonstrated above, evidence concerning General Counsel Worthen's statements "obviously would be relevant as to whether" Mr. Milton "had the intent to deceive" the alleged victims.  *Id.* (internal quotation marks omitted).  And the Court here should defer until trial a ruling under Rule 403, which the Court cannot fairly make in the abstract.

In *Tourre*, the court did not exclude evidence of, or argument about, a lawyer's participation in "the overall context of the transaction[]" at issue.  950 F. Supp. 2d at 684.  On the contrary, the court "allow[ed] evidence of the numerous individuals and/or committees who participated in the transaction, as it is relevant to the context in which the . . . transaction occurred."  *Id*.  The court refused to "preclude witnesses from identifying the identity or

profession of the individuals reflected on . . . documents." *Id*. at 685 (refusing to "require an unnatural avoidance of identifying addressees or participants reflected in such evidence[]").

Ultimately, the court simply "limit[ed]" the defendant's ability "to focus on the presence and participation of lawyers." *Id*. The court concluded, "Tourre will not be precluded altogether from saying the words 'counsel,' 'lawyer,' or 'attorney,' regardless of the context of the evidence or testimony, but nor will he be permitted to zero in on the presence or involvement of lawyers for the sake of highlighting their presence or involvement." *Id*. The court reserved further rulings until trial and noted that it "will give a limiting instruction[,]" if necessary. *Id*.

Other cases cited by the government, finally, illustrate the district court's power to address these issues by means of limiting instructions, which would focus the jury on the purpose(s) for which the jury may, or may not, consider particular evidence. *See* Gov't Memo at 24–25 (citing unpublished transcripts from *SEC v. Stoker*, 11 Civ. 7388 (JSR); acknowledging that "[u]ltimately," the court gave a limiting instruction regarding relevance); *id*. at 25 n.4.[4]

\* \* \*

The Court should deny the government's motion, which "does not fully account for the issue of good faith and the ways in which it might be raised legitimately by [Mr. Milton] to contest the scienter element" of the charges here. *Ferrone*, 163 F. Supp. 3d at 570. The Court should postpone further rulings until trial, when the Court can make rulings fully-informed by the evidence. The Court, furthermore, can readily instruct the jury on the good-faith defense and

---

[4] *SEC v. Lek Sec. Corp.*, 2019 WL 5703944, at *3–4 (S.D.N.Y. Nov. 5, 2019), cited by the government, Gov't Memo at 24–25, is distinguishable. In *Lek*, the court excluded evidence of reliance on counsel, even when offered to show good faith, for three reasons, none of which applies here. First, the *Lek* defendants failed to provide pretrial discovery on this issue. Second, the defendants had not waived the attorney-client privilege; without such a waiver, the defendants would have had the benefits of the advice-of-counsel defense without the burdens. Third, the defendants did not rely on advice from their own counsel; they relied, rather, "on a third-party's representation of advice the third party received" from the third party's counsel. *Id*. at *4.

its distinction from an advice-of-counsel defense. "If the Court is going to err . . . it [sh]ould prefer to err on the side of allowing the jury to decide the case rather than gutting [Mr. Milton's] defense out of the box." *Id.*

## II. BECAUSE MR. MILTON HAS A RIGHT TO ARGUE THAT THE GOVERNMENT'S INVESTOR WITNESSES ARE NOT REPRESENTATIVE OF THE HYPOTHETICAL "REASONABLE INVESTOR," THE COURT SHOULD DENY THE GOVERNMENT'S MOTION *IN LIMINE* WITH RESPECT TO RETAIL INVESTORS.

The government also seeks to "[p]reclude evidence and argument that retail investors were negligent or otherwise to blame[.]" Gov't Memo at 1. The government specifically asks the Court to prohibit Mr. Milton from arguing that "he should not be held to account for otherwise material misrepresentations because an investor might have been able through investigation to uncover the truth." *Id.* at 28.

The government's request ignores established Second Circuit law on materiality. To commit securities fraud, a defendant must make a statement or omission that is "misleading as to a material fact." *Basic Inc. v. Levinson*, 485 U.S. 224, 238 (1988). For a fact to be material, "there must be a substantial likelihood that the disclosure of the . . . fact would have been viewed *by the reasonable investor* as having significantly altered the 'total mix' of information made available." *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976) (emphasis added). Under this objective standard, a "reasonable investor" is the hypothetical reasonable investor in the market, and the "total mix" includes all information in the public domain or facts reasonably available. *See United States v. Litvak* ("*Litvak II*"), 889 F.3d 56, 65, 68 (2d Cir. 2018); *United Paperworkers Int'l Union v. Int'l Paper Co.*, 985 F.2d 1190, 1199 (2d Cir. 1993).

Because the testimony of alleged victims who are so-called "retail investors" may be relevant to the jury's determination of materiality, a defendant must be able to challenge the

"subjective views" of these alleged victims and argue that "under an objective materiality test, the misstatements would not have been deemed significant by a reasonable investor"—in other words, that the alleged victims are *not* representative of the hypothetical reasonable investor. *Litvak II*, 889 F.3d at 66.  To the contrary, a court would commit reversible error by precluding a defendant from arguing either that "(1) the specific statements at issue in the case would not be important to a reasonable investor," or "(2) the types of statements at issue are generally not important to a reasonable investor."  *Litvak I*, 808 F.3d at 183–84 (holding that exclusion of expert testimony by finance professor on materiality was error).  The government's motion ignores this established law and instead relies on a definition of materiality from wire fraud cases.  Gov't Memo at 26.  None of the other cases upon which the government relies has anything to do with securities fraud.  *See, e.g.*, *United States v. Thomas*, 377 F.3d 232, 241 (2d Cir. 2004) (transportation of stolen goods); *United States v. Rybicki*, 287 F.3d 257, 262 (2d Cir. 2002) (honest services fraud); *United States v. Amico*, 486 F.3d 764, 767 (2d Cir. 2007) (mail fraud based on falsifying loan applications).

Because Mr. Milton has a right to argue that the government's so-called "retail investor" witnesses are not representative of a hypothetical "reasonable investor," the Court should deny the government's motion *in limine* with respect to retail investors.

### III. BECAUSE MR. MILTON HAS A RIGHT TO ARGUE THAT PURPORTED VICTIMS RECEIVED THE FULL ECONOMIC BENEFIT OF THEIR BARGAIN WHEN THEY BOUGHT AND SOLD NIKOLA STOCK, THE COURT SHOULD DENY THE GOVERNMENT'S MOTION *IN LIMINE* WITH RESPECT TO MR. MILTON'S ALLEGED BELIEF ABOUT ULTIMATE HARM.

The government also seeks to "[p]reclude evidence and argument that [Mr. Milton] lacked intent to defraud because he believed no ultimate harm would come to the victims." Gov't Memo at 1.  The government specifically asks the Court to prohibit Mr. Milton from

arguing that he lacked scienter due to a belief that, despite any purported fraud, the alleged victims would not suffer harm in the long run because they eventually would make money. *Id.* at 28–30. But Mr. Milton has not made, and will not make, that argument.

Mr. Milton asserts that these so-called "retail investors" in Nikola "received exactly what they paid for," *United States v. Starr*, 816 F.2d 94, 99 (2d Cir. 1987), which was stock in a pre-revenue company facing substantial risks. As explained more fully in Defendant's December 15, 2021 Memorandum, Memorandum of Law in Support of Defendant's Motion to Dismiss . . . for Failure to Sufficiently Allege . . . Money or Property ("Motion to Dismiss for Money or Property") at 10–13, Dec. 15, 2021, ECF 44, none of Mr. Milton's alleged misrepresentations went to the "basis of the bargain." *Starr*, 816 F.2d at 99; *see also United States v. Takhalov*, 827 F.3d 1307, 1313 (11th Cir. 2016) ("[A] 'scheme to defraud,' . . . refers only to those schemes in which a defendant lies about the nature of the bargain itself.").

Because Mr. Milton has a right to argue that purported victims received the full economic benefit of their bargain, the Court should deny the government's motion *in limine* with respect to Mr. Milton's alleged belief about ultimate harm (a belief which will not be inserted into this case). *See United States v. Binday*, 804 F.3d 558, 570 (2d Cir. 2015) ("[W]e have repeatedly rejected application of the mail and wire fraud statutes where the purported victim received the full economic benefit of its bargain."); *cf. United States v. Mittelstaedt*, 31 F.3d 1208, 1219 (2d Cir. 1994) (citing real estate appraisals, typically considered expert testimony, as evidence that buyers of property received benefit of the bargain).

**IV.   BECAUSE EVIDENCE OF CERTAIN PRODUCT AND TECHNOLOGY DEVELOPMENTS IS RELEVANT TO BOTH THE INTENT AND FALSITY ELEMENTS OF THE CHARGED OFFENSES, AND BECAUSE THE PROBATIVE VALUE OF SUCH EVIDENCE FAR OUTWEIGHS ANY POSSIBLE PREJUDICE, THE COURT SHOULD DENY THE GOVERNMENT'S MOTION *IN LIMINE* WITH RESPECT TO NIKOLA'S PRODUCT AND TECHNOLOGY DEVELOPMENT AFTER SEPTEMBER 2020.**

The government also seeks to "[p]reclude evidence about Nikola's product and technology development" after September 2020.  Gov't Memo at 1.  The government specifically contends that the Court should exclude such evidence as irrelevant and unduly burdensome.  *Id*. at 30.

"[T]he standard of admissibility when a criminal defendant offers similar acts evidence as a shield need not be as restrictive as when a prosecutor uses such evidence as a sword."  *United States v. Aboumoussallem*, 726 F.2d 906, 911 (2d Cir. 1984).  Furthermore, where, as here, Mr. Milton seeks to introduce "similar acts evidence of a third party to prove some fact pertinent to the defense" the "risks of prejudice are normally absent." *Id*. at 911–12 (citations omitted).  "In such cases the *only* issue arising under Rule 404(b) is whether the evidence is relevant to the existence or non-existence of some fact pertinent to the defense."  *Id*. at 912 (emphasis added).

The government's request to preclude evidence about Nikola's product and technology development after September 2020 is irreconcilable with the time period alleged in Count Four of the Superseding Indictment, which charges that the alleged scheme extended to March 2021 (six months after the evidentiary cut-off date urged in the government's motion), Superseding Indictment at ¶ 4, and for which the government contends it will offer "the same set of proof" as

12

for Counts One, Two and Three.[5]  Decl. Of Bradley Bondi, Exhibit B at 5:7–8.  The government's request is further irreconcilable with its own witness list, which includes a number of "retail" investors who bought and sold Nikola stock after September 2020.  The government's motion prematurely and inexplicably would preclude Mr. Milton from asking those investors about the decision-making criteria motivating those subsequent purchases or sales—criteria which may include the post-September 2020 status of Nikola's products or technology.

Parroting the motion *in limine* with respect to Mr. Milton's alleged belief about ultimate harm, *see supra* III, the government mistakenly characterizes evidence of certain Nikola post-September 2020 milestones as irrelevant "good act" evidence that "victims suffered no loss or harm because of advancements at Nikola after his departure."  Gov't Memo at 30.[6]  Once again, Mr. Milton does not intend to demonstrate his lack of criminal intent by relying on a supposed belief that the alleged victims would not be harmed.  Mr. Milton intends to offer evidence regarding Nikola's product, technology and business development after September 2020 solely to demonstrate Mr. Milton's reasonable basis for the alleged misstatements.  Such evidence is

---

[5] The government stated at a June 29, 2022 conference: "First, the representations and the nature of the proof the government was going to put in to prove the falsity of the representations are nearly identical to the evidence that was already coming in. It's the same types of misrepresentations that were going to the broad investing public; it's the same set of proof, meaning like engineers who would say those things aren't true. In fact, some of the language that the defendant used is literally almost identical."  Decl. Of Bradley Bondi, Exhibit B at 5:3–10.

[6]  The single case the government cites for the proposition that "no harm, no foul" evidence is inadmissible involved a wholly different scenario—where the defendants, *not* contesting the illegality of the alleged accounting fraud, sought to admit evidence that the company did not suffer any losses.  *See* Government's Memorandum of Law in Support of its Motion *In Limine* at 18–20, *United States v. Petit*, 19-cr-0850 (JSR), Oct. 5, 2020, ECF 72 (citing *United States v. Leonard*, 529 F.3d 83 (2d Cir. 2008)); *Leonard*, 529 F.3d at 91–92 ("Even though the ISOs *intended to deny the investors of information*, they believed there *would be no ultimate harm* to investors because the movie would be produced as promised, and the investors would be no worse off for not knowing the true allocation of resources."(emphasis added)); *United States v. Levis*, 488 F. App'x 481, 486 (2d Cir. 2012) ("Levis also contends that the district court erred by failing to properly instruct the jury that *he is not guilty of wire fraud if he acted with a good faith belief that no harm would befall Doral's investors*." (emphasis added)).

probative of Mr. Milton's intent and reflects that Mr. Milton's statements regarding the plans were neither false nor intentionally so.

As an illustrative example, the original Indictment alleges that during the summer of 2020, Mr. Milton overstated the development of the Badger truck and that "the [Badger] prototypes were not finished until in or about November or December 2020" and that they "were little more than show cars."  Indictment at ¶¶ 49, 51, 61.  Given the extended time frame typical of vehicle prototyping, the fact that two Badger prototypes were completed by December 2020 is highly relevant to assessing Mr. Milton's statements about those prototypes a few short months beforehand.  Excluding evidence of the completed prototypes undoubtedly would leave the jury with the mistaken impression that the Badger prototypes were never produced or were simply hollow vessels.

The exclusion of any evidence of Nikola's post-September 2020 milestones would be highly prejudicial to Mr. Milton.  The government has alleged broadly that Mr. Milton made certain, enumerated misstatements *and* that he lied about "nearly all aspects of the business."  *Id.* at ¶ 2; *see also* Gov't Memo at 2.[7]  The government cannot preclude evidence of Nikola achieving certain milestones regarding the *very* topics about which Mr. Milton is alleged to have lied—especially when these milestones occurred in close proximity to Mr. Milton's departure and where their achievement fairly and reasonably can be attributed to Mr. Milton's efforts

---

[7] In a press conference on the day Mr. Milton was indicted, Former Acting U.S. Attorney Audrey Strauss similarly stated that "Mr. Milton lied about nearly *every aspect of the business*," (0:44–0:48) that "the Badger was nothing more than *another company's truck that was dressed up with Nikola branding*," (1:24–1:30) and that "most of those reservations were for a truck that Nikola . . . *has not produced to this day*" (2:12–2:19).  *See* CNBC, *Southern District of New York charges Nikola founder Trevor Milton with fraud*, YOUTUBE (Jul. 29, 2021), https://www.youtube.com/watch?v=rvBBpZavgYE (emphasis added) (Remarks of Former Acting U.S. Attorney Audrey Strauss).

during his tenure at Nikola.  The jury likely would imagine that Nikola is "vaporware" or another Theranos—when nothing could be further from the truth.

Contrary to the government's contentions, *see* Gov't Memo at 30, such evidence about Nikola's product and technology development after September 2020 will not confuse the issues or mislead the jury—but instead permit the defense to complete the narrative of issues that already will be presented at the trial.  There is no risk of multiple "mini-trials" as the government contends.  *Id.* at 31.  For instance, the defense still anticipates eliciting testimony about the negotiations with APS during Mr. Milton's tenure, the terms of the term sheet, and the electricity rate that was contemplated—whether or not the January 2021 APS contract is admitted into evidence.  Admitting evidence to show that an agreement with APS ultimately was reached as a result of these prolonged discussions is both relevant, reasonable, and closely related in time.

Because the probative value of evidence with respect to Nikola's product, technology and business development after September 2020 substantially outweighs any prejudice or risk of confusing the issues, misleading the jury, or undue delay, the Court should deny the government's motion *in limine* with respect to such evidence.  At a minimum, the Court should delay ruling until trial at which time the Court can make determinations under Federal Rule of Evidence 401 or Federal Rule of Evidence 403 in light of the actual evidence presented.

**V.      BECAUSE EVIDENCE OF MR. MILTON'S ACCURATE STATEMENTS IS RELEVANT TO INTENT AND MATERIALITY, THE COURT SHOULD DENY THE GOVERNMENT'S MOTION *IN LIMINE* WITH RESPECT TO SO-CALLED "GOOD ACTS" EVIDENCE.**

The government next seeks to "[p]reclude so-called 'good acts' evidence" under Federal Rule of Evidence 405(a).  The government specifically asks the Court to preclude Mr. Milton from introducing evidence that Mr. Milton "at times, conveyed accurate information" during podcasts and interviews.  *See* Gov't Memo at 32.  By way of example, the government points to

15

Mr. Milton's accurate discussion in several podcasts and interviews about the development status of certain Nikola semi-trucks and Nikola's plans to build a network of hydrogen stations.

The government's request is irreconcilable with the wide-ranging allegations of the Superseding Indictment and ignores established law.  Although the government conveniently acknowledges that some statements by Mr. Milton are "accurate," the government otherwise alleges that Mr. Milton engaged in a pervasive, boundless, and ceaseless scheme.  *See* Superseding Indictment at ¶¶ 1, 2, 3, 4 (alleging "from at least in or about November 2019 through at least in or about September 2020" Mr. Milton "engaged in a scheme to defraud investors in Nikola through false and misleading statements regarding the company's product, technology, and business development[]"); Press Release, Department of Justice, Former Nikola Corporation CEO Trevor Milton Charged In Securities Fraud Scheme (July 29, 2021), *supra*, n.7 ("Manhattan U.S. Attorney Audrey Strauss said: 'As alleged, Trevor Milton brazenly and repeatedly used social media, and appearances and interviews on television, podcasts, and in print, to make false and misleading claims about the status of Nikola's trucks and technology.'"). The government's theory of an ongoing scheme places at issue the frequency and consistency of Mr. Milton's statements regarding these topics.  The plain fact that Mr. Milton made other statements regarding Nikola's products, technology and business development that were either the same, similar, or different from the alleged misstatements is undeniably relevant.  *See United States v. Damti,* 109 F. App'x 454, 455–56 (2d Cir. 2004) (stating that "good acts" are relevant if they undermine the underlying theory of a criminal prosecution) (citation omitted); *see also id*. ("Evidence of past 'good acts' by a defendant is generally not probative unless a defendant is alleged to have 'always' or 'continuously' committed 'bad acts.'") (citing *United States v. Scarpa*, 913 F.2d 993, 1010 (2d Cir. 1990)).

16

Federal Rule of Evidence 405(a) does not apply to Mr. Milton's accurate interview and podcast statements about Nikola's products, technology and business development. Rule 405(a) instead speaks to the allowable methods of proving character. *See* Fed. R. Evid. 405(a). Indeed, the cases upon which the government relies primarily concern defendants who sought to call witnesses to attest to their good character. *See, e.g.*, *United States v. Nektalov*, No. 03 Cr. 828 (PKL), 2004 WL 1637010, at *1 (S.D.N.Y. July 21, 2004) ("Defendant Roman Nektalov has advised the government that he likely will put on character evidence in his case-in-chief."); *see also United States v. DiBenedetto,* 571 F.2d 1246, 1247 (2d Cir. 1978) ("This evidence was to show that Benedetto . . . was a person of good character[.]"). Mr. Milton intends to introduce his accurate statements, not as evidence of good character but for two different reasons: Such evidence demonstrates good faith, negating an intent to defraud, and provides context to the jury regarding the total mix of information available to reasonable investors. *See* Pre-Trial Conf. Tr. at 24–28, *United States v. Cole,* 1:19-cr-00869-ER (S.D.N.Y. Dec. 4, 2019), ECF 133 (admitting evidence of other transactions for the purpose of demonstrating defendant's good faith).

A.     **Accurate Additional Statements Demonstrate Mr. Milton's Good Faith.**

Statements within the interviews relating to the government's examples (and for other topics alleged in the Indictment) are directly relevant to Mr. Milton's good faith and lack of fraudulent intent. How often or frequently the alleged misstatements occurred as compared to clarifying or contradictory statements is probative of Mr. Milton's intent to embark on a scheme to defraud investors. The way "accurate" statements versus "misstatements" were interwoven in lengthy interviews also informs intent. Likewise, the variety and accuracy of statements made on the same topic in different forums on or around the same time speaks directly to Mr. Milton's intent. These statements demonstrate "an honest belief that [Mr. Milton's] conduct was not

17

improper or unlawful." *Litvak I*, 808 F.3d at 190; *see also United States v. Levin*, No. 15 Cr. 101 (KBF), 2016 WL 8711458, at *13 (S.D.N.Y. Jan. 8, 2016) (denying government's motion *in limine* to preclude "evidence of non-fraudulent conduct (*i.e.* 'good acts')" because evidence was being offered to "negate[] an intent to defraud").

### B. The Total Mix of Information Includes Both Accurate Additional Statements and the Allegedly Inaccurate Statements.

Both the "accurate" statements and the allegedly inaccurate statements compose the "total mix" of information available to reasonable investors—which is the legal standard against which a jury must assess the materiality of Mr. Milton's alleged misstatements.  Materiality cannot be evaluated based on cherry-picked statements (from either side).  Mr. Milton's "accurate" additional statements provide important background and are necessary to complete the story.  *See Levin*, 2016 WL 8711458, at *5 (finding that other acts evidence may be admitted to "provide background to the events alleged, and enable the jury to understand the complete story of the crimes charged" (citing *United States v. Mercado*, 573 F.3d 138, 141 (2d Cir. 2009))).

The government points to two examples of categories of topics that it seeks to preclude— the development of Nikola's other trucks and the development of the hydrogen program.  These topics, as well as others not specified by the government, are inextricably intertwined with the alleged misstatements and highly relevant as to intent and materiality.  With respect to the development of Nikola's other trucks, Mr. Milton frequently made statements regarding the company's other semi-trucks, such as the Nikola Two or the Nikola Tre in the same interview, or even in response to the same question in which Mr. Milton made an alleged misstatement.  For instance, the government designated partial statements in its proposed trial exhibits that were made in response to the question, "[W]hy is everyone so focused on this product? What makes it

so wonderful?"  But the government excluded both *the question* and the part of Mr. Milton's response in which he describes the development of other trucks.  *See* Decl. of Bradley Bondi, Exhibit A at 2–3.  The discussion of "other semi-trucks," the existence of certain technology in certain vehicles, and Mr. Milton's knowledge of the ability to leverage or scale that technology in other vehicles, is probative of Mr. Milton's state of mind at the time of the alleged misstatements.  This evidence provides the jury with relevant context and speaks directly to one of Mr. Milton's central defenses—that he may have spoken inarticulately but he lacked the intent to defraud.

With respect to Nikola's development of the hydrogen program, the government cannot contend plausibly that the court should preclude Mr. Milton from introducing evidence of the hydrogen plans where, as here, Mr. Milton's response to a question about the plan is an alleged misstatement and the question about the plan is designated by the government as a potential trial exhibit.  For instance, the government included an interview among its potential trial exhibits and designated the following language: "So just give us an update. Tell us a little bit about *the hydrogen fueling network that you envision* at Nikola and how you'll get there."  *See* Decl. of Bradley Bondi, Exhibit A at 10, June 20, 2022, ECF 119 (emphasis added).  Contrary to the government's assertion that evidence of Nikola's hydrogen plans would be "misleading" or risk "wasting time," Gov't Memo at 34, the government itself has conceded the relevance of such evidence.  The government cannot prosecute Mr. Milton by cherry-picking snippets of statements.  Mr. Milton must be able to offer relevant context in rebuttal to the government's arguments in order to present an effective defense to the charges against him.

Because Mr. Milton's accurate statements with respect to Nikola's product, technology and business development are both relevant and part of the "total mix" of information available

to investors, the Court should deny the government's motion *in limine* with respect to so-called

"good acts" evidence.

**VI.  BECAUSE THE PREJUDICIAL IMPACT OF EVIDENCE OF MR. MILTON'S COMPENSATION OR PURCHASES FAR OUTWEIGHS ANY POSSIBLE PROBATIVE VALUE, THE COURT SHOULD DENY THE GOVERNMENT'S MOTION *IN LIMINE* WITH RESPECT TO SUCH EVIDENCE.**

The government next seeks to "admit certain evidence regarding the defendant's

compensation and certain purchases."  Gov't Memo at 1.  But the government inappropriately

conflates Mr. Milton's employment income with Mr. Milton's wealth or overall net worth and

with certain purchases made with sale proceeds of Mr. Milton's Nikola shares.

The charges against Mr. Milton are based upon Mr. Milton's alleged misstatements, and

neither Mr. Milton's cumulative wealth nor how he funded certain purchases—whether through

the permissible sale of his legally acquired Nikola shares or other means—is probative of the

truth or falsity of those alleged misstatements.  *Compare* Gov't Memo at 35 ("The Government

also intends to offer evidence that after the defendant founded Nikola, he repeatedly sold Nikola

stock and used the proceeds to purchase property"), *with United States v. Hatfield,* 685 F. Supp.

2d 320, 326 (E.D.N.Y. 2010) ("[I]t is irrelevant if [the defendant] spent his fortune on lavish

parties, instead of donating it to starving Malawian orphans.").  Mr. Milton does not dispute that

a portion of his wealth stems from his ownership and subsequent sale of Nikola stock.  *See*

Motion *in Limine* to Exclude Irrelevant and Unfairly Prejudicial Evidence ("Irrelevance MIL") at

6, June 20, 2022, ECF 122; *compare with United States v. Bulgin*, 563 F. App'x 843, 846 (2d

Cir. 2014) ("[E]vidence of sudden acquisition of large amounts of money is also admissible to

prove criminal misconduct when pecuniary gain, as here, is the basic motive.").  Being wealthy

does not increase one's propensity to commit fraud.  *See* Irrelevance MIL at 5–6.

20

Further, although Mr. Milton's compensation after June 3, 2020 was almost exclusively through Nikola stock that would vest over time, Mr. Milton's shares in Nikola were subject to a lock-up period during the relevant time period—meaning he could not personally benefit from an artificially inflated stock price by selling his own shares.[8]  *See* Indictment at ¶¶ 20–21; *compare with Kalnit v. Eichler*, 264 F.3d 131, 139 (2d Cir. 2001) (applying Section 10(b)(5) in the civil context) ("[W]e have held motive sufficiently pleaded where plaintiff alleged that defendants misrepresented corporate performance to inflate stock prices *while* they sold their own shares." (emphasis added)).  Because the government already has indicated that it intends to introduce *other* evidence of Mr. Milton's purported "motive," that is, evidence that does *not* rely upon a prejudicial parade of multi-million-dollar properties, private aircrafts, and luxury sports cars that are certain to inflame the jury, the probative value (if any) of Mr. Milton's purchases is particularly low.  *See United States v. McCallum*, 584 F.3d 471, 477 (2d Cir. 2009) ("[T]he availability of other, less prejudicial, evidence on the same point ordinarily reduces the probative value of a given item of extrinsic evidence.").

The critical distinction between compensation and wealth is underscored by the cases upon which the government relies.  In *Ferguson*, the court admitted evidence of the mechanics of the defendant's deferred compensation plan, not evidence of the defendant's wealth or net worth.  *Compare* Gov't Memo at 37 (seeking to admit evidence of Mr. Milton's net worth), *with United States v. Ferguson*, No. 06 Cr. 137 (CFD), 2007 WL 4240782, at *1 (D. Conn. Nov. 30, 2007)

---

[8] Even if the government were to contend that Mr. Milton attempted to keep the price of Nikola stock inflated for at least six months until his lock-up period expired, Nikola would be required to issue a prospectus upon Mr. Milton's sale of securities given his controlling shareholder status.  17 C.F.R. § 230.424(b)(3).  The prospectus would be another official filing by Nikola and would serve to cure any alleged misrepresentations in the market, thus rendering this illogical argument moot.

("The Court finds that evidence of [defendant's] salary and bonuses at AIG is inadmissible because it is irrelevant to the charges against him.").  Similarly, the court in *Logan* admitted *only* evidence of defendant's income that he stood to lose if he made certain required disclosures—not evidence of the defendant's wealth, net worth, or spending habits—in sharp contrast to what the government seeks to introduce here.  *Compare* Gov't Memo at 37 (seeking to admit evidence of Mr. Milton's wealth generally), *with United States v. Logan*, 250 F.3d 350, 369 (6th Cir. 2001) (admitting *income* evidence).  The court in *Peters* allowed *limited* discussion of the defendant's wealth—not the full accounting that the government intends to introduce here—in a case in which the defendant opened the door by claiming that he was "duped" into participating in an accounting fraud; Mr. Milton advances no comparable arguments.  *United States v. Peters*, 543 F. App'x 5, 10 (2d Cir. 2013) ("Evidence of the defendant's wealth and business savvy was also relevant to refuting the defense's characterization of him as an honest businessman who was duped by a simple accounting scheme.").  The government likewise does not contend that Mr. Milton's wealth is otherwise relevant either to a supposed desire to protect his reputation and obstruct justice or to Mr. Milton's credibility.  *Compare with United States v. Quattrone*, 441 F.3d 153, 187 (2d Cir. 2006) (affirming the district court's admission of evidence of wealth relevant to defendant's reputation and obstruction of justice), *and United States v. Weiss*, 914 F.2d 1514, 1523 (2d Cir. 1990) (affirming the district court's admission of evidence of wealth relevant to defendant's credibility).

*Even if* certain aspects of Mr. Milton's compensation, net worth and purchases were relevant (and they are not), this type of evidence is a poorly disguised attempt to inflame the jurors by referencing the wealth and class divide between Mr. Milton and any potential juror—a strategy the government has broadcast since it filed the original Indictment.  *See* Irrelevance MIL

at 10–11; *see also* Memorandum of Law in Support of Defendant's Motion to Strike Surplusage at 6, Dec. 15, 2021, ECF 56 (addressing allegations in the Indictment referring to Mr. Milton as a "serial entrepreneur" and stating that Mr. Milton aspired to be listed on the Forbes 100); Reply in Support of Defendant's Motion to Strike Surplusage at 4–5, Jan. 31, 2022, ECF 79 (same). Because the unfair prejudice to Mr. Milton of evidence with respect to "compensation and purchases of property" far outweighs any limited probative value, *see* Irrelevance MIL at 5–6, 10–11, the Court should deny the government's motion *in limine* with respect to such evidence.

## VII.   BECAUSE THE GOVERNMENT HAS NOT MET AND CANNOT MEET THE REQUIREMENTS FOR ADMISSIBILITY, THE COURT SHOULD DENY THE GOVERNMENT'S MOTION *IN LIMINE* WITH RESPECT TO CERTAIN STATEMENTS BY NIKOLA EMPLOYEES.

The government also seeks to circumvent Federal Rule of Evidence 801(d)(2)(D) and the Confrontation Clause of the Constitution, moving to "[a]dmit certain statements by Nikola employees as statements by the defendant's agents."  Gov't Memo at 1.  The government specifically contends that "if the defendant runs the company or organization, statements made by employees who are responsible to that defendant may be admitted under" Rule 801(d)(2)(D). Gov't Memo at 39.  As demonstrated below, however, the government's contention is meritless.

Rule 801(d)(2)(D) provides that a statement is not hearsay if "[t]he statement is offered against an opposing party and . . . was made by the party's agent or employee on a matter within the scope of that relationship while it existed."  Admissibility against an individual defendant under Rule 801(d)(2)(D) "depends on the relationship between the declarant and the defendant." *Zaken v. Boerer*, 964 F.2d 1319, 1322 (2d Cir. 1992).  "In order to introduce evidence . . . under [this Rule], a party must lay a sufficient foundation by establishing (1) the existence of the agency [or employment] relationship, (2) that the statement was made during the course of the relationship, and (3) that it relates to a matter within the scope of the agency."  *Marcic v.*

*Reinauer Transp. Co.*, 397 F.3d 120, 128–29 (2d Cir. 2005) (internal quotation marks omitted). Rule 801(d)(2)(D), furthermore, requires the Court to "examine . . . each statement [offered] to determine whether the requisite relationship existed between the declarant and [defendant] to make the statement admissible against [defendant] in [his] individual capacity." *Zaken*, 964 F.2d at 1323.

The existence of an agency relationship "is ordinarily a question of fact." *Garanti Finansal Kirilama A.S. v. Aqua Marine and Trading Inc.*, 697 F.3d 59, 71 (2d Cir. 2012) (internal quotation marks omitted); *see also In re Tribune Co. Fraudulent Conveyance Litig.*, 946 F.3d 66, 79 (2d Cir. 2019) (holding that existence of agency relationship "is a mixed question of law and fact[]") (internal quotation marks omitted).  Where, as here, a question of fact arises in connection with the admissibility of evidence, the court sits as factfinder under Rule 104(a), as the government acknowledges.  *See* Gov't Memo at 40.  The proponent of the evidence has the burden of persuasion and must prove the foundational facts by a preponderance of the evidence. *Bourjaily v. United States*, 483 U.S. 171, 175–76 (1987).

The government's position—which would "expand" Rule 801(d)(2)(D) "to include statements made by any person who is subordinate to a party opponent[,]"  thereby "creat[ing] a loophole in the hearsay rule through which evidence not contemplated by the authors of Rule 801 could be admitted"—is contrary to established law.  *United States v. Young*, 736 F.2d 565, 567 (10th Cir. 1983), *cited with approval in Zaken*, 964 F.2d at 1322–23.  Indeed, the government's motion represents a thinly veiled effort to prosecute Mr. Milton by email and text message, denying Mr. Milton the opportunity to cross-examine the witnesses and denying the jury the opportunity to observe and assess the witnesses.  The Court should reject this effort to push Rule 801(d)(2)(D) well beyond its purpose, which is to admit evidence that the hearsay

rules regard as classically reliable, based on proof of a traditional, genuine agency relationship, and certainly not to shield government witnesses from direct- and cross-examination.

### A.   The Government Has Not Established, and Cannot Establish, the Existence of an Employment or an Agency Relationship.

The government's assertion that the Nikola declarant/employees "were also [Mr. Milton's employees] for purposes of Rule 801(d)(2)(D)," Gov't Memo at 41, is both unsupported and insupportable.  The individuals identified in the government's motion—four named officers of Nikola, and unnamed engineers and marketing employees—were Nikola's employees, not Mr. Milton's employees.  Gov't Memo at 40–41.

The government cites *United States v. Rioux*, 97 F.3d 648 (2d Cir. 1996), purporting to support the citation with a parenthetical that asserts, "finding declarant was employee of defendant[.]"  *See* Gov't Memo at 41.  In *Rioux*, however, the Court grounded its holding on the existence of an *agency* relationship, not an *employment* relationship.  *See* 97 F.3d at 660–61 (using headings referring to "agency," and holding that district court "did not abuse its discretion in concluding that the [declarants'] statements were within the scope of their agency").  The government cites no case holding that the employees of a corporation somehow transform into the employees of one of those corporate employees.

The government likewise cannot support its assertion that the identified individuals were Mr. Milton's "agents."  "'[A]gency is the fiduciary relationship that arises when one person (a "principal") manifests assent to another person (an "agent") that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents to act.'"  *Tribune Co.*, 946 F.3d at 79 (quoting Restatement (Third) of Agency (the "Restatement") § 1.01 (2006)).  To establish an agency relationship between Mr. Milton and the Nikola declarant/employees, the government must establish (i) "the principal's

right to control the agent's actions," *Hollingsworth v. Perry*, 570 U.S. 693, 713 (2013) (quoting Restatement § 1.01 cmt. f), and (ii) the existence of a fiduciary relationship between the would-be agent and would-be principal.  *See id.* at 714 (quoting Restatement § 1.01 cmt. e) ("If the relationship between two persons is one of agency . . . , the agent owes a fiduciary obligation to the principal.").  Here, the government has not established, and cannot establish, either essential element of a supposed "agency" relationship between the Nikola declarant/employees and Mr. Milton.

### 1.   The Government Has Not Established, and Cannot Establish, the Requisite Control.

The government does not need to establish that "the defendant control[led] the daily tasks of the declarant[,]" *Rioux*, 97 F.3d at 660 (internal quotation marks omitted), but the government must show that "the principal . . . maintain[ed] control over key aspects of the undertaking." *Tribune Co.*, 946 F.3d at 79 (internal quotation marks omitted).  Yet, here, the government relies only upon conclusory proffers and fails to cite any evidence.[9]  The government, for example, makes no effort whatsoever to prove the reporting structure in existence at Nikola at any particular time, which included intermediate supervisors between declarant/employees and Mr. Milton, or to show whether and how the structure varied over time.  Those proffers (better characterized as slogans, such as "hands-on manager") do not identify the "key aspects of the [Nikola] undertaking[,]" much less prove Mr. Milton's control over them. *Tribune Co.*, 946 F.3d at 79 (internal quotation marks omitted).

---

[9] *See, e.g.*, Gov't Memo at 38–39 (asserting, without citation to evidence, that "all Nikola employees reported directly or indirectly to [Mr. Milton], who was the CEO[,]" and "if the defendant runs the company or organization, statements made by employees who are responsible to that defendant may be admitted under the Rule [801(d)(2)(D)]"); Gov't Memo at 40–41 (asserting, without citation to evidence, that Mr. Milton "was[,]" even as Nikola grew, "very hands on, eschewing corporate structure, and dealt directly with employees . . . . actively supervising the company's employees[;]" some declarant/executives "reported directly to the defendant" and other declarant/employees "worked right under those executives[]").

The government—all too obviously—wants to keep Nikola declarant/employees off the witness stand, immune from cross-examination, and invisible to the jury.  The Court should reject the government's effort to expand Rule 801(d)(2)(D) "to include statements made by any person who is subordinate to a party opponent[,]"  *Young*, 736 F.2d at 567, including even water cooler gossip and speculation by low-level employees.  Such an expansion would strip the Rule of its protections, time-tested to assure reliability, and would "create a loophole . . . through which evidence not contemplated by the authors of Rule 801 could be admitted."  *Id.*

The cases cited by the government are distinguishable.  In *Zaken*, the trial evidence (not pretrial proffers) showed that the individual defendant, against whom the plaintiff offered extra-judicial statements, owned 98% of the stock of the company, and "individually controlled almost every aspect of her business.  In addition to design and production, she handled advertising and finances.  She had ultimate decision-making power with respect to all corporate activities, including personnel decisions."  964 F.2d at 1321.  Here, by contrast, the government has proven no such state of facts.  Indeed, the government has not even tried to do so; it has cited no evidence in support of its motion.

The Second Circuit's decision in *Rioux* lies even further afield.  *Rioux* involved a sheriff's office, not a business corporation.  The trial evidence (again, not pretrial proffers) showed that the declarants "(1) were hand-picked by Rioux; (2) served at his pleasure; and (3) received their instructions through Rioux himself or the [Chief Deputy] Sheriff, a position Rioux created."  97 F.3d at 660.  Again, the government has proven no such state of facts.  Here, for example, Nikola, unlike Rioux's Sheriff's Office, had a board of directors.  *See, e.g.*, Indictment at ¶ 64 (alleging that Mr. Milton sought board's "permission" for Nikola's purchase of "electrolyzers").

27

### 2.  The Government Has Not Established, and Cannot Establish, a Fiduciary Relationship.

The government likewise has not established, and cannot establish, a fiduciary relationship between Mr. Milton and the Nikola declarant/employees.  Employees of a common employer are coagents of a common principal, even if they "occupy different strata within an organizational hierarchy."  Restatement § 1.01 cmt. g.  Coagents owe fiduciary duties to their common principal.  Coagents, however, are not agents of each other and owe each other no fiduciary duties.  *Id*.

Here, until June 3, 2020, when Mr. Milton ceased to be an employee of Nikola, Mr. Milton and Nikola declarant/employees were employees of a common employer, Nikola.  All those employees were coagents of a common principal, Nikola.  Each coagent owed fiduciary duties to Nikola, the common principal.  None, however, was an agent of Mr. Milton, and none owed fiduciary duties to Mr. Milton.  In the absence of fiduciary duties, there cannot be an agency relationship.

The government also has not established, and cannot establish, that the declarant/employees were subagents of Mr. Milton.  "A subagent is a person appointed by an agent to perform functions that the agent has consented to perform on behalf of the agent's principal and for whose conduct the appointing agent is responsible to the principal."  Restatement § 3.15(1).  "The relationships between a subagent and the appointing agent and between the subagent and the appointing agent's principal are relationships of agency[.]"  *Id.*; *see also Agyin v. Razmzan*, 986 F.3d 168, 178 n.9 (2d Cir. 2021) (quoting Restatement § 3.15(1)).  Here, the government has not established, and cannot establish, that Mr. Milton, before June 3, 2020, appointed the Nikola declarant/employees to perform functions that Mr. Milton consented to perform on behalf of Nikola.

28

*Even if* the government were to establish a subagency relationship, a subagency relationship would  not support admissibility under Rule 801(d)(2)(D).  The rule treats an agent's statements as reliable because the agent, based on the duty of loyalty to the principal, is "unlikely to make statements damaging to his principal or employer unless those statements are true." *Nekolny v. Painter*, 653 F.2d 1164, 1171–72 (7th Cir. 1981); *see* 5 Jack Weinstein et al., *Weinstein's Federal Evidence* § 801.33[1] (2022).  But where the declarant is a subagent of the party against whom the extra-judicial declarations are offered, that declarant/subagent owes fiduciary duties to both the principal and the appointing agent, and "the principal's rights as to the subagent are superior to rights of the appointing agent, even in the event of conflict or disagreement between principal and appointing agent."  Restatement § 3.15 cmt. d.

Here, as subagents, the declarant/employees would serve two masters—and Nikola, the principal, would stand superior to the other.  Because the interests of the declarant/employees and Mr. Milton would have diverged, the conflicts of interest of these purported sub-agents would make their declarations inadmissible against Mr. Milton.  *See, e.g.*, *SEC v. Geon Indus., Inc.*, 531 F.2d 39, 43 n.3 (2d Cir. 1976) (holding statements by suspended employee inadmissible against employer); *United States v. Summers*, 598 F.2d 450, 457–59 (5th Cir. 1979) (holding inadmissible statements made by declarant after he started cooperating with FBI; declarant "could not be working for both the FBI and [defendant] at the same time"); *see also United States v. King*, 134 F.3d 1173, 1176 (2d Cir. 1998) (discussing issue of conflicting interests under Rule 801(d)(2)(D)).

**B.      Even If There Were an Agency Relationship, the Government Has Not Established, and Cannot Establish, that Statements Were Made During the Course and Within the Scope of the Relationship.**

Under Rule 801(d)(2)(D), the government must establish that each extra-judicial statement "was made during the course of the [agency] relationship, and . . . that it relates to a matter within the scope of the [relationship]." *Marcic*, 397 F.3d at 128–29 (internal quotation marks omitted). Here, the government's superficial proffer—without citation to evidence, *see, e.g.*, Gov't Memo at 42 ("The statements relate to the status of development of Nikola's products, problems or delays in the development of the products, and issues concerning comments that the defendant made publicly concerning Nikola's products and reservations[]")—cannot support admissibility under Rule 801(d)(2)(D). In *Rioux*, the government introduced "letters" from Rioux to all deputies "stating that dues had to be paid . . . as a condition of employment." 97 F.3d at 661. The Second Circuit affirmed that "it was well within the scope of the supervisor's power [that is, the declarant's power] to enforce this policy." *Id*. Here, by contrast, the government points to nothing—much less anything as specific as the letters in *Rioux*.

Further, as a matter of law, extra-judicial statements made on or after June 3, 2020, the date on which Mr. Milton ceased to serve as CEO of Nikola, were not made during the course, and within the scope, of an agency relationship between Mr. Milton and the Nikola declarant/employees. After June 3, 2020, Mr. Milton served as a director, but "directors are neither the shareholders' nor the corporation's agents[.]" Restatement § 1.01 cmt. f(2); *see also Zornoza v. Terraform Global, Inc.*, 419 F. Supp. 3d 715, 734 (S.D.N.Y. 2019).

**C.     Because the Government Has Not Established Either an Agency Relationship or that the Statements Were Made During the Course of the Agency Relationship, the Government Has Not Met the Requirements for Admissibility Under Rule 801(d)(2)(D).**

Because the government has not established either the existence of a fiduciary

relationship (employment or agency) or that the statements were made during the course, and

within the scope, of that relationship, both of which are required by Rule 801(d)(2)(D), the Court

should deny the government's motion *in limine* as a matter of law.  In the alternative, the Court

should deny the motion without prejudice to renewal at a hearing, either pretrial or mid-trial—at

which the government would be required to offer actual evidence as to each statement, rather

than superficial conclusions.  *See Zaken*, 964 F.2d at 1323 (requiring the court to "examine . . .

each statement [offered] to determine whether the requisite relationship existed . . . to make the

statement admissible against [the defendant] in [his] individual capacity").

**D.     If the Court Allows the Government to Introduce Certain Statements of Nikola Employees Under Rule 801(d)(2)(D), the Court Should Permit Mr. Milton to Introduce Additional Evidence.**

If the Court were to admit evidence of statements of Nikola employees under Rule

801(d)(2)(D), the Court should permit Mr. Milton to introduce additional evidence.  Under Rule

106 and the common-law doctrine of completeness, Mr. Milton may introduce "any other part"

of a writing introduced by the government, Fed. R. Evid. 106, "a full . . . set of documents[,]"

*Phoenix Assoc. III v. Stone*, 60 F.3d 95, 102 (2d Cir. 1995), and oral statements offered to

provide completeness.  *See United States v. Williams*, 930 F.3d 44, 58–59 (2d Cir. 2019)

(holding that "compared to Rule 106, Rule 611(a) provides equivalent control over testimonial

proof[]") (internal quotation marks omitted).

Under Rule 806, furthermore, Mr. Milton may "attack[]" the "declarant's credibility . . .

by any evidence that would be admissible for [that] purpose[] if the declarant had testified as a

witness." Fed. R. Evid. 806. Such evidence may include "the declarant's inconsistent statement or conduct, regardless of when it occurred or whether the declarant had an opportunity to explain or deny it." *Id.* Here, as discussed *supra* I, Mr. Milton would offer evidence that those declarant/employees did not object to Mr. Milton's statements, and did not correct Mr. Milton's statements, or update Nikola's SEC filings in light of Mr. Milton's statements, despite their legal duties to do so. *See*, *e.g.*, *In re Int'l Bus. Machines*, 163 F.3d at 109–10; *Wellshire,* 773 F. Supp. at 573; *Abbott Laboratories*, 325 F.3d at 808–09.

### E.    The Admission of Testimonial Statements by Nikola Employees Would Violate Mr. Milton's Constitutional Rights Under the Confrontation Clause.

The Sixth Amendment provides, in pertinent part: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. The Confrontation Clause ensures a criminal defendant "a personal examination and cross-examination of the witness, in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief." *Mattox v. United States*, 156 U.S. 237, 242–43 (1895).

The government here plans to offer extra-judicial statements, which it has not yet identified, for the truth of the matters asserted in those statements. The witnesses who made those statements, however, are not unavailable for testimony at trial, and Mr. Milton has had no prior opportunity to cross-examine those witnesses. It follows that the Court cannot admit "testimonial statements" of such witnesses. *Crawford v. Washington*, 541 U.S. 36, 51 (2004); *see also Michigan v. Bryant*, 562 U.S. 344, 354 (2011) ("We . . . limited the Confrontation Clause's reach to testimonial statements[.]").

The question whether a particular statement qualifies as "testimonial" turns on the facts of each case, and depends on each item of evidence.  *Crawford*, 541 U.S. at 68.  Here, the government has yet to identify the statements that it plans to offer.  Because neither Mr. Milton nor the Court can determine now whether the statements are "testimonial," Mr. Milton hereby preserves his rights under the Confrontation Clause.

## **CONCLUSION**

For the reasons set forth above, Mr. Milton respectfully requests that the Court deny the government's motions *in limine*.


Dated: July 11, 2022                                   Respectfully submitted,

                                                       /s/ Bradley J. Bondi
                                                       Bradley J. Bondi
                                                       CAHILL GORDON & REINDEL LLP
                                                       1990 K Street NW, Suite 950
                                                       Washington, DC 20006
                                                       (202) 862-8910
                                                       bbondi@cahill.com

                                                       Marc L. Mukasey
                                                       MUKASEY FRENCHMAN LLP
                                                       570 Lexington Avenue, Suite 3500
                                                       New York, NY 10022
                                                       (212) 466-6400
                                                       Marc.Mukasey@mfsllp.com

                                                       *Counsel for Trevor Milton*