UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

                                             :

UNITED STATES OF AMERICA           :

                                             :

    - v. -                       :              S1 21 Cr. 478 (ER)

                                           :

TREVOR MILTON,                :

                                           :

                     Defendant.    :

                                           :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


# GOVERNMENT'S MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNT FOUR
## OR FOR A BILL OR PARTICULARS


                                    DAMIAN WILLIAMS
                                    United States Attorney
                                    Southern District of New York
                                    One St. Andrew's Plaza
                                    New York, New York 10007


Jordan Estes
Matthew Podolsky
Nicolas Roos
Assistant United States Attorneys
- Of Counsel -

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ..................................................................................................................... 1

    I.    FACTUAL BACKGROUND ............................................................................................. 1

    II.   PROCEDURAL BACKGROUND ...................................................................................... 6

ARGUMENT .......................................................................................................................... 8

    I.    THE DEFENDANT'S MOTION TO DISMISS ALLEGATIONS FROM COUNT FOUR SHOULD BE
        DENIED ...................................................................................................................... 8

        A.   Applicable Law ................................................................................................ 8

            1.   Motion to Dismiss ................................................................................ 8

            2.   Wire Fraud ........................................................................................... 9

        B.   Discussion ..................................................................................................... 10

    II.   THE DEFENDANT'S MOTION FOR A BILL OF PARTICULARS SHOULD BE DENIED ............... 14

        A.   Applicable Law .............................................................................................. 14

        B.   Discussion ..................................................................................................... 18

    III.  THE DEFENDANT'S RENEWED MOTIONS SHOULD BE DENIED ......................................... 20

CONCLUSION .................................................................................................................... 22

**PRELIMINARY STATEMENT**

The Government respectfully submits this memorandum of law in opposition to the defendant's motion to dismiss allegations relating to "lulling" in Count Four of the Superseding Indictment or, alternatively, for a bill of particulars (Dkt. No. 149) ("MTD"), as well as to the defendant's renewed pretrial motions (Dkt. No. 152).

With respect to the motion directed at Count Four of the Superseding Indictment, the defendant's effort to have particular facts or allegations dismissed from the Superseding Indictment finds no support in the law or facts, and should be denied. Similarly, the defendant's renewed motions should be rejected for the reasons previously set forth in the Government's prior opposition (Dkt. No. 71), and with respect to the defendant's motion to dismiss or transfer based on purportedly improper venue, for the reasons previously set forth by the Court (Dkt. No. 32).

**BACKGROUND**

## I.      Factual Background

As described in prior briefing (*see* Dkt. No. 71 at 2-4), the allegations in this case arise from a scheme undertaken by Trevor Milton to inflate the value of the stock of Nikola, the company Milton founded, led, and in substantial part owned, through a pattern of false, misleading, and fraudulent statements relating to Nikola's business. Counts One, Two, and Three of the Superseding Indictment specifically relate to Milton's scheme to induce investors—particularly individual, non-professional or "retail" investors—to purchase Nikola stock based on false, misleading, and fraudulent statements made and disseminated by Milton directly to the investing public through social media and television, print, and podcast interviews. (Dkt. No. 123 ("S1

1

Indictment") ¶¶ 1-3; Dkt. No. 1 ("Indictment") ¶ 1).[1] Milton made false and misleading statements regarding nearly all aspects of Nikola's business, which was to design and manufacture zero-emission battery-electric and hydrogen-electric vehicles, electric vehicle drivetrains, vehicle components, energy storage systems, and hydrogen station infrastructure. (Indictment ¶¶ 2, 6). These claims, which are described in detail in the original Indictment, included:

- false and misleading statements that Nikola had early success in creating a "fully functioning" semi-truck prototype known as the "Nikola One";

- false and misleading statements that Nikola had engineered and built an electric- and hydrogen-powered pickup truck known as "the Badger" from the "ground up" using Nikola's parts and technology;

- false and misleading statements that Nikola was producing hydrogen and was doing so at a reduced cost;

- false and misleading statements that Nikola had developed batteries and other important components in-house; and

- false and misleading claims that reservations made for the future delivery of Nikola's semi-trucks were binding orders representing billions in revenue.

(Indictment ¶ 2).

Count Four of the Superseding Indictment concerns a related scheme to defraud a particular individual using substantially the same misrepresentations in connection with Milton's purchase of a large ranch in Utah. (S1 Indictment ¶ 4). As the documents and witness statements produced to the defendant make clear, and as the Government will prove at trial, the defendant lied to the seller of the property about Nikola's business in order to persuade the seller to accept Nikola stock

---

[1]     As noted in the Government's letter dated June 22, 2022, the Superseding Indictment, in addition to adding a fourth count, removed the speaking portions of the original Indictment in contemplation of trial.

options in lieu of cash—options whose value was already inflated by the defendant's public-facing fraud scheme.

Specifically, on or about March 3, 2020, Nikola announced that its stock would become publicly listed on the NASDAQ through a merger between Nikola and a publicly traded special purpose acquisition company ("SPAC"), which transaction was to be completed on or about June 3, 2020. (Indictment ¶¶ 4, 15-16). As part of that transaction, the defendant agreed—under management and investor pressure—to a six-month stock lock-up, which prevented the defendant from selling the vast majority of his Nikola stock until six months after the consummation of the merger, on June 3, 2020. (Indictment ¶¶ 19-20).

In or about April 2020, however, after the merger was announced and VectoIQ's stock—which would become Nikola stock upon completion of the merger—had appreciated significantly, thanks at least in part to the defendant's unlawful efforts to inflate the stock's price, the defendant sought immediately to monetize portions of the stock he owned. To accomplish this goal, the defendant had a real estate broker contact an individual named Peter Hicks, who owned a property known as Wasatch Creeks Ranch in Utah. The defendant's broker conveyed to Hicks that the defendant wished to purchase Wasatch Creeks Ranch in exchange for (1) s payment of $7.5 million, and (2) an option to purchase a substantial amount of Nikola stock from the defendant, after the defendant's lock-up expired. Hicks had never sold property in exchange for stock or stock options, and came to understand that Nikola was a pre-revenue company, and therefore that its stock carried risk. Hicks preferred an all-cash offer, but was told by the defendant's broker, in substance, that the defendant was willing to purchase the property in exchange only for a combination of cash and stock.

In order to convince Hicks to accept the defendant's proposal, the defendant arranged for a call on or about April 10, 2020, between Hicks and the defendant, which the defendant's broker and Hicks's son joined. A portion of that call, which lasted approximately one hour, is reflected in two sets of contemporaneous notes taken by Hicks and his son. Another portion of the call was recorded by Hicks's son. During that call, the defendant made a number of false and misleading statements regarding Nikola's business, consistent with the misrepresentations that form the basis of Counts One through Three.

Among other things, the defendant made misleading statements to Hicks and his son regarding the nature of the pre-orders for Nikola's semi-trucks, falsely claiming that he could, at his election, immediately convert 80% of those reservations into "hard orders." The defendant also made false and misleading claims regarding the status and progress of Nikola's hydrogen production and fueling program, which was critical to Nikola's plans for profitability. The defendant asserted, for example, that Nikola had already begun procuring power on long-term contracts at rates that permitted hydrogen to be produced profitably along particular routes where, according to the defendant, Nikola had already obtained a monopoly and begun to purchase land. These statements—which went to the heart of a potential investor like Hicks's assessment of the likelihood of success and profitability of Nikola, and of the value of Nikola's stock—were false.

Following this discussion, Hicks asked the defendant to supplement his offer with more cash, which the defendant initially declined. Nonetheless, in or about early June 2020, the defendant made a new offer to purchase Wasatch Creeks Ranch for (1) $8.5 million in cash, and (2) stock options valued then, based on prevailing market price for the stock, at $8.5 million. Hicks accepted the offer, and a deal was quickly reached.

4

On or about August 14, 2020, the transaction between the defendant and Hicks closed. Hicks received an option to purchase approximately 515,095 shares of Nikola stock at a strike price of $16.50 per share, which, based on the share price of Nikola's stock that day, was worth approximately $15 million, and could be exercised between December 1, 2020, and December 31, 2020.

In or about September 2020, a short seller publicly alleged that certain of the defendant's statements about Nikola's business had been false and misleading, the defendant resigned from Nikola, and Nikola's stock price dropped significantly. (*See* Indictment ¶ 80). As a result, the value of the stock options that the defendant had sold to Hicks in exchange for Wasatch Creeks Ranch diminished significantly, and the options eventually became effectively worthless.

Beginning shortly after the short seller's allegations were publicized, in or about September 2020, Hicks contacted the defendant several times in reference to the public allegations against the defendant and to inquire as to whether the defendant would re-purchase the stock options he had sold to Hicks—effectively, whether the defendant, under the circumstances, would replace the options that he had convinced Hicks to accept with cash—and the defendant responded, in substance, that he could not address the proposal at that time. Hicks continued to reach out to the defendant regarding the options contract until in or about December 2020, before the window to exercise his options expired, when Hicks emailed the defendant to ask whether, in light of the events that had transpired and caused the stock price to drop and before he "decide[d] on other courses of action," the defendant would agree to extend the exercise window.

In response, the defendant denied that he had engaged in any fraudulent conduct and initially expressed a willingness to extend the exercise window, but ultimately offered instead to

sell to Hicks Nikola stock at a price below that at which the stock was currently trading so that Hicks could sell the stock for a profit. In a series of emails and phone calls, the defendant made clear to Hicks that the defendant would not settle with him for cash, but hinted that he might be willing in the future to sell Hicks more stock under the market price so that Hicks could obtain additional money by selling the stock. In or about March 2021, while he was the principal subject of an ongoing grand jury investigation into his efforts to defraud the investing public, though not into his scheme to defraud Hicks, the defendant transferred stock to Hicks's brokerage account, which Hicks sold for a net profit of approximately $1.6 million. In other words, the stock transfer effectively provided Hicks with a payment of approximately $1.6 million. As a result, Hicks did not pursue legal or other action at that time.

However, on July 28, 2021, a grand jury sitting in this district charged the defendant in three counts arising from false, misleading, and fraudulent statements made publicly that were substantially similar to representations made by the defendant to Hicks. On March 14, 2022, following failed attempts by Hicks to settle with the defendant, Hicks filed a lawsuit in the United States Court for the District of Utah alleging that the defendant had made false and misleading statements to and had defrauded Hicks in connection with the sale of Wasatch Creeks Ranch. (*See Peter Hicks, et al. v. Trevor R. Milton, et al.*, No. 22 Civ. 166 (CMR) (D. Utah filed Mar. 14, 2022), Dkt. No. 2).

## II.   Procedural Background

Following the public filing of Hicks's allegations, the Government began investigating whether, in the course of the previously charged scheme, the defendant had also engaged in a scheme to defraud Hicks. Beginning on June 6, 2016—the date agreed to by the parties for the

Government to begin to produce, on a rolling basis, 3500 material for the trial that was then scheduled to commence on July 18, 2022—the Government produced 3500 material relating to the conduct underlying Count Four. Beginning on June 16, 2022, the Government produced, on a rolling basis, documents obtained by the Government relating to the conduct underlying Count Four. To date, this discovery consists of (a) a recording, approximately 30 minutes in length, of a phone call during which the defendant explicitly and clearly misrepresented material facts relating to Nikola's business—consistent with substantively identical misrepresentations previously alleged in the original Indictment—and (b) approximately 254 pages of emails, notes, transactional documents, and several photos and a promotional video of the ranch itself.

On June 22, 2022, the grand jury returned a Superseding Indictment, charging the defendant with one count of securities fraud, in violation of 15 U.S.C. §§ 78j(b) & 78ff; 17 C.F.R. § 240.10b-5 and 18 U.S.C. § 2 ("Count One"); one count of securities fraud, in violation of 18 U.S.C. §§ 1348 and 2 ("Count Two"); and one count of wire fraud, in violation of 18 U.S.C. §§ 1343 and 2 ("Count Three"), all of which were charged in the initial Indictment; as well as one count of wire fraud, in violation of 18 U.S.C. §§ 1343 and 2, relating to the fraud committed by the defendant in connection with his purchase of Wasatch Creeks Ranch (Count Four). The Superseding Indictment charged that, in connection with Count Four, the defendant "engaged in a scheme to defraud the sellers of a property known as Wasatch Creeks Ranch through false and misleading statements regarding Nikola's product, technology, and business development," and provided further notice that, "as part of that scheme, [the defendant] engaged in conduct designed to lull the sellers and postpone actions by the sellers that would bring Milton's false and misleading statements to light, including through the use of interstate wires." (S1 Indictment ¶ 4).

7

<u>**ARGUMENT**</u>

**I.      The Defendant's Motion to Dismiss Allegations From Count Four Should Be Denied**

**A.      Applicable Law**

**1.      Motions to Dismiss**

On a pretrial motion to dismiss pursuant to Fed. R. Crim. P. 12(b), the allegations of the indictment must be taken as true. *See Boyce Motor Lines, Inc. v. United States*, 342 U.S. 337, 343 n.16 (1952); *United States v. Goldberg*, 756 F.2d 949, 950 (2d Cir. 1985). The law is well settled that "[a]n indictment returned by a legally constituted and unbiased grand jury . . . if valid on its face, is enough to call for trial of the charges on the merits." *Costello v. United States*, 350 U.S. 359, 365 (1956). The dismissal of an indictment is an "'extraordinary remedy' reserved only for extremely limited circumstances implicating fundamental rights." *United States v. De La Pava*, 268 F.3d 157, 165 (2d Cir. 2001) (citation omitted).

"Pursuant to Federal Rule of Criminal Procedure 7, 'the indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged.'" *United States v. Vilar*, 729 F.3d 62, 80 (2d Cir. 2013) (quoting Rule 7(c) (alterations omitted)). To satisfy this rule, "an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *United States v. Yannotti*, 541 F.3d 112, 127 (2d Cir. 2008) (internal quotation marks omitted). Only in "very rare cases," such as those involving a refusal to answer questions before Congress, must an indictment specify "how a particular element of a criminal charge will be met." *United States v. Stringer*, 730 F.3d 120, 125-26 (2d Cir. 2013) (discussing the special case of *Russell v. United States*, 369 U.S. 749 (1962)). Otherwise, "[a]n indictment is sufficient if it 'first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must

defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'" *Stringer*, 730 F.3d at 124 (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)); *see also Yannotti*, 541 F.3d at 127.

Where a defendant has been given sufficient notice of the charges against him by means of, for example, a criminal complaint or discovery, prejudice will not have been shown, and the indictment should stand. *See, e.g.*, *Stringer*, 730 F.3d at 124-25; *Yannotti*, 541 F.3d at 127. Moreover, it is well settled that, "unless the government has made what can fairly be described as a full proffer of the evidence it intends to present at trial," a facially valid indictment is not subject to challenge based on the quality or quantity of evidence. *United States v. Alfonso*, 143 F.3d 772, 776 (2d Cir. 1998); *see United States v. Williams*, 504 U.S. 36, 54 (1992). To that end, "at the indictment stage, [courts] do not evaluate the adequacy of the facts to satisfy the elements of the charged offense." *United States v. Dawkins*, 999 F.3d 767, 780 (2d Cir. 2021). Rather, "[t]hat is something [courts] do after trial." *Id.* This is consistent with the well-established principle that summary judgment proceedings "do[] not exist in federal criminal procedure." *Id.*

### 2.    Wire Fraud

Title 18, United States Code, Section 1343 provides in pertinent part that "[w]hoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire . . . in interstate or foreign commerce . . . any writings, signs, [or] signals . . . for the purpose of executing such scheme or artifice," is guilty of a crime. To prove wire fraud in violation of this provision, the Government must establish three elements beyond a reasonable doubt: (1) a scheme to defraud another of money or property; (2) knowing participation in the scheme with specific intent to defraud; and (3) use of the wires to further the

scheme. Leonard B. Sand *et al.*, *Modern Federal Jury Instructions: Criminal* § 44-3; *United States v. Greenberg*, 835 F.3d 295, 305 (2d Cir. 2016).

A wire that is sent after a victim is deprived of money or property is nonetheless considered in furtherance of a scheme to defraud where the wire was "designed to lull the victims into a false sense of security, postpone their ultimate complaint to the authorities, and therefore make the apprehension of the defendants less likely than if no mailings had taken place." *United States v. Lane*, 474 U.S. 438, 451-52 (1986) (quotation marks and citation omitted); *see also, e.g.*, *United States v. Rutigliano*, 790 F.3d 389, 396-98 (2d Cir. 2015) (venue proper based on mailings sent to ensure that defendants would continue to receive benefits and prevent discovery of fraud); *United States v. Scop*, 846 F.2d 135, 138-39 (2d Cir. 1988) (acts taken for the purpose of either "executing the scheme or 'lulling' victims to prevent them from complaining to the authorities" constitute conduct in furtherance of the scheme).

### B.    Discussion

The defendant seeks an order of the Court "dismiss[ing] Count Four of the Superseding Indictment with respect to the so-called 'lulling' conduct for failure to state an offense." (MDT 5).[2] The law does not provide for this form of relief, and, even if it did, there would be no basis for it. The motion should be denied.

As an initial matter, there is no authority for the relief sought by the defendant, which is apparently to have facts supporting a charge "dismissed." (MTD 4-5). Although Rule 12 does permit a defendant to raise a pretrial motion on the basis that an indictment "fail[s] to state an

---

[2]    Because the defendant's memorandum does not contain page numbers, citations to the MTD refer to the ECF pagination.

offense," Fed. R. Crim. P. 12(b)(3)(B)(v), the Rule does not authorize summary judgment or permit a court to evaluate the adequacy of any facts, *Dawkins*, 999 F.3d at 780. Indeed, the defendant's motion is telling: he argues that "the Court should dismiss . . . the so-called 'lulling' conduct for failure to state an offense." (MTD 5). But the "lulling conduct" is not an offense—the offense alleged is wire fraud; the Superseding Indictment merely gives the defendant the benefit of additional (and not required) notice of certain exemplary facts supporting the charge. (*See* S1 Indictment ¶ 4). And, of course, "[o]n a motion to dismiss the indictment, the allegations of the indictment are taken as true." *United States v. Milton*, No. 21 Cr. 478 (ER), 2021 WL 5304328, at *4 (S.D.N.Y. Nov. 15, 2021). The defendant does not—and could not plausibly—claim to know exactly how the Government will prove the wire fraud allegation at trial, as is required to prevail in such a motion to dismiss. *See Alfonso*, 143 F.3d at 776-77. Nor can he establish that Count Four of the Superseding Indictment fails to "track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime" or otherwise fails to state a claim. *Yannotti*, 541 F.3d at 127. Accordingly, there is no basis in Rule 12 or otherwise to dismiss any portion of Count Four for "failure to state an offense" (MTD 5).[3]

---

[3]    Nor do the cases relied upon by the defendant suggest that this form of relief—dismissing particularly facts—is available. In *United States v. Kerik*, the defendant moved to dismiss on the basis of the statute of limitations two fraud counts (one mail fraud and one wire fraud), arguing that the specific mailing and specific wire alleged as to the respective counts, which allegedly brought each count within the statute of limitations, were not sent in furtherance of the scheme to defraud. 615 F. Supp. 2d 256, 268-70 (S.D.N.Y. 2009). The court denied the motion with respect to the mail fraud count but granted it with respect to the wire fraud count because the government there had alleged a mailing that was made to prevent discovery of the offense, but had alleged a

Even if there were some authority for the relief sought by the defendant, it still would not be warranted here. The defendant asserts that, "[a]s a matter of law, subsequent conduct cannot constitute 'lulling' in furtherance of a scheme when the alleged scheme has already been discovered." (MTD 4). The law does not support this proposition. Rather, a wire or mailing is made in furtherance of a scheme to defraud where it was "designed to lull the victims into a false sense of security, postpone their ultimate complaint to the authorities, and therefore make the apprehension of the defendants less likely than if no mailings had taken place." *Lane*, 474 U.S. at 451-52 (1986) (quotation marks and citation omitted); *see also Scop*, 846 F.2d at 138-39 (acts taken for "the purpose of either executing the scheme or 'lulling' victims to prevent them from complaining to the authorities" constitute conduct in furtherance of the scheme). Thus, where, as here, the defendant intends to lull the victim and to prevent complaint to the authorities or discovery of the scheme, it is irrelevant whether, in fact, some authority had begun an investigation. The cases relied upon by the defendant are not to the contrary. Rather, these cases merely stand for the proposition that, where the intent of the defendant in sending a mailing or wire was to obstruct an investigation rather than to prevent a victim from discovering or complaining of a crime, that mailing or wire may be part of the separate crime of obstruction of

---

wire that was made to obstruct an investigation, rather than prevent discovery of the offense. *Id.* at 269-70. Notably, the court did not "dismiss . . . the so-called 'lulling' conduct for failure to state an offense" (MTD 5), it merely addressed whether the indictment had sufficiently alleged offenses within the statute of limitations.

Similarly, in *United States v. Victor Teicher & Co.*, the defendant moved to dismiss a wire fraud count on the basis that the indictment—which relied on a specific wire for the relevant count—did not allege a wire in furtherance of the scheme to defraud. 726 F. Supp. 1424, 1434-35. The court there reasoned that the wire alleged, like in *Kerik*, was, according to the government, sent to obstruct an ongoing investigation, not to lull and prevent discovery. *Id.* at 1435. Accordingly, neither *Kerik* nor *Victor Teicher* stand for the proposition that a court may "dismiss" particular allegations referenced in support of a valid fraud charge.

justice, but should not be considered to be in furtherance of the fraud scheme. *Kerik*, 615 F. Supp. 2d at 268-70; *Victor Teicher*, 726 F. Supp. at 1434-35.

In any event, the defendant's claim that "subsequent conduct cannot constitute 'lulling' in furtherance of a scheme when the alleged scheme has already been discovered" (MTD 4) is entirely beside the point. The Superseding Indictment does not allege that the lulling conduct occurred when the scheme had already been discovered. Instead, it alleges that "MILTON engaged in a scheme to defraud the sellers of a property known as Wasatch Creeks Ranch through false and misleading statements regarding Nikola's product, technology, and business development, and, as part of that scheme, engaged in conduct designed to lull the sellers and postpone actions by the sellers that would bring Milton's false and misleading statements to light." (S1 Indictment ¶ 4). The Superseding Indictment alleges clearly that the intent of the defendant's efforts to "lull" was not to obstruct an ongoing investigation, but rather to prevent discovery of the offense and revelation to the authorities. The Government is therefore entitled to proceed to a trial on the merits of the validly returned Superseding Indictment. *Costello*, 350 U.S. at 365.

Finally, although a motion to dismiss is not an avenue for challenging the sufficiency of the evidence, it is worth noting here just how clearly the facts, assumed to be true for purposes of this motion, establish the defendant's lulling conduct. As noted above, in September 2020, a short seller made allegations concerning the veracity of certain public statements made by the defendant. These allegations did not include any facts relating to the sale of Wasatch Creeks Ranch, and although the defendant quickly became aware of a Government investigation into, among other things, his public statements, the Government was not, at the time, investigating representations made by the defendant in connection with his purchase of Wasatch Creeks Ranch. With knowledge

13

that the Government was nonetheless investigating his other conduct, the defendant responded to Hicks's inquiries by denying any misconduct and forestalling any action, such as a lawsuit, that would make matters related to the Wasatch Creeks Ranch public, by providing money to Hicks through under-market stock sales.

After the Government's initial Indictment alleging misrepresentations similar to those made by the defendant directly to Hicks became public, and the defendant declined to resolve the matter directly, Hicks did file a public lawsuit, which came to the attention of the Government. The Government thereafter investigated the circumstances surrounding the sale of Wasatch Creeks Ranch, and obtained facts proving that the defendant engaged in a scheme to defraud, leading to the filing of the Superseding Indictment. In other words, the defendant's initial efforts to lull Hicks and forestall discovery of his scheme to defraud Hicks were successful, and it was only later, after Hicks came to better understand that he had been defrauded and filed a lawsuit, that this particular fraud came to the attention of the authorities. Accordingly, the Superseding Indictment adequately alleges, and indeed, the facts that the Government expects to prove at trial demonstrate, that the defendant engaged in conduct designed to lull Hicks and forestall discovery of the offense, and there is no basis to dismiss Count Four.

## II.   The Defendant's Motion for a Bill of Particulars Should Be Denied

### A.   Applicable Law

The proper purpose of a bill of particulars under Federal Rule of Criminal Procedure 7(f) is "to provide a defendant with information about the details of the charge against him if this is *necessary* to the preparation of his defense, and to avoid prejudicial surprise at trial." *United States v. Torres*, 901 F.2d 205, 234 (2d Cir. 1990) (emphasis added). Accordingly, "[a] bill of particulars is required only where the charges of the indictment are so general that they do not advise the

14

defendant of the specific acts of which he is accused." *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999) (internal quotations omitted).

In exercising its broad discretion to determine whether the charges are "so general" that they require supplementing, the Court should consider not just the text of the Indictment, but also discovery and other information supplied to the defendant to date. Courts routinely deny requests for a bill of particulars where the Government has provided, through the charging instrument and discovery, sufficient information for the defendant to prepare his defense. *See United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987) (per curiam); *see also Torres*, 901 F.2d at 234 (affirming denial of request for bill of particulars where defendants had "been provided with a wealth of evidentiary detail from the discovery to date, including electronic intercepts, search evidence, and exhaustive supporting affidavits" (internal citation omitted)); *United States v. Tuzman*, 301 F. Supp. 3d 430, 452-53 (S.D.N.Y. 2017) (denying request for bill of particulars in market manipulation case, where "the Government has also provided a wealth of information in discovery, including a spreadsheet that 'detail[s] thousands of [trades]'"); *United States v. Stewart*, No. 15 Cr. 287 (LTS) (S.D.N.Y. Jan. 19, 2016) (Dkt. 64, at 20-22) (denying request for a bill of particulars in an insider trading case where the information already proffered was sufficient to enable the defendant to prepare for trial); *United States v. Cuti*, No. 08 Cr. 972 (DAB), 2009 WL 3154310, at *3-4 (S.D.N.Y. Sept. 24, 2009) (in accounting fraud case, denying request for particulars identifying all fraudulent transactions, payments, and statements made in furtherance of charged scheme where Government had furnished more than a million pages of discovery and, by letter, identified a series of fraudulent transactions and payments); *United States v. Trippe*, 171 F. Supp. 2d 230, 240 (S.D.N.Y. 2001) (denying bill of particulars request in stock fraud case where

15

indictment was 15 pages long and substantial discovery had been provided); *United States v. Henry*, 861 F. Supp. 1190, 1198 (S.D.N.Y. 1994) ("In determining whether to grant a motion requesting a bill of particulars, the Court must ascertain whether the information sought has been provided elsewhere, such as through pre-trial discovery, voluntary disclosure by the government, or the indictment itself.").

Of course, the Government's provision of "mountains of documents to defense counsel" is no substitute for a bill of particulars where one would otherwise be required, *Bortnovsky*, 820 F.2d at 575; *see also United States v. Nachamie*, 91 F. Supp. 2d 565, 571 (S.D.N.Y. 2000). But the provision of voluminous discovery in combination with guidance to defense counsel about what is most relevant can vitiate a need for further particulars. *See, e.g.*, *United States v. Kazarian*, No. 10 Cr. 895 (PGG), 2012 WL 1810214, at *25 (S.D.N.Y. May 18, 2012); *United States v. Mandell*, 710 F. Supp. 2d 368, 385 (S.D.N.Y. 2010) (denying request for particularization of alleged misrepresentations where the indictment was 34 pages long and Government had provided voluminous, organized discovery).

Because "the law does not impose upon the Government an obligation to preview its case or expose its legal theories," *United States v. Leonelli*, 428 F. Supp. 880, 882 (S.D.N.Y. 1977), "[t]he ultimate test must be whether the information sought is necessary, not whether it is helpful," *United States v. Mitlof*, 165 F. Supp. 2d 558, 569 (S.D.N.Y. 2001); *see also United States v. Mahabub*, No. 13 Cr. 908 (AJN), 2014 WL 4243657, at *2 (S.D.N.Y. Aug. 26, 2014) ("The purpose of a bill of particulars is to ensure that a defendant has the information necessary to prepare a defense, not to turn over all information that would aid the defendant."); *United States v. Rittweger*, 259 F. Supp. 2d 275, 292-93 (S.D.N.Y. 2003) (denying bill of particulars request as "an

16

impermissible attempt to compel the Government to provide the evidentiary details of its case" (citation and quotation marks omitted)).

A bill of particulars should not be misused to compel the Government to disclose "the manner in which it will attempt to prove the charges, the precise manner in which the defendant committed the crime charged, or a preview of the Government's evidence or legal theories." *Mitlof*, 165 F. Supp. 2d at 569; *see also Torres*, 901 F.2d at 234 ("'Acquisition of evidentiary detail is not the function of the bill of particulars.'" (quoting *Hemphill v. United States*, 392 F.2d 45, 49 (8th Cir. 1968))). The "'wheres, whens and with whoms'" are "beyond the scope of a bill of particulars." *Mitlof*, 165 F. Supp. 2d at 569 (citing *Torres*, 901 F.2d at 233-34). *See also United States v. D'Amico*, 734 F. Supp. 2d 321, 335 (S.D.N.Y. 2010) ("'A bill of particulars is not a general investigative tool, a discovery device or a means to compel the government to disclose evidence or witnesses to be offered prior to trial.'" (quoting *United States v. Gibson*, 175 F. Supp. 2d 532, 537 (S.D.N.Y. 2001))); *United States v. Bellomo*, 263 F. Supp. 2d 561, 580 (E.D.N.Y. 2003) ("A bill of particulars is not designed to: obtain the government's evidence; restrict the government's evidence prior to trial; assist the defendant's investigation; obtain the precise way in which the government intends to prove its case; interpret its evidence for the defendant, or disclose its legal theory."); *Henry*, 861 F. Supp. at 1197 ("This instrument should not function to disclose evidence, witnesses, and legal theories to be offered by the Government at trial or as a general investigative tool for the defense.").

There are good reasons why bills of particulars are warranted only where the allegations in the Indictment, as supplemented by discovery and otherwise, are so general as to render it impossible to prepare a defense. Because "a bill of particulars confines the Government's proof to

particulars furnished," it can "restrict unduly the Government's ability to present its case." *Henry*, 861 F. Supp. at 1197; *see also Mahabub*, 2014 WL 4243657, at *2 (recognizing that "care must be taken" in deciding whether to order a bill of particulars because "[t]he government's presentation of evidence at trial is limited to the particulars contained in the bill"); *United States v. Samsonov*, No. 07 Cr. 1198 (CM), 2009 WL 176721, at *3 (S.D.N.Y. Jan. 23, 2009) ("The vehicle of a bill of particulars serves to inform a defendant of the nature of the charge, when he is otherwise insufficiently informed, and must not be misused to compel disclosure of how much the Government can prove, nor to foreclose the Government from using proof it may develop as the trial approaches."). Moreover, the Government's provision of particulars is tantamount to an itemized preview of its proof and creates the very real danger that a defendant will "tailor [his] testimony to explain away the Government's case." *Henry*, 861 F. Supp. at 1197. These concerns animate the rule that "if the defendant has been given adequate notice of the charges against [him] and can prepare fully for trial with reasonably diligent efforts, the Government cannot be required to disclose additional details about its case." *Id.*

B. **Discussion**

The defendant seeks a bill of particulars regarding Count Four of the Superseding Indictment on the basis that he "will be unduly prejudiced if the government refuses to disclose more particulars regarding the so-called 'lulling' conduct and how it supports a wire fraud charge." (MTD 6). The Government has already provided the defendant with extensive detail regarding the allegations contained in Count Four of the Superseding Indictment, which is also set forth above in the description of the Count. But even if it were true that additional details would provide a benefit to the defendant, this is not a sufficient basis for a bill of particulars, as the defendant has

18

not and cannot show that any additional particulars are necessary to the preparation of his defense. *See, e.g.*, *Torres*, 901 F.2d at 234.

Indeed, as the Superseding Indictment and the Government—through repeated discussions with the defense, production of discovery, and now motion practice—have made clear, the defendant engaged in conduct designed to prevent the discovery of his scheme to defraud the seller of Wasatch Creeks Ranch. Specifically, the defendant denied to Hicks making misrepresentations or otherwise engaging in fraudulent conduct and, through non-cash transactions, paid Hicks to forestall him from filing a lawsuit or taking other action that would lead to the discovery of the scheme to defraud. Notably, the communications that were a part of this conduct occurred largely through emails that were produced by the Government and which the Government made clear were part of this portion of the case. Nor could the defendant plausibly claim confusion—these communications occurred over only a handful of emails constituting less than 250 pages of discovery, much of it repetitious.

The specific requests for particulars now advanced by the defendant (MDT 7) make clear that his motion seeks a bill of particulars not for genuine notice as to the nature of the charges against him, but rather for improper purposes—namely, to compel the Government to disclose "the manner in which it will attempt to prove the charges, the precise manner in which the defendant committed the crime charged, or a preview of the Government's evidence or legal theories," *Mitlof*, 165 F. Supp. 2d at 569, much of which information the defendant has nonetheless already received. In short, the defendant is certainly on notice of the nature of the charges contained in Count Four of the Superseding Indictment, has been apprised in detail of the facts concerning

his efforts to lull Hicks and forestall discovery of the scheme to defraud Hicks, and no further particulars are warranted.

## III.    The Defendant's Renewed Motions Should Be Denied

The defendant has moved to renew his prior pretrial motions and direct them against the Superseding Indictment. The defendant's motions should be rejected for the reasons previously set forth in the Government's prior opposition (Dkt. No. 71), and specifically with respect to the defendant's motion to dismiss or transfer based on purportedly improper venue, for the reasons previously set forth by the Court (Dkt. No. 32).

Additionally, the defendant has filed a "notice of supplemental authority regarding his renewed motion to dismiss charges of scheme liability of Count One of the Indictment." (Dkt. No. 156). In particular, the defendant points the Court to the Second Circuit's opinion in *SEC v. Rio Tinto PLC*, 41 F.4th 47 (2d Cir. 2022), which, the defendant claims, "directly supports" (Dkt. No. 156) his attempt to dismiss scheme liability charges from the Superseding Indictment. While the defendant is correct that *Rio Tinto*, 41 F.4th at 53, maintains the distinction between "maker" liability and "scheme" liability under Rule 10b-5, it does not support his motion. In fact, *Rio Tinto* makes clear that the motion should be denied.

As an initial matter, there is substantial doubt that the rule the defendant seeks to rely upon in *Rio Tinto* has any application in criminal cases, insofar as it derives from the Supreme Court's reasoning in *Janus Capital Group, Inc. v. First Derivative Traders*, 564 U.S. 135 (2011). *See Prousalis v. Moore*, 751 F.3d 272, 275-79 (4th Cir. 2014) (*Janus* concerns private rights of action and does not apply in criminal cases); *see also Rio Tinto*, 41 F.4th at 52, 54-55 (explaining basis for decision as considerations under the PSLRA and application to private civil actions). Moreover,

as the Second Circuit has recognized, the limitations on "maker" liability articulated in *Janus* and

its progeny are inapplicable in criminal cases such as this one, where there Government has pled

aiding-and-abetting and willfully causing liability under Title 18, United States Code, Section 2.

*See Prousalis v. United States*, 692 F. App'x 675, 676 (2d Cir. 2017) (summary order) (declining

to address whether *Janus* applied to criminal cases because the petitioner had allocuted in his plea

to conduct that constituted aiding and abetting securities fraud).

Even assuming the *Rio Tinto* does apply here, however, the Superseding Indictment

sufficiently alleges scheme liability to meet the standard articulated by the court in that case. This

is so, first, for the basic reason that the Superseding Indictment tracks the language of the statute

and is therefore sufficient to call for a trial on the facts. *Dawkins*, 999 F.3d at 780; *Yannotti*, 541

F.3d at 127. And, second, even if one were to consider the factual allegations contained in the

Indictment, they are far more than sufficient to allege scheme liability under *Rio Tinto*.

For example, the original Indictment explains that, "[i]n order to generate popular demand

for Nikola's stock, TREVOR MILTON, the defendant, used social media and television and

podcast interviews to communicate directly with potential retail investors." (Indictment ¶ 24). The

Indictment further details that the defendant sought to disseminate a series of false and misleading

statements and other information and content through podcasts, television, newspapers, and social

media sites, such as Twitter. (Indictment ¶¶ 24-25, 38-41, 44-45, 50-52, 54-55, 57, 59, 66-69, 73-

74, 78). These efforts included, among other things, misleading uses of technology, reservation

systems, and prototypes. (*See, e.g.*, Indictment ¶¶ 47-48, 55-56, 61, 64).

Thus, the Indictment alleges, at length and in detail, precisely the sort of additional facts

that give rise to scheme liability, even under *Rio Tinto*'s rubric. Indeed, as the Second Circuit

pointed out in *Rio Tinto*, allegations that go beyond misstatements and omissions themselves, such as the dissemination of those misstatements and omissions, give rise to scheme liability. 41 F.4th at 53. Further, the allegations contained in the Indictment describe conduct that the Supreme Court explained in *Lorenzo* forms scheme liability. In that case, the Supreme Court held that dissemination of false or misleading material constitutes a scheme because it "is easily an 'artful stratagem' or a 'plan,' 'devised' to defraud an investor." *Lorenzo*, 139 S. Ct. at 1101. The Indictment in this case alleges clearly just such an "artful stratagem" and "plan" "devised" to defraud an investor. Accordingly, the defendant's motion to dismiss any scheme liability charge in Count One should be denied.

## **CONCLUSION**

For the reasons set forth above, the defendant's motions should be denied.

Dated: New York, New York
         August 23, 2022

> Respectfully submitted,
>
> DAMIAN WILLIAMS
> United States Attorney
> for the Southern District of New York
>
> By:     _s/_____
>          Jordan Estes
>          Matthew Podolsky
>          Nicolas Roos
>          Assistant United States Attorneys
>          One Saint Andrew's Plaza
>          New York, New York 10007
>          Telephone: (212) 637-2543/1947/2421