UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

  v.

TREVOR MILTON,

    Defendant.

No. 1:21-cr-00478-ER

---

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S MOTION TO DISMISS COUNT FOUR OF THE SUPERSEDING INDICTMENT WITH RESPECT TO SO-CALLED "LULLING" CONDUCT OR, IN THE ALTERNATIVE, FOR A BILL OF PARTICULARS**

Bradley J. Bondi
CAHILL GORDON & REINDEL LLP
1990 K Street NW, Suite 950
Washington, DC 20006
(202) 862-8910
bbondi@cahill.com

Marc L. Mukasey
MUKASEY FRENCHMAN LLP
570 Lexington Avenue, Suite 3500
New York, NY 10022
(212) 466-6400
Marc.Mukasey@mfsllp.com

*Counsel for Trevor Milton*

Defendant Trevor Milton respectfully submits this Reply Memorandum of Law in further support of his Motion To Dismiss Count Four of the Superseding Indictment With Respect to So-Called "Lulling" Conduct or, in the Alternative, for a Bill of Particulars (ECF 148).[1]

## ARGUMENT

**I. AS A MATTER OF LAW, SUBSEQUENT CONDUCT CANNOT CONSTITUTE "LULLING" IN FURTHERANCE OF A SCHEME WHEN THE ALLEGED SCHEME ALREADY HAS BEEN DISCOVERED.**

As a matter of law, subsequent conduct cannot constitute "lulling" in furtherance of a scheme when the alleged victim already has discovered the alleged scheme. *See United States v. Kerik*, 615 F. Supp. 2d 256, 270 (S.D.N.Y. 2009) (granting motion to dismiss wire fraud charge where defendant already "was under investigation" and "[o]nce that investigation began, it is implausible to argue that [the defendant] was 'lulling' his victims to avoid the discovery of the alleged crime"); *United States v. Victor Teicher & Co., L.P.*, 726 F. Supp. 1424, 1435 (S.D.N.Y. 1989). Here, the government itself has acknowledged that the so-called "lulling" conduct occurred "*after the wire fraud was committed* and *after the scheme was exposed* . . . ." June 29, 2022 Hr'g Tr. at 4 (emphasis added). Indeed, in the government's recitation of the factual background underlying Count Four, the government conceded that the alleged victim "contacted [Mr. Milton] several times in reference to the [short seller's] public allegations against [Mr. Milton,]" Government Memorandum of Law in Opposition to Defendant's Motion To Dismiss Count Four or for a Bill of Particulars[2] ("Gov. Memo") (ECF 163) at 5, and filed the Private

---

[1] For brevity, Mr. Milton adopts the defined terms set forth in his Memorandum of Law in Support of Defendant's Motion To Dismiss Count Four With Respect to So-Called "Lulling" Conduct, or in the Alternative, for a Bill of Particulars ("Def. Memo") (ECF 149).

[2] Mr. Milton filed the Motion To Dismiss Count Four With Respect to So-Called "Lulling" Conduct, or in the Alternative, for a Bill of Particulars (ECF 148) and supporting memorandum on July 11, 2022. Pursuant to Local Criminal Rule 49.1(b), the Government Memorandum of Law in Opposition to Defendant's Motion To Dismiss Count Four or for a Bill of Particulars was due on or before July 25, 2022. The government, however, filed its opposition brief on August 23, 2022 (**four weeks past the deadline**) without seeking leave of the Court. This Court should not accept the government's very untimely opposition.

Civil Action only "following failed attempts . . . to settle with the defendant . . . ." *Id*. at 6. There is *no* factual dispute that the alleged victim knew at the time of the purported lulling about the so-called scheme, including the allegation that "certain of [Mr. Milton's] statements about Nikola's business had been false and misleading . . . ." *Id*. at 5.

    The government cites inapposite cases where the purported victim, unlike here, was unaware of the conduct. Relying on *United States v. Lane*, 474 U.S. 438 (1986), the government asserts that Mr. Milton's alleged conduct nonetheless constitutes lulling of the purported victim because the conduct was designed to "postpone [the purported victim's] ultimate complaint to the authorities . . . ." *Id*. at 451–52; Gov. Memo at 13 ("The Superseding Indictment alleges clearly that the intent of the defendant's efforts to 'lull' was . . . to prevent discovery of the offense and revelation *to the authorities*." (emphasis added)). But the government completely (and wrongly) ignores the predicate of this assertion: In *Lane*, the victims postponed their ultimate complaint because they had not discovered the scheme. *See Lane*, 474 U.S. at 452 (concluding that mailings, which occurred prior to last payment and final settlement of insurance claim underlying two counts of mail fraud against defendants, "clearly took place while the scheme was still continuing"); *id*. at 453 (observing that the jury was properly instructed on separate count of mail fraud "that mailings which facilitate concealment of the scheme are covered by the statute") (quotation marks omitted). A victim cannot report a scheme that he or she has not discovered—and if lulling conduct prevents the discovery of the scheme, then the victim is necessarily deprived of the ability to complain to the authorities. The factual background in *Lane* is entirely unlike the government's allegations of lulling conduct in Count Four here, where the alleged scheme had ended, the so-called victim explicitly knew about the scheme (as the government conceded), and—rather than reporting the scheme to authorities at

his earliest opportunity—the so-called victim chose instead to "attempt[] . . . to settle with" Mr. Milton and subsequently to file a civil lawsuit. Gov. Memo at 6.

A close reading of *United States v. Scop*, 846 F.2d 135 (2d Cir. 1988), and *United States v. Rutigliano*, 790 F.3d 389 (2d Cir. 2015), upon which the government relies, reaffirms that lulling requires conduct undertaken to prevent discovery of the scheme (and the consequences of such discovery, including the possible reporting to the authorities)—and conversely, conduct cannot constitute lulling if the scheme already has been discovered. In *Scop*, the Second Circuit explicitly concluded that the continued stock purchase and sales, the mailing of stock certificates and the reassurances to customers "to hold on to their shares," all of which constituted lulling, were sufficient evidence that the scheme to defraud had been ongoing. 846 F.2d at 138–39. Similarly, in *Rutigliano*, the Second Circuit unequivocally stated that the re-certifications of disability, which constituted lulling conduct, "were sent in order to ensure continued [disability] benefits and to prevent the [victim employer] from discovering the ongoing fraud." 790 F.3d at 396–97. Neither *Scop* nor *Rutigliano* has any applicability here, where—as the government explicitly acknowledges—the alleged scheme had concluded, and the purported victim had knowledge of the alleged scheme.

Perhaps recognizing the weakness of its position, the government tries to conflate *the government's* supposed lack of knowledge of the Real Estate Transaction with what the case law actually requires—that is, *the purported victim*'s lack of knowledge of the alleged scheme. But the object of the so-called lulling conduct must be the alleged victim, not the government. *See Victor Teicher*, 726 F. Supp. at 1435 (dismissing the wire fraud charge where conduct was intended not to lull the victim but to obstruct government investigation). The government is not the object of the alleged "lulling" conduct either here or in any of the cases relied upon by the

3

government. The government's knowledge of the Real Estate Transaction is entirely irrelevant to whether the purported victim had knowledge of the purported scheme (which he did) and whether the alleged "lulling" conduct was designed to prevent the so-called victim from discovering the scheme (which the conduct here could not have been). *Compare Lane*, 474 U.S. at 452 (where insurer victim was the object of the lulling conduct); *Rutigliano*, 790 F.3d at 396 (where employer victim was the object of the lulling conduct); *and Scop*, 846 F.2d at 138 (where shareholder victims were the object of the lulling conduct); *with Victor Teicher*, 726 F. Supp. at 1435 (1988) (dismissing wire fraud charge where conduct was intended not to lull the victim but to obstruct government investigation). Here, the purported victim could have reported the alleged scheme to the authorities any time after his discovery, which was "shortly after the short-seller's allegations were publicized, in or about September 2020," Gov. Memo at 5, but instead chose not to do so.

Because, as the government acknowledges, the alleged scheme had ended and the purported victim had discovered the alleged scheme in or about September 2020 and could have reported the alleged scheme to the authorities if he so chose, *see* Gov. Memo at 6, as a matter of law, no subsequent conduct by Mr. Milton can constitute "lulling" conduct in support of the wire fraud charge in Count Four.

**II.     THE COURT SHOULD GRANT DISMISSAL OF COUNT FOUR FOR FAILURE TO STATE A CLAIM WITH RESPECT TO SO-CALLED "LULLING" CONDUCT OR, IN THE ALTERNATIVE, STRIKE THE ALLEGATION OF SUCH CONDUCT AS SURPLUSAGE.**

As the government correctly observes, the elements of wire fraud are (1) a scheme to defraud another of money or property; (2) knowing participation in the scheme with specific intent to defraud; and (3) use of interstate wires in furtherance of the scheme. 18 U.S.C. § 1343. But any use of interstate wires *after the scheme had been discovered* cannot constitute lulling as

4

a matter of law and thus is not a wire "in furtherance of" the alleged scheme. The government contends that neither *Kerik*, 615 F. Supp. 2d 256, nor *Victor Teicher*, 726 F. Supp. 1424, stands for the proposition that a court may dismiss particular allegations in support of a valid fraud charge. But the allegation of so-called "lulling" conduct here does not support the wire fraud charge in Count Four for the reasons set forth *supra*—just as the conduct in *Kerik* without the alleged "lull" no longer fell within the statute of limitations for wire fraud, resulting in dismissal of that wire fraud charge, and the conduct in *Victor Teicher* was intended not to lull the victim but to obstruct a government investigation, resulting in dismissal of that wire fraud charge.

Indeed, even the purported victim's lawyer in the Private Civil Action clearly informed the government that the subsequent stock transaction (the "Subsequent Transaction")—which *might* be the conduct that the government contends constitutes "lulling"—is unrelated to the original Real Estate Transaction. *See* Declaration of Bradley J. Bondi in Support of Def. Memo, Ex. 2 (ECF 151-2). Defense counsel's review of discovery produced by the government suggests that the government's allegation related to the so-called "lulling" conduct represents an attempt to shore up a basis for venue in the Southern District of New York for Count Four. *Compare with Kerik*, 615 F. Supp. 2d at 270 (finding the government's attempt to categorize a wire sent within the limitations period as a "lull" to be unpersuasive and dismissing wire fraud charge that relied upon the "lull" to fall within the statute of limitations as time-barred). Mr. Milton will establish at trial that the purported victim, not Mr. Milton, proposed the Subsequent Transaction and expressed a desire for further transactions, which makes the government's idea that Mr. Milton used the Subsequent Transaction to "lull" the purported victim beyond absurd. *See* Declaration of Bradley J. Bondi in Support of Defendant's Reply Memorandum of Law, Ex. 1.

5

Pursuant to Rule 12(b) of the Federal Rules of Criminal Procedure, the Court should grant dismissal of Count Four for failure to state an offense with respect to so-called "lulling" conduct. Fed. R. Crim. P. 12(b). If the Court believes it does not have the authority to dismiss Count Four with respect to the so-called "lulling" conduct, Mr. Milton requests that the Court strike the allegation of so-called "lulling" conduct as surplusage under Rule 7(d) of the Federal Rules of Criminal Procedure. Fed. R. Crim. P. 7(d).

### III.   IF THE COURT DOES NOT DISMISS COUNT FOUR WITH RESPECT TO SO-CALLED "LULLING" CONDUCT OR STRIKE THE ALLEGATION OF SUCH CONDUCT, THE COURT SHOULD ORDER A BILL OF PARTICULARS.

Rule 7(f) of the Federal Rules of Criminal Procedure permits the Court to "direct the government to file a bill of particulars." *United States v. Vaid*, No. 16 Cr. 763 (LGS), 2017 WL 3891695, at *10 (S.D.N.Y. Sept. 5, 2017). After review of all discovery material provided by the government with respect to Count Four and the pleading in the Private Civil Action, Mr. Milton remains guessing as to the so-called "lulling" conduct.

Contrary to the government's assertion, Mr. Milton does not "demand to know the 'whens', 'wheres' and 'with whoms'" of the so-called "lulling" conduct. *United States v. Henry*, 861 F. Supp. 1190, 1197 (1994) (citations omitted). To avoid unfair surprise, however, Mr. Milton must know the "what." Neither the Superseding Indictment, nor the discovery material provided by the government with respect to Count Four, nor the pleading in the Private Civil Action describes (or presents evidence of) any conduct that could constitute "lulling" within the meaning ascribed in *Kerik* and *Victor Teicher* (that is, conduct prior to the purported victim's discovery of the scheme). If the government intends to present such evidence without disclosing more information around that so-called "lulling" conduct, Mr. Milton will suffer undue prejudice that will hamper his constitutional right to a fair trial. Pursuant to Rule 7(f) of the Federal Rules

6

of Criminal Procedure, the Court should order a bill of particulars with respect to any so-called "lulling" conduct subsequent to the purported victim's discovery of the alleged scheme in or about September 2020.  *See* Gov. Memo at 6.

### IV.     THE SECOND CIRCUIT'S DECISION IN RIO TINTO SUPPORTS MR. MILTON'S MOTION TO DISMISS CHARGES OF SCHEME LIABILITY UNDER COUNT ONE OF THE INDICTMENT.

In *SEC v. Rio Tinto PLC*, 41 F.4th 47 (2d Cir. 2022), decided on July 15, 2022, the Second Circuit held that the Supreme Court's decision in *Lorenzo v. SEC*, 139 S.Ct. 1094 (2019), did not abrogate *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161 (2d Cir. 2005)—meaning that allegations of misstatements and omissions alone are insufficient to state a scheme liability claim under Rule 10b-5(a) and (c).  The holding in *Rio Tinto* squarely supports Mr. Milton's reading of *Lentell*, *see* Memorandum of Law in Support of Defendant's Motion To Dismiss Charges of Scheme Liability Under Count One of the Indictment (ECF 49), at 7–10, and repudiates the government's contrary position, *see* Memorandum of Law in Opposition to Defendant's Pretrial Motions (ECF 71), at 26–27 n.3.

The government now contends that there is "substantial doubt" that the rule originally set forth in *Janus Capital Group, Inc. v. First Derivative Traders*, 564 U.S. 135 (2011), and subsequently applied by its progeny (including the Second Circuit's decision in *Rio Tinto*), controls in criminal cases.  This contention is meritless.

The Supreme Court in *Janus* based its reasoning upon its statutory construction of the word "make"—a word that does not vary whether the enforcement context for Rule 10b-5 is civil or criminal.  The Second Circuit has not held otherwise.  *See Prousalis v. United States*, 692 F. App'x 675, 676 (2d Cir. 2017) (declining to address whether *Janus* applies to criminal cases). Mr. Milton respectfully submits that *Prousalis v. Moore*, 751 F.3d 272, 275–79 (4th Cir. 2014),

7

upon which the government relies, was wrongly decided by the Fourth Circuit. Unless and until the Supreme Court or the Second Circuit addresses the applicability of *Janus* in the criminal context, the holding of *Janus* and its reasoning, based on statutory construction, should apply equally to both civil and criminal cases.[3] *Compare with, e.g., SEC v. C.M. Joiner Leasing Corp.*, 320 U.S. 344, 353–55 (1943) ("What, then, shall we say of the construction of a section like this, which may be the basis of either civil proceedings of a preventive or remedial nature, or of punitive proceedings, or perhaps both? . . . In the present case, we do nothing to the words of the [Securities] Act [of 1933]; we merely accept them."); *FCC v. Amer. Broadcasting Co.*, 347 U.S. 284 (1954) ("There cannot be one construction for the Federal Communications Commission and another for the Department of Justice. If we should give [this section] the broad construction urged by the Commission, the same construction would likewise apply in criminal cases.").

The Superseding Indictment, which is the applicable charging document in this case, includes a bare bones recitation of the statute and alleges *only* the vague and general phrase "false and misleading statements regarding the company's product, technology and business development." Nothing in the Superseding Indictment alleges, using the government's words, "precisely the sort of additional facts that [would] give rise to scheme liability" under *Lentell* or *Rio Tinto*. Gov. Memo at 21. Further, the fact pattern alleged by the government in the original Indictment represents nothing more than "aggregation of material misrepresentations to inflate stock . . . ." *Lentell*, 396 F.3d at 177; *see* Memorandum of Law in Support of Motion To Dismiss

---

[3] Employing a stricter construction for criminal securities fraud would "offend not only the rule of lenity but due process as well." *United States v. Chestman*, 947 F.2d 551, 570 (2d Cir. 1991) (under Rule 10b-5, addressing the misappropriation theory in the family context). If the Supreme Court wished to limit its reasoning in *Janus* to only civil cases, it could have and would have done so explicitly. *Compare with Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 191 (1994) (limiting its holding with respect to aiding and abetting liability under Rule 10b-5 to private rights of action).

8

Charges of Scheme Liability Under Count One of the Indictment ("Scheme Liability Memo") (ECF 49) at 8.

The government, in support of its argument to the contrary, quotes a single paragraph of the original Indictment: "In order to generate popular demand for Nikola's stock, TREVOR MILTON, the defendant, used social media and television and podcast interviews to communicate directly with potential retail investors."  Indictment ¶ 24 (as quoted in Gov. Memo at 21).  But that paragraph simply describes the alleged making of such statements and the means by which those statements were made—not any dissemination or conduct beyond the making itself.  As more fully set forth in the Scheme Liability Memo, the Superseding Indictment includes no allegations beyond the making by Mr. Milton of purportedly false and misleading statements.  The Court therefore should dismiss Count One of the Superseding Indictment to the extent that it relies upon scheme liability.

## CONCLUSION

For the reasons set forth above, Mr. Milton respectfully requests that the Court dismiss Count Four of the Indictment with respect to so-called "lulling" conduct pursuant to Rule 12(b) of the Federal Rules of Criminal Procedure, or, in the alternative, strike the allegation with respect to such conduct as surplusage under Rule 7(d).  If the Court does not dismiss Count Four of the Indictment with respect to so-called "lulling" conduct or strike the allegation with respect to such conduct, Mr. Milton requests that the Court order the government to file a bill of particulars as more fully described in the Memorandum of Law in Support of Defendant's Motion To Dismiss Count Four With Respect to So-Called "Lulling" Conduct, or in the Alternative, for a Bill of Particulars (ECF 149).

Dated: August 30, 2022                  Respectfully submitted,

/s/ Bradley J. Bondi
Bradley J. Bondi
CAHILL GORDON & REINDEL LLP
1990 K Street NW, Suite 950
Washington, DC 20006
(202) 862-8910
bbondi@cahill.com

Marc L. Mukasey
MUKASEY FRENCHMAN LLP
570 Lexington Avenue, Suite 3500
New York, NY 10022
(212) 466-6400
Marc.Mukasey@mfsllp.com

*Counsel for Trevor Milton*