UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

TREVOR MILTON,

               Defendant.

**ORDER**

21 Cr. 478 (ER)

RAMOS, D.J.:

      Third-party movant Nikola Corporation moves to intervene and for a protective order regarding Milton's motion in limine, Doc. 114, to allow testimony concerning communications by Britton Worthen, general counsel of Nikola, related to statements made by Milton. Doc. 138. For the reasons set forth below, the motion to intervene and the motion for a protective order is GRANTED.

I.      BACKGROUND

      The Court assumes familiarity with the background of this case as set forth in the Court's November 15, 2021 Opinion and Order, Doc. 32. The Government has since filed a Superseding Indictment adding one count of wire fraud related to Milton's alleged scheme from April 2020 to March 2021 to defraud the sellers of a property known as Wasatch Creeks Ranch through false and misleading statements. Doc. 123.

      Milton filed motions in limine on June 20, 2022, including one motion to allow testimony concerning Worthen's communications related to any statements allegedly made by Milton. Doc. 114. Specifically, the motion seeks to admit "all testimony by [Worthen] and other Nikola personnel concerning [Worthen]'s communications related to any public-facing or so-called "retail investor"-facing statements allegedly made by [Milton] without any limitation based on purported attorney-client privilege." Doc. 115 at 5. Milton argues that Nikola voluntarily

waived any privilege over these communications pursuant to its June 25, 2021 Disclosure Stipulation, Doc. 116-1, with the Government and by prior and subsequent disclosures to the Government. *Id.* The Disclosure Stipulation reads as follows:

> WHEREAS, in connection with an investigation relating to possible violations of federal law including wire and securities fraud (the "Investigation"), the United States Attorney's Office for the Southern District of New York ("the Government"), on or about June 10, 2021, made a request to Nikola Corporation ("Nikola") seeking, in order to evaluate a possible advice-of-counsel defense that the Government understands Trevor Milton intends to assert: (1) the voluntary production of documents in the possession of Nikola relating to Nikola's former chief executive officer and executive chairman Trevor Milton requesting or receiving legal advice from Nikola's Chief Legal Officer Britton Worthen with respect to the propriety of statements made to the public and investors, and (2) that Worthen be permitted to discuss with the Government the substance of those communications with Milton (the "June 10 Request");
>
> WHEREAS, the documents responsive to the June 10 Request and the information the Government seeks from counsel (the "Protected Materials") may be subject to a claim of attorney-client privilege and potentially other privileges and legal protections;
>
> WHEREAS, in light of the Government's interest in determining whether there have been any violations of the federal securities and fraud laws, and Nikola's interest in cooperating fully and completely with the Government's Investigation, Nikola intends to comply with the June 10 Request;
>
> WHEREAS, in response to the June 10 Request , Nikola has agreed, subject to, among other things, the protections provided by Rule 502(a) of the Federal Rules of Evidence, (I) to produce documents that reflect or contain communications that Trevor Milton sent or received, prior to September 10, 2020, that request or contain legal advice from Britton Worthen concerning investor and /or public communications (in whatever form including through any form of media) by Trevor Milton or Nikola (the "Documents"), and (2) to permit Britton Worthen to discuss with the Government the substance of the Documents, pursuant to this Disclosure Stipulation;
>
> WHEREAS, Nikola believes that the Protected Materials are protected by, at a minimum, the attorney-client privilege and potentially by other privileges and legal protections;
>
> WHEREAS, Nikola believes that the Protected Materials warrant protection from disclosure other than in accordance with this Disclosure Stipulation;
>
> WHEREAS, the Protected Materials are provided to the Government pursuant to this Disclosure Stipulation and Nikola does not intend for its production of Protected Materials to result in any subject matter waiver as to the protections of the attorney work

product doctrine, attorney-client privilege, or any other applicable privilege or legal protection;

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, pursuant to Rule 502(a), (f), and (g) of the Federal Rules of Evidence, as follows:

1. By entering into this Disclosure Stipulation and by producing the Documents and permitting Britton Worthen to provide information relating to the Documents, Nikola does not intend to waive an y attorney-client privilege, work-product protection or other applicable privilege with respect to the subject matter that the Documents concern, and the Government will not argue that such subject-matter waiver has occurred. . . .

Doc. 116-1 at 2–3.

Milton also shared several of Nikola's prior and subsequent disclosures to the Government, including (1) Nikola's November 12, 2020 presentation to the Department of Justice ("DOJ") and Securities and Exchange Commission ("SEC") in which it disclosed Worthen's legal advice to Milton regarding his public statements regarding commercialized battery technology, Doc. 116-16 at 64[1]; (2) Nikola's decision to not withhold any documents on the basis of privilege from the SEC, Doc. 116-18 at 14–15[2]; and (3) proffer sessions[3] with the Government where Nikola employees discussed the review and approval process of Milton's public statements by Worthen, specific advice sought and received by Worthen, and the weekly leadership meetings, talking points, and Q&A's to which Milton and Worthen had access, *see, e.g.*, Doc. 116-19 (Government notes from proffer of Nikola employee Nicole Rose).

---

[1] Specifically, Worthen told Milton not to make statements that Nikola had commercializable battery technology, and Milton's statements to the contrary were a "terrible and stupid idea."

[2] Doc. 116-18 is an internal investigation report written by Ernst & Young for Nikola stating that "Kirkland has produced documents for SEC review on a weekly basis" and that "nothing has been withheld for privilege."  Nikola engaged the law firm Kirkland and Ellis, LLP on September 13, 2020 to perform an investigation into the Hindenburg Report, a report published by a short seller investment company on September 10, 2020 which claimed that Nikola and Milton made deceptive and misleading public statements about its technology and business.  Doc. 116-18 at 2.  Kirkland reported the matter to the SEC on September 11, 2020.  *Id.* at 3.

[3] While Milton suggests that there were multiple proffer sessions, he only quotes from the session of Nicole Rose.  It is not clear how many additional proffer sessions were held or if employees disclosed further communications with Worthen during the course of those interviews.

Even if Nikola did not waive privilege, Milton argues that he has a constitutional right to present a complete defense, which requires examining witnesses as to these statements. *Id.*

The Government opposed the motion on July 11, 2022, Doc. 145, while noting that it could not assert privilege on behalf of a third-party. That same day, Nikola moved to intervene and for a protective order, arguing that Milton's motion in limine violates Nikola's attorney-client privilege and seeking a protective order prohibiting Milton from knowingly eliciting testimony as to privileged communications. Doc. 138.

## II. LEGAL STANDARD

### A. Motion to Intervene

"The Federal Rules of Criminal Procedure make no reference to a motion to intervene in a criminal case." *United States v. Aref*, 533 F.3d 72, 81 (2d Cir. 2008); *see also In re New York Times Co.*, 708 F. Supp. 603, 604 (S.D.N.Y. 1989) (Federal Rule of Civil Procedure 24, which allows for intervention in civil cases, "has no applicability to criminal cases"). Nevertheless, "it is settled law that persons affected by the disclosure of allegedly privileged materials may intervene in pending criminal proceedings and seek protective orders . . . ." *United States v. RMI Co.*, 599 F.2d 1183, 1186 (3d Cir. 1979) (citing, *inter alia*, *United States v. Nixon*, 418 U.S. 683, 688 (1974)); *United States v. Crawford Enters., Inc.*, 735 F.2d 174, 176 (5th Cir. 1984) (same). A third-party's reasonable assertion of privilege with respect to documents to be produced in a criminal action is sufficient grounds on which to grant the third-party's motion to intervene and to consider the merits of that party's application.

### B. Protective Order

Federal Rule of Criminal Procedure 16(d) states that "[a]t any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief."

4

Fed. R. Crim. P. 16(d). "Good cause justifying a protective order exists only when a party shows that disclosure will result in a clearly defined, specific, and serious injury. A finding of harm must be based on a particular factual demonstration of potential harm, not on conclusory statements." *United States v. Hall*, No. 21 Cr. 643, 2021 WL 6122951, at *1 (S.D.N.Y. Dec. 14, 2021) (internal quotation marks and citations omitted).

### III. DISCUSSION

Because Milton seeks to admit communications from Nikola's general counsel Worthen, Nikola reasonably asserts privilege with respect to the documents at issue. Nikola's motion to intervene is thus granted and the Court will consider the merits of its motion for a protective order.

Nikola does not contest that Milton can examine Worthen regarding advice he gave to Milton regarding Milton's public statements. Doc. 129 at 8. Nikola states that it produced to Milton all of his electronic communications with Worthen about his public statements, and a limited privilege waiver, Doc. 116-1, authorized him to elicit testimony about those communications at trial. Doc. 139 at 6. However, Nikola argues that it did not waive privilege over Worthen's communications with other Nikola employees. Nikola argues that the information covered by the limited waiver is sufficient for Milton to make an advice-of-counsel or intent defense, and there is thus no reason to disclose further communications Worthen made with other Nikola employees that were never relayed to Milton, as Milton could not have relied on those communications when speaking to investors. *Id.*

It is well-established that the disclosure of privileged or otherwise protected materials to the Government may, in certain circumstances, result in a waiver of the privilege or protection. *See In re Steinhardt Partners, L.P.*, 9 F.3d 230, 236 (2d Cir. 1993). However, the

Second Circuit has declined "to adopt a *per se* rule that all voluntary disclosures to the government" automatically result in such a waiver. *Id.* Instead, "rules relating to privilege in matters of governmental investigations must be [crafted] on a case-by-case basis," *id.*, and "applied in a common sense way in light of reason and experience." *In re Six Grand Jury Witnesses*, 979 F.2d 939, 944 (2d Cir. 1992). Federal Rule of Evidence 502(a) states that:

> When the disclosure is made in a federal proceeding or to a federal office or agency and waives the attorney-client privilege or work-product protection, the waiver extends to an undisclosed communication or information in a federal or state proceeding only if:
>
> (1) the waiver is intentional;
>
> (2) the disclosed and undisclosed communications or information concern the same subject matter; and
>
> (3) they ought in fairness to be considered together.

As the Advisory Notes to Rule 502(a) make clear, a finding of waiver should be "reserved for those unusual situations in which fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary." Fed. R. Evid. 502 Advisory Committee Note.

Nikola argues that Milton cannot satisfy Rule 502(a)'s second and third requirements. As to the second requirement, Nikola argues that the subject matter of Nikola's previous limited waiver is distinct from the material Milton seeks to admit now, as advice given to Milton is distinct from advice Worthen gave to other Nikola employees. *See Swift Spindrift, Ltd. v. Alvada Ins., Inc.*, No. 09 Civ. 9342 (AJN) (FM), 2013 WL 3815970, at *5 (S.D.N.Y. July 24, 2013) ("even when a disclosure is intentional, the scope of any subject matter waiver ordinarily is quite narrow") (internal quotation marks and citation omitted). As to the third requirement, Nikola argues that the information at issue need not be considered together, as it is not relevant to intent or advice of counsel. *See Arkwright Mut. Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*,

No. 90 Civ. 7811 (AGS), 1994 WL 510043, at *13 (S.D.N.Y. Sept. 16, 1994) (declining to waive attorney-client privilege in part because party seeking documents did not demonstrate that the content of the legal advice was directly relevant to the claims or defenses). Nor is Nikola trying to seek an advantage over Milton. *See United States v. Treacy*, No. S2 08 Cr. 366 (JSR), 2009 WL 812033, at *2 (S.D.N.Y. Mar. 24, 2009) (noting that concerns that privilege is being used as a sword and a shield are "not implicated where, as here, the holder of the privilege is not a party to the action and seeks no advantage against its adversary.").

As to relevancy, Milton argues that Worthen's advice to other Nikola employees could demonstrate that Milton's statements were not false because they had been checked for accuracy (for example, if Worthen reviewed and explicitly approved statements). Further, he argues that if Worthen reviewed and approved the statements in communications to others, he could not have the requisite mens rea. He also argues that the communications demonstrate that he was not the "maker" or "disseminator" of the alleged misstatements. However, Milton does not cite any materials suggesting that Worthen ever explicitly approved his statements, and Worthen's approvals to others could not have informed his mens rea if he did not know about those approvals. The Court thus agrees with Nikola that, as a general matter, the contested communications do not appear to be relevant, as Milton was not aware of the content of any of the contested communications and thus could not have relied on them. Thus, the communications are inadmissible under Federal Rules of Evidence 401 and 402 (governing relevance and admissibility).[4]

---

[4] Milton argues that he was aware of at least one of Worthen's communications with another Nikola employee. *See* Doc. 116-19 at 8 (Government notes from proffer of Nikola employee Nicole Rose stating that Rose sent a podcast to Worthen for review and, after her concerns were addressed, Rose told Milton that "they were good."). While this communication in particular may be relevant, Milton has still failed to satisfy Rule 502(a) as explained below. Further, Milton does not allege that any other communications are similarly relevant as having been communicated back to Milton.

The Court also disagrees with Milton's further argument that the third requirement of Rule 502(a)'s third requirement is satisfied. There is a clear distinction between advice given to Milton directly and communications that Worthen had with other employees regarding Milton's statements. When it comes to attorney-client privilege, the recipient of the advice is particularly pertinent, as the recipient is the only party that can assert the privilege. *See In re von Bulow*, 828 F.2d 94, 100 (2d Cir. 1987) ("only the client—and not his attorney—may waive the privilege"). Even where the client is a corporate entity, only certain parties (typically officers and directors) have the power to waive the corporate attorney-client privilege. *See Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348 (1985). Accordingly, and in light of the narrow view of subject matter accorded to Rule 502(a), the Court holds that Nikola has not waived privilege over the testimony Milton seeks.[5]

Milton also argues that Nikola has not established good cause for a protective order because (1) it has not demonstrated that disclosure will cause serious injury, and (2) it has not provided a privilege log. However, at least in the civil context, "the protection of documents covered by the attorney-client privilege . . . constitutes 'good cause' for the issuance of a protective order. *See Roseman v. Bloomberg L.P.*, 2016 WL 3866375, at *5 (S.D.N.Y. June 17, 2016). The Court sees no reason to hold differently in the criminal context. Further, it is unclear why Nikola would be required to produce a privilege log when Milton is requesting that the Court allow testimony—not documents—by Worthen and other Nikola employees concerning

---

[5] Milton further argues that the communications should be considered out of fairness to avoid selective and misleading disclosures. While Milton is correct that employers and employees may be "sufficiently adversarial so as to create a risk that protected documents are being selectively disclosed for [the employer's] benefit," *SEC v. Alderson*, No. 18 Civ. 4930 (VEC), 2020 U.S. Dist. LEXIS 6410, at *5 (S.D.N.Y. Jan. 14, 2020), Nikola convincingly argues that this is not a plausible concern here because it was the Government that proposed the waiver in the first place, so Nikola did not selectively choose to waive privilege over certain communications. Doc. 159 at 10. Further, the fact remains that the communication at issue do not appear to be relevant. If developments during trial render particular communications relevant, Milton may request the Court to revisit its ruling at that time.

Worthen's communications. Indeed, there appear to be no privileged documents at issue at all.

Milton further argues that Nikola waived privilege through its other disclosures, including its November 12, 2020 presentation to DOJ and the SEC, Nikola's disclosures to the SEC regarding the Hindenburg report, and the proffer sessions of Nikola employees with the Government. However, the alleged disclosure in the November 2020 presentation concerned Worthen's legal advice to Milton, and thus privilege as to that communication has already been waived under the Disclosure Stipulation. As to the SEC disclosures regarding the Hindenburg report, Nikola argues that the internal investigation report Milton cites only referred to a single presentation to the SEC for which nothing was withheld for privilege. Doc. 139 at 16. However, Nikola represents that nothing was withheld because nothing presented was actually privileged. Thus, there is no evidence that Nikola waived privilege regarding those disclosures. Lastly, as to the witness proffers, allowing employees to discuss the review and approval process for public statements generally does not constitute a waiver of privilege, and Milton points to only one example of an employee, Nicole Rose, referencing the content of a communication with Worthen regarding Milton's statements. The Court has already held that this disclosure does not expand Nikola's waiver of privilege. *See supra* note 7.

Milton lastly argues that, even if privilege is found, he has a constitutional right to present a defense including the privileged communications. In support, he cites cases that rely on *United States v. W.R. Grace*, 439 F. Supp. 2d 1125, 1145 (D. Mont. 2006), which held that some of defendants' privileged documents were admissible because they were "of such probative and exculpatory value as to compel admission of the evidence over . . . objection as the attorney-client privilege holder." However, this case is not binding on this Court, and another court in this district has stated that "there are reasons to doubt that *Grace* was correctly decided." *United*

*States v. Wells Fargo Bank, N.A.*, 132 F. Supp. 3d 558, 565 (S.D.N.Y. 2015). The Court thus declines to adopt the balancing test in *Grace*, particularly in light of the Supreme Court's rejection of the "use of a balancing test in defining the contours of the [attorney-client] privilege." *Swidler & Berlin v. United States*, 524 U.S. 399, 409 (1998). Milton has provided no binding authority holding that privileged communications become discoverable simply because a defendant wishes to use those communications in his defense.[6]

### IV.     CONCLUSION

For the foregoing reasons, Nikola's motion to intervene and for a protective order is GRANTED. The Clerk of Court is respectfully directed to terminate the motion, Doc. 138.

It is SO ORDERED.

Dated: September 8, 2022
New York, New York

EDGARDO RAMOS, U.S.D.J.

---

[6] Milton also argues that Nikola has a diminished expectation of privacy as a corporation. However, this is irrelevant to the question of whether attorney-client privilege is waived or should be overridden.