

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

The Silvio J. Mollo Building
One Saint Andrew's Plaza
New York, New York 10007

September 14, 2022

**BY ECF**

The Honorable Edgardo Ramos
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

    Re:    *United States v. Trevor Milton,* **S1 21 Cr. 478 (ER)**

Dear Judge Ramos:

    The Government writes regarding the admission of certain text messages and emails sent by Nikola employees about their work at Nikola. Several Government witnesses exchanged emails and text messages with other Nikola employees about their work at Nikola at the time the defendant was making false statements to investors in which those employees expressed, in substance, that Milton's statements or conduct was false or misleading. For the reasons set forth below, those communications are admissible.

    First, text messages and emails among Nikola employees about the subject matter of their work is not hearsay under Federal Rule of Evidence 801(d)(2)(D) because they are offered against the defendant, it has not been disputed that he was their direct and ultimate supervisor, *see, e.g.*, Tr. 293, and the statements were made by the defendant's employees "on a matter within the scope of that relationship while it existed." The Government moved on this issue *in limine* and the Court preliminarily granted the Government's motion but deferred making a ruling until specific exhibits were offered. Consistent with the Court's ruling, the Government intends to offer text messages and emails sent between Nikola employees about their work.

    For instance, during the direct testimony of Brendan Babiarz, a Nikola employee who will be the next witness to testify, the Government intends to offer several text messages exchanged by Babiarz, with other Nikola employees about the development and status of the Nikola Badger. Babiarz is expected to testify that each of the Nikola employees with whom he was texting had a role in the development of the Badger. Some of the text messages could be interpreted as critical of the defendant. In one text message exchange from July 8, 2020, Babiarz told an employee involved in marketing the Badger that they can't "film the building of the trucks" because "they are half Fords" and "if we get caught showing any of that it will be bad." (GX 53.) But the fact

that employees may be critical of the defendant's actions, words, or the Badger's development does not render the statements inadmissible. As the Second Circuit has observed, for statements to fall within the scope of Rule 802(d)(2)(D), they need only "relate[] to a matter within the scope of the agency." *Pappas v. Middle Earth Condo. Ass'n*, 963 F.2d 534, 537 (2d Cir. 1992). It does not matter whether the defendant authorized the making of "damaging statements," but rather, simply, whether the employee had "authority to take action about which the statements relate." *Id.* at 537. For that reason, the Court correctly observed that "even if it is water-cooler gossip, it's water-cooler gossip about the product that is at issue here and not water cooler gossip about, for example, Mr. Milton's personal life," and is therefore admissible. (Final Pretrial Conf. Tr. at 54.) Accordingly, the texts and emails the Government intends to offer that were sent and received by these employees are admissible under Rule 801(d)(2)(D).

Second, the text messages and emails are also admissible as prior consistent statements under Rule 801(d)(1)(B)(i) and (ii). In his opening, Mr. Mukasey made a broad attack on the credibility of each and every Nikola employee that will be called to testify by the Government by telling the jury that "the government's witnesses will try to rewrite history into a complete distortion" because "every one of them want something out of this case, and they're willing to testify for the government in order to get it." (Tr. 54.) Notably, these attacks on witness credibility and claims of witness bias were directed at all Nikola employees, not just Paul Lackey, the whistleblower. Mr. Mukasey proceeded to assert to the jury that Nikola employees recently fabricated their stories or acted from a recent improper influence—specifically, the Government's subpoena. For instance, Mr. Mukasey argued to the jury:

> Then things changed, like overnight, things changed and they changed for one reason and one reason only, they changed because these prosecutors showed up. These prosecutors handed a subpoena to the Nikola company and they started asking questions to Trevor's team and they asked questions over, and over, and over again for days, and weeks, and months. And lo and behold, the distortion started. Trevor's team, all those people who worked with Trevor and advised Trevor and mentored Trevor and watched on TV and clapped for Trevor and shared responsibility with Trevor and defended Trevor. They all turned on Trevor, they abandoned Trevor, and they went to the Government and pointed at Trevor and said don't blame me, blame Trevor, let me keep my job and I'll testify against Trevor. . . . That's how this distortion began.

Tr. 58. Under Rule 801(d)(1)(B), a court may admit "prior consistent statements that were introduced to rebut 'defendants' attacks on [the declarant's] credibility and memory,' notwithstanding that 'challenges to [the declarant's] memory were brief and were not their main challenges." *United States v. Purcell*, 967 F.3d 159, 195-97 (2d Cir. 2020) (*quoting United States v. Flores*, 945 F.3d 687, 705-06 (2d Cir. 2019)). An attack on the Government's witnesses in opening arguments is a sufficient basis to find that the defendant has attacked the declarant's credibility. *Flores*, 945 F.3d at 705-06 (prior consistent statements were admissible even though the "defendants' opening statement challenges to [the defendant's] memory were brief"). Once

the defendant opens the door and puts witnesses' credibility at issue, the Government may introduce prior consistent statements as part of its direct examination. *Id.* at 706.

The defendant's opening statement opens the door to prior consistent statements of Nikola employees. Indeed, the defense's attack on the credibility of the Nikola employees who would be called by the Government was a central theme and specifically laid out. Because Mr. Mukasey suggested that all Nikola employees "changed, like overnight" after the company received a subpoena, the Government is permitted to offer prior statements in which the given witness raised concerns about the defendant's conduct or discussed the status of Nikola's products and technology. The prior consistent statements are also admissible, as a general matter, to support the witnesses' credibility since Mr. Mukasey accused them of "want[ing] something out of this case" such as "blam[ing] Trevor" to "let [them] keep [their] job." (Tr. 54, 58.) The Court has already recognized as much. (*See* Tr. 179 (finding it a "compelling argument that . . . Mr. Mukasey opened on Mr. Lackey's credibility" and so his tweets "are proper rebuttal to that argument").) And defense counsel has acknowledged that his opening statement opened the door to the admission of these types of prior consistent statements. (*See* Tr. 183 ("I understand you can rebut a claim of recent fabrication and I recognize when I was standing up there that I could be opening the door to that."); *id.* ("THE COURT: … They are saying that these exhibits are admissible as fair argument, fair response to Mr. Milton's -- MR. CARUSO: Credibility argument. THE COURT: Yes. … MR. MUKASEY: Yeah, I don't really disagree.").) Therefore, the statements of Nikola witnesses, such as Mr. Babiarz, are admissible on direct examination under Rule 801(d)(1)(B)(i) and (ii).

Third, text messages and emails reflecting Nikola employees' then-existing state of mind concerning Nikola's development of products and technology—as well as the accuracy of Milton's claims about that development—is admissible under Rule 803(3) and relevant to proving the elements of falsity and intent. Text messages and emails that reflect a witness's contemporaneous understanding of the status of a truck, for example, or the witness's contemporaneous view of the accuracy of Milton's statements, is relevant to show the accuracy of Milton's statements at the time. Additionally, as a point about intent, defense counsel claimed that "not even once" did an employee "ever tell Trevor he was going too far or crossing a line." (Tr. 62-63.) Therefore, text messages about the employees' then-existing mental state are relevant to establishing that they believed at the time that Milton was going too far or was crossing a line.

Accordingly, emails and text messages amongst employees, as described above, should be admitted as relevant non-hearsay evidence on direct examination.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York

By:   s/_____
Jordan Estes
Matthew Podolsky
Nicolas Roos
Assistant United States Attorneys
(212) 637-2543/1947/2421

cc: Counsel of Record (by ECF)