

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

The Silvio J. Mollo Building
One Saint Andrew's Plaza
New York, New York 10007

September 18, 2022

**BY ECF**

The Honorable Edgardo Ramos
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

      **Re:**    *United States v. Trevor Milton,* **S1 21 Cr. 478 (ER)**

Dear Judge Ramos:

      The Government writes to preclude the admission of a September 14, 2020, press release issued by Nikola in response to the Hindenburg Report, or in the alternative permit the Government to introduce certain prior consistent statements specified below.

      The Government anticipates that the admissibility of the press release will be at issue during Mark Russell's testimony.  Mr. Russell is the next witness.  The Government respectfully requests that the Court hold argument on this issue before Mr. Russell takes the witness stand.

      The September 14 press release is inadmissible hearsay, and its minimal probative value is outweighed by its prejudicial effect.  If the defendant is permitted to offer the September 14 press release, the Government should be permitted to offer (i) the results of Nikola's internal investigation following the defendant's departure from the company, (ii) Nikola's subsequent public disclosure about the falsity of the defendant's statements, and (iii) Nikola's settlement with the Securities and Exchange Commission ("SEC").

I.   Factual Background

      On September 10, 2020, Hindenburg Research posted a report on the internet that alleged that Trevor Milton made false statements about Nikola.  The Hindenburg Report, which is over 50 pages long, is not in evidence.  Instead, the parties agreed to a short stipulation, which states that the Hindenburg Research report claimed that Milton and Nikola "made deceptive and misleading public statements about the functionality of the Nikola One, Nikola's production of in-house parts, Nikola's production of hydrogen, and reservations for Nikola's trucks." (GX S-4.) There are

several alleged false statements in the Hindenburg Report that are not currently the subject of the trial or the parties' stipulation.

On September 14, 2020, Nikola issued a press release titled, "Nikola Sets the Record Straight on False and Misleading Short Seller Report." A copy of this press release is attached as Exhibit A (the "September 14 Press Release"). The press release addressed several topics within the Hindenburg Report, including some that are not at issue in the trial. Based on discussions with witnesses, the Government understands that the defendant wrote the initial draft of the September 14 press release, which was subsequently edited by Nikola employees, outside counsel for Nikola, and a public relations firm that was advising Nikola's outside counsel. The Government does not have access to the defendant's original draft press release or any of the edits to the press release because Nikola and/or the defendant have asserted privilege and not produced the materials. The Government also understands that witnesses would state that at the time of the publication of the September 14 press release, the defendant was still the executive chairman and had ultimate control over whether Nikola would publish the press release and in what form. Again, because of the privileged nature of these conversations, the Government is unable to ask witnesses about what statements in the press release came from the defendant, which are the product of attorney advice, and whether Milton accepted edits from Nikola executives.

On September 20, 2020, Nikola announced that Milton was leaving the company. On November 12, 2020, Kirkland & Ellis LLP, which was outside counsel for Nikola, gave a report to the Department of Justice and SEC about its internal investigation. The internal investigation found that Hindenburg Research was "correct in describing a number of statements by Trevor Milton as misleading and/or false." A copy of Kirkland & Ellis's internal investigation slide deck was previously filed with the defendant's motions, *see* ECF No. 58-4 (the "Internal Investigation Report"). On February 25, 2021, Nikola filed a 10-K report with the SEC, which disclosed that the following statements "were inaccurate in whole or in part, when made": "(1) in July 2016, the Company stated that it owned rights to natural gas wells, and in August 2016 that the wells were used as a backup to solar hydrogen production; (2) in August 2016, Milton and the Company stated that the Company had engineered a zero emissions truck; (3) in December 2016, Milton stated that the Nikola One was a fully functioning vehicle; (4) that an October 2017 video released by the Company gave the impression the Nikola One was driven; (5) in April 2019, Milton stated that solar panels on the roof of the Company's headquarters produce approximately 18 megawatts of energy per day; (6) in December 2019 and July 2020, Milton stated that the Company "can produce" over 1,000 kg of hydrogen at the Company's demo stations and that the Company was "down below" $3/kg at that time; (7) in July 2020, Milton stated that "all major components are done in house"; he made similar statements in June 2020; (8) in July 2020, Milton stated that the inverter software was the most advanced in the world and that other OEMs had asked to use it; and (9) in July 2020, Milton stated that five trucks were "coming off the assembly line" in Ulm, Germany." A copy of the 10-K filing is attached as Exhibit B ("the 10-K Filing").

On December 1, 2021, Nikola and the SEC agreed to settle charges against the company for false statements made by Milton, and the company agreed to pay $125,000,000. A copy of the SEC order is attached as Exhibit C (the "2021 SEC Order").

Before opening statements, the Government objected to defense counsel's use of a picture of the September 14 Press Release in his jury address. In response, defense counsel proffered the purported relevance of this press release: "The company defended, through that press release, Mr. Milton after the Hindenburg Report came out and said it's just a short-seller hack job. Then they got grand jury subpoenas and then the management turned on Mr. Milton. So that's the reason that we put this in. It's the beginning of the defense of Mr. Milton, which is then curtailed by the grand jury subpoena." (Tr. 22.) Mr. Mukasey also made clear that the press release was being offered not as proof relating to an at-issue fact in the case, but rather for its impeachment of witnesses: "we intend to introduce that, again, to go to the credibility of the witnesses." (Tr. 23.) The Court precluded defense counsel from using the document in his opening, ruling that counsel could "tell that story, but not necessarily through documents which may not come in." (Tr. 24.)

In his opening statement, Mr. Mukasey argued to the jury that "Nikola and its leadership team stood up for Trevor. . . . They defended him. They said this distorted report was a hit job, they said it was an attack on Trevor . . . . So Nikola's leadership team prepared to stand up, fight back, and support Trevor. Then things changed, like overnight, things changed, and they changed for one reason and one reason only, they changed because these prosecutors showed up. . . . They all turned on Trevor, they abandoned Trevor, and they went to the government and pointed at Trevor and said don't blame me, blame Trevor, let me keep my job and I'll testify against Trevor." (Tr. 57-58.)

## II. The September 14 Press Release Is Inadmissible

The Court should preclude the admission of the September 14 press release because it is inadmissible hearsay and is more prejudicial than probative under Rule 403.

First, the press release is inadmissible hearsay because it is an out-of-court statement by Nikola which was drafted, in its original form, by the defendant. It is not admissible for its effect on listeners because it post-dates the Hindenburg Report and the Government is not contending that victims were defrauded after the Hindenburg Report. It also cannot be offered as relevant state of mind evidence because, again, the Government does not allege that the defendant made any false public statements after the Hindenburg Report.

The defendant is also not permitted to offer the September 14 press release as extrinsic evidence to impeach a witness. Federal Rule of Evidence 608(b) precludes the defendant from offering specific instances of conduct to attack the witness's character for truthfulness. Additionally, if the defendant contends that the press release is somehow a prior inconsistent statement, he will need to establish that the press release is a prior statement by the witness and that it is inconsistent with the witness's testimony. *See United States v. Seabrook*, No. 16 Cr. 467 (ALC), 2017 WL 4838311, at *3 (S.D.N.Y. Oct. 23, 2017) ("A witness's prior statement may be offered to impeach that witness's credibility" but the "rule requires that the statement is the witness's own; a third party's characterization of a witness's statement, on its own is insufficient."). Since the press release is the product of drafting by the defendant, attorneys, and press relations consultants, among others, it cannot constitute a prior statement of the witness.

3

Second, the press release should also be precluded under Rule 403.  The press release is not relevant to whether Milton is guilty of each of the elements of the charged offenses since it was issued after the defendant's fraud was exposed.  Its value then is, at most, to impeach witnesses to imply that they "flipped" after getting a subpoena.  Such a fact could be introduced without the use of the document, and this particular document is of little use as it does not establish on its face that any particular witness changed his or her story.

Moreover, because the facts regarding the drafting of the document are privileged, the jury will be deprived of information necessary to evaluate the argument the defendant wishes to make from it, and may even be left with an incorrect understanding of the facts.  It is even possible that employees within the company or outside attorneys counseled Milton not to include statements in the press release, but he did so anyway.  The Government has no way of knowing if that is the case because of the assertion of privilege.  But Milton should not be allowed to exploit the company's legitimate assertion of privilege in order to mislead the jury and prejudice the Government.  The risk of jury confusion occasioned by Milton's maneuver significantly outweighs any probative value of introducing the press release.

III. Offering the September 14 Press Release or Asking About It Opens the Door

In the event that the defendant is permitted to offer the September 14 Press Release, or questions a witness about it, the Government should be permitted to offer certain prior consistent statements.

Under Rule 801(d)(1)(B) of the Federal Rules of Evidence, a prior statement is not hearsay if the declarant testifies and is subject to cross examination about the statement, the statement is consistent with the declarant's testimony, and the statement is offered either "(i) to rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive in so testifying; or (ii) to rehabilitate the declarant's credibility as a witness when attacked on another ground."  Prior to 2014, a witness's prior consistent statement was only permitted to rebut a charge of recent fabrication that postdated the prior consistent statement. *See Tome v. United States*, 513 U.S. 150, 156 (1995). Many courts, however, including the Second Circuit, had developed rules allowing admission of prior consistent statements outside of the context of Rule 801(d)(1)(B) in order to rehabilitate a witness after certain attacks on credibility. *See, e.g.*, *United States v. Pierre*, 781 F.2d 329, 333 (2d Cir. 1986). In 2014, the Rule 801 was amended to allow prior consistent statements that were "otherwise admissible for rehabilitation" to come in "substantively as well." Fed R. Evid. 801 (Advisory Committee's Note to 2014 Amendment) ("The intent of the amendment is to extend substantive effect to consistent statements that rebut other attacks on a witness—such as the charges of inconsistency or faulty memory."). Thus, as amended in 2014, Rule 801(d)(1)(B)(ii) "expands the purposes for which prior consistent statements may be offered." *United States v. Purcell*, 967 F.3d 159, 196 (2d Cir. 2020). The Second Circuit has relied on subsection (ii) of the amended Rule 801(d)(1)(B) in finding that the district court did not abuse its discretion in admitting prior consistent statements that were introduced to rebut "defendants' attacks on [the declarant's] credibility and memory." *United States v. Flores*, 945 F.3d 687, 705-06 (2d Cir. 2019) (quoting Fed. R. Evid. 801 Advisory Committee Note (2014) for the proposition that "[t]he intent of the amendment [adding subpart (B)(ii)] is to extend

4

substantive effect to consistent statements that rebut other attacks on a witness—such as the charges of inconsistency or faulty memory.").

Here, the Internal Investigation Report, the 10-K Filing, and the 2021 SEC Order are admissible under Rule 801(d)(1)(B).  These documents are admissible to rebut the defendant's claim that the witnesses "flipped" after getting a government subpoena.  Several witnesses will testify that they were not aware of the sheer number and specifics of the defendant's false statements until after learning about them through Kirkland & Ellis's investigation.  Thus, even if Nikola executives were comfortable going along with the September 14 press release at the time— which is not necessarily the case—the additional facts they subsequently learned through the internal investigation explain why their testimony is arguably inconsistent with the September 14 Press Release.

Additionally, the 10-K Filing and 2021 SEC Order are admissible because they prove that Nikola's executives made a subsequent statement consistent with their testimony to the SEC under penalties of perjury, and later paid a fine to the SEC in connection with one such statement.  Such statements serve to rehabilitate the witnesses' credibility under Rule 801(d)(1)(B)(ii) because they establish that witnesses believed so strongly in the accuracy of those statements (and inaccuracy of Milton's) that they were willing to swear under oath and pay money. Even though these statements came after Nikola received a grand jury subpoena—which the defendant contends created a motive to lie—they are still admissible under Rule 801(d)(1)(B)(ii) to rehabilitate the declarant's credibility as a witness.

Accordingly, for the reasons set forth above, the Court should preclude the defendant from offering the September 14 Press Release and/or should permit the Government to offer the Internal Investigation Report, the 10-K Filing, and the 2021 SEC Order as prior consistent statements.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York

By:   s/_____
        Jordan Estes
        Matthew Podolsky
        Nicolas Roos
        Assistant United States Attorneys
        (212) 637-2543/1947/2421

cc:   Counsel of Record (by ECF)