# CAHILL GORDON & REINDEL LLP
## 32 OLD SLIP
## NEW YORK, NY 10005

| | | | | |
|---|---|---|---|---|
| DANIEL R. ANDERSON | JONATHAN J. FRANKEL | TELEPHONE: (212) 701-3000 | MEGHAN N. McDERMOTT | JOHN A. TRIPODORO |
| HELENE R. BANKS | ARIEL GOLDMAN | WWW.CAHILL.COM | WILLIAM J. MILLER | GLENN J. WALDRIP, JR. |
| ANIRUDH BANSAL | PATRICK GORDON | | EDWARD N. MOSS | HERBERT S. WASHER |
| DAVID L. BARASH | JASON M. HALL | 1990 K STREET, N.W. | NOAH B. NEWITZ | MICHAEL B. WEISS |
| LANDIS C. BEST | STEPHEN HARPER | WASHINGTON, DC 20006-1181 | WARREN NEWTON § | DAVID WISHENGRAD |
| BRADLEY J. BONDI | WILLIAM M. HARTNETT | (202) 862-8900 | DAVID R. OWEN | C. ANTHONY WOLFE |
| BROCKTON B. BOSSON | NOLA B. HELLER | | JOHN PAPACHRISTOS | COREY WRIGHT |
| JONATHAN BROWNSON * | CRAIG M. HOROWITZ | CAHILL GORDON & REINDEL (UK) LLP | LUIS R. PENALVER | ELIZABETH M. YAHL |
| DONNA M. BRYAN | TIMOTHY B. HOWELL | 20 FENCHURCH STREET | KIMBERLY PETILLO-DÉCOSSARD | JOSHUA M. ZELIG |
| JOYDEEP CHOUDHURI * | DAVID G. JANUSZEWSKI | LONDON EC3M 3BY | SHEILA C. RAMESH | |
| JAMES J. CLARK | ELAI KATZ | +44 (0) 20 7920 9800 | MICHAEL W. REDDY | |
| CHRISTOPHER W. CLEMENT | JAKE KEAVENY | | OLEG REZZY | * ADMITTED AS A SOLICITOR IN ENGLAND AND WALES ONLY |
| LISA COLLIER | BRIAN S. KELLEHER | | THORN ROSENTHAL | ± ADMITTED AS A SOLICITOR IN WESTERN AUSTRALIA ONLY |
| AYANO K. CREED | RICHARD KELLY | WRITER'S DIRECT NUMBER | TAMMY L. ROY | |
| PRUE CRIDDLE ± | CHÉRIE R. KISER ‡ | | JONATHAN A. SCHAFFZIN | ‡ ADMITTED IN DC ONLY |
| SEAN M. DAVIS | JOEL KURTZBERG | | ANDREW SCHWARTZ | § ADMITTED AS AN ATTORNEY IN THE REPUBLIC OF SOUTH AFRICA ONLY |
| STUART G. DOWNING | TED B. LACEY | | DARREN SILVER | |
| ADAM M. DWORKIN | MARC R. LASHBROOK | | JOSIAH M. SLOTNICK | |
| ANASTASIA EFIMOVA | ALIZA R. LEVINE | | RICHARD A. STIEGLITZ JR. | |
| JENNIFER B. EZRING | JOEL H. LEVITIN | | ROSS E. STURMAN | |
| HELENA S. FRANCESCHI | GEOFFREY E. LIEBMANN | | SUSANNA M. SUH | |
| JOAN MURTAGH FRANKEL | BRIAN T. MARKLEY | | ANTHONY K. TAMA | |

(202) 862-8910

September 23, 2022

**BY ECF**

The Honorable Edgardo Ramos
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

      Re:    *United States v. Trevor Milton*, S1 21 Cr. 478 (ER)

Dear Judge Ramos:

Defendant Trevor Milton, through defense counsel, renews his previous motion to exclude Professor Dina Mayzlin (ECF 110) and further moves to strike her earlier testimony and to preclude her from testifying further. Rule 702 of the Federal Rules of Evidence requires that the proposed expert testimony be both relevant and reliable; Professor Mayzlin's testimony is neither. Further, Professor Mayzlin's testimony has the potential to confuse the jury regarding the appropriate legal standard for materiality and fails to meet the standard of Rule 703.

### I. Professor Mayzlin's Testimony Is Irrelevant and Will Confuse the Jury Regarding the Legal Standard for Materiality.

The Supreme Court describes the relevance inquiry as "one of 'fit.'" *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 591 (1993); *see also United States v. Downing*, 753 F.2d 1224, 1242 (3rd Cir. 1985) ("An additional consideration under Rule 702—and another aspect of

CAHILL GORDON & REINDEL LLP

-2-

relevancy—is whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute."). Professor Mayzlin's testimony is irrelevant because it focuses on the consumer and not the applicable legal standard of a "reasonable investor." *TSC Industries, Inc. v. Northway*, 426 U.S. 438, 450 (1976). In short, her testimony simply does not "fit" the case.

Professor Mayzlin testified about social media posts by anonymous consumers, who may or may not be real people, may or may not be investors, may or may not have been paid for their posts, and may or may not be conveying information that the poster believes in good faith to be true. Such testimony lacks the "critical missing link" that would tie the behavior of a consumer to the "reasonable investor." *See United States v. Zafar*, 291 F. App'x 425, 427 (2d Cir. 2008) (upholding the district court's exclusion of expert testimony as "well within its discretion" where the testimony lacked a "critical missing link" for relevance).

In particular, there is no evidence connecting Professor Mayzlin's opinions on consumer behavior with the mainstream thinking of investors in the relevant market. *See United States v. Litvak*, 889 F.3d 56, 65 (2d Cir. 2018). Here, the relevant market is the entirety of the Nasdaq stock exchange, which is a transparent, public market, characterized by publicly available analyst reports, publicly available SEC-mandated financial reports, and which includes, retail investors, institutional investors, mutual funds, hedge funds, pension funds, and private equity investors. *See id.* at 64–65; *see also Litvak*, 30 F. Supp. 3d 143, 149 (D. Conn. 2014) ("As Litvak stresses, and as is undisputed by the government, *unlike the stock market*, the RMBS market is not transparent . . . .") *reversed in part, vacated in part by U.S.* v. *Litvak*, 808 F.3d 160 (2nd Cir. 2015).

Professor Mayzlin cannot know and has not testified that these consumers are indeed investors in the relevant market, much less that there is any nexus between their viewpoint and that of the mainstream thinking of the market. As Professor Mayzlin testified, "That's the Internet." *See* Tr. 1658:25. *Even if* these consumers were investors, the *Litvak* case shows the danger of admitting isolated evidence regarding the point of view of idiosyncratic investors. In that case, the government relied heavily on point of view evidence from purported victims who were purchasers of RMBS securities. *Litvak*, 889 F.3d at 65. When considering what information a reasonable investor would have considered important, the Second Circuit explained that the reasonable investor was an investor in the market for RMBS securities. The court observed that the RMBS market is characterized by institutional buyers of securities that are not publicly listed and not traded on an exchange like Nasdaq or New York Stock Exchange. *See id.* at 59–60. Under those circumstances the Second Circuit held that the relevant context for evaluating materiality was the reasonable investor *in the RMBS market*, and the government's witness did not meet that standard.

In front of the jury and with the cloak of her expert witness designation, Professor Mayzlin is testifying inappropriately that the subjective belief of a "consumer" is relevant to this case. The

CAHILL GORDON & REINDEL LLP

-3-

Court should strike her testimony as irrelevant and preclude Professor Mayzlin from further testimony.

## II. Professor Mayzlin's Testimony Is Unreliable.

Professor Mayzlin's testimony also fails the "reliability" prong of *Daubert*, because her methodology lacks objective basis and her testimony does not establish causation.

First, Professor Mayzlin's methodology lacks objective basis. Professor Mayzlin's testimony focused on Mr. Milton's original tweets, which she categorized as "related to Nikola" and "not related to Nikola." Yet, upon questioning, she disclosed that she characterized a tweet with the word "Creative," accompanied by a link to a meme of Mr. Milton looking like a "Game of Thrones" character, as a Nikola tweet. *See* Tr. 1665:5–12. She likewise characterized a tweet where Mr. Milton overheard a conversation about hydrogen while he sat in a pizza restaurant as a Nikola tweet. There is no discernable, much less objective, criteria upon which Professor Mayzlin made these categorical decisions that formed the basis of her analysis. *See* Tr. at 1664:22–1665:4.

Second, Professor Mayzlin testified only to correlation, and not to causation. *See* Tr. 1636:10–13. As a threshold matter, correlation is a lay matter, and a jury is capable of understanding correlation without the expert's help. *See United States v. Mulder*, 273 F.3d 91, 101 (2d Cir. 2001) ("[T]he district court should not admit testimony that is directed solely to lay matters which a jury is capable of understanding and deciding without the expert's help." (citations and quotations omitted)). Professor Mayzlin's opinions fail to "bridge the analytical gulf between correlation and causation." *See In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 493–94 (S.D.N.Y. 2018). Here, Professor Mayzlin has not demonstrated that Mr. Milton's tweets caused anything. Mr. Milton tweeted the most on days where there was information in the press about Nikola. Indeed, even after the government prompted Professor Mayzlin to move beyond the "naked eye test" and testify about correlation from a statistical standpoint, Professor Mayzlin simply pointed out that "you know, they *seem* to be related to each other. So when – you know, when Mr. Milton's activity is spiking, you know, you see spikes on the other platforms as well." Tr. 1634:22–24 (emphasis added).

Professor Mayzlin did not perform any analysis to show that the increased activity on StockTwits and Reddit was *caused* by Mr. Milton's increased activity on Twitter. Instead, the increased activity on StockTwits and Reddit could be a result of the same thing that increased Mr. Milton's activity—that is, information about Nikola. *See* Tr. 1634:15–23; 1635:20–35. Of particular concern is Professor Mayzlin's attempt to make a causation argument even though she only testified about correlation. *See* Tr. 1647:2–4 ("[H]is activity on Twitter had an impact on the word of mouth. So had an impact on the online, you know, conversations that retail investors had.").

CAHILL GORDON & REINDEL LLP

-4-

The Court should strike her testimony as unreliable and preclude Professor Mayzlin from further testimony.

### III. Professor Mayzlin's Testimony Does Not Meet the Standard of Federal Rule of Evidence 703.

Professor Mayzlin's testimony is also improper under Federal Rule of Evidence 703. Under Rule 703, "experts can testify to opinions based on inadmissible evidence, including hearsay, if experts in the field reasonably rely on such evidence in forming their opinions." *United States v. Mejia*, 545 F.3d 179, 197 (2d Cir. 2008). However, the expert may not "simply transmit that hearsay to the jury" and instead "must form his own opinions by applying his extensive experience and a reliable methodology to the inadmissible materials." *Id.* (internal quotation omitted). "Otherwise, the expert is simply repeating hearsay evidence without applying any expertise whatsoever, a practice that allows the Government to circumvent the rules prohibiting hearsay." *Id.* (internal quotation omitted); *see also In re M/V MSC Flaminia*, 2017 WL 3208598, at *22 (S.D.N.Y. July 28, 2017) (concluding that an expert is not permitted to "act as a mouthpiece or 'aggregator' for other experts.").

Here, Professor Mayzlin has failed to establish that the academic literature upon which she relied bears a relationship to this case. None of the papers concerns the stock market in the United States, and there is no basis upon which to conclude, for example, that the behavior of investors in the Chinese market where social media is strictly controlled by the state is relevant to behavior of investors in the Nasdaq market at issue here. Further, Professor Mayzlin has simply conveyed to the jury what the academic literature says. She has not applied her own experience and reliable methodology to the materials. For example, she "there is a large literature that looks at the impact of media. So when, you know, and if, you know, it didn't find that indeed, when consumers—when investors look at information in media, it has an effect on them." Tr. at 1617:18–22; *see also* Tr. at 1642:5–8 ("There is kind of a lot of literature on that, you know, just how hard it is for normal people, and that includes me, actually, to understand these complicated documents."); Tr. 1647:11-12 ("So, yeah, we find examples of the press, you know, kind of retweeting or publishing his tweets, and we know from the literature that has an effect on investors."); Tr. 1647:25—1648:8 ("[H]is activity had an impact on buzz, generated buzz. And we know from the literature that buzz is very important. So papers have shown that across fields—in finance, in marketing, and economics"). This testimony is completely devoid of any of her own expertise and simply conveys what the literature says. Such testimony is inadmissible under Rule 703.

For the reasons above, Mr. Milton respectfully requests that the Court strike Professor Mayzlin's testimony and preclude her from testifying further.

CAHILL GORDON & REINDEL LLP

-5-

Respectfully submitted,

/s/ Bradley J. Bondi
Bradley J. Bondi
CAHILL GORDON & REINDEL LLP
1990 K Street NW, Suite 950
Washington, DC 20006
(202) 862-8910
BBondi@cahill.com

Marc L. Mukasey
MUKASEY FRENCHMAN LLP
570 Lexington Avenue, Suite 3500
New York, NY 10022
(212) 466-6400
Marc.Mukasey@mfsllp.com

*Counsel for Trevor Milton*

cc:   Counsel of Record (by ECF)