

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

The Silvio J. Mollo Building
One Saint Andrew's Plaza
New York, New York 10007

September 27, 2022

**BY ECF**

The Honorable Edgardo Ramos
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

      Re:    *United States v. Trevor Milton,* **S1 21 Cr. 478 (ER)**

Dear Judge Ramos:

      The Government writes to preclude the defendant from offering a text message exchange that he had with Nikola's general counsel Britton Worthen *after* the defendant tweeted that Nikola "already" had a Badger pickup truck prototype.  While the Government does not object to the admissibility of the first two messages in the chain sent by Worthen, the messages contained in lines 3 through 7 are inadmissible hearsay, have no relevant non-hearsay purpose, and if offered are likely to confuse the jury.  Accordingly, for the reasons set forth below, the defendant should be precluded from offering lines 3 through 6 of the text message exchange.

I.   Factual Background

      On June 8, 2020, the defendant tweeted that Nikola was going to start taking reservations for the Nikola Badger pickup on June 29, 2020.  (GX-519.)  With that announcement, Milton tweeted nine computer-generated pictures of the Badger and stated, among other things, "You'll get to see a real operating truck, not a fake show truck."  (*Id.*)  A Twitter user by the name of Zach tweeted at the defendant, "love the truck concept, when will the first prototype be produced?"  (GX-518.)  On June 9, 2020, at 12:05 AM, Milton replied, "Already."  (*Id.*)  He replied again at 12:21 AM, "It's a secret. But it's amazing. I'll show content here soon."  (*Id.*)  As the trial testimony has made clear, on June 9, 2020, Nikola had not even started building a prototype pickup truck.

      Stephanie Amzallag saw Milton's tweet not long after he posted it and forwarded it to Nikola's general counsel, Britton Worthen.  (DX-1247; *see also* Tr. 1360:12-21.)  Approximately sixteen hours after Milton tweeted "Already," Worthen texted him about it.  Their text message exchange is below and has been marked for identification only as Government Exhibit 34:

|   | Date /Time | Sender | Message |
|---|---|---|---|
| 1 | 6/9/20 2:33 PM | Worthen | Need to be careful here |
| 2 | 6/9/20 2:33 PM | Worthen | *[Screenshot of "Zach" tweet and Milton's "Already" reply]* |
| 3 | 6/9/20 2:34 PM | Milton | Prototype is already being produced. They didn't ask when it would be on roads or driving. |
| 4 | 6/9/20 2:35 PM | Worthen | I think it could be interpreted as if it's already produced, Not that it's currently being produced. |
| 5 | 6/9/20 2:43 PM | Milton | Yeah. I can see how it could be misunderstood but the first prototype is being produced. So legally I'm OK. But I'll be more clear next time. |
| 6 | 6/9/20 2:51 PM | Worthen | Agree. I knew what you meant. That is why I suggested we need to be careful it is not misunderstood. |
| 7 | 6/9/20 3:01 PM | Milton | Yeah. |

The defendant already attempted, unsuccessfully, to offer this exhibit during the testimony of Ms. Amzallag, but she was unable to identify it and the Court did not permit defense counsel to offer the document through her. (Tr. 1360-64.)  At the time the defendant attempted to offer this document, the Government objected on hearsay grounds, and defense counsel argued that "it comes in under [Rule] 803(3) because it shows the declarant's, Mr. Milton's state of mind." (Tr. 1362.) Elaborating on that argument, defense counsel stated that when Mr. Milton "says, among other things 'So I'm OK?' . . . And Worthen writes back and says, 'I agree,'" that "inform[s] the defendant's state of mind." (Tr. 1364.)  Because the Court did not permit the defendant to offer the document through Ms. Amzallag, the Court reserved on the hearsay objection. (Tr. 1364.)

If Mr. Worthen were called to testify, he would state that Amzallag forwarded him the "already" tweet. (3558-013.)  Mr. Worthen would state that he was worried that "already" would be misinterpreted. (*Id.*)  It was not his intention to "give Milton a legal opinion that this was ok." (*Id.*)  Rather, it "was Milton's conclusion that he was legally ok," but Mr. Worthen "didn't bless that." (*Id.*)  Mr. Worthen was simply agreeing "with the fact that the first prototype [was] being produced." (*Id.*)  He was not agreeing "that it was legally ok."  (3558-015.)

II.  The Text Message Exchange is Inadmissible

The defendant's text messages identified above—in particular, those in lines 3 and 5—are inadmissible hearsay and should be precluded.  "When the defendant seeks to introduce his own prior statement for the truth of the matter asserted, it is hearsay, and it is not admissible." *United States v. Marin*, 669 F.2d 73, 84 (2d Cir. 1982); *see also United States v. Yousef*, 327 F.3d 56, 153 (2d Cir. 2003).  The defendant's statement in line 3 that the "prototype is already being produced" is a statement being offered for the truth of the matter asserted: to prove that the Badger was already

being produced. So too is the statement in line 5 that "the first prototype is being produced." That is a statement of fact being offered for the truth: to prove the status or existence of the Badger.

Milton's statement characterizing the lawfulness of his tweet is likewise inadmissible because it is a statement being offered for its truth that was made after he was confronted and reprimanded by an in-house attorney. In other words, the defendant is offering these statements for the purpose of proving that he was legally "OK" for tweeting as he did. Defense counsel has argued that the statement is admissible under Rule 803(3) as evidence of Milton's state of mind. To be admissible under Rule 803(3) as a statement of the declarant's then-existing state of mind, "the statement must face forward, rather than backward." *United States v. Harwood*, 998 F.2d 91, 98 (2d Cir. 1993) (citations omitted). "In addition, 'the reasons for the state of mind exception focus on the contemporaneity of the statement and the unlikelihood of deliberate or conscious misrepresentation.'" *Id.* (quoting *United States v. Cardascia*, 951 F.2d 474, 487 (2d Cir. 1991)). "Thus, to fall within Rule 803(3)'s 'state of mind' hearsay exception, the statements sought to be introduced must relate to the declarant's state of mind *during* the [illegal conduct]" and not what the declarant "said or did *after* the [illegal conduct] had taken place and as the scheme itself was being discovered." *United States v. Netschi*, 511 F. App'x 58, 61 (2d Cir. 2013) (affirming district court's exclusion of statements the defendant "made and reactions he had concerning the unraveling of the scheme"). For that reason, "self-serving explanation[s] of past events" are not admissible under Rule 803(3). *United States v. Blake*, 195 F. Supp. 3d 605, 610 (S.D.N.Y. 2016) (refusing to admit a defendant's self-exculpatory statements about his past conduct); *see also United States v. Annabi*, No. S1 10 Cr. 7 (CM), 2012 WL 489111, at *2 (S.D.N.Y. Feb. 14, 2012) ("*ex post facto* justifications for payments" that were made previously were inadmissible hearsay).

Here, the defendant is offering an after-the-fact explanation for a statement that Nikola's general counsel suggested could be misleading. Milton's explanations for why he tweeted "already" in response to a Twitter user's question are all *ex post*. He did not, for instance, prospectively seek legal advice and say to Worthen that he was going to respond "already" because a "prototype is already being produced." Because the statement was not contemporaneous with his tweeting, but rather was advanced after he was confronted, there is a heightened risk that the defendant's statements are the product of "deliberate or conscious misrepresentation." *Harwood*, 998 F.2d at 98. The same is true for Milton's statement that while he could "see how it could be misunderstood" since "the first prototype is being produced" he was "legally . . . OK." That statement is again an after-the-fact statement being offered for its truth. The defendant's assertion that he was legally OK because "the first prototype is being produced" is a factual statement said *after* the potentially misleading tweet.

Defense counsel also argued that the exchange "inform[s] the defendant's state of mind" because of Worthen's response to his statements. There are several reasons that is incorrect. First, when advancing this argument, defense counsel presented Milton's statement as if it was a question: "'So I'm OK?' . . . And Worthen writes back and says, 'I agree.'" But Milton's text is not a question; it is a statement: "So legally I'm OK." The statement cannot be offered for the relevant effect on the listener because it is actually Milton who is providing the self-serving justification after the fact, and Worthen cannot bless Milton's misstatement because he was not aware of it when it was made.

Second, for Worthen's reaction to be offered for a relevant non-hearsay purpose, Milton needs to establish that subsequent to this tweet he again said Nikola was "already" producing a Badger prototype.  In other words, Worthen's response to Milton is only relevant if it precedes an alleged misstatement.  Worthen's reaction after Milton has tweeted, without more, is not a relevant non-hearsay purpose for offering the document.  And unless the defendant can connect Worthen's response to the defendant's mental state in making subsequent, different statements, it is not relevant to how the comment informs the defendant's mental state in the future.

Third, as the notes of Worthen's interviews reveal, he was *not* agreeing that Milton was "legally ok."  He was agreeing that Nikola was starting to produce a prototype—which is itself a statement impermissibly being offered for its truth.  The only purpose of offering these statements, therefore, would be to give the misleading impression that Worthen blessed  this or other statements—neither of which is true—and to improperly suggest to the jury that the defendant was relying on the advice of counsel even though the defendant has specifically disavowed such a defense and has made no effort to satisfy its prerequisites.  The defendant, therefore, should also be precluded from offering the text message exchange under Rule 403 because it is likely to confuse and give a misimpression to the jury.  *See, e.g.*, *SEC v. Tourre*, 950 F. Supp. 2d 666, 684 (S.D.N.Y. 2013) (describing the risk of confusion and misunderstanding inherent in offering evidence of the presence of lawyers).

For the foregoing reasons, lines 3-7 of the above text message exchange should not be admitted.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York

By:   _s/_____
Jordan Estes
Matthew Podolsky
Nicolas Roos
Assistant United States Attorneys
(212) 637-2543/1947/2421

cc:   Counsel of Record (by ECF)