

570 Lexington Avenue, Suite 3500<br>New York, NY 10022

Kenneth A. Caruso
Special Counsel
212-466-6401
Ken.caruso@mfsllp.com

October 6, 2022

**VIA ECF**
The Hon. Edgardo Ramos
United States District Judge
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

  **Re: United States v. Milton, 21-cr-478 (ER)**

Dear Judge Ramos:

  We respectfully submit this letter brief in support of our Proposed Jury Instructions ("Requests") 48 and 61, ECF 167 at 63 and 79, which we ask the Court to give on Count Two (Title 18 securities fraud)[1] and Count Three (wire fraud), where the alleged victims are buyers (of Nikola stock).[2] We request a substantively identical charge on Count Four, with modified language where the alleged victim is a seller (of land). *See* ECF 167 at 79–80.

---

[1] Count Two alleges violation of both 18 U.S.C. § 1348(1) and (2). Section 1348(1) requires a "scheme or artifice to defraud," a term long interpreted to include "deprivations not only of money or property rights," but also "the intangible right of honest services." *Skilling v. United States*, 561 U.S. 358, 400–02 (2010) (interpreting the honest services statute, which Congress enacted to overrule *McNally v. United States*, 483 U.S. 350 350 (1987)). Here, of course, the government does not proceed on a theory of deprivation of honest services. Therefore, the government must prove a scheme to defraud under section 1348(1) consisting of "wronging one in his property rights by dishonest methods or schemes, and usually signify[ing] the deprivation of something of value by trick, deceit, chicane or overreaching." *United States v. Stavroulakis*, 952 F.2d 686, 694 (2d Cir. 1992). The language of Section 1348(2) explicitly requires the deprivation of "any money or property." 18 U.S.C. § 1348(2).

[2] The Court should construe the Title 18 securities fraud statute, 18 U.S.C. 1348, *in pari materia* with the mail fraud, wire fraud and bank fraud statutes. The relevant legislation dates to 1872, when Congress enacted the mail fraud statute, now codified at 18 U.S.C. § 1341. The mail fraud statute then served as the model for the wire fraud statute, enacted in 1952 and now codified at 18 U.S.C. § 1343. Those two statutes, in turn, served as the model for the bank fraud statute, enacted in 1984. *Neder v. United States*, 527 U.S. 1, 20-21 (1999). The courts therefore construe those three statutes *in pari materia*. *See, e.g., United States v. Blaszczak*, 947 F.3d 19 (2d Cir. 2019). Those three statutes later served as models for the securities fraud statute, enacted in 2002, and codified at 18 U.S.C. § 1348. *Id*. "[B]ecause the text and legislative history of 18 U.S.C. § 1348 clearly establish that it was modeled on the mail and wire fraud statutes, an analysis of Section 1348 should be guided by the caselaw construing those statutes." *United States v. Wey*, No. 15-CR-611 (AJN), 2017 WL 237651, at *9 n.6 (S.D.N.Y. Jan. 18, 2017) (internal quotation marks omitted); *see United States v. Coscia*, 866 F.3d 782, 799 (7th Cir. 2017) (holding that "section 1348 was modeled on the federal mail and wire fraud statutes[]").

The Hon. Edgardo Ramos
October 6, 2022
Page 2

> A.  Requests 48 and 61—Counts Two and Three

The government must prove that Mr. Milton spoke and acted with specific intent to defraud.  Specific intent to defraud has two parts -- intent to deceive the alleged victims, and intent to harm the alleged victims by depriving them of money or property.  The government must prove both parts.  *See, e.g., United States v. Jabar*, 19 F.4th 66, 76 (2d Cir. 2021) ("Because an intent to deceive alone is insufficient to sustain a wire fraud conviction, misrepresentations amounting only to a deceit . . . must be coupled with a contemplated harm to the victim[]") (internal quotation marks  omitted); *United States v. Starr*, 816 F.2d 94, 98 (2d Cir. 1987) ("Misrepresentations amounting only to a deceit are insufficient to maintain a mail or wire fraud prosecution.  Instead, the deceit must be coupled with a contemplated harm to the victim[]").

Requests 48 and 61 address the second part -- intent to harm the alleged victims by depriving them of money or property.  To prove this part, "the government ha[s] to establish that the omission [or misrepresentation] caused (or was intended to cause) actual harm to the [purchaser] of a pecuniary nature or that the [purchaser] could have negotiated a better deal for itself had it not been deceived."  *United States v. Binday*, 804 F.3d 558, 571 n.10 (2d Cir. 2015), quoting *United States v. Mittelstaedt*, 31 F.3d 1208, 1217 (2d Cir. 1994).  "'Although the government is not required to prove actual injury, it must, at a minimum, prove that the defendants contemplated some actual harm or injury to their victims[.]'"  *United States v. Gatto*, 986 F.3d 104, 113 (2d Cir. 2021), quoting *Starr*, 816 F.2d at 98.  The deprivation of money or property must be the *object* of the allegedly fraudulent conduct.  *Kelly v. United States*, 140 S.Ct. 1565, 1573 (2020).

In *Binday*, 804 F.3d at 570–71 (2d Cir. 2015), the Second Circuit surveyed its cases and set forth the "legal structure" applicable on this issue.  The Court identified three categories of cases, one of which pertains here: "We have repeatedly rejected application of the mail and wire fraud statutes where the purported victim received the full economic benefit of its bargain.  But we have upheld convictions for mail and wire fraud where the deceit affected the victim's economic calculus or the benefits and burdens of the agreement."  *Id*. at 570.

*Binday* cited examples of cases that fall into that category.  *See id*. at 570 n.10.  The examples included: *Starr*, 816 F.2d at 99 (reversing conviction, concluding that "because [the] customers received exactly what they paid for, there was no discrepancy between benefits reasonably anticipated and actual benefits received[]") (internal quotation marks omitted); *Mittelstaedt*, 31 F.3d at 1219 (reversing conviction where alleged victim paid "fair market value for [the] property" purchased); *United States v. Novak*, 443 F.3d 150, 159 (2d Cir. 2006) (reversing conviction where defendant's counterparties "received all they bargained for[;]" "[w]ithout more, the evidence is insufficient to show the requisite intent to harm[]"); and *United States v. Shellef*, 507 F.3d 82, 109 (2d Cir. 2007) (holding indictment legally insufficient where it did not allege "discrepancy between benefits reasonably anticipated and actual benefits received[]") (internal quotation marks omitted); *see also United States v. Regent Office Supply Co.*, 421 F.2d 1174, 1179 (2d Cir. 1970) (reversing conviction where misrepresentation was "not

The Hon. Edgardo Ramos
October 6, 2022
Page 3

directed to the quality, adequacy or price of goods to be sold, or otherwise to the nature of the bargain[]") .

In sum, "[t]he fraudulent scheme must implicate tangible economic harm." *United States v. Finazzo*, 850 F.3d 94, 111 (2d Cir. 2017).  "This economic harm can be manifested directly – such as by increasing the price the victim paid for a good – or indirectly – such as by providing the victim with lower-quality goods than it otherwise could have received." *Id*.

In this case, "[t]o convict, the government ha[s] to establish that [Mr. Milton's] omission [or misrepresentation] caused (or was intended to cause) actual harm to the [purchasers] of a pecuniary nature[.]" *Binday*, 804 F.3d at 571 n.10, quoting *Mittelstaedt*, 31 F.3d at 1217.  The evidence, however, is sufficient to support a contrary jury finding—that is, a jury finding that Mr. Milton's alleged misrepresentations and/or omissions did not cause, and were not intended to cause, actual harm of a pecuniary nature.  The evidence is sufficient to support a jury finding that the alleged victims paid fair market value for Nikola shares, and thereby received exactly what they paid for, with no discrepancy between benefits reasonably anticipated and actual benefits received.

Specifically, if the jury credits the testimony of Professor Ferrell, then the jury can find that the price of a share of Nikola stock was determined "by the market," based on the total mix of publicly available information, and that Mr. Milton's alleged deceptions did not influence the price.  *See, e.g.*, Oct. 3, 2022 Transcript at 2501:19–25; 2567:23–2569:18; 2589:6–9; 2601:10–13; 2602:13–20.  In other words, in the language of Requests 48 and 61, the evidence is sufficient to support a jury finding that:

> [t]he alleged victims received what they paid for—shares of Nikola stock—with no discrepancy between anticipated and actual benefits.  The alleged misstatements by Mr. Milton did not influence Nikola's stock price because the public securities market considers all publicly available information—including Nikola's SEC filings, which disclosed material facts regarding the matters on which Mr. Milton spoke, and which added context to Mr. Milton's alleged misstatements—and the price responds to all that publicly available information.  Therefore, anyone who purchased Nikola stock during the relevant period necessarily paid fair market value because Nikola's price per share was determined by market forces.

ECF 167 at 63.

Accordingly, on the trial record here, the jury can conclude that "no evidence of tangible injury was shown from which the jury could infer intent to defraud." *Starr*, 816 F.2d at 101.  The jury can conclude that the requisite tangible, economic harm was not "manifested directly – such as by increasing the price the victim paid for a good – or indirectly – such as by providing the victim with lower-quality goods than it otherwise could have received." *Finazzo*, 850 F.3d at

The Hon. Edgardo Ramos
October 6, 2022
Page 4

111.  The Court should therefore instruct the jury using Requests 48 and 61.  *See United States v. Rowland*, 826 F.3d 100, 115 (2d Cir. 2016) (holding that a "criminal defendant is entitled to have instructions presented relating to any theory of defense for which there is any foundation in the evidence," regardless of the strength of that evidence); *United States v. Durham*, 825 F.2d 716, 718-19 (2d Cir. 1987) ("[I]t is of some value to a defendant to have the trial judge" -- not mere defense counsel -- "clearly indicate to the jury what [the defendant's] theory of the case is, and that that theory, if believed, justifies acquittal[]"); *see id*. ("recogniz[ing] a criminal defendant's right to a charge which reflects the defense theory[]") (internal quotation marks omitted).

        B.  <u>Request 61—Count Four</u>

The same legal analysis applies to Count Four.  The defense simply modified the wording of Request 61 with respect to Count Four to apply to a *seller* (of land) who *received* fair market value, as distinct from a *buyer* (of Nikola stock) who *paid* fair market value.

        C.  <u>Conclusion</u>

For the foregoing reasons, the Court should instruct the jury using defense Requests 48 and 61.

                      Respectfully submitted,

                       /s/ Kenneth A. Caruso
                      Kenneth A. Caruso

cc:    All counsel of record