# CAHILL GORDON & REINDEL LLP
### 32 OLD SLIP
### NEW YORK, NY 10005

| | | | | |
|---|---|---|---|---|
| DANIEL R. ANDERSON | JONATHAN J. FRANKEL | TELEPHONE: (212) 701-3000 | MEGHAN N. McDERMOTT | JOHN A. TRIPODORO |
| HELENE R. BANKS | ARIEL GOLDMAN | WWW.CAHILL.COM | WILLIAM J. MILLER | GLENN J. WALDRIP, JR. |
| ANIRUDH BANSAL | PATRICK GORDON | ——————— | EDWARD N. MOSS | HERBERT S. WASHER |
| DAVID L. BARASH | JASON M. HALL | | NOAH B. NEWITZ | MICHAEL B. WEISS |
| LANDIS C. BEST | STEPHEN HARPER | 1990 K STREET, N.W. | WARREN NEWTON § | DAVID WISHENGRAD |
| BRADLEY J. BONDI | WILLIAM M. HARTNETT | WASHINGTON, DC 20006-1181 | DAVID R. OWEN | C. ANTHONY WOLFE |
| BROCKTON B. BOSSON | NOLA B. HELLER | (202) 862-8900 | JOHN PAPACHRISTOS | COREY WRIGHT |
| JONATHAN BROWNSON * | CRAIG M. HOROWITZ | ——————— | LUIS R. PENALVER | ELIZABETH M. YAHL |
| DONNA M. BRYAN | TIMOTHY B. HOWELL | CAHILL GORDON & REINDEL (UK) LLP | KIMBERLY PETILLO-DÉCOSSARD | JOSHUA M. ZELIG |
| JOYDEEP CHOUDHURI * | DAVID G. JANUSZEWSKI | 20 FENCHURCH STREET | SHEILA C. RAMESH | |
| JAMES J. CLARK | ELAI KATZ | LONDON EC3M 3BY | MICHAEL W. REDDY | |
| CHRISTOPHER W. CLEMENT | JAKE KEAVENY | +44 (0) 20 7920 9800 | OLEG REZZY | * ADMITTED AS A SOLICITOR IN ENGLAND AND WALES ONLY |
| LISA COLLIER | BRIAN S. KELLEHER | ——————— | THORN ROSENTHAL | ± ADMITTED AS A SOLICITOR IN WESTERN AUSTRALIA ONLY |
| AYANO K. CREED | RICHARD KELLY | | TAMMY L. ROY | |
| PRUE CRIDDLE ± | CHÉRIE R. KISER ‡ | WRITER'S DIRECT NUMBER | JONATHAN A. SCHAFFZIN | |
| SEAN M. DAVIS | JOEL KURTZBERG | | ANDREW SCHWARTZ | ‡ ADMITTED IN DC ONLY |
| STUART G. DOWNING | TED B. LACEY | | DARREN SILVER | § ADMITTED AS AN ATTORNEY IN THE REPUBLIC OF SOUTH AFRICA ONLY |
| ADAM M. DWORKIN | MARC R. LASHBROOK | | JOSIAH M. SLOTNICK | |
| ANASTASIA EFIMOVA | ALIZA R. LEVINE | | RICHARD A. STIEGLITZ JR. | |
| JENNIFER B. EZRING | JOEL H. LEVITIN | | ROSS E. STURMAN | |
| HELENA S. FRANCESCHI | GEOFFREY E. LIEBMANN | | SUSANNA M. SUH | |
| JOAN MURTAGH FRANKEL | BRIAN T. MARKLEY | | ANTHONY K. TAMA | |

(202) 862-8910

October 6, 2022

**BY ECF**

The Honorable Edgardo Ramos
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

Re:   *United States v. Trevor Milton*, S1 21 Cr. 478 (ER)

Dear Judge Ramos:

Trevor Milton, through his counsel, respectfully submits this letter brief in support of his Fourth Proposed Supplemental Jury Instruction (ECF 203), which we ask the Court to give with respect to venue. Respectfully, the Court's proposed instruction on venue contains inaccurate statements of the law on venue, and it omits important statements of the law necessary to guide the jury's determination.

"Venue is proper only where the acts constituting the offense—the crime's 'essential conduct elements'—took place." *United States v. Tzolov,* 642 F.3d 314, 318 (2d Cir. 2011) (citing *United States v. Rodriguez-Moreno,* 526 U.S. 275, 280 (1999)). Not all elements of a crime are "essential conduct elements" for purposes of establishing venue. *See United States v. Ramirez*, 420 F.3d 134, 145 (2d Cir. 2005) ("'having devised or intending to devise a scheme or artifice to defraud,' while an essential element, is not an essential *conduct* element for purposes of establishing venue.") (emphasis in original); *United States v. Pace*, 314 F.3d 344, 349 (9th

CAHILL GORDON & REINDEL LLP

-2-

Cir. 2002) ("[a]lthough a fraudulent scheme may be an element of the crime of wire fraud, it is using wires and causing wires to be used in furtherance of the fraudulent scheme that constitutes the prohibited conduct."). Anterior criminal conduct—what the Supreme Court has described as a "circumstance" element—does not constitute an "essential conduct element" of a crime for the purposes of venue. *See, e.g.*, *Rodriguez-Moreno*, 526 U.S. at 280 n.4 (citing *United States v. Cabrales*, 524 U.S. 1, 7 (1998), for the proposition that "existence of criminally generated proceeds," which occurred in Missouri, was anterior criminal conduct and did not establish venue when the proscribed conduct was money laundering, which occurred in Florida); *United States v. Auernheimer*, 748 F.3d 525, 533 (3d Cir. 2014) (describing a "circumstance element" as "simply a fact that existed at the time" of the criminal conduct).

Neither the listing of Nikola stock on the Nasdaq nor the processing or execution of a securities trade by so-called retail investors within the Southern District of New York satisfies constitutional and statutory requirements for venue in the Southern District of New York for the prosecution of a criminal offense for which the underlying conduct does not involve the trading of a security. The Second Circuit has held that, "where the defendant is charged with an offense involving the trading of securities on a stock exchange located in the [Southern District of New York], venue in that district is appropriate." *United States v. Chow*, 993 F.3d 125, 143 (2d Cir. 2021) (insider trading prosecution against tipper); *see also United States v. Khalupsky*, 5 F.4th 279, 291–92 (2d Cir. 2021). But the alleged criminal act in both *Chow* and *Khalupsky*, however, was the trade itself.[1] Here, Mr. Milton's alleged offense consists of purported misstatements about the products of a company that happens to be publicly traded on a stock exchange. The alleged criminal act was completed when the statement was made. Trading is not an essential conduct element of any of the charged offenses in this case. In *United States v. Kim*, 246 F.3d 186, 191 (2d Cir. 2001), the Second Circuit referred to the "key verbs" as a useful tool in determining where the alleged crime is committed. The key verbs in an alleged misstatement crime have nothing to do with key verbs around trading activity on a stock exchange.

To establish constitutional venue, meaning the crime was "committed" in that district, the alleged conduct that establishes venue must be "both foreseeable to [the defendant] and within

---

[1] In *Chow*, the Second Circuit entertained, but did not reach a conclusion on, an argument that servers for the Nasdaq stock exchange may be located outside of the Southern District of New York—which, because the Nasdaq stock exchange is an electronic exchange, would mean that the actual trading necessarily occurred outside the Southern District. *Chow*, 993 F.3d at 133. The Court erred by permitting the government to solicit testimony from lay witnesses about the location of Nasdaq but excluding the testimony from Professor Ferrell, an expert witness with actual knowledge and experience, about the location of the Nasdaq servers. Tr. 2494:12–2498:2. Although the Nasdaq stock exchange is headquartered in the Southern District of New York, the servers on which the Nasdaq trading is conducted are physically located in New Jersey and Chicago. See Nasdaq Co-Location, Nasdaq, https://www.nasdaq.com/solutions/nasdaq-co-location. *See also* NASDAQ Powers Up Its Colo Offerings, DataCenter Knowledge (Feb. 7, 2012), https://www.datacenterknowledge.com/archives/2012/02/07/nasdaq-powers-up-its-colo-offerings ("The NASDAQ OMX Data Center is located in New Jersey, and is one of the largest U.S. trading hubs in the world, hosting both equities and options markets and providing access to major industry market data feeds and multiple telecommunications providers."). As such, all trading of Nikola stock necessarily occurred outside the Southern District of New York.

CAHILL GORDON & REINDEL LLP

-3-

his control." *Kim*, 246 F.3d at 193. Most fundamentally, the venue requirement "demand[s] some sense of venue having been freely chosen by the defendant." *See United States v. Kirk Tang Yuk*, 885 F.3d 57, 69 (2d Cir. 2018) (internal quotations omitted). The Second Circuit has acknowledged implicitly that, if electronic communications by a defendant are to establish constitutional venue, those communications must be purposefully directed into the forum. *See United States v. Lange*, 834 F.3d 58, 71–72 (2d Cir. 2016); *United States v. Levis*, 488 F. App'x 481, 485 (2d Cir. 2012).

Today, a person, like Mr. Milton, who posts on social media does not choose a recipient. Unlike an email, which is only sent using an email address assigned by a service provider to an individually identified person, or a telephone call, which is only made using a phone number assigned by a service provider to an individually identified person, a post on social media entirely lacks a designated recipient. A person who posts on social media has no effective control over who receives the post. Mr. Milton's social media acts were received in every single district, so there is nothing unique to the Southern District of New York. Finding venue in the criminal context without any directionality in electronic communications would be unprecedented and improper.

With respect to Count I, violation of Section 10(b) of the Securities and Exchange Act of 1934, and Count II, violation of 18 U.S.C. § 1348, the relevant conduct for the crime charged is the making of a misstatement. For venue to be proper in the Southern District of New York with respect to Count I and Count II, either (i) the defendant must have made the misstatement while physically present in the Southern District of New York, or (ii) if the defendant was not physically present in the Southern District of New York, the defendant must have purposefully directed the misstatement to an identified recipient in the Southern District of New York – neither of which is supported by the evidence in the record.[2]

With respect to Counts III and IV, violation of 18 U.S.C. § 1343, the relevant conduct for the crime charged is the use of wires, which includes the use of the internet, in the making of a misstatement. For venue to be proper in the Southern District of New York with respect to Counts III and IV, either (i) the defendant must have used wires in the making of a misstatement while physically present in the Southern District of New York, or (ii) if the defendant was not physically present in the Southern District of New York, the defendant must have used wires, which he purposefully directed through the Southern District of New York to an identified recipient, in the making of a misstatement. *See Kim*, 246 F.3d at 193 ("[T]he evidence at trial established that [the defendant] *knew* the fraudulent invoices would be paid by a bank in New York. The acts that occurred in Manhattan were therefore both foreseeable to [the defendant] and within his control, as he was the one approving the invoices for payment." (emphasis added)). In other words, venue would be proper only if it was both foreseeable that the wire would be routed

---

[2] For this reason, the Court should grant the Mr. Milton's motion for judgment of acquittal under Rule 29 for Counts I and II.

CAHILL GORDON & REINDEL LLP

-4-

through the Southern District of New York and in his control – neither of which is supported by the evidence in the record.[3]

For the foregoing reasons, and for those reasons set forth in the Motion to Dismiss Indictment or, in the Alternative, To Transfer Venue (ECF 11) and the Reply Memorandum in Support of Defendant's Motion (ECF 22), the Court should instruct the jury using the Fourth Proposed Supplemental Request to Charge (ECF 203).

Respectfully submitted,

/s/ Bradley J. Bondi
Bradley J. Bondi
CAHILL GORDON & REINDEL LLP
1990 K Street NW, Suite 950
Washington, DC 20006
(202) 862-8910
BBondi@cahill.com

Marc L. Mukasey
MUKASEY FRENCHMAN LLP
570 Lexington Avenue, Suite 3500
New York, NY 10022
(212) 466-6400
Marc.Mukasey@mfsllp.com

**Counsel for Trevor Milton**

cc:  Counsel of Record (by ECF)

---

[3] For this reason, the Court should grant the Mr. Milton's motion for judgment of acquittal under Rule 29 for Counts III and IV.