

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

The Silvio J. Mollo Building
One Saint Andrew's Plaza
New York, New York 10007

May 19, 2023

**BY ECF**

The Honorable Edgardo Ramos
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

    Re:    *United States v. Trevor Milton,* **S1 21 Cr. 478 (ER)**

Dear Judge Ramos:

    The Government writes in response to the defendant's letter (Dkt. No. 274), dated May 12, 2023, regarding the Supreme Court's recent decision in *Ciminelli v. United States*, No. 21-1170 (U.S. May 11, 2023) ("Slip Op."). In his letter, the defendant claims that the holding of *Ciminelli* "squarely rejects" the Government's position in this case. (Def. Letter 1). In fact, the defendant's characterization of *Ciminelli* is wholly inaccurate, and the Supreme Court did not address any position advanced by the Government here, much less "squarely reject[ ]" it. *Ciminelli* provides no support for the defendant's post-trial motion.

    In *Ciminelli*, the Supreme Court addressed a single question: "whether the Second Circuit's longstanding 'right to control' theory of fraud"—a theory that the Government did not advance and upon which this Court did not instruct the jury in this case—"describes a valid basis for liability under the federal wire fraud statute." Slip Op. 1. The Supreme Court held that "'potentially valuable economic information' 'necessary to make discretionary economic decisions' is not a traditional property interest," and therefore "not a valid basis for liability under § 1343." Slip Op. 1-2.

    Milton, seeking to take advantage of a decision that has no relevance to any issue in his case, points to a quotation in *Ciminelli* of the Supreme Court's decision in *Kelly v. United States*: "the Government must prove not only that wire fraud defendants 'engaged in deception,' but also that money or property was 'an object of their fraud.'" Slip Op. 5 (quoting *Kelly v. United States*, 590 U.S. ___ (2020) (slip op. at 7)). Milton asserts that this quotation stands for the proposition that the defendant must himself obtain the money or property that is the object of the fraud. (Def.'s Letter 1). But this sentence says no such thing. It simply reiterates that money or property must be "an object"—a target or purpose—of the scheme to defraud.[1] And certainly, *Ciminelli*, which

---

[1]     In fact, the original language in *Kelly* described both the wire fraud statute (18 U.S.C. § 1343) and the federal-program fraud statute (18 U.S.C. § 666(a)(1)(A)), and specifically referred

neither raised nor addressed the question of whether a defendant must himself "obtain" the money or property, did not by imagined implication overrule long-standing precedent to the contrary. *See, e.g.*, *United States v. Males*, 459 F.3d 154, 158-59 (2d Cir. 2007) (rejecting defendant's argument "that the jury should have been instructed that it could only convict him if it found that he intended to 'obtain' his victim's money" and holding that a temporary deprivation of a victim's use of money or property is sufficient); *Porcelli v. United States*, 404 F.3d 157, 162 (2d Cir. 2005) ("the defendant does not need to literally 'obtain' money or property to violate the statute").

Again drawing on words and phrases devoid of relevant context, Milton also seeks to confuse matters by conflating the scheme with the money or property. Specifically, Milton writes that "the evidence at most established Mr. Milton deprived shareholder of 'information' regarding 'the valuation of a corporation.'" (Def.'s Letter 1 (quoting Slip Op. 7 n.4)). This argument is meaningless. Certainly the evidence demonstrated—by far more than a reasonable doubt—that Milton made false and misleading statements regarding Nikola's products and value. But the Government has never suggested that that information was the object of the scheme. Instead, those false and misleading claims were made with the object of depriving investors of their money by causing them to exchange money for stock at inflated prices.

Of course, as noted in the Government's Opposition, even if the defendant were correct in his interpretation of the law and he did have to engage in scheme the object of which was to obtain money or property for himself, the evidence was still far more than sufficient to support the jury's verdict. (*See* Dkt. No. 263 at 26-27). As the Government argued at trial, an object of the defendant's scheme was ultimately to sell his own stock at inflated prices, thereby both depriving purchasers of their money and obtaining it for himself.[2]

---

to the Supreme Court's characterization of the wire fraud statute in *McNally v. United States*, 483 U.S. 350 (1987), not as prohibiting the obtaining of property, but rather "deceptive 'schemes to deprive [the victim of] money or property.'" *Kelly*, slip op. 6-7 (quoting *McNally*, 483 U.S. at 356) (alteration in *Kelly*).

[2]  In his letter, as in his reply brief, Milton contends that it is not possible for him to have schemed to sell his stock at inflated prices by making misrepresentations during the period in which his shares were subject to a lock up. (Def. Letter 1). At the risk of belaboring the obvious, inflating the stock price on Monday will naturally lead to sales at the inflated price on Tuesday. Indeed, such a scheme can only succeed if the perpetrator inflates the stock price prior to his sales.

In short, *Ciminelli* has no relevance to any issue here, and the defendant's motion remains without merit.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York

By:   s/_____
　　　Matthew Podolsky
　　　Nicolas Roos
　　　Assistant United States Attorneys
　　　(212) 637-1947/2421

cc:   Counsel of Record (by ECF)