

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

The Silvio J. Mollo Building
One Saint Andrew's Plaza
New York, New York 10007

December 17, 2023

**BY ECF**

The Honorable Edgardo Ramos
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

    Re:    *United States v. Trevor Milton,* **S1 21 Cr. 478 (ER)**

Dear Judge Ramos:

    The Government writes in response to defendant Trevor Milton's letter ("Def.'s Letter"), submitted to the Court on the afternoon of Friday, December 15, 2023, containing objections to the Presentence Investigation Report ("PSR"), which is dated April 21, 2023.

    As an initial matter, the objections contained in Milton's letter are untimely. As the defendant acknowledges in his letter, an initial draft of the PSR was disclosed to the parties on March 28, 2023, after which the defendant submitted objections to the Probation Office, and the Government provided responses. After receiving those objections and responses, the Probation Office revised the PSR and issued a final version on April 21, 2023. The defendant waited until the afternoon of Friday, December 15, 2023, prior to sentencing, set for the morning of Monday, December 18, 2023, and after the Government had filed its own sentencing submission, to submit to the Court objections to the April 21, 2023 PSR. The defendant's December 15 submission includes new objections to facts that had been contained in the initial March 28, 2023 draft of the PSR to which the defendant did not object at the time. These objections should be rejected for failure to show good cause for delay. *See* Fed. R. Crim. P. 32(f)(1) & (i)(1)(D) (requiring that "[w]ithin 14 days after receiving the presentence report, the parties must state in writing any objections," and providing that a court "may, for good cause, allow a party to make a new objection at any time before sentence is imposed").

    In any event, the objections to the PSR are remarkable and relevant to sentencing in this matter only insofar as they cast light on the depth of the defendant's refusal to accept responsibility for his own conduct or even to acknowledge the consequences that his actions have had on others. The Court should take into account the defendant's profound denial of accountability and insistence on blaming others in considering the history and characteristics of the defendant and the need for specific deterrence in this case, as a defendant who cannot acknowledge or consider any fault on his own part or even the harm to others is all the more likely to reoffend. *See* 18 U.S.C. § 3553(a)(1) & (2). On their substance, the objections are—with the exception of the request that

the PSR update the defendant's current home address, to which the Government consents—wholly without merit, and consist of claimed facts and arguments that are either inconsistent with the trial evidence and were rejected by the jury, or irrelevant and misleading, or all of the above.

In particular:

- The defendant "objects to the statement that he acted 'to induce retail investors to purchase Nikola stock.'" (Def.'s Letter 1). Of course, Milton's intent, and specifically his desire to induce retail investors to purchase Nikola stock, was a central issue of fact at trial that was decided against Milton. The record is replete with evidentiary support for the jury's finding, including evidence of Milton's own statements on the matter, to such a degree that there is no plausible argument in support of Milton's position and his continued denial of this fact should be viewed as an unwillingness to accept responsibility for any aspect of his conduct. (*See, e.g.*, Trial Tr. 1716-17, 1758, 1767, 1769; GX 38, 71, 554). To the extent that the defendant argues that "[t]he trial record reflects that Mr. Milton was not *maliciously* targeting retail investors" (Def.'s Letter 1 (emphasis added)), the record is otherwise. In any case, the word "maliciously" does not appear in the PSR at all, and this argument appears to be little more than an attempt to distract from what is actually contained in the PSR.

  Similarly, the defendant "objects to the sentences that address an Initial Public Offering ('IPO') and a Special Purpose Acquisition Company ('SPAC')," on the bases that "Mr. Milton was not the driving force behind the decision of the Nikola Board of Directors to go public by merging with a SPAC" and "there is no evidence in the record that Mr. Milton opted for a SPAC transaction because a SPAC transaction would place fewer restrictions on his public statements." (Def.'s Letter 2). Once again, the defendant mischaracterizes the record and, perhaps more importantly, argues against strawmen. The PSR states neither that Milton was "the driving force" (Def.'s Letter 2) behind the decision to go public via SPAC transaction, nor that Milton opted for a SPAC transaction for any particular reason. (*See* PSR ¶ 10). The defendant's objection again appears calculated to distract from the salient point, which is not that the defendant chose a SPAC transaction because of its lack of a quiet period, but instead that he took advantage of the lack of a quiet period to achieve his criminal aims—a benefit about which he was explicit. (*See* GX 412-T at 10 (When going public via IPO, "you have a quiet period with going public where you can't even talk about something. But because we are being bought, and it's a reverse merger, it allowed me to communicate our message to the -- to the market, . . . ."); *see also* GX 417-T at 7 ("The advantage to SPAC is I can communicate with the market. If you go public, there's a quiet period; you can't say anything. So the bankers are trying to tell people what your company is like. Well, good luck there. So I wanted to be in control, I wanted to be in communication with the public about what we are, who we are, how our company -- our business model is so successful.")). The defendant has identified nothing in Paragraph 10 of the PSR that is inaccurate.

- With respect to Paragraphs 11, 12, 13, 15, 16, 17, 18, 19, 20, 22, and 23, the defendant apparently seeks to relitigate the trial and the conclusions of the jury, claiming, among other things, that the PSR lacks "important context" and misconstrues his statements. (Def.'s Letter 2-4). Milton generally argues that his misrepresentations were not false or

material by providing his own interpretation of his words or attempting to point to various trivial or irrelevant facts as somehow bearing on the falsity or materiality of his representations. (Def.'s Letter 2-4). The defendant is wrong, as the evidence at trial and the findings of the jury confirm, and the PSR is accurate. No changes should be made.

- With respect to Paragraph 21, Milton objects on the basis that the facts—all accurate—contained in that paragraph "suggest[ ] that Mr. Milton had an improper motive" to arrange for the purchase of electrolyzers for use in publicity when Nikola's stock was becoming publicly listed but Nikola had not, in fact, built any hydrogen stations. (Def.'s Letter 4). Indeed, that conclusion is the logical inference from the evidence, but importantly, Milton does not actually identify anything inaccurate in the PSR, and no changes are warranted.

- With respect to Paragraph 28, concerning Milton's false claim that Nikola had secured billions of dollars in enforceable contracts for its vehicles, Milton objects on the basis that the PSR "omits any reference to approval by management or the board of directors." (Def.'s Letter 4). Milton's arguments again amount to nothing more than excuse-making and misdirection. The relevant fact in Paragraph 28 is that Milton lied about the status of Nikola's contracts—not what Nikola disclosed in its filings—and there is no claim or factual basis to suggest that management or anyone else vetted and approved Milton's falsehood.

- With respect to Paragraph 29, Milton persists in objecting to the fact that retail investors purchased VectoIQ stock and in claiming that "[p]urchases of VectoIQ stock cannot be included in the conduct of conviction." (Def.'s Letter 4). The defendant's insistence on this point, as at trial, is bewildering, as it is beyond dispute and, indeed, Milton himself publicly stated at the time that VectoIQ shares would automatically become Nikola shares and encouraged investors to buy VectoIQ shares. (*See* GX 588 (Milton tweeting, "You can buy VTIQ and it automatically converts to NKLA upon merger"); *see also, e.g.*, GX 585, 586, 587, 589, 590, 591, 592, 593). Paragraph 29 is factually accurate, and Milton's refusal to accept even uncontroversial facts should be taken into consideration at sentencing.

- With respect to Paragraph 30, Milton objects to the fact that many Nikola stockholders suffered financial losses on the basis that "at times investors made money from Nikola stock purchases." (Def.'s Letter 5). This argument is a non-sequitur. The fact that some investors may have had the good fortune to sell stock at a time when they unwittingly benefitted from Milton's scheme says nothing about whether other investors lost money. For the reasons set forth in the Government's sentencing submission, Paragraph 30 is accurate.

- With respect to Paragraph 31, Milton claims that the PSR omits information concerning the price at which Milton's victim previously purchased the Wasatch Creeks ranch. This fact has absolutely no bearing on Milton's culpability and Milton's argument appears to be an effort to minimize his own conduct by suggesting that his victim was not harmed as badly as he could have been. The objection should be rejected, and the attitude of the defendant toward his conduct and his victim reflected in this objection should be taken into account at sentencing.

3

- With respect to Paragraph 32, Milton again engages in misdirection, claiming it is inaccurate to state that "Milton agreed to a six-month lock-up period under 'management and investor pressure,'" because lock-up periods "are standard for executives in newly public companies." (Def.'s Letter 5). In fact, the record makes clear that Milton resisted the lock-up "even though it was quite standard" and had to be pressured and incentivized with permission to sell some stock to agree to this typical measure. (Trial Tr. 1734; *see also* GX 222).

- With respect to Paragraph 33, Milton complains about the "characterization that he 'made efforts to inflate the stock's price and immediately sought to monetize portions of the stock he owned,'" again invoking irrelevant portions of the record in a vain attempt to support his point. (Def.'s Letter 5). In particular, Milton asserts that "private conversations with Mr. Hicks could not inflate the stock price, especially as the stock traded at that time was VectoIQ." (Def.'s Letter 5). Even leaving aside the erroneous suggestion regarding VectoIQ, the defendant appears to purposefully mischaracterize Paragraph 33 of the PSR. The point is not that Milton was seeking to inflate the price of Nikola's stock through conversations with Hicks. Rather, having already inflated Nikola's (or at the time VectoIQ's) stock price by misleading other investors to purchase VectoIQ stock, Milton sought to benefit from the success of his scheme by trading stock options—the perceived value of which was correspondingly inflated with the stock price—for property.

    With respect to Milton's objection regarding the date of the announcement of the Nikola-VectoIQ merger, although any putative confusion stemming from the drafting of the sentence in question is wholly immaterial, the Government has no objection to revising the sentence to read, "By April 2021, the merger had been announced and VectoIQ's stock had appreciated significantly."

    With respect to Milton's complaint regarding the sentence about Milton's willingness to purchase property in exchange only for cash and stock options, although the sentence fairly and accurately captures the negotiations between Milton's broker and Hicks, the Government has no objection to removing this sentence.

- With respect to Paragraph 34, Milton makes various objections seeking to relitigate the evidence adduced at trial. Paragraph 34 is accurate, and no changes are warranted.

- With respect to Paragraph 35 and 36, Milton lodges various objections that confuse the plain meaning of the PSR. No changes are warranted.

- With respect to Paragraph 38, Milton appears to propose to add (although his request is not entirely clear) facts about his victim that are wholly irrelevant to any issue at sentencing; these objections instead reflect again Milton's unwillingness to confront his own conduct and desire instead to blame or criticize his victim. No changes should be made.

- With respect to Paragraphs 39, 40, 47, 48, 116, and 117, Milton makes various objections relating to loss amount and other issues concerning the correct calculation of the advisory sentence under the United States Sentencing Guidelines. These objections are inconsistent with the record evidence and were addressed in the Government's sentencing submission.

- With respect to Paragraphs 75 and 85, the defendant makes various irrelevant objections and purported clarifications. The PSR is accurate, and no changes are necessary.

                                  Respectfully submitted,

                                  DAMIAN WILLIAMS  
                                United States Attorney for the  
                                Southern District of New York

By:    s/_____  
        Matthew Podolsky  
        Nicolas Roos  
        Assistant United States Attorneys  
        (212) 637-1947/2421

cc:    Counsel of Record (by ECF)