

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*Jacob K. Javits Federal Building*
*26 Federal Plaza*
*New York, New York 10278*

January 18, 2024

**BY ECF**

The Honorable Edgardo Ramos
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

      Re:    *United States v. Trevor Milton*, S1 21 Cr. 478 (ER)

Dear Judge Ramos:

      The Government writes regarding the forfeiture of the Wasatch Creeks Ranch in Utah. For the reasons set forth below, the Court should deny the defendant's objections to the forfeiture of the ranch ("Defendant's Letter" (Dkt. No. 320)), enter the preliminary order of forfeiture (Dkt. No. 319), and order the forfeiture of the ranch as, as set forth in the preliminary order, as part of the Court's sentencing and as an amended final judgment.

### A. Background

      On June 22, 2022, a grand jury returned a superseding indictment charging the defendant in Count Four with wire fraud based on a scheme carried out by the defendant to defraud Peter Hicks, the seller of the Wasatch Creeks Ranch in Utah. (Dkt. No. 123.) As alleged in the Superseding Indictment, and as proven at trial, the defendant induced Hicks to sell the ranch to the defendant, and to accept stock options in Nikola as part of the consideration for the ranch, by making materially false statements about Nikola and its products. (Presentence Investigation Report ("PSR") ¶¶ 33-36; GX 1400-T.) Specifically, in early June 2020, the defendant and Hicks agreed to the purchase of the ranch for $8.5 million in cash and Nikola stock options valued then at $8.5 million. (PSR ¶ 35; Trial Tr. 2069-70.) At the time the deal closed, the stock options, if exercisable then, would have netted Hicks more than $15 million—a value that Hicks believed was real based on the representations made by Milton directly to Hicks and publicly in the media. (Trial Tr. 2091-92.) Indeed, Hicks was initially reluctant to accept stock. (Trial Tr. 2031-32.) But as a result of the defendant's false statements, Hicks agreed to transfer his property to the defendant for that package of consideration. (Trial Tr. 2060-62.) But for Hicks's agreement to accept stock options, there would have been no sale of the property to the defendant because the defendant was "willing to purchase the property in exchange only for a combination of cash and stock options." (PSR ¶ 33.)

      The indictment included a forfeiture allegation, which notified the defendant that, as a result of committing the offense charged in Count Four, the Government would forfeit, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461, the "real property" that "constitutes or is derived

from proceeds traceable to the commission of" the wire fraud. (Dkt. No. 123 at 4.) Following the defendant's conviction at trial, and in advance of sentencing, the Government notified defense counsel that it intended to seek the forfeiture of the Wasatch Creeks Ranch. Again, in its sentencing submission filed before sentencing, the Government notified the defendant and the Court of its intention to seek the forfeiture of the ranch. (Dkt. No. 317.)

At sentencing, the Court ordered the forfeiture of the ranch. (Sent. Tr. at 89, 102.) To permit the defendant an opportunity to contest the terms of the forfeiture that were part of the Court's oral sentence, the Court ordered the Government to file a proposed order of forfeiture and that the defendant file any response. (Sent. Tr. at 102.) As the Superseding Indictment indicated, the proposed written order provides that the ranch will be forfeited, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461, as proceeds of the defendant's wire fraud. (Dkt. No. 319-1.)

On January 17, 2024, the Court entered a final judgment, which included that "[t]he defendant shall forfeit the defendant's interest in the following property to the Untied States: Wasatch Ranch as purchased from Peter Hicks." (Dkt. No. 327 at 7.) On January 18, 2024, the defendant filed a letter inquiring about whether the Court's final judgment incorporated the parties' briefing on the proposed order of forfeiture. (Dkt. No. 328.)

## B. Discussion

### 1. The Ranch Is Subject to Forfeiture

The Government seeks forfeiture of Wasatch Creeks Ranch, as defined in the preliminary order of forfeiture, pursuant to 18 U.S.C. § 981(a)(1)(C), as well as 28 U.S.C. § 2461(c), which together provide for forfeiture of real property "which constitutes or is derived from proceeds traceable" to wire fraud, among other offenses. 18 U.S.C. § 981(a)(1)(C); *see also* 18 U.S.C. §§ 1956(c)(7), 1961(1). The term "proceeds" is defined, in pertinent part, as "property of any kind obtained directly or indirectly, as the result of the commission of the offense giving rise to forfeiture, and any property traceable thereto, and is not limited to the net gain or profit realized from the offense." 18 U.S.C. § 981(a)(2)(A). In other words, "[p]roceeds" are "property that a person would not have but for the criminal offense." *United States v. Daugerdas*, No. 09 Cr. 581 (WHP), 2012 WL 5835203, at *2 (S.D.N.Y. Nov. 7, 2012) (quoting *United States v. Grant*, No. 05 Cr. 1192 (NRB), 2008 WL 4376365, at *2 n.1 (S.D.N.Y. Sept. 25, 2008)). For that reason, "assets that are otherwise legitimate or untainted may nonetheless be seized if a criminal defendant 'would not have acquired or maintained [them] but for his fraudulent scheme.'" *Id.* (quoting *United States v. Porcelli*, 865 F.2d 1352, 1365 (2d Cir. 1989)).

Whether the proceeds subject to forfeiture include all property obtained from the offense or are limited to the net gain or profit depends on the specific circumstances of the conduct. *See* 18 U.S.C. § 981(a)(2). Specifically, as relevant here:

> (A) In cases involving illegal goods, illegal services, unlawful activities, and telemarketing and health care fraud schemes, the term "proceeds" means property of any kind obtained directly or indirectly, as the result of the commission of the offense giving rise

to forfeiture, and any property traceable thereto, and is not limited to the net gain or profit realized from the offense.

(B) In cases involving lawful goods or lawful services that are sold or provided in an illegal manner, the term "proceeds" means the amount of money acquired through the illegal transactions resulting in the forfeiture, less the direct costs incurred in providing the goods or services. The claimant shall have the burden of proof with respect to the issue of direct costs. The direct costs shall not include any part of the overhead expenses of the entity providing the goods or services, or any part of the income taxes paid by the entity.

*Id.* Although this distinction has at times proved difficult to apply,

[i]n the precedent that does exist, courts have interpreted § 981(a)(2)(A) as applying to conduct that is "inherently unlawful," meaning conduct that cannot be committed in a lawful manner, such as robbery, *see* [*United States v.*] *Contorinis*, 692 F.3d [136,] 145 n.3 [(2d Cir. 2012)], embezzlement, *see United States v. George*, 886 F.3d 31, 40 (1st Cir. 2018); *United States v. Bodouva*, 853 F.3d 76, 80 (2d Cir. 2017), soliciting funds as part of a Ponzi scheme, *see United States v. Bonventre*, 646 F. App'x 73, 90 (2d Cir. 2016), and selling food stamps without authorization, *see Contorinis*, 692 F.3d at 145 n.3 (citing *United States v. Uddin*, 551 F.3d 176, 181 (2d Cir. 2009)). In contrast, courts have interpreted § 981(a)(2)(B) as applying to the sale of "a good or service that could, hypothetically, be provided in a lawful manner" but that, in the context of the case, was provided illegally, such as trading securities based on material nonpublic information. *George*, 886 F.3d at 40; *see also, e.g., Contorinis*, 692 F.3d at 145 n.3; *United States v. Mahaffy*, 693 F.3d 113, 138 (2d Cir. 2012); *United States v. Nacchio*, 573 F.3d 1062, 1090 (10th Cir. 2009).

*United States v. Percoco*, No. 16 Cr. 776 (VEC), 2019 WL 1593882, at *3 (S.D.N.Y. Apr. 15, 2019).

Wasatch Creek Ranch constitutes proceeds of the defendant's wire fraud, and the defendant does not seriously argue otherwise. The defendant hints that "some of [the ranch's] value is derived from lawful, non-forfeitable sources" (Def.'s Letter 3), but offers no support for the suggestion. To the contrary, the entirety of Wasatch Creeks Ranch, as delineated in the proposed preliminary order of forfeiture, is forfeitable because the transaction would not have taken place but for the defendant's fraud and the defendant obtained Wasatch Creeks ranch directly from the commission of the offense. *See* 18 U.S.C. § 981(a)(1)(C), (a)(2). The defendant made false statements to Hicks to induce him to accept Nikola stock options in lieu of cash for the ranch. In other words, but for the false statements, there would have been no deal by Hicks. By inducing Hicks to take the stock options, the defendant received real property he otherwise would not have paid for. (*See* PSR ¶ 33.) In other words, but for Hicks's agreement to take the stock options, there would have been no deal

by the defendant. In short, the ranch constitutes proceeds of the offense. *See, e.g.*, *Daugerdas*, 2012 WL 5835203, at *2; *see also United States v. Kaufman*, No. 21-2589, 2023 WL 1871669, at *6 (2d Cir. Feb. 10, 2023).

The defendant argues, however, that 18 U.S.C. § 981(a)(2)(B) applies here "because there was nothing inherently unlawful about the transaction at issue in Count Four" (Def.'s Letter 2), and therefore, according to the defendant, forfeiture should be limited to "the amount of money acquired through the illegal transactions resulting in the forfeiture, less the direct costs incurred in providing the goods or services," 18 U.S.C. § 981(a)(2)(B). The defendant is incorrect; Section 981(a)(2)(A), which requires the forfeiture of gross proceeds applies here and, even if the defendant were correct that Section 981(a)(2)(B) should apply, the money that the defendant identifies as "costs" is not deductible under Section 981(a)(2)(B).

As an initial matter, the defendant's suggestion that mail and wire fraud offenses are categorically subject to Section 981(a)(2)(B) and therefore forfeiture for mail and wire fraud offenses is always limited to net profits (Def.'s Letter 2) is wrong. The defendant relies on *United States v. Kalish*, No. 06 Cr. 656 (RPP), 2009 WL 130215, at *6-8 (S.D.N.Y. Jan. 13, 2009), and *United States v. Hollnagel*, No. 10 Cr. 195, 2013 WL 5348317, at *2 (N.D. Ill. Sept. 24, 2013). (Def.'s Letter 2.) These cases do not stand for the principle that Section 981(a)(2)(B) always applies to mail or wire fraud offenses. In fact, the application of Section 981(a)(2)(A) or 981(a)(2)(B) depends on the circumstances of the particular offense. *See, e.g.*, *Bodouva*, 853 F.3d at 80 (discussing proper description of defendant's criminal conduct to determine whether Section 981(a)(2)(A) or (a)(2)(B) applies); *Bonventre*, 646 F. App'x at 90 (discussing what "the evidence showed [about] the criminal conspiracy at issue" to determine that Section 981(a)(2)(A) applied to securities fraud conviction based on Ponzi scheme); *Contorinis*, 692 F.3d at 145 n.3 (applying Section 981(a)(2)(B) to securities fraud arising out of insider trading because that purchase or sale of security was a transaction involving a lawful good sold in an illegal manner); *see also Percoco*, 2019 WL 1593882, at *3-6; *In re 650 Fifth Ave. and Related Properties*, 777 F.Supp.2d 529, 551-52 (S.D.N.Y. 2011). Indeed, *Kalish*—relied upon by the defendant—illustrates this point. There, the court considered whether the defendant's scheme—not the statute under which the defendant was convicted—implicated Section 981(a)(2)(A) or Section 981(a)(2)(B). *Kalish*, 2009 WL 130215, at *8. The second case relied upon by the defendant, *Hollnagel*, is no different, *see* 2013 WL 5348317, at *2.

In any case, the defendant claims that Section 981(a)(2)(B) must apply here because purchasing property for cash and stock is not "inherently unlawful." (Def.'s Letter 2.) The language of the statute does not support this reading. First, while purchasing property for cash and stock might not be inherently unlawful, purchasing property for cash and stock, the value of which was falsely inflated and misrepresented, is inherently unlawful. More to the point, the conduct here did not involve the defendant selling or providing "lawful goods or lawful services" "in an illegal manner," as required to trigger Section 981(a)(2)(B). To state the obvious, the defendant did not provide services at all. And, to the extent that the defendant's scheme here can be characterized as him selling a good, it was a scheme to sell inflated or valueless securities, which is itself unlawful. That is so because there is no circumstance where it is permissible to manipulate and inflate the price of a security, and therefore forfeiture of gross proceeds is appropriate under Section 981(a)(2)(A).

The example of insider trading cases on which the defendant relies (*see* Def.'s Letter 2) illustrates the point. Those cases involve the sale of securities—a lawful good—based on illegally obtained and used nonpublic information—an unlawful manner—in exchange for money, all of which invokes the plain language of Section 981(a)(2)(B). In such cases, there is no suggestion that the counterparty to the defendant's trading did not receive value for her consideration. Rather, the illegality lies in the manner in which the defendant induced the trade to occur. *See Contorinis*, 692 F.3d 136 at 145 n.3; *United States v. Mahaffy*, 693 F.3d 113, 137-38 (2d Cir. 2012). By contrast, the defendant's conduct here is instead analogous to securities fraud schemes for which forfeiture of gross receipts under Section 981(a)(2)(A) is mandates: Ponzi schemes. *See, e.g.*, *Bonventre*, 646 F. App'x at 90; *In re Rothstein, Rosenfeldt, Adler, P.A.*, 717 F.3d 1205, 1212 (11th Cir. 2013) (applying Section 981(a)(2)(A)'s gross proceeds definition to the proceeds of a Ponzi scheme based on fraudulent promissory notes and fictitious bridge loans); *United States v. Sigillito*, 899 F. Supp. 2d 850, 865 (E.D. Mo. 2012) (defendant did not offer lawful goods or services when he took investments under false pretenses and then distributed funds as part of a Ponzi scheme). In those cases, as here, the defendants induced payment from the victims based on misrepresentations regarding the investment that the victim would receive in return, and the defendants were not entitled to deduct from forfeiture the payments that they made in furtherance of the scheme.

Even if Section 981(a)(2)(B) were to apply here, the defendant would not be entitled to receive credit for the $8.5 million he paid as part of the purchase price of the ranch or any money that he later paid to Peter Hicks to forestall Hicks from discovering the crime and reporting it to authorities, because none of these amounts constitute "direct costs incurred in providing the goods or services." 18 U.S.C. § 981(a)(2)(B). Indeed, as noted above, the defendant provided no services and it can hardly be said that the money paid by the defendant to Hicks was a cost of providing the stock options to Hicks. The Ponzi scheme cases are again illustrative here—there is no offset for false returns paid to investors that are part of the fraudulent scheme because those payments do not constitute the cost of delivering any good or service. Likewise here, the defendant's use of money to commit fraud does not render that money a cost of providing any good or service.[1]

Application of the gross proceeds rule here is also consistent with the punitive purposes of forfeiture, which the defendant acknowledges in his letter. Because the stock options were effectively worthless, if the defendant were permitted to recover the $8.5 million in cash that he paid to Hicks, he effectively would be reversing his fraudulent transaction and would be in the same position he was in prior to the deal. There would be no punitive aspect to such an outcome,

---

[1]     To the extent that the defendant relies on *Hollnagel*, 2013 WL 5348317, at *4, for the notion that "repayments to fraud victims—even if made after the fraud is uncovered—are properly deducted from forfeiture" (Def.'s Letter 2), the Second Circuit has rejected that reasoning from *Hollnegal, see United States v. Shkreli*, 779 F. App'x 38, 42 (2d Cir. 2019). In any case, the defendant here did not repay his victim; rather, as the proof at trial showed, he made certain limited payments to Hicks in furtherance of the scheme to defraud in order to forestall Hicks from reporting the fraud to authorities. Furthermore, while any payments, including the $8.5 million paid to Hicks as part of the purchase price of the Ranch, may reduce defendant's loss amount for restitution purposes such a deduction is inapplicable to forfeiture.

and it would have no deterrent value. Requiring the defendant to forfeit all the proceeds he received as a result of the wire fraud, without deduction, is necessary to achieve those purposes.

### 2. The Forfeiture of the Ranch Is Not Unconstitutionally Disproportionate

The forfeiture of the ranch that the defendant purchased through a wire fraud is not unconstitutionally disproportionate to the gravity of the offense.

Under the Eighth Amendment, criminal forfeiture may not be "grossly disproportional to the gravity of the offense" of conviction. *United States v. Bajakajian*, 524 U.S. 321, 323 (1998). To evaluate the proportionality of a forfeiture, courts look to (1) the essence of the crime of the defendant and its relation to other criminal activity; (2) whether the defendant fit into the class of persons for whom the statute was principally designed; (3) the maximum sentence and fine that could have been imposed; and (4) the nature of the harm caused by the defendant's conduct. *See United States v. Varrone*, 554 F.3d 327, 331 (2d Cir. 2009). The defendant bears the burden of proving that a forfeiture would violate the Excessive Fines Clause. *See United States v. Walsh*, 700 F.2d 846, 857 (2d Cir. 1983).

It is questionable whether the forfeiture of crime proceeds (as opposed to legally obtained property used to facilitate a crime) can ever be unconstitutionally disproportionate. *See, e.g.*, *United States v. Betancourt*, 422 F.3d 240, 250-51 (5th Cir. 2005) ("[T]he Eighth Amendment has no application to the forfeiture of property acquired with proceeds."); *United States v. Real Prop. Located at 22 Santa Barbara Dr.*, 264 F.3d 860, 874-75 (9th Cir. 2001) (finding Eighth Amendment does not apply to forfeiture of drug proceeds); *United States v. Peters*, 257 F.R.D. 377, 389-90 (W.D.N.Y. 2009) (expressing doubt that Eighth Amendment applies to forfeiture of proceeds). Even if the forfeiture of crime proceeds could ever theoretically be grossly disproportionate, it is plainly is not here. Forfeiture of the ranch would serve "important government interests such as separating [the defendant] from his ill-gotten gains . . . ." *Honeycutt v. United States*, 137 S. Ct. 1626, 1631 (2017). Moreover, because the proposed order of forfeiture would require the defendant to disgorge the illicit proceeds of his crime, it is inherently commensurate with his crime, and not grossly disproportionate. *See United States v. Patterson*, No. 21-1678-cr, 2022 WL 17825627, at *6 (2d Cir. 2022) ("our precedents suggest that a forfeiture amount is not necessarily greatly disproportionate where it equals the proceeds of the illegal scheme"); *Bonventre*, 646 F. App'x at 92 (where "forfeiture ordered is in an amount equivalent to the undisputed, actual proceeds of the fraud, . . . we cannot conclude that the order was grossly disproportional to the gravity of his offense").

The defendant argues that forfeiture of the property, which was paid for in part with $8.5 million in non-tainted funds, is disproportionate. But he cites no authority for that proposition, his receipt of the property would not have occurred but for his fraud, and each of the applicable factors strongly favors the requested forfeiture. The fraud scheme by the defendant, as the Court recognized at sentencing, was severe and harmful, affecting thousands of victims, and specifically deprived the victim of Count Four of the value of his property and the fruits of his labor and investment. The maximum sentence and fine authorized for such serious conduct further support the proportionality of the requested forfeiture. The defendant faced significant prison time and massive financial penalties in addition to forfeiture. And therefore, under such circumstances, it is not unconstitutional to require the defendant to forfeit the proceeds of his fraud. Indeed, this is the

only forfeiture of the defendant's assets that is being sought, and therefore it reflects only a small fraction of his overall net worth, which grew substantially with the defendant's fraudulent scheme.

In response, the defendant continues to place great emphasize on the notion that Hicks received more cash from Milton than Hicks originally paid when purchasing the ranch as somehow bearing on whether forfeiture of the ranch is excessive. (Def.'s Letter 3.) This argument is both wholly irrelevant and completely illogical. As the Second Circuit has made clear, the issue at stake in forfeiture is the defendant's gain, not the victim's loss. *United States v. Shkreli*, 779 F. App'x 38, 42 (2d Cir. 2019). More importantly, perhaps, a comparison of the amount that Hicks paid for the ranch and the amount Milton paid, after the passage of time and after Hicks made improvement to the property, is entirely useless in addressing the amount of Hicks's loss, even if it were relevant. Had Hicks inherited the property from a relative and paid no consideration for it, Hicks would have been no less harmed by Milton's fraud. Of course, the market value of the ranch at the time that Hicks was induced to part with it through fraud was not the amount that Hicks paid for the property at some time earlier, but rather the value that Hicks was willing to receive from the defendant in exchange for the property. That amount, as it appeared to Hicks at the time, was something in excess of $23.5 million. (*See* Trial Tr. 2091-92.) In any event, the defendant's continued insistence, in essence, that Hicks got enough, and therefore the defendant should not be punished for depriving Hicks of the value of his property is not supported by the law, common sense, or decency.

Finally, Milton suggests that it would constitute disproportionate punishment if he were to be ordered to forfeit Wasatch Creeks Ranch because it "would strip Mr. Milton of the increased value in the property since 2020,"[2] and it would diminish the value to him of additional properties that he purchased nearby. (Def.'s Letter 3.) This argument is entirely specious. The statute itself makes clear that forfeiture extends to property "derived from proceeds traceable to" the offense, which, of course, includes any appreciation in value of the property itself obtained during the course of the offense, *see, e.g.*, *United States v. Afriyie*, 929 F.3d 63, 73 (2d Cir. 2019). There is nothing grossly disproportionate about requiring the defendant to forfeit all of the money or property that resulted from his fraud.

### 3.  The Proposed Order Complies with Rule 32.2

Rule 32.2 of the Federal Rules of Criminal Procedure states that, "[u]nless doing so is impractical, the court must enter the preliminary order sufficiently in advance of sentencing to allow the parties to suggest revisions or modifications." Fed. R. Crim. 32.2(b)(2)(B). If a court does not enter a preliminary order of forfeiture before sentencing in accordance with Rule 32.2(b)(2)(B), the court may still order forfeiture in imposing a sentence. *United States v. McIntosh*, 58 F.4th 606, 611 (2d Cir. 2023) (concluding that "Rule 32.2(b)(2)(B) is a time-related directive" and "the district court's failure to enter a preliminary order in time does not render the forfeiture invalid").

---

[2]      It appears that the defendant takes the position that he should be entitled to the appreciation in his investment in the ranch, which he purchased through fraud, but that Hicks, his victim, should not.

The defendant notes that, notwithstanding the controlling law in this Circuit, the Supreme Court has granted certiorari in *McIntosh* to resolve a circuit split. (Def.'s Letter 3.) But even if the Supreme Court were to reverse the Second Circuit's decision, it would not prevent this Court from ordering forfeiture here. Rule 32.2(b)(2)(B) does not actually specify a fixed point in time for entering a preliminary order of forfeiture. It instead states that the court must enter a preliminary order "sufficiently in advance of sentencing to allow the parties to suggest revisions or modifications before the order becomes final" at sentencing. Fed. R. Crim. P. 32.2(b)(2)(B). Thus, a court may conclude that entering a preliminary order shortly before sentencing gives the parties ample time to suggest any necessary revisions. Here, the Court indicated its intention to order the forfeiture of the ranch, but permitted the Government time to file a proposed order of forfeiture that set forth the accurate legal description of the ranch, and allowed the defendant time to object and suggest modifications. The defendant has been given an opportunity to contest forfeiture in his pre-sentencing filings, at the sentencing hearing, and in post-hearing briefing. He has articulated no prejudice by the absence of a preliminary forfeiture order in advance of the sentencing hearing. And, if the defendant believed it necessary, any claimed prejudice could easily be cured by entering the proposed forfeiture order and scheduling a second sentencing hearing in which the court ordered the forfeiture and then imposed a final judgment.

\*\*\*

For the foregoing reasons, the Government respectfully requests that, consistent with the Court's oral ruling at the sentencing hearing, the Court enter the proposed forfeiture order. As the Court issued a final judgment yesterday, the Court is permitted to amend that final judgment to expressly incorporate the written proposed forfeiture order, which was already orally ordered at sentencing.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

by: /s/ _____
    Nicolas Roos
    Matthew Podolsky
    Assistant United States Attorneys

cc: Counsel of Record (by ECF)