UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

               Plaintiff,

– against –

TREVOR MILTON,

               Defendant.

**OPINION & ORDER**

21-cr-00478 (ER)

RAMOS, D.J.:

Trevor Milton was convicted on one count of securities fraud and two counts of wire fraud following a jury trial. He was found not guilty on another count of securities fraud. The Court sentenced Milton to forty-eight months of imprisonment on each count, to be served concurrently, and three years of supervised release on each count, also to be served concurrently. In addition, the Court imposed a $1 million fine.

This dispute concerns the government's proposed order of forfeiture requiring Milton to forfeit Wasatch Creeks Ranch, a 4,700-acre property in Utah. Milton challenges the proposed order on both substantive and procedural grounds. For the reasons set forth below, Milton's objections to the forfeiture order are DENIED.

I.     BACKGROUND

While the Court assumes familiarity with the facts of the case—some of which have been discussed in prior opinions, Doc. 32 at 1–5; Doc. 286 at 2–11—it will provide a brief summary of the details relevant to this decision.[1]

Milton is the founder and former chief executive officer of Nikola Corporation, an electric- and hydrogen-powered vehicle and energy company. Doc. 286 at 2. From

---

[1] These facts are largely taken from the trial record and the presentence report (PSR), Doc. 273. Milton submitted objections to the PSR in a letter to the Court dated December 15, 2023. The government responded to those objections on December 17, 2023. Doc. 318. At sentencing, the Court agreed with the government that the PSR was accurate aside from two minor modifications. Doc. 322 at 26:21–24.

approximately November 2019 to September 2020, Milton induced investors to purchase shares of Nikola by making false and misleading statements about the company's product and technology development. Doc. 273 ¶ 9.

Relatedly, Milton lied to Peter Hicks about Nikola's business in order to persuade Hicks to sell him Wasatch Creeks Ranch in exchange for Nikola stock options and cash. *Id.* ¶ 31. Hicks had acquired the ranch for $6.85 million in March 2020. Tr. 2032:23–2033:2. In April 2020, Milton arranged a call that included himself, his broker, Hicks, and Hicks's son. Doc. 273 ¶ 34. During the call, Milton made several false and misleading statements about Nikola's business that were "consistent with the misrepresentations that [Milton] disseminated broadly to the investing public." *Id.* Two months later, in June 2020, Milton offered to purchase the ranch for $8.5 million in cash plus Nikola stock options that were valued—based on the stock's prevailing market price at the time—at $8.5 million. *Id.* ¶ 35; *see also* Tr. 2068:11–2070:16. The deal was completed in August 2020. Doc. 273 ¶ 36. Hicks testified that he agreed to accept stock options as partial payment based on Milton's representations about Nikola during their phone call. Tr. 2031:1–2032:9.

In September 2020, a short seller publicly alleged that Milton had made false and misleading statements about Nikola's business. Doc. 273 ¶ 36. Milton resigned from Nikola, and the company's stock price dropped significantly. *Id.* By December 1, 2020, the value of the stock options granted to Hicks had decreased from approximately $15 million to approximately $973,473. *Id.*

Milton was indicted on charges of securities fraud and wire fraud in June 2022. Doc. 123. Count Four of the superseding indictment charged Milton with defrauding Hicks in connection with the sale of Wasatch Creeks Ranch. *Id.* ¶ 4. The indictment included a forfeiture allegation, which stated that Milton "shall forfeit to the United States . . . all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offenses." *Id.* ¶ 5.

A jury trial began on September 13, 2022, and concluded on October 14, 2022. Doc. 286 at 5. Milton was convicted on three of four counts, including Count Four. *Id.* at 8. In its sentencing submission, the government asserted that "the Court should order the forfeiture of the specific property known as the Wasatch Creeks Ranch in Utah." Doc. 315 at 38. The government also stated that it would submit a proposed order of forfeiture prior to sentencing, *id.*, though it did not do so.

Sentencing was held on December 18, 2023. The government requested that the Court orally order forfeiture and said it would then provide a preliminary order identifying the exact location of the ranch. Doc. 322 at 76:21–77:4. Milton opposed that request, arguing that the government had failed to comply with Federal Rule of Criminal Procedure 32.2, which governs criminal forfeitures. *Id.* at 77:8–16. After discussion, Milton agreed to proceed by having the Court orally order forfeiture, followed by the government submitting a preliminary order and Milton having the opportunity to raise procedural and substantive challenges. *Id.* at 87:16–24. Milton consented to this procedure "[w]ithout conceding the propriety or the procedural or substantive regularity of the way the government has proceeded." *Id.* at 87:16–17. The Court then orally ordered forfeiture of the ranch and noted that there would be subsequent motion practice concerning Milton's objections. *Id.* at 102:13–19.

On December 19, 2023, the government submitted a proposed preliminary order of forfeiture. Doc. 319-1. On December 28, 2023, Milton filed a letter detailing his objections to the preliminary order. Doc. 320. The government filed its response on January 18, 2024. Doc. 329. Milton filed his reply on January 23, 2024. Doc. 330.

Meanwhile, judgment was entered on January 17, 2024. Doc. 327. Consistent with the Court's oral order at sentencing, the judgment stated that Milton would forfeit the ranch. *Id.* at 7. Milton then filed a notice of appeal on January 30, 2024. Doc. 331. The next day, the Court directed the parties to state their positions as to what effect the filing of the notice of appeal had on the Court's jurisdiction to resolve Milton's forfeiture

3

objections. Doc. 332. The parties agreed that "although the filing of Milton's appeal divests the Court of jurisdiction, the Court may nonetheless enter an indicative ruling pursuant to Federal Rule of Criminal Procedure 37(a), and may rule on [Milton]'s pending request for a stay of forfeiture pending appeal, pursuant to Federal Rule of Criminal Procedure 32.2(d)." Doc. 333.

Rule 37 applies where "a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending." Fed. R. Crim. P. 37(a). In those circumstances, the court may "(1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." *Id.* Accordingly, the Court will address Milton's forfeiture objections in an indicative ruling pursuant to Rule 37. *See, e.g.*, *United States v. Constantine*, No. 21 Cr. 530 (SHS), 2023 WL 6587985, at *1–2 (S.D.N.Y. Oct. 10, 2023) (noting that appeal had divested court of jurisdiction but that it could address defendant's motion to amend restitution award in an indicative ruling).

## II.     LEGAL STANDARD

The government seeks forfeiture of the ranch pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c). Doc. 329 at 2; *see also* Doc. 319-1 at 1. Those statutes provide for forfeiture of any property "which constitutes or is derived from proceeds traceable to" certain offenses, including wire fraud. § 981(a)(1)(C); *see, e.g.*, *United States v. Chowaiki*, 369 F. Supp. 3d 565, 571 (S.D.N.Y. 2019). Under § 981(a)(2), the term "proceeds" is defined, in relevant part, as follows:

> (A) In cases involving illegal goods, illegal services, unlawful activities, and telemarketing and health care fraud schemes, the term "proceeds" means property of any kind obtained directly or indirectly, as the result of the commission of the offense giving rise to forfeiture, and any property traceable thereto, and is not limited to the net gain or profit realized from the offense.
>
> (B) In cases involving lawful goods or lawful services that are sold or provided in an illegal manner, the term "proceeds" means the

> amount of money acquired through the illegal transactions resulting in the forfeiture, less the direct costs incurred in providing the goods or services. The claimant shall have the burden of proof with respect to the issue of direct costs. The direct costs shall not include any part of the overhead expenses of the entity providing the goods or services, or any part of the income taxes paid by the entity.

In other words, "[c]ases involving illegal goods, illegal services, unlawful activities, and telemarketing and health care fraud schemes, trigger subsection (A) whereas cases involving lawful goods or lawful services that are sold or provided in an illegal manner are covered by subsection (B)." *United States v. Mosca*, No. 21-1209, 2023 WL 6799293, at *1 (2d Cir. Oct. 16, 2023) (internal quotation marks omitted).

### III.   DISCUSSION

Milton raises three challenges to the government's proposed forfeiture order. First, he argues that "[a]t minimum," the $8.5 million in cash he paid Hicks for the ranch should be deducted from any forfeiture order as "direct costs incurred" under § 981(a)(2)(B). Doc. 320 at 2. Second, he asserts that forfeiture of the entire property would violate the Eighth Amendment. *Id.* at 3. Finally, he contends that the government did not comply with Rule 32.2 because it failed to provide a preliminary order of forfeiture before sentencing. *Id.* The Court addresses each argument in turn.

#### A.   Application of § 981(a)(2)(A) or (a)(2)(B)

Milton argues that the cash and "other property" he paid Hicks for the ranch should be deducted from any forfeiture order as direct costs. Doc. 320 at 2. This argument can succeed only if the relevant definition of proceeds comes from § 981(a)(2)(B), which provides for deduction of direct costs, rather than (a)(2)(A), which provides for forfeiture of gross proceeds. *See United States v. Percoco*, No. 16 Cr. 776 (VEC), 2019 WL 1593882, at *2 (S.D.N.Y. Apr. 15, 2019) (explaining that "§ 981(a)(2)(A) requires a defendant to forfeit the 'gross' proceeds of his crime, without any deduction for costs or losses, whereas § 981(a)(2)(B) requires a defendant to forfeit

5

only the crime's 'net' proceeds, after deducting 'direct costs'"), *aff'd*, 13 F.4th 180 (2d Cir. 2021), *rev'd on other grounds*, 598 U.S. 319 (2023).

In general, "courts have interpreted § 981(a)(2)(A) as applying to conduct that is 'inherently unlawful,' meaning conduct that cannot be committed in a lawful manner, such as robbery, embezzlement, soliciting funds as part of a Ponzi scheme, and selling food stamps without authorization." *Id.* at *3 (internal citations omitted). On the other hand, "courts have interpreted § 981(a)(2)(B) as applying to the sale of a good or service that could, hypothetically, be provided in a lawful manner but that, in the context of the case, was provided illegally, such as trading securities based on material nonpublic information." *Id.* (internal quotation marks and citation omitted).

The parties dispute which provision governs this case. According to Milton, the analysis should be guided by § 981(a)(2)(B) "because there was nothing inherently unlawful about the transaction at issue in Count Four." Doc. 320 at 2; *see also* Doc. 330 at 2 (arguing that there is nothing "*inherently* unlawful about exchanging cash and securities for property").

The government, on the other hand, asserts that § 981(a)(2)(A) applies. Doc. 329 at 4. Although purchasing property for cash and stock may not be inherently unlawful, the government reasons, purchasing property for cash and stock whose value was falsely inflated and misrepresented *is* inherently unlawful. *Id.*; *see also id.* ("[T]here is no circumstance where it is permissible to manipulate and inflate the price of a security, and therefore forfeiture of gross proceeds is appropriate under Section 981(a)(2)(A)."). Furthermore, the government asserts that Milton's conduct is a poor fit for § 981(a)(2)(B) because he did not sell "lawful goods or lawful services . . . in an illegal manner." *Id.*

Other courts have noted the difficulty of determining whether § 981(a)(2)(A) or (a)(2)(B) applies to a particular defendant's conduct. In a bribery case, one court in this District explained that "[w]hether § 981(a)(2)(A) or (B) applies to this case is a difficult question of statutory interpretation." *Percoco*, 2019 WL 1593882, at *4. The court

6

continued: "The case law provides no clear way to delineate these two categories of conduct. The Courts of Appeals have reported very few precedential decisions on this issue. Those decisions that do exist have failed to set forth a clear methodology for determining whether a case falls under § 981(a)(2)(A) or (B)." *Id.* (footnote omitted); *see also, e.g.*, *United States v. Sum of $70,990,605*, 4 F. Supp. 3d 189, 206–07 (D.D.C. 2014) (noting that "[t]he appropriate definition of 'proceeds' in this situation is not clear" and that the cases cited by the parties did not "light a clear or consistent path").

Here too, the Court finds that whether § 981(a)(2)(A) or (a)(2)(B) applies is a difficult question. The government defines the relevant conduct as "sell[ing] inflated or valueless securities," which is inherently unlawful. Doc. 329 at 4. Milton, by contrast, defines the relevant conduct more generally as "exchanging cash and securities for property," which is not inherently unlawful. Doc. 330 at 2. While the case law does not point definitively in either direction, the Court concludes that the government has the better of the argument and that the "gross proceeds" definition from § 981(a)(2)(A) applies.

The Court does not find Milton's reliance on insider trading cases persuasive. He points to *United States v. Contorinis*, 692 F.3d 136 (2d Cir. 2012), which involved a conviction for conspiracy to commit securities fraud and insider trading. *Id.* at 139. In cases involving fraud in the purchase or sale of securities, the court concluded, the definition of "proceeds" comes from § 981(a)(2)(B). *Id.* at 145 n.3. The court explained that a security is a "lawful good"; if a security is purchased or sold based on inside information, however, it is "sold . . . in an illegal manner." *Id.* (omission in original). And the court reasoned that § 981(a)(2)(A) did not apply because "the sale of a security is not an inherently unlawful activity, like say the sale of foodstamps, or a robbery." *Id.*

Milton also cites *United States v. Mahaffy*, 693 F.3d 113 (2d Cir. 2012). There, stockbrokers were convicted of conspiracy to commit securities fraud for providing

7

confidential information to a day trading firm.  *Id.* at 119–22.[2]  While the scheme involved "the purchase and sale of securities," the court concluded that "[t]rading those securities, as a general matter, is not unlawful."  *Id.* at 138.  Instead, "any illegality occurred when the defendants bought and sold securities as part of a scheme involving illegal bribery and frontrunning."  *Id.*  As a result, the proper measure of forfeiture was net—not gross—proceeds under § 981(a)(2)(B).  *Id.*

Relying on these insider trading cases, Milton argues that § 981(a)(2)(A) does not apply because there is nothing inherently unlawful about exchanging cash and securities for property.  Doc. 320 at 2; Doc. 330 at 2.  But the government correctly observes that the circumstances are different because in those cases, there was "no suggestion that the counterparty to the defendant's trading did not receive value for her consideration."  Doc. 329 at 5.  Instead, the illegality arose from the manner in which the defendants, relying on inside information, had purchased or sold the securities.  In this case, however, Milton bought the ranch using stock options whose value had been inflated by his own deception.  The unlawful conduct thus stems from the inflated stock options themselves rather than from the manner in which Milton purchased the property.  And those stock options are not "lawful goods" like the securities at issue in the insider trading cases.  Their value was inflated by Milton's misleading statements, and he relied on their overstated value to induce Hicks to sell him the ranch.

The Court agrees with the government that these facts are more analogous to cases involving Ponzi schemes.  Doc. 329 at 5.  In *United States v. Sigillito*, 899 F. Supp. 2d 850 (E.D. Mo. 2012), for instance, the defendant operated a fraudulent loan program that induced investors to loan money to a real estate developer.  *Id.* at 854. After the defendant and his co-conspirators deducted fees from a new investment, they would use

---

[2] The convictions were vacated on appeal, but the Second Circuit still addressed forfeiture in its opinion. *See Mahaffy*, 693 F.3d at 138 (discussing what the proper measure of forfeiture would be "[i]f the district court addresses the forfeiture issue again").

8

the rest of the investment to pay other investors. *Id.* The defendant was convicted on several charges of wire fraud, mail fraud, and money laundering. *Id.* at 853–54. In analyzing forfeiture, the court concluded that § 981(a)(2)(A) rather than (a)(2)(B) applied. *Id.* at 865. The court explained: "Defendant offered no lawful goods or lawful services as part of the [loan program]; rather, Defendant merely took lenders' investments under false pretenses, and, then, after deducting fees for himself and his co-conspirators, he redistributed new investments as interest or principal to old investors." *Id.* Here too, the Court fails to see how Milton offered any "lawful goods or lawful services" as part of his scheme. *See also United States v. Bonventre*, 646 F. App'x 73, 90 (2d Cir. 2016) (affirming district court's order of forfeiture based on gross proceeds where "the evidence showed that the criminal conspiracy at issue did not sell or provide 'lawful services . . . in an illegal manner' so as to require deduction of direct costs" (omission in original)). Instead, he paid cash and inflated stock options to Hicks to induce him to sell the ranch, just as the defendant in *Sigillito* made some payments to victims to further the scheme.

In this case, moreover, applying the definition of proceeds in § 981(a)(2)(A)—meaning gross proceeds—is consistent with the purposes of criminal forfeiture. The government notes that allowing Milton to recover the $8.5 million in cash he paid Hicks would essentially put him in the same position he was in prior to the transaction: he would give up the ranch but regain the cash he paid for it. Doc. 329 at 5. Milton would lose only the inflated stock options, whose value was substantially diminished anyway after the revelation of his misstatements. As Milton concedes, forfeiture is a punitive measure that serves a deterrent function. Doc. 320 at 2; *see also, e.g., Percoco*, 2019 WL 1593882, at *7 ("The purpose of forfeiture is to disgorge the defendant of all ill-gotten gains."); *United States v. Daugerdas*, No. 09 Cr. 581 (WHP), 2012 WL 5835203, at *2 (S.D.N.Y. Nov. 7, 2012) ("Criminal forfeiture is designed to be punitive and its scope is broad."). Those purposes would not be served by allowing Milton to effectively reverse the outcome of a fraudulent transaction following a jury conviction.

The Court concludes that § 981(a)(2)(A) provides the definition of proceeds in this case. Accordingly, the entire ranch is subject to forfeiture without any deduction of costs.[3]

### B. Eighth Amendment

Next, Milton argues that forfeiture of the ranch violates the Eighth Amendment. Doc. 320 at 3. The Eighth Amendment prohibits "excessive fines." U.S. Const. amend. VIII. The Supreme Court has held that "a punitive forfeiture violates the Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant's offense." *United States v. Bajakajian*, 524 U.S. 321, 334 (1998). In determining whether forfeiture is grossly disproportional, courts consider "all relevant factors, including (1) the essence of defendant's crime and its relation to other criminal activity, (2) whether defendant fits into the class of persons for whom the statute of conviction was principally designed, (3) the maximum sentence and fine that could have been imposed, and (4) the nature of harm caused by defendant's conduct." *Bonventre*, 646 F. App'x at 91.

Milton contends that the government's proposed forfeiture would be disproportional because he paid Hicks "more than fair market value in cash for the Ranch, plus additional valuable property." Doc. 320 at 3. According to Milton, forfeiture of the ranch "is all the more excessive because Mr. Hicks is currently seeking treble damages in a separate civil action against Mr. Milton." *Id.* He also argues that forfeiting the ranch would diminish the value of his contiguous properties that had nothing to do with the offense conduct. *Id.* In sum, Milton asserts that he "should not be subjected to these repetitive and overlapping penalties." *Id.*

All four *Bajakajian* factors indicate that forfeiture of the ranch is not grossly disproportional. First, the essence of the crime and its relation to other criminal activity

---

[3] Because the Court concludes that § 981(a)(2)(A) supplies the definition of proceeds, it need not reach the government's alternative argument that Milton would not be able to deduct any "direct costs" even if § 981(a)(2)(B) applied. *See* Doc. 329 at 5.

10

weigh in favor of forfeiture. Milton was convicted of engaging in a scheme that defrauded numerous investors—many of whom "were relatively unsophisticated people who listened to [Milton] . . . and were hurt when the truth about [Milton's] company came out," Doc. 322 at 94:7–10—and deprived Hicks of the value of his property. The serious nature of these offenses supports forfeiture of the ranch. *See United States v. Viloski*, 53 F. Supp. 3d 526, 530 (N.D.N.Y. 2014) (finding that first factor strongly supported forfeiture where defendant was convicted of "serious crimes" that were "inherently fraudulent" and "involved an elaborate scheme to defraud").

Second, Milton appears not to dispute that he is within the class of individuals for whom the statute of conviction was designed. As noted above, Milton was convicted of securities fraud and wire fraud, and he fits comfortably within the class of persons targeted by those statutes. This factor further indicates that forfeiture of the ranch is appropriate. *See United States v. Robbins*, No. 10 Cr. 268 (TJM), 2015 WL 2127025, at *6 (W.D.N.Y. May 6, 2015) ("Defendant 'was the kind of person to whom the statute is directed,' and this factor weighs in favor of full forfeiture." (quoting *United States v. Castello*, 611 F.3d 116, 122 (2d Cir. 2010))).

Third, Milton faced serious criminal penalties for the offense conduct. The statutory maximum term of imprisonment was 20 years (240 months) per count for Counts One, Three, and Four. Doc. 273 ¶ 97. The guideline imprisonment range, as determined by the Court at sentencing, was 324 months to 405 months. Doc. 322 at 25:16–26:3. Milton also faced a statutory maximum fine of $5 million for Count One and $250,000 per count for Counts Three and Four. Doc. 273 ¶ 106. These potential penalties further indicate that forfeiture of the ranch would not be grossly disproportional. *See United States v. Peters*, 257 F.R.D. 377, 389–90 (W.D.N.Y. 2009) (holding that forfeiture was not grossly disproportional where the statutory and guideline penalties "demonstrate[d] the seriousness of [defendant's] offenses").

11

Finally, the nature of the harm was severe. Again, Milton's fraud affected ordinary people who invested in his company, and he relied on misrepresentations about the value of the stock options to induce Hicks to sell him the ranch. This factor, like the others, weighs in favor of forfeiture. *See Viloski*, 53 F. Supp. 3d at 531 (finding that fourth factor supported forfeiture based on the "extensive harm" caused by the defendant's fraudulent scheme).[4]

Milton's arguments to the contrary are not persuasive. He emphasizes the fact that Hicks originally paid $6.85 million for the ranch and then received $8.5 million in cash in selling it to Milton. Doc. 320 at 1, 3. In Milton's view, this means that he paid Hicks "more than fair market value in cash for the Ranch." *Id.* at 3. But the Second Circuit has held that "'forfeiture is gain based,' *not* based on the losses (or gains) to victims." *United States v. Shkreli*, 779 F. App'x 38, 42 (2d Cir. 2019) (quoting *United States v. Torres*, 703 F.3d 194, 203 (2d Cir. 2012)). And even if the Court were to evaluate the transaction from Hicks's perspective, Milton's argument does not withstand scrutiny. Specifically, it is hard to see how $8.5 million in cash alone would have been sufficient value for the property from Hicks's point of view. Hicks clearly thought the

---

[4] In evaluating these factors, the government focuses on Milton's criminal conduct as a whole and not just on Count Four, which relates specifically to his purchase of the ranch. Doc. 329 at 6–7. Milton does not expressly challenge that mode of analysis, and the Court has followed the government's approach. *Cf. Alexander v. United States*, 509 U.S. 544, 559 (1993) (explaining that the question whether forfeiture was excessive had to be considered "in the light of the extensive criminal activities which [defendant] apparently conducted through this racketeering enterprise over a substantial period of time"). Even if the Court were to consider only Count Four, however, the result would be the same. The first factor expressly accounts for the offense's "relation to other criminal activity," which would include Milton's defrauding ordinary investors in addition to Hicks. On the second factor, Milton would still fit within the class of individuals targeted by the statute of conviction. And with respect to the fourth factor, the nature of the harm would still be severe because Hicks was deprived of the full value of his property when Milton sold him fraudulently inflated stock options. The third factor would weigh less heavily in favor of forfeiture because the statutory and guideline penalties for Count Four alone would not be as harsh. But based on the weight of the other three factors—and the fact that the penalties for Count Four are not insignificant—the Court would still conclude that forfeiture of the ranch is not grossly disproportional.

ranch was worth more than that—that is why the stock options, whose value Milton falsely represented, were also part of the deal.[5]

Milton obtained the ranch through the fraudulent transaction that formed the basis of his conviction on Count Four. It is not grossly disproportional to require him to forfeit the proceeds of that transaction. *See United States v. Patterson*, No. 21 Cr. 1678, 2022 WL 17825627, at *6 (2d Cir. Dec. 21, 2022) ("[O]ur precedents suggest that a forfeiture amount is not necessarily greatly disproportionate where it equals the proceeds of the illegal scheme, even if it significantly exceeds the maximum statutory fine."); *Bonventre*, 646 F. App'x at 92 ("Where, as here, forfeiture ordered is in an amount equivalent to the undisputed, actual proceeds of the fraud . . . we cannot conclude that the order was grossly disproportional to the gravity of [defendant's] offense."). Milton's Eighth Amendment challenge fails.

### C. Federal Rule of Criminal Procedure 32.2

Milton's final forfeiture objection is procedural. He argues that the government did not comply with Rule 32.2 because it failed to submit a preliminary order of forfeiture in advance of sentencing. Doc. 320 at 3.

Rule 32.2 provides that a district court, upon finding that property is subject to forfeiture, "must promptly enter a preliminary order of forfeiture . . . directing the forfeiture of specific property." Fed. R. Crim. P. 32.2(b)(2)(A). "Unless doing so is impractical, the court must enter the preliminary order sufficiently in advance of sentencing to allow the parties to suggest revisions or modifications before the order becomes final as to the defendant under Rule 32.2(b)(4)." Fed. R. Crim. P. 32.2(b)(2)(B). The preliminary order becomes final at sentencing, where the court must orally announce or otherwise notify the defendant of the forfeiture. Fed. R. Crim. P. 32.2(b)(4)(A)–(B).

---

[5] The government also points out that Milton's comparison of the price that he paid and the price that Hicks originally paid fails to account for any improvements and corresponding appreciation in the value of the ranch after Hicks purchased it. Doc. 329 at 7 & n.2.

The court must also include the forfeiture order in the judgment. Fed. R. Crim. P. 32.2(b)(4)(B).

The Second Circuit addressed Rule 32.2's requirements in *United States v. McIntosh*, 58 F.4th 606 (2d Cir.), *cert. granted*, 144 S. Ct. 479 (2023). In that case, the district court did not enter a preliminary order of forfeiture prior to sentencing, "apparently because the government did not submit a proposed order." *Id.* at 609. At sentencing, the district court orally ordered forfeiture and instructed the government to propose a formal order within one week. *Id.* But the government failed to do so, and no written order of forfeiture was entered. *Id.* Judgment was entered, and McIntosh appealed. *Id.* The Second Circuit remanded for the government to submit a proposed order of forfeiture. *Id.* After the government filed its proposed order—over two years after sentencing, *see United States v. McIntosh*, No. 11 Cr. 500 (SHS), 2017 WL 3396429, at *2 (S.D.N.Y. Aug. 8, 2017), *aff'd in part*, 58 F.4th 606—the district court denied McIntosh's objections, entered a preliminary order of forfeiture, and included that order in an amended judgment. *McIntosh*, 58 F.4th at 609.

On appeal, McIntosh argued that the forfeiture order should be vacated because the district court had failed to enter a preliminary order of forfeiture prior to sentencing, in violation of Rule 32.2(b)(2)(B). *Id.* The Second Circuit rejected that argument, concluding that Rule 32.2(b)(2)(B)'s forfeiture deadline is a time-related directive and thus "[does] not deprive a judge . . . of the power to take the action to which the deadline applies if the deadline is missed." *Id.* (citation omitted). The court reasoned:

> First, Rule 32.2 "does not specify a consequence for noncompliance with its timing provisions." Second, the Federal Rules Advisory Committee's notes on the revised rule make clear that the deadline to enter the preliminary order is intended to give the parties time "to advise the court of omissions or errors in the order before it becomes final" because there is limited opportunity to do so after judgment is finalized. At the same time, the comments make no mention of an interest in giving defendants certainty as to the amount to be forfeited before sentencing. This focus on accuracy, not the defendant's repose, is consistent with the substantive purpose of forfeiture,

14

> which is to "deprive criminals of the fruits of their illegal acts and deter future crimes." Third, because forfeited funds frequently go to the victims of the crime, preventing forfeiture due to the missed deadline would tend to harm innocent people who are not responsible for the oversight. Fourth, consistent with examples cited in *Dolan* [*v. United States*, 560 U.S. 605 (2010)], interpreting the deadline rigidly here would disproportionately benefit defendants. And, finally, as in *Dolan*, a defendant concerned about possible delays or mistakes can remind the district court of the preliminary order requirement any time before sentencing.

*Id.* at 610–11 (footnotes omitted). Accordingly, the court concluded that Rule 32.2(b)(2)(B) is a time-related directive and that "the district court's failure to enter a preliminary order in time does not render the forfeiture invalid." *Id.* at 611.

Milton correctly notes that the Supreme Court has granted certiorari in *McIntosh* to resolve the question whether a district court may enter a criminal forfeiture order outside the time limitations set forth in Rule 32.2. Doc. 320 at 3. In the meantime, however, this Court is bound by the Second Circuit's decision. And the threat of prejudice—if any—to Milton here is far less than what was present in *McIntosh*. Milton was put on notice that the government was seeking forfeiture in the superseding indictment and in the government's sentencing submission. The Court then orally ordered forfeiture at sentencing and provided Milton an opportunity to submit objections. *Cf. United States v. Dervishaj*, No. 13 Cr. 668 (ENV), 2017 WL 3531525, at *2 (E.D.N.Y. Aug. 16, 2017) (holding that even assuming requirements of Rule 32.2(b) had been violated, any violation was harmless because defendant had "material and ample opportunity" to contest government's forfeiture application); *United States v. Reese*, 36 F. Supp. 3d 354, 365 (S.D.N.Y. 2014) (explaining that "'the failure to enter a preliminary order before sentencing and judgment, i.e., in a timely fashion per Rule 32.2, does not deprive the district court of authority to enter a final order of forfeiture,' as long as the defendant receives 'adequate notice and procedures to contest the deprivation of property rights [] that result from criminal forfeiture'" (alteration in original) (quoting *United*

*States v. Schwartz*, 503 F. App'x 443, 447 (6th Cir. 2012))). Milton's procedural objection to forfeiture is therefore denied.

### D. Stay Pending Appeal

Milton also requests that execution of the forfeiture order and all other financial aspects of the sentence be stayed pending appeal. Doc. 320 at 4. The government does not state whether it opposes that request.

Rule 32.2(d) provides that "[i]f a defendant appeals from a conviction or an order of forfeiture, the court may stay the order of forfeiture on terms appropriate to ensure that the property remains available pending appellate review." The Court previously granted Milton's application for bail pending appeal, observing that there were "substantial issues" raised throughout the case on both the facts and the law. Doc. 322 at 99:25–100:5. As noted above, the forfeiture analysis presents difficult questions as well. Accordingly, Milton's request for a stay of the forfeiture order and all other financial aspects of the sentence pending appeal is granted. *See United States v. Silver*, 203 F. Supp. 3d 370, 385 (S.D.N.Y. 2016) (granting partial stay of fine and forfeiture orders where defendant "articulated a possibly meritorious legal basis for his appeal").

### IV. CONCLUSION

For the foregoing reasons, Milton's forfeiture objections are DENIED. Milton's request that execution of the forfeiture order and all other financial aspects of the sentence be stayed pending appeal is GRANTED.

It is SO ORDERED.

Dated:  February 26, 2024
        New York, New York

                                                    _____
                                                    EDGARDO RAMOS, U.S.D.J.