UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

- v. -

TREVOR MILTON,

      *Defendant*.

---

No. 21-cr-478 (ER)

# REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR A NEW TRIAL ON COUNT FOUR

Alexandra A.E. Shapiro
Daniel J. O'Neill
Avery D. Medjuck
SHAPIRO ARATO BACH LLP
1140 Avenue of the Americas, 17th Floor
New York, New York 10036
(212) 257-4880
ashapiro@shapiroarato.com
doneill@shapiroarato.com
amedjuck@shapiroarato.com

*Counsel for Defendant Trevor Milton*

## **TABLE OF CONTENTS**

                                                                                                                                                  **Page**

TABLE OF AUTHORITIES ............................................................................................... ii

INTRODUCTION .............................................................................................................. 1

ARGUMENT ...................................................................................................................... 1

I.      THE WITHHELD EVIDENCE REQUIRES A NEW TRIAL ON COUNT
        FOUR ....................................................................................................................... 1

        A.      Milton Exercised Due Diligence ................................................................. 1

        B.      The New Evidence Showing Hicks Lied About Reviewing SEC
              Filings
              Was Material And Would Likely Have Changed The Outcome ........... 4

        C.      The New Evidence Showing Hicks Lied About Being "Lulled" Was
              Material And Likely Would Have Changed The Outcome ..................... 7

CONCLUSION ............................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**                                                                                                     **Page(s)**

*United States v. Bowen*,
 799 F.3d 336 (5th Cir. 2015) ................................................................................................. 9

*United States v. Diaz*,
 922 F.2d 998 (2d Cir. 1990) .................................................................................................. 6

*United States v. DiMattina*,
 885 F. Supp. 2d 572 (E.D.N.Y. 2012) ................................................................................... 1

*United States v. Kim*,
 246 F.3d 186 (2d Cir. 2001) ................................................................................................ 10

*United States v. Lane*,
 474 U.S. 438 (1986) ............................................................................................................... 7

*United States v. O'Malley*,
 833 F.3d 810 (7th Cir. 2016) ................................................................................................. 9

*United States v. Ramirez*,
 420 F.3d 134 (2d Cir. 2005) ................................................................................................ 10

*United States v. Siddiqi*,
 959 F.2d 1167 (2d Cir. 1992) ............................................................................................ 6, 9

*United States v. Stewart*,
 433 F.3d 273 (2d Cir. 2006) .................................................................................................. 4

*United States v. Tanke*,
 743 F.3d 1296 (9th Cir. 2014) ........................................................................................... 7, 8

*United States v. Wallach*,
 935 F.2d 456 (2d Cir. 1991) .......................................................................................... 6, 7, 9

*United States v. White*,
 972 F.2d 16 (2d Cir. 1992) .................................................................................................... 4

*Wims v. United States*,
 225 F.3d 186 (2d Cir. 2000) .................................................................................................. 1

**Rules**

Fed. R. Crim. P. 33 ................................................................................................................ passim

**INTRODUCTION**

The government's opposition provides no good reason to deny a new trial on Count Four. Its assertion that Milton was not diligent is frivolous. Indeed, Peter Hicks withheld—or deleted—the new evidence, much of which was only revealed after a court-ordered forensic examination of Hicks's devices and email accounts. The government's efforts to downplay the new evidence fare no better. The new evidence exposes the falsity of Peter Hicks's responses to questions about materiality. And although materiality is an objective inquiry, investors' subjective views are plainly important in assessing that question—as the government's own jury arguments demonstrate. As for the government's claim that the new evidence wouldn't have affected venue, those arguments misunderstand how "lulling" applies here, erroneously assume Rule 33 is unavailable to remedy a defect in venue, and rely on false assertions about the trial record (Milton had no bank account in New York State). The Court should indicate it would grant a new trial on Count Four.

**ARGUMENT**

**I.    THE WITHHELD EVIDENCE REQUIRES A NEW TRIAL ON COUNT FOUR**

   **A.    Milton Exercised Due Diligence**

The government's argument that Milton did not exercise diligence assumes he must show nothing more could have been done to obtain the evidence at issue prior to trial. Opp. at 7-8. But the law "does not require the maximum feasible diligence, only 'due,' or reasonable diligence." *Wims v. United States*, 225 F.3d 186, 190 n.4 (2d Cir. 2000). A defendant must show only that he could not have "*without unusual effort*, acquired the evidence at issue before or during the trial." *United States v. DiMattina*, 885 F. Supp. 2d 572, 577 (E.D.N.Y. 2012) (emphasis added). Milton has made the necessary showing here.

1.      The government claims that since Milton was eventually able to obtain the newly discovered evidence in the Civil Case, he could have obtained the evidence if he had acted diligently before the criminal trial. Opp. at 8. But in literally *every* newly discovered evidence case, the evidence is eventually obtained by the defendant, so that proves nothing. True, Milton ultimately was able to obtain these documents in the Civil Case—only through extraordinary efforts (Motion at 5-6)—but that does not rebut Milton's showing that he exercised reasonable diligence in connection with the criminal trial.

2.      The government's suggestion that Milton could have obtained the documents if only he had "followed up" with Peter Hicks's counsel (Opp. at 9) disregards that Hicks affirmatively sought to withhold—or destroy—the newly discovered evidence, even after the criminal trial was over. Milton was only able to obtain the new evidence by moving to compel against both Lucas and Peter Hicks, and by seeking and obtaining a forensic analysis of Peter's electronic devices that revealed thousands of potentially relevant documents which had not been produced. Motion at 5-6. That Milton was only able to obtain the newly discovered evidence following *months* of costly civil discovery litigation flatly refutes the government's suggestion that Milton could have obtained the documents if he had just asked Peter Hicks's counsel nicely. *See* Opp. at 9. Nothing Milton could have done prior to trial would have allowed him to obtain the key text messages from Peter Hicks, because, according to Hicks, all text messages between him and Lucas Hicks from before to July 2021 were "'inadvertently' deleted." *See* Motion at 6. And the newly discovered emails were all obtained only after Milton successfully moved for a forensic examination of Peter Hicks's devices and email accounts.

Nonetheless, the government suggests "due diligence" required Milton to intuit that Hicks's production was incomplete and then press him for more documents—all during the

weeks leading up to a lengthy and complex criminal trial.[1] But Hicks never moved to quash or modify the subpoena—which was signed by the Court—nor did he seek to negotiate a narrower scope. He also never revealed that responsive text messages *had* existed, but had been destroyed or, at minimum, lost. Under the circumstances, it was reasonable for Milton to believe that Hicks had made a good-faith effort to produce, rather than conceal, responsive documents. The government's suggestion that "due diligence" requires a defendant to assume every witness has flouted his obligation to respond in good faith to a lawfully issued subpoena has it backwards.

3. The government's waiver claim (Opp. at 9) also fails. As the email exchange between Milton's counsel and Lucas Hicks's counsel (Opp. Ex. A) makes clear, Milton did not make a "strategic decision not to seek" text messages prior to or during trial (Opp. at 9). Rather, Milton specifically pressed Lucas Hicks for relevant text messages. But Lucas Hicks's counsel told him he had "no reason to believe there is any meaningful volume of relevant text messages." Opp. Ex. A. Milton was entitled to rely on that representation—which turned out to be inaccurate—when he opted not to press Lucas Hicks for text messages. In any case, it was reasonable for Milton to believe that any relevant text messages between Lucas and Peter Hicks would have been produced by Peter, given that he—unlike Lucas—gave every indication he would comply with the full scope of the subpoena.

In short, there is no merit to the government's effort to blame Milton for "failing" to acquire documents that Peter Hicks intentionally withheld (or destroyed), and which Lucas Hicks said were unlikely to exist.

---

[1] The government criticizes Milton for issuing the subpoenas just two weeks before trial, but there is nothing unusual about that, and there would have been plenty of time for Milton to make use of responsive documents at trial had the Hicks's complied with those subpoenas.

### B. The New Evidence Showing Hicks Lied About Reviewing SEC Filings Was Material And Would Likely Have Changed The Outcome

The government's claim that the newly discovered evidence is not material fails to acknowledge a simple reality: The new evidence shows Peter Hicks repeatedly lied in response to questions that went to the heart of the parties' arguments about the materiality element. "The credibility of a witness who testifies as to substantive facts is critical in the trial of a case. To this extent, it cannot be said that evidence that would show the witness to be lying is immaterial." *United States v. White*, 972 F.2d 16, 20 (2d Cir. 1992). If Milton had access to the newly discovered evidence prior to trial, the jury would likely have concluded his statements to Hicks on the April 10, 2020 call were immaterial to the Ranch transaction. A new trial on Count Four is therefore required. *See United States v. Stewart*, 433 F.3d 273, 296 (2d Cir. 2006) (dispositive question is "whether newly discovered evidence would have influenced the jury").

1. The government argues that "all of the evidence in the world that Peter Hicks read SEC filings could not possibly" have mattered, because materiality is "assessed objectively" based on a "reasonable person" standard. Opp. at 10. But that hardly means individual witnesses' views have no power to influence a jury's perception of what statements are material. Indeed, the government's contention is perplexing given its prior arguments that individual investors' testimony "is plainly relevant to the materiality issue." Dkt. 182 at 4; *see* Dkt. 190 at 1-2 (investor testimony "bears directly on" materiality). And, during trial, the government called multiple individual investors to testify about their own idiosyncratic investment-research strategies and questioned them at length about whether they reviewed SEC filings before buying Nikola stock. *E.g.*, Tr. 1550, 2209. The government elicited this testimony to influence the jury's assessment of materiality for Counts One through Three. In fact, the government

4

specifically told the jury during summation that it could conclude Milton's statements were material because the investor-witnesses "told you that the statements mattered." Tr. 3076.

Similarly, the government recognized that whether Hicks had reviewed Nikola's SEC filings could influence the jury's assessment of materiality for Count Four.[2] That's why the government asked Hicks whether he ever reviewed the SEC filings. Tr. 2081. Hicks testified—falsely—that he had not. That testimony supported the government's novel theory that an executive's blustery, off-the-cuff statements can be material, even when the complete facts are disclosed in SEC filings. Given the government's repeated focus on the SEC filings during trial, its effort to claim those filings would not have influenced the jury (Opp. at 12) rings hollow.[3]

Moreover, the jury clearly understood that the proof of materiality on Count Four was dubious, and focused on what sort of independent research into Nikola Peter Hicks might have conducted. During an interview with the *Wall Street Journal* published two weeks after the verdict, three jurors explained that they found Count Four "trickier" than the other two counts of conviction. Dkt. 259-3 at 3. One of them said "[s]he found it hard to believe that the businessman accepted Nikola stock based on Mr. Milton's claims about the company instead of

---

[2] The government understood that Hicks's testimony about his *subjective* perception of the value of the Nikola stock options would influence the jury's assessment of whether those options would have mattered to a "reasonable" person in Hicks's position. That's why the government elicited Hicks's testimony that the options were critical to Hicks's decision to sell the Ranch. *E.g.*, Tr. 2031-32. That testimony was false—the newly discovered evidence shows Hicks regarded the stock options as "fool's gold." *See* Motion at 20. The government has no answer for this evidence, so it simply ignores it.

[3] The government cherry-picks Milton's statement that Nikola had "already begun … gobbling up the rates and taking energy from the grid" (*i.e.*, procuring electricity to create hydrogen at a network of proprietary stations). Opp. at 12. But even with respect to that statement, the SEC filings undermine any claim of materiality. For example, the SEC filings explain that Nikola had not yet built any hydrogen stations. Motion at 10. How could Nikola *already* be procuring energy to power stations that didn't yet exist? The same SEC filing specifically disclosed the risk Nikola would not be able to procure electricity at prices required for profitability. *Id.*

5

doing his own research or a simple Google search about Nikola's prospects." *Id.* Given the government's thin proof of materiality, the newly discovered evidence—which went to the exact issue which raised doubt in at least one juror's mind—could have easily "create[d] a reasonable doubt that did not otherwise exist." *United States v. Diaz*, 922 F.2d 998, 1006 (2d Cir. 1990).

2.  The government's cursory argument that the newly discovered evidence was merely cumulative and impeaching (Opp. at 13-14) ignores the trial record. Whether Hicks accessed the SEC filings was not a peripheral issue that bore solely on Hicks's credibility. It was at the center of a key disputed issue and the government put it front and center during its examination of Hicks. The new evidence thus goes directly "to the guilt or innocence of the defendant[]." *United States v. Wallach*, 935 F.2d 456, 457 (2d Cir. 1991).

The government's argument that the new evidence is cumulative because Milton was able to raise *arguments* about the importance of the SEC filings (Opp. at 11) defies common sense and courtroom realities. The Second Circuit has specifically recognized that new evidence that is "theoretically cumulative" of evidence and arguments raised at trial can support a winning Rule 33 motion if it is "of a different kind and came from an impartial source." *United States v. Siddiqi*, 959 F.2d 1167, 1173 (2d Cir. 1992). Simply put, a naked argument from the defense is substantially less powerful than one corroborated by the testimony of a live witness—especially a government witness. And, although the defense had access at trial to one document in which Lucas Hicks sent Peter a link to an SEC filing, that document did not provide any evidence that Peter actually looked at the link. And when the defense asked Peter if Lucas had sent him a link to SEC filings, he flippantly responded, "if he did, I didn't read it." Tr. 2168. The newly discovered evidence proved he did read the filings, and that his answer was false.

3.      Finally, the government contends Hicks's perjury and destruction of evidence did not result in a manifest injustice because "Trevor Milton defrauded Peter Hicks" and is therefore not "innocent." Opp. at 14. But this merely assumes the conclusion. A fraud conviction requires proof beyond a reasonable doubt of materiality. Without materiality, there *is* no fraud. In any case, Rule 33 does not require a court to ask whether a defendant was morally "innocent," as the government implies. Rather, the key question is whether the newly discovered evidence "could have induced a reasonable doubt in the minds of enough of the jurors to avoid a conviction." *Wallach*, 935 F.2d at 456. Here, it would have. That is enough to mandate a new trial in the "interest of justice" under Rule 33.

    **C.    The New Evidence Showing Hicks Lied About Being "Lulled" Was Material And Likely Would Have Changed The Outcome**

1.      The government's effort to paint as immaterial the new evidence showing that Peter Hicks was not "lulled" out of anything (Opp. at 14-16) rests on the flawed theory that if a defendant is manipulated into paying the "victim" after the defendant's alleged scheme has concluded, the payments necessarily constitute a continuation of the defendant's fraud. But the law does not support that strained theory.

True, in certain limited circumstances, wires "designed to lull the victim[] into a false sense of security" may be part of an alleged fraudulent scheme. *United States v. Lane*, 474 U.S. 438, 451 (1986). But to qualify, such conduct must occur "*prior* to the scheme's completion." *Id.* at 453 (emphasis added); *accord United States v. Tanke*, 743 F.3d 1296, 1301 (9th Cir. 2014). Determining when a scheme is "complete," in turn, depends on "the scope of the scheme *as devised by the perpetrator*"; "[i]f the scheme, *as conceived by the perpetrator*, has been fully executed, then the [wire], even if sent to facilitate concealment of the scheme, falls outside." *Tanke*, 743 F.3d at 1303 (emphasis added).

7

At trial, the basis for the government's "lulling" theory was Hicks's testimony that, even after the Hindenburg Report was published in September 2020, Hicks hadn't formed a belief as to whether Milton had deceived him, and his decision to sue was forestalled by Milton's continued efforts to negotiate with him, ultimately leading to the SPA. The government pounded that theme during Hicks's direct, repeatedly eliciting Hicks's testimony that, even as late as March 2021, he didn't sue because he "did not know whether any or all of [Milton's] representations were accurate or inaccurate." Tr. 2031. That claim was critical, because it was consistent with the theory that the SPA transaction was part of *Milton's* conception of the overall fraudulent scheme, as opposed to an effort by *Hicks* to take advantage after the alleged scheme, as conceived by Milton, was concluded.

The newly discovered evidence upends that theory by showing that the SPA could not possibly have been part of the scheme "as conceived by [Milton.]" *Tanke*, 743 F.3d at 1303. Having repeatedly elicited Hicks's testimony *on this exact topic*, the government's claim that the new evidence doesn't matter lacks credibility.[4] If the new evidence had been available at trial, it would have likely made a difference in the outcome.

2.  The government's suggestion that new evidence undermining proof of venue can never justify relief under Rule 33 (Opp. at 17) because venue does not relate to "guilt or innocence" is contrary to settled law. As discussed, the key issue on a Rule 33 motion is whether the new evidence "would probably lead to an acquittal"—not whether it proves actual innocence.

---

[4] The government says the significance of the newly discovered evidence is unclear. Opp. at 15-16. But the documents largely speak for themselves: They show Hicks wasn't concerned or upset when the Hindenburg Report was released—he instantly saw an "opportunity" to make more money off of Milton. And they show that, contrary to Hicks's testimony, he believed he had been deceived and knew he would sue as soon as the Hindenburg Report was published. *See* Motion at 14-26.

8

*Siddiqi*, 959 F.2d at 1173; *see also Wallach*, 935 F.2d at 456 (where new evidence shows perjury, question is whether "but for the perjured testimony, the defendant would most likely not have been convicted."). "A theory that newly discovered evidence establishes the defendant's innocence is one, not the only, theory that would support relief under Rule 33, as the rule encompasses all claims based on newly discovered evidence which likely would lead to acquittal whether or not because of actual innocence." *United States v. O'Malley*, 833 F.3d 810, 814 (7th Cir. 2016) (collecting cases); *United States v. Bowen*, 799 F.3d 336, 349 (5th Cir. 2015) ("Newly discovered evidence need *not* relate only to guilt or innocence, but may be relevant to *any* controlling issue of law.") (emphasis added).

3. The government's argument that the new evidence wouldn't have mattered because there was an alternative sufficient theory of venue (Opp. at 17-18) rests on the inaccurate claim that the trial evidence proved Milton maintained a bank account in Manhattan, and therefore would have foreseen that the wire transfers he sent Hicks to pay for the Ranch would touch the SDNY. *Id.* But one scours the record in vain to find evidence that Milton had a New York bank account. None of the documents the government relies on (GX64, GX 937, GX 938, GX1424) establish that Milton had an account in New York, or that the wires Milton used to pay Hicks touched the SDNY. To the contrary, Milton's JPM bank statements listed an *Arizona* address (*e.g.*, GX1511 at 1, GX1520 at 1), and his checks listed routing numbers associated with either *Arizona* or *Utah* (*see* GX1520 at 4-5 (listing routing number 122100024), GX1511 at 4 (listing routing number 124001545)).

The evidence the government relies on shows, at most, that the domestic wire instructions for Milton's JPM accounts (1) list a routing number associated with New York City, and (2) include the address of JPM's Manhattan headquarters at 270 Park Avenue. GX937. But *every*

9

JPM account in the United States—no matter where located—uses that same routing number and associated address for domestic wire transfers.  *See* https://www.chase.com/digital/wire-transfer/faqs.  JPM's New York headquarters did not make it reasonably foreseeable to Milton that wire transfers from Utah and Arizona to Massachusetts would be routed through the SDNY—if that is even what occurred, which was never proven.  Lack of foreseeability dooms the government's alternative venue argument.  *See United States v. Kim*, 246 F.3d 186, 193 (2d Cir. 2001).  And even if it was foreseeable that JPM would route the wire transfers to Hicks via Manhattan, such *de minimis* interactions with the district fall short of the "substantial contacts" required for venue.  *See United States v. Ramirez*, 420 F.3d 134, 139 (2d Cir. 2005).

In sum, the government's alternative venue theory was, at best, highly dubious.  That is why it pursued the theory that Milton had "lulled" Hicks.  But the newly discovered evidence shows the March 2021 SPA only happened because Hicks knew—contrary to his trial testimony—that he could take advantage of Milton before ultimately suing him.  The new evidence eviscerates the notion that the SPA was part of the fraud as conceived by Milton, and thus renders any wires related to the SPA irrelevant.  If the new evidence had been available at trial, the outcome would have likely been different.  A new trial on Count Four is therefore required.

## CONCLUSION

The Court should issue an indicative ruling stating it would grant a new trial on Count Four pursuant to Rule 33.

Dated: December 24, 2024
      New York, New York

/s/ Alexandra A.E. Shapiro
Alexandra A.E. Shapiro
Daniel J. O'Neill
Avery D. Medjuck
SHAPIRO ARATO BACH LLP
1140 Avenue of the Americas, 17th Floor
New York, New York 10036
(212) 257-4880
ashapiro@shapiroarato.com
doneill@shapiroarato.com
amedjuck@shapiroarato.com

*Counsel for Defendant Trevor Milton*
